# 25-2623-cr

# United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

SEAN COMBS, AKA Puff Daddy,
AKA P. Diddy, AKA Diddy, AKA PD, AKA Love,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPENDIX
### Volume I of V (Pages A-1 to A-250)

ALEXANDRA A. E. SHAPIRO
THEODORE SAMPSELL-JONES
JASON ANTHONY DRISCOLL
CHRISTOPHER D. JOHNSON
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas,
    17th Floor
New York, New York 10036
(212) 257-4880

*Attorneys for Defendant-Appellant*

i

## TABLE OF CONTENTS

**Page**

District Court Docket Entries in *United States v. Combs*, No. 24-CR-542 (AS) (S.D.N.Y.)............... A-1

Third Superseding Indictment, filed April 3, 2025 (Dkt. 209)................................................. A-68

Excerpts of Trial Transcript ...................................... A-85

### Defense Exhibits

DX-1003: July 2012 messages between Combs and Ventura ........................................................ A-401

DX-1019: October 2012 messages between Combs and Ventura............................................... A-426

DX-1026: December 2012 messages between Combs and Ventura............................................. A-443

DX-1035: July 2013 messages between Combs and Ventura ........................................................ A-445

DX-1068: October 2015 messages between Combs and Ventura............................................... A-452

DX-1149: May 2017 messages between Combs and Ventura ........................................................ A-472

DX-1159: August 2009 messages between Combs and Ventura............................................... A-486

DX-1162: August 2009 messages between Combs and Ventura............................................... A-489

DX-1164: August 2009 message from Ventura to Combs................................................................ A-490

DX-1165: August 2009 messages between Combs and Ventura............................................... A-491

DX-1167: August 2009 messages between Combs and Ventura............................................... A-492

**ii**

**Page**

DX-3011 (public version): November 2021
messages between Combs and Jane...................... A-493

DX-3016 (public version): November 2021
messages between Combs and Jane...................... A-521

DX-3018-R (public version): November 2021
messages between Combs and Jane...................... A-546

DX-3033 (public version): December 2021
messages between Combs and Jane...................... A-567

DX-3034 (public version): December 2021
messages between Combs and Jane...................... A-584

DX-3071-R (public version): August 2022
messages between Combs and Jane...................... A-618

DX-3105 (public version): March 2023
messages between Combs and
Jane ................................................................. A-635

### Government Exhibits

GX B-236: February 2013 messages between
Combs and Ventura............................................. A-649

GX B-248: June 2013 messages between Combs
and Ventura ........................................................ A-660

GX B-251: July 2013 messages between Combs
and Ventura ........................................................ A-671

GX B-257: September 2013 messages between
Combs and Ventura............................................. A-692

GX B-262: October-November 2013 messages
between Combs and Ventura................................ A-703

GX B-266: March 2014 messages between
Combs and Ventura............................................. A-707

GX B-346: July 2012 messages between Combs
and Ventura ........................................................ A-715

iii

**Page**

GX B-351: September 2012 messages between Combs and Ventura .............................................. A-729

GX B-357: October 2012 messages between Combs and Ventura .............................................. A-740

GX B-361: January 2013 messages between Combs and Ventura .............................................. A-745

GX B-420: April 2017 messages between Combs and Ventura .............................................. A-749

GX B-431: June 2017 messages from Ventura to Combs ................................................................ A-761

GX B-616: September-October 2015 messages between Combs and Ventura ................................ A-763

Sentencing Transcript, dated October 3, 2025 ........... A-769

Notice of Appeal, filed October 20, 2025 (Dkt. 546) ................................................................ A-925

**FILED UNDER SEAL**

DX-3011 (sealed version): November 2021 messages between Combs and Jane ...................... A-927

DX-3016 (sealed version): November 2021 messages between Combs and Jane ...................... A-955

DX-3018-R (sealed version): November 2021 messages between Combs and Jane ...................... A-980

DX-3033 (sealed version): December 2021 messages between Combs and Jane ...................... A-1001

DX-3034 (sealed version): December 2021 messages between Combs and Jane ...................... A-1018

DX-3071-R (sealed version): August 2022 messages between Combs and Jane ...................... A-1051

DX-3105 (sealed version):  March 2023 messages between Combs and Jane ...................... A-1068

A-1

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:24-cr-00542-AS-1

Case title: USA v. COMBS

Date Filed: 09/12/2024

Date Terminated: 10/16/2025

Assigned to: Judge Arun Subramanian

**Defendant (1)**

**Sean Combs**
*TERMINATED: 10/16/2025*
*also known as*
Sealed Defendant 1
*TERMINATED: 10/16/2025*
*also known as*
Puff Daddy
*TERMINATED: 10/16/2025*
*also known as*
P. Diddy
*TERMINATED: 10/16/2025*
*also known as*
Diddy
*TERMINATED: 10/16/2025*
*also known as*
PD
*TERMINATED: 10/16/2025*
*also known as*
Love
*TERMINATED: 10/16/2025*

represented by **Marc Antony Agnifilo**
Agnifilo Intrater LLP
445 Park Avenue
Ste 7th Floor
New York, NY 10022
646-205-4350
Email: marc@agilawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Teny Rose Geragos**
Agnifilo Intrater LLP
140 Broadway
Ste. 2450
New York, NY 10005
646-205-4350
Email: teny@agilawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexandra A. E. Shapiro**
Shapiro Arato Bach LLP
1140 Avenue of the Americas,
17th Floor
New York, NY 10036
212-257-4881
Email: ashapiro@shapiroarato.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Anna Maria Estevao**
Harris Trzaskoma LLP
156 W 56th St Suite 2004
New York, NY 10019
212-970-6465
Email: aestevao@harristrz.com
*ATTORNEY TO BE NOTICED*

A-2

*Designation: Retained*

**Anthony L. Ricco**
Law Office of Anthony L. Ricco
20 Vesey Street
New York, NY 10007
(212)-791-3919
Fax: (212) 791-3940
Email: tonyricco@aol.com
*TERMINATED: 02/24/2025*
*Designation: Retained*

**Brian Steel**
The Steel Law Firm, P.C.
1800 Peachtree Street
Ste 300
Atlanta, GA 30309
404-605-0023
Email: thesteellawfirm@msn.com
*ATTORNEY TO BE NOTICED*

**Jason Anthony Driscoll**
Shapiro Arato Bach
1140 Avenue of the Americas
Fl. 17
New York, NY 10036
212-257-4880
Email: jdriscoll@shapiroarato.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Jonathan Bach**
Shapiro Arato Bach LLP
1140 Avenue of the Americas
17th Floor
New York, NY 10036
212-257-4897
Fax: 212-202-6417
Email: jbach@shapiroarato.com
*ATTORNEY TO BE NOTICED*

**Nicole Westmoreland**
Westmoreland Law LLC
132 Cone Street NW
Suite A
Atlanta, GA 30303
404-446-2620
Email: nw@westmorelandlawgroup.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Xavier Robert Donaldson**
Xavier R. Donaldson, Attorney at Law
136 Madison Avenue

A-3

Ste 6th Floor
New York, NY 10016
646-772-3334
Email: xdonaldson@aol.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**

18:2421.F TRANSPORTING FOR
PROSTITUTION
(3sss)

18:2421.F TRANSPORTING FOR
PROSTITUTION
(5sss)

**Disposition**

IMPRISONMENT: 50 months.
SUPERVISED RELEASE: 5 years. FINE:
$500,000.00

IMPRISONMENT: 50 months.
SUPERVISED RELEASE: 5 years. FINE:
$500,000.00

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

18:1962-7480.F RACKETEERING
CONSPIRACY
(1)

18:1962-7480.F RACKETEERING
CONSPIRACY
(1s)

18:1962-7480.F RACKETEERING
CONSPIRACY
(1ss)

18:1962-7480.F RACKETEERING
CONSPIRACY
(1sss)

18:1591.F SEX TRAFFICKING OF
CHILDREN OR BY FORCE, FRAUD OR
COERCION
(2)

18:1591.F SEX TRAFFICKING BY
FORCE, FRAUD OR COERCION
(2s)

18:1591.F SEX TRAFFICKING OR BY
FORCE, FRAUD OR COERCION
(2ss)

18:1591.F SEX TRAFFICKING OF
CHILDREN OR BY FORCE, FRAUD OR
COERCION (SEX TRAFFICKING BY
FORCE, FRAUD AND COERCION)
(2sss)

18:2421.F TRANSPORTING FOR
PROSTITUTION

**Disposition**

Dismissed

Dismissed

Dismissed

Acquitted by Jury.

Dismissed

Dismissed

Dismissed

Acquitted by Jury.

Dismissed

A-4

| | |
|---|---|
| (3) | |
| 18:2421.F TRANSPORTING FOR PROSTITUTION (3s) | Dismissed |
| 18:2421.F TRANSPORTATION TO ENGAGE IN PROSTITUTION (3ss) | Dismissed |
| 18:1591.F SEX TRAFFICKING OF CHILDREN OR BY FORCE, FRAUD OR COERCION (SEX TRAFFICKING BY FORCE, FRAUD AND COERCION) (4sss) | Acquitted by Jury. |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Interested Party**

| | | |
|---|---|---|
| **Victim 1** | represented by | **Douglas Holden Wigdor**<br>Wigdor LLP<br>85 Fifth Avenue<br>5th fl.<br>New York, NY 10003<br>212-239-9292<br>Fax: 212-239-9001<br>Email: dwigdor@wigdorlaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

---

**Interested Party**

| | | |
|---|---|---|
| **Warner Brothers Discovery, Inc.** | represented by | **Thomas Byrne Sullivan**<br>Ballard Spahr LLP (NYC)<br>1675 Broadway, 19th Floor<br>New York, NY 10019<br>212-850-6139<br>Fax: 212-223-1942<br>Email: sullivant@ballardspahr.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

---

**Interested Party**

A-5

**Interested News Organizations**     represented by     **Robert D. Balin**
Davis Wright Tremaine LLP (NYC)
1251 Avenue of the Americas
New York, NY 10020
212 489-8230
Fax: 212 489-8340
Email: robbalin@dwt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Interested Party**

**Ms. Doe**     represented by     **Lindsay Anne Lewis**
Dratel & Lewis
Attorney
29 Broadway
Suite 1412
New York, NY 10006
212-732-0707
Email: llewis@dratellewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**USA**     represented by     **Emily Anne Johnson**
DOJ-USAO
US Attorney's Office, SDNY
1 St. Andrew's Plaza
New York, NY 10007
212-637-2409
Email: emily.johnson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Madison Reddick Smyser**
DOJ-USAO
U.S. Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2381
Email: madison.smyser@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Mary Christine Slavik**
DOJ-USAO
One St. Andrew's Plaza
New York, NY 10007

A-6

212-637-1113
Email: mary.slavik@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Meredith Foster**
DOJ-USAO
Southern District of New York
26 Federal Plaza
New York
New York, NY 10278
212-637-2310
Email: meredith.foster@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Mitzi Steiner**
DOJ-USAO
1 St. Andrew's Plaza
New York, NY 10007
212-637-2284
Email: mitzi.steiner@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Matthew Raffi Shahabian**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-1046
Fax: 212-637-2527
Email: matthew.shahabian@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Maurene Ryan Comey**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212)-637-2324
Email: maurene.comey@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Olga I Zverovich**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2514
Email: olga.zverovich@usdoj.gov
*ATTORNEY TO BE NOTICED*

A-7

| Date Filed | # | Docket Text |
|---|---|---|
| 09/12/2024 | 1 | UNREDACTED INDICTMENT FILED as to Sealed Defendant 1. (jm) **(Not for Public view pursuant to Standing Order of the court, 24-mc-184.)** (Entered: 09/17/2024) |
| 09/12/2024 | 2 | SEALED REDACTED INDICTMENT as to Sealed Defendant 1 (1) count(s) 1, 2, 3. (jm) (Entered: 09/17/2024) |
| 09/17/2024 | 3 | Order to Unseal Indictment as to Sealed Defendant 1. (Signed by Magistrate Judge Robyn F. Tarnofsky on 9/17/24)(jm) (Entered: 09/17/2024) |
| 09/17/2024 | | INDICTMENT UNSEALED as to Sean Combs. (jm) (Entered: 09/17/2024) |
| 09/17/2024 | | Case as to Sean Combs ASSIGNED to Judge Andrew L. Carter, Jr. Judge Unassigned no longer assigned to the case.. (jm) (Entered: 09/17/2024) |
| 09/17/2024 | | Case Designated ECF as to Sean Combs. (jm) (Entered: 09/17/2024) |
| 09/17/2024 | | Attorney update in case as to Sean Combs. Attorney Emily Anne Johnson,Mary Christine Slavik,Madison Reddick Smyser,Mitzi Steiner for USA added. (jm) (Entered: 09/17/2024) |
| 09/17/2024 | 5 | LETTER by USA as to Sean Combs addressed to Judge Andrew L. Carter, Jr. from USA dated September 17, 2024 re: Govt Request for Detention Document filed by USA. (Johnson, Emily) (Entered: 09/17/2024) |
| 09/17/2024 | 6 | NOTICE OF ATTORNEY APPEARANCE: Marc Antony Agnifilo appearing for Sean Combs. Appearance Type: Retained. (Agnifilo, Marc) (Entered: 09/17/2024) |
| 09/17/2024 | 7 | NOTICE OF ATTORNEY APPEARANCE: Teny Rose Geragos appearing for Sean Combs. Appearance Type: Retained. (Geragos, Teny) (Entered: 09/17/2024) |
| 09/17/2024 | | Attorney update in case as to Sean Combs. Attorney Meredith Foster for USA added. (jm) (Entered: 09/17/2024) |
| 09/17/2024 | 9 | MOTION for Bond *Updated ECF 8* . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 09/17/2024) |
| 09/17/2024 | | Arrest of Sean Combs (Arrest date of 9/16/2024). (job) (Entered: 09/17/2024) |
| 09/17/2024 | 10 | Minute Entry for proceedings held before Magistrate Judge Robyn F. Tarnofsky: Initial Appearance as to Sean Combs held on 9/17/2024. Detention Hearing as to Sean Combs held on 9/17/2024. Arraignment as to Sean Combs (1) Count 1,2,3 held on 9/17/2024. Plea entered by Sean Combs (1) Count 1,2,3 Not Guilty. AUSA Emily Johnson present for the Government. Defendant present with attorney's, Marc Agnifilo and Teny Geragos. BAIL DISPOSITION: Detention: Risk of Flight/Danger. -Speedy Trial time excluded until 9/24/2024. (Status Conference set for 9/24/2024 at 10:00 AM before Judge Andrew L. Carter Jr..) (job) (Entered: 09/17/2024) |
| 09/18/2024 | 11 | ORDER as to Sean Combs. A Bail Appeal Hearing is set for September 18, 2024 at 2:00 p.m. (Bail Appeal Hearing set for 9/18/2024 at 02:00 PM before Judge Andrew L. Carter Jr) (Signed by Judge Andrew L. Carter, Jr on 9/17/2024)(jw) (Entered: 09/18/2024) |
| 09/18/2024 | 12 | AMENDED ORDER as to Sean Combs. A Bail Appeal Hearing is set for September 18, 2024 at 3:30pm (Bail Appeal Hearing set for 9/18/2024 at 03:30 PM before Judge Andrew L. Carter Jr..) (Signed by Judge Andrew L. Carter, Jr on 9/17/24)(jw) (Entered: 09/18/2024) |
| 09/18/2024 | 13 | LETTER MOTION addressed to Judge Andrew L. Carter, Jr. from Marc Agnifilo, Esq. dated 9/18/2024 re: Mr. Combs' Release from Custody . Document filed by Sean Combs. |

A-8

| | | |
|---|---|---|
| | | Return Date set for 9/18/2024 at 03:30 PM. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(Agnifilo, Marc) (Entered: 09/18/2024) |
| 09/18/2024 | 14 | Brady ORDER as to Sean Combs. (Signed by Magistrate Judge Robyn F. Tarnofsky on 9/18/24)(jm) (Entered: 09/18/2024) |
| 09/18/2024 | 15 | LETTER RESPONSE in Opposition by USA as to Sean Combs addressed to Judge Andrew L. Carter, Jr. dated 09/18/2024 re: 13 LETTER MOTION addressed to Judge Andrew L. Carter, Jr. from Marc Agnifilo, Esq. dated 9/18/2024 re: Mr. Combs' Release from Custody .. (Smyser, Madison) (Entered: 09/18/2024) |
| 09/18/2024 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Bond Hearing as to Sean Combs held on 9/18/2024. AUSAs Emily Johnson, Madison Smyser, Mary Slavik, Meredith Foster and Mitzi Steiner for the Government. Defendant appears with attorneys, Marc Agnifilo and Teny Geragos. Bail DENIED. Joint Status Report due 9/23/24. The 9/24/24 status conference is canceled. Status Conference set for 10/9/24 at 2:00 p.m. Time excluded from 9/18/24 to 10/9/24 in the interest of justice. Defendant remains in custody. Court Reporter: Raquel Robles. See transcript for complete details. (Status Report due by 9/23/2024. Status Conference set for 10/9/2024 at 02:00 PM before Judge Andrew L. Carter Jr.) (jbo) (Entered: 09/19/2024) |
| 09/23/2024 | 16 | LETTER by Sean Combs addressed to Judge Andrew L. Carter, Jr. from Marc Agnifilo, Esq. dated 9/23/24 re: Status Report (Agnifilo, Marc) (Entered: 09/23/2024) |
| 09/30/2024 | 17 | TRANSCRIPT of Proceedings as to Sean Combs re: Conference held on 9/17/24 before Magistrate Judge Robyn F. Tarnofsky. Court Reporter/Transcriber: Lisa O'Brien, (212) 805-0320, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/21/2024. Redacted Transcript Deadline set for 10/31/2024. Release of Transcript Restriction set for 12/30/2024. (Moya, Goretti) (Entered: 09/30/2024) |
| 09/30/2024 | 18 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Conference proceeding held on 9/17/24 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 09/30/2024) |
| 09/30/2024 | 19 | TRANSCRIPT of Proceedings as to Sean Combs re: Conference held on 9/18/24 before Judge Andrew L. Carter, Jr. Court Reporter/Transcriber: Raquel Robles, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/21/2024. Redacted Transcript Deadline set for 10/31/2024. Release of Transcript Restriction set for 12/30/2024. (Moya, Goretti); Modified on 9/30/2024 (bw). (Entered: 09/30/2024) |
| 09/30/2024 | 20 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Conference proceeding held on 9/18/24 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 09/30/2024) |

A-9

| 09/30/2024 | 21 | NOTICE OF APPEAL by Sean Combs from 19 Transcript. Filing fee $ 605.00, receipt number 33291. (tp) (Entered: 09/30/2024) |
|---|---|---|
| 09/30/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Sean Combs to US Court of Appeals re: 21 Notice of Appeal. (tp) (Entered: 09/30/2024) |
| 09/30/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Sean Combs re: 21 Notice of Appeal were transmitted to the U.S. Court of Appeals. (tp) (Entered: 09/30/2024) |
| 09/30/2024 | 22 | NOTICE OF ATTORNEY APPEARANCE: Anthony L. Ricco appearing for Sean Combs. Appearance Type: Retained. (Ricco, Anthony) (Entered: 09/30/2024) |
| 10/03/2024 | | Case as to Sean Combs REASSIGNED to Judge Arun Subramanian. Judge Andrew L. Carter, Jr no longer assigned to the case. (jm) (Entered: 10/03/2024) |
| 10/04/2024 | 23 | SCHEDULING ORDER as to Sean Combs. It is hereby ORDERED that the status conference scheduled for Wednesday, October 9, 2024, will now be held on Thursday, October 10, 2024, at 2:00 PM (Status Conference set for 10/10/2024 at 02:00 PM before Judge Arun Subramanian.) (Signed by Judge Arun Subramanian on 10/4/2024)(jw) (Entered: 10/04/2024) |
| 10/04/2024 | 24 | ORDER as to Sean Combs. The hearing set for October 10, 2024 will take place in Courtroom 26A, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007. By October 9, 2024 at 12 pm ET, the parties should submit a joint letter indicating the issues that the parties believe should be addressed at the hearing (Signed by Judge Arun Subramanian on 10/4/2024)(jw) (Entered: 10/04/2024) |
| 10/04/2024 | 25 | LETTER MOTION addressed to Judge Arun Subramanian from Christy Slavik dated October 4, 2024 re: Protective Order . Document filed by USA as to Sean Combs. (Attachments: # 1 Exhibit Proposed Protective Order (redacted))(Slavik, Mary) (Entered: 10/04/2024) |
| 10/07/2024 | 26 | PROTECTIVE ORDER as to Sean Combs...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Arun Subramanian on 10/7/2024) (ap) (Entered: 10/07/2024) |
| 10/07/2024 | 27 | NOTICE OF ATTORNEY APPEARANCE: Anna Maria Estevao appearing for Sean Combs. Appearance Type: Retained. (Estevao, Anna) (Entered: 10/07/2024) |
| 10/08/2024 | 28 | ORDER as to Sean Combs: The Clerk of Court is respectfully directed to terminate the motions at Dkts. 9 and 13, which were resolved prior to the reassignment of this case to me. (Signed by Judge Arun Subramanian on 10/8/2024) (ap) (Entered: 10/08/2024) |
| 10/09/2024 | 29 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA and defense dated October 9, 2024 re: October 10, 2024 Conference Document filed by USA. (Johnson, Emily) (Entered: 10/09/2024) |
| 10/09/2024 | 30 | MOTION for Hearing . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 10/09/2024) |
| 10/09/2024 | 31 | MEMORANDUM in Support by Sean Combs re 30 MOTION for Hearing .. (Agnifilo, Marc) (Entered: 10/09/2024) |
| 10/09/2024 | 32 | DECLARATION of Marc Agnifilo, Esq. in Support as to Sean Combs re: 30 MOTION for Hearing .. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11)(Agnifilo, Marc) (Entered: 10/09/2024) |

| 10/09/2024 | 33 | LETTER MOTION addressed to Judge Arun Subramanian from Mitzi Steiner dated October 9, 2024 re: 30 MOTION for Hearing . re: Response to Motion for Hearing . Document filed by USA as to Sean Combs. (Attachments: # 1 Exhibit A)(Steiner, Mitzi) (Entered: 10/09/2024) |
|---|---|---|
| 10/10/2024 | 34 | NOTICE OF ATTORNEY APPEARANCE: Alexandra A. E. Shapiro appearing for Sean Combs. Appearance Type: Retained. (Shapiro, Alexandra) (Entered: 10/10/2024) |
| 10/10/2024 | | Minute Entry for proceedings held before Judge Arun Subramanian: Status Conference as to Sean Combs held on 10/10/2024. Defendant Sean Combs present retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, and Anthony Ricco. AUSAs Emily Johnson, Madison Smyser, Christy Slavik, and Mitzi Steiner present. Court Reporter Rebecca Forman present. Status Conference held. Discovery due December 31, 2024. Motions due February 17, 2025. Oppositions due March 3, 2025. Replies due March 10, 2025. Trial scheduled for May 5, 2025, at 9:00 AM. Pretrial conference scheduled for December 18, 2024, at 2:00 PM, in Courtroom 26A of 500 Pearl Street, New York, NY 10007. By consent of the parties, the time between October 10, 2024 and December 18, 2024 is excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), in the interest of justice. Detention continued. (Discovery due by 12/31/2024. Motions due by 2/17/2025. Replies due by 3/10/2025. Responses due by 3/3/2025. Jury Trial set for 5/5/2025 at 09:00 AM before Judge Arun Subramanian. Pretrial Conference set for 12/18/2024 at 02:00 PM before Judge Arun Subramanian.) (jbo) Modified on 11/25/2024 (ap). (Entered: 10/10/2024) |
| 10/11/2024 | 35 | ORDER of USCA (Certified Copy) as to Sean Combs re: 21 Notice of Appeal - Interlocutory USCA Case Number 24-2606. Appellant Sean Combs moves for bail and for immediate release pending disposition of the bail motion. He also requests leave to file his bail motion under seal with partial redactions. IT IS HEREBY ORDERED that the motion for bail is REFERRED to a three-judge panel. The request for immediate release pending decision on the bail motion by a three-judge panel is DENIED. The motion to seal is GRANTED. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit, Clerk USCA. Certified: 10/10/2024. (tp) (Entered: 10/11/2024) |
| 10/15/2024 | 36 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/15/2024 re: Request for Alleged Victims' Names . Document filed by Sean Combs. (Attachments: # 1 Exhibit 1)(Agnifilo, Marc) (Entered: 10/15/2024) |
| 10/18/2024 | 37 | LETTER MOTION addressed to Judge Arun Subramanian from AUSAs Meredith Foster, Emily A. Johnson, Christy Slavik, Madison Smyser, Mitzi Steiner dated October 18, 2024 re: 36 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/15/2024 re: Request for Alleged Victims' Names . re: Deadline to Oppose Defendant's Motion . Document filed by USA as to Sean Combs. (Johnson, Emily) (Entered: 10/18/2024) |
| 10/18/2024 | 38 | MEMO ENDORSEMENT as to Sean Combs (1) granting 37 LETTER MOTION addressed to Judge Arun Subramanian from AUSAs Meredith Foster, Emily A. Johnson, Christy Slavik, Madison Smyser, Mitzi Steiner dated October 18, 2024 re: 36 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/15/2024 re: Request for Alleged Victims' Names. ENDORSEMENT: GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 37. SO ORDERED. (Signed by Judge Arun Subramanian on 10/18/2024) (lnl) (Entered: 10/18/2024) |
| 10/18/2024 | 39 | TRANSCRIPT of Proceedings as to Sean Combs re: Conference held on 10/10/2024 before Judge Arun Subramanian. Court Reporter/Transcriber: Rebecca Forman, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the |

| | | |
|---|---|---|
| | | Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/8/2024. Redacted Transcript Deadline set for 11/18/2024. Release of Transcript Restriction set for 1/16/2025. (McGuirk, Kelly) (Entered: 10/18/2024) |
| 10/18/2024 | 40 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Conference proceeding held on 10/10/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 10/18/2024) |
| 10/18/2024 | 41 | ORDER as to Sean Combs: As discussed during the conference on October 10, 2024, the Governments deadline to respond to defendant's motion for an evidentiary hearing (at Dkt. 30) is October 30, 2024. Defendants reply is due on November 8, 2024. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 33. (Responses due by 10/30/2024. Replies due by 11/8/2024) (Signed by Judge Arun Subramanian on 10/18/2024) (ap) (Entered: 10/18/2024) |
| 10/20/2024 | 42 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo dated 10/20/24 re: request for an Order pursuant to Local Rule 23.1 . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 10/20/2024) |
| 10/21/2024 | 43 | MEMO ENDORSEMENT as to Sean Combs on re: 42 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo dated 10/20/24 re: request for an Order pursuant to Local Rule 23.1. ENDORSEMENT: The Government's response is due on October 30, 2024. In addition, at the October 10, 2024 conference, the parties were directed to confer on a proposed reciprocal order relating to defendant's motion for an evidentiary hearing and submit it for the Court's review. Dkt. 39. No proposed order was ever filed. If relief is still requested, any proposed order should be filed on or before October 30, 2024 as well. (Responses due by 10/30/2024) (Signed by Judge Arun Subramanian on 10/21/2024) (ap) (Entered: 10/21/2024) |
| 10/22/2024 | 44 | TRANSCRIPT of Proceedings as to Sean Combs re: Conference held on 10/10/2024 before Judge Arun Subramanian. Court Reporter/Transcriber: Rebecca Forman, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/12/2024. Redacted Transcript Deadline set for 11/22/2024. Release of Transcript Restriction set for 1/21/2025. (Moya, Goretti) (Entered: 10/22/2024) |
| 10/22/2024 | 45 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Conference proceeding held on 10/10/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 10/22/2024) |
| 10/23/2024 | 46 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/23/2024 re: Proposed Gag Order . Document filed by Sean Combs. (Attachments: # 1 Exhibit A - Proposed Gag Order)(Agnifilo, Marc) (Entered: 10/23/2024) |
| 10/23/2024 | 47 | LETTER RESPONSE in Opposition by USA as to Sean Combs addressed to Judge Arun Subramanian re: 46 LETTER MOTION addressed to Judge Arun Subramanian from |

| | | Marc Agnifilo, Esq. dated 10/23/2024 re: Proposed Gag Order .. (Attachments: # 1 Exhibit A (Proposed Gag Order))(Foster, Meredith) (Entered: 10/23/2024) |
|---|---|---|
| 10/24/2024 | 48 | LETTER REPLY TO RESPONSE to Motion by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/24/2024 re 46 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/23/2024 re: Proposed Gag Order .. (Agnifilo, Marc) (Entered: 10/24/2024) |
| 10/25/2024 | 49 | LETTER REPLY TO RESPONSE to Motion by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/25/24 re 46 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/23/2024 re: Proposed Gag Order .. (Attachments: # 1 Exhibit A - 10/25/24 New York Post Article) (Agnifilo, Marc) (Entered: 10/25/2024) |
| 10/25/2024 | 50 | ORDER as to Sean Combs: IT IS HEREBY ORDERED: 1. Assistant United States Attorneys and staff members working under their supervision or at their direction (collectively, the "Government"), and all local and federal law enforcement agents whom the Government has provided with access to grand jury materials, shall not disclose any grand jury material in violation of Fed. R. Crim. P. 6(e). Furthermore, the Government, and all local and federal law enforcement agents assigned to this case or the related investigation, assisting with this case or the related investigation, or who have assisted with this case or the related investigation, shall comply with Local Rule 23.1. 2. The defendant, Sean Combs, all attorneys for the defendant, and any individuals working under the defendant's or the attorneys' supervision or at their direction (collectively, the "Defense") shall comply with Local Rule 23.1. 3. A copy of Local Rule 23.1 is attached to this order. This order, including the attachment, should be furnished to all local and federal law enforcement agents assigned to this case or the related investigation, assisting with this case or the related investigation, or who have assisted with this case or the related investigation. In addition, the Government must notify agencies involved in this case of the obligations imposed on them by Local Rule 23.1 and Fed. R. Crim. P. 6(e). 4. The Court expects that the parties, and any individual or agency subject to this order, will strictly adhere to the terms of this order and the governing rules. 5. Nothing in this order supersedes or overrides the obligations set forth in the protective order entered in this case (Dkt. 26). The Clerk of Court is respectfully directed to terminate the motion at Dkt. 46. SO ORDERED. (Signed by Judge Arun Subramanian on 10/25/2024) (lnl) (Entered: 10/25/2024) |
| 10/29/2024 | 51 | LETTER MOTION addressed to Judge Arun Subramanian from Christy Slavik dated October 29, 2024 re: Permission to File Oversized Brief . Document filed by USA as to Sean Combs. (Slavik, Mary) (Entered: 10/29/2024) |
| 10/30/2024 | 52 | MEMO ENDORSEMENT granting 51 LETTER MOTION filed by Sean Combs (1), addressed to Judge Arun Subramanian from AUSA Christy Slavik dated October 29, 2024 re: Permission to File Oversized Brief.... Pursuant to the Court's Individual Rules, the Government respectfully requests permission to file its memorandum of law in opposition to defendant Sean Combs' motions at Dkt. No. 32, 36, and 42, which is due October 30, 2024, as an oversized brief exceeding 25 pages. ENDORSEMENT: GRANTED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 51. SO ORDERED. (Signed by Judge Arun Subramanian on 10/30/2024) (bw) (Entered: 10/30/2024) |
| 10/30/2024 | 53 | MEMORANDUM in Opposition by USA as to Sean Combs re 36 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/15/2024 re: Request for Alleged Victims' Names ., 30 MOTION for Hearing ., 42 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo dated 10/20/24 re: request for an Order pursuant to Local Rule 23.1 .. (Attachments: # 1 Exhibit May 17, 2024 Email, # |

| | | |
|---|---|---|
| | | 2 Exhibit Metadata, # 3 Exhibit October 9, 2024 Email)(Slavik, Mary) (Entered: 10/30/2024) |
| 10/31/2024 | 54 | ORDER as to Sean Combs: The Court is in receipt of a letter from the Government supplementing the Government's October 30, 2024 filing at Dkt. 53. Having considered the Government's stated justifications for sealing the letter and considering it ex parte, the Court finds that it is appropriate to accept this letter ex parte and under seal. (Signed by Judge Arun Subramanian on 10/31/2024) (ap) (Entered: 10/31/2024) |
| 11/01/2024 | 55 | ENDORSED LETTER as to Sean Combs addressed to Judge Arun Subramanian, from Douglas H. Wigdor dated 10/30/2024 re: Douglas H. Wigdor writes regarding Defendant's requested "gag order". ENDORSEMENT: The Clerk is directed to docket this letter received by the Court. (Signed by Judge Arun Subramanian on 11/1/2024) (ap) (Entered: 11/01/2024) |
| 11/01/2024 | 56 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated November 1, 2024 re: Additional Authority Document filed by USA. (Attachments: # 1 Exhibit 24 Cr. 556 Order)(Slavik, Mary) (Entered: 11/01/2024) |
| 11/03/2024 | 57 | LETTER REPLY TO RESPONSE to Motion by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 11/3/24 re 42 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo dated 10/20/24 re: request for an Order pursuant to Local Rule 23.1 .. (Attachments: # 1 Proposed Order (Temporary))(Agnifilo, Marc) (Entered: 11/03/2024) |
| 11/04/2024 | 58 | MEMO ENDORSEMENT as to Sean Combs on re: 57 LETTER REPLY TO RESPONSE to Motion by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 11/3/24 re 42 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo dated 10/20/24 re: request for an Order pursuant to Local Rule 23.1.. ENDORSEMENT: Given the urgency of the issue, if defendant has additional arguments to make on the motion at Dkt. 42 in reply to the Government's opposition, he should provide those to the Court by November 5, 2024 at 12:00 PM. (Replies due by 11/5/2024) (Signed by Judge Arun Subramanian on 11/4/2024) (ap) (Entered: 11/04/2024) |
| 11/05/2024 | 59 | LETTER REPLY TO RESPONSE to Motion by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 11/5/24 re 42 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo dated 10/20/24 re: request for an Order pursuant to Local Rule 23.1 .. *pursuant to the Court's 11/4/24 Order* (Agnifilo, Marc) (Entered: 11/05/2024) |
| 11/08/2024 | 60 | MOTION for Bond . Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 11/08/2024) |
| 11/08/2024 | 61 | MEMORANDUM in Support by Sean Combs re 60 MOTION for Bond .. (Shapiro, Alexandra) (Entered: 11/08/2024) |
| 11/08/2024 | 62 | DECLARATION of Marc Agnifilo in Support as to Sean Combs re: 60 MOTION for Bond .. (Attachments: # 1 Exhibit 1 Under Seal, # 2 Exhibit 2 Under Seal, # 3 Exhibit 3 Under Seal, # 4 Exhibit 4 Under Seal, # 5 Exhibit 5 Under Seal)(Shapiro, Alexandra) (Entered: 11/08/2024) |
| 11/08/2024 | 63 | OPINION AND ORDER as to Sean Combs. The motion is DENIED. Balancing the interests at stake, the Court has already taken steps to limit what can be said publicly, including issuing an order underscoring the requirements of Fed. R. Crim. P. 6(e) and Local Rule 23.1 and further requiring the Government to make those requirements clear to anyone involved in this case. See Dkt. 50. As the Court stated in that order, it will take appropriate action for violations of the rules or this Court's order. The Court is open to other tailored proposals that will help ensure a fair trial. See Local Crim. R. 23.1(h). As to |

A-14

| | | |
|---|---|---|
| | | the mounting civil cases against Combs, there are further steps that he can take, including seeking relief in particular cases if the parties or their lawyers have made prejudicial statements to the press, or moving to stay those cases pending the resolution of this one, just to give two examples. However, the unprecedented relief that Combs seeks on this motion is unwarranted. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 42. (Signed by Judge Arun Subramanian on 11/8/2024) (See ORDER set forth) (ap) (Entered: 11/08/2024) |
| 11/08/2024 | 64 | REPLY MEMORANDUM OF LAW in Support as to Sean Combs re: 30 MOTION for Hearing . . (Shapiro, Alexandra) (Entered: 11/08/2024) |
| 11/08/2024 | 65 | REPLY MEMORANDUM OF LAW in Support as to Sean Combs re: 36 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/15/2024 re: Request for Alleged Victims' Names . . (Shapiro, Alexandra) (Entered: 11/08/2024) |
| 11/09/2024 | 66 | LETTER MOTION addressed to Judge Arun Subramanian from Christy Slavik dated November 9, 2024 re: Scheduling . Document filed by USA as to Sean Combs. (Slavik, Mary) (Entered: 11/09/2024) |
| 11/12/2024 | 67 | ORDER as to Sean Combs. The Court is in receipt of defendant's motion for bond (Dkt. 60) and the Government's letter-motion on scheduling (Dkt. 66). The Government's response to defendant's motion is due on November 15, 2024. Defendant's reply is due on November 20, 2024. A hearing on defendant's motion will be held on November 22, 2024 at 2:00 PM in Courtroom 15A of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 66. SO ORDERED. ( Responses due by 11/15/2024. Replies due by 11/20/2024. Motion Hearing set for 11/22/2024 at 02:00 PM in Courtroom 15A, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian. )(Signed by Judge Arun Subramanian on 11/12/2024) (bw) (Entered: 11/12/2024) |
| 11/13/2024 | 68 | ORDER as to Sean Combs. The hearing on defendant's motion for bail, scheduled for November 22, 2024 at 2:00 PM, will be held in Courtroom 26A of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York (Bond Hearing set for 11/22/2024 at 02:00 PM in Courtroom 26A, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian.) (Signed by Judge Arun Subramanian on 11/13/24)(jw) (Entered: 11/13/2024) |
| 11/15/2024 | 69 | MEMORANDUM in Opposition by USA as to Sean Combs re 60 MOTION for Bond .. (Attachments: # 1 Exhibit Ex. A - Sept. 17, 2024 Letter, # 2 Exhibit Ex. B - Sept. 18, 2024 Letter, # 3 Exhibit Ex. C - Sept. 17, 2024 Transcript, # 4 Exhibit Ex. D - Sept. 18, 2024 Transcript, # 5 Exhibit Ex. E - sealed, # 6 Exhibit Ex. F - sealed, # 7 Exhibit Ex. G - sealed, # 8 Exhibit Ex. H - sealed, # 9 Exhibit Ex. I - sealed, # 10 Exhibit Ex. J - sealed, # 11 Exhibit Ex. K - sealed, # 12 Exhibit Ex. L - sealed, # 13 Exhibit Ex. M - sealed, # 14 Exhibit Ex. N - sealed, # 15 Exhibit Ex. O - sealed)(Slavik, Mary) (Entered: 11/15/2024) |
| 11/18/2024 | 70 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 11/18/24 re: Request for Evidentiary Hearing . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 11/18/2024) |
| 11/18/2024 | 71 | MEMO ENDORSEMENT as to Sean Combs on 70 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 11/18/24 re: Request for Evidentiary Hearing. ENDORSEMENT: The Government must respond by 5:00 PM today (November 18, 2024). The Court will hold a hearing on this matter tomorrow, November 19, 2024, at 3:00 PM in Courtroom 15A of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York, unless the parties mutually agree to a remote conference instead. The Clerk of Court is respectfully directed to terminate the |

A-15

| | | |
|---|---|---|
| | | motion at Dkt. 70. SO ORDERED. (Responses due by 11/18/2024. Evidentiary Hearing Conference set for 11/19/2024 at 03:00 PM in Courtroom 15A, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian.) (Signed by Judge Arun Subramanian on 11/18/2024) (lnl) (Entered: 11/18/2024) |
| 11/18/2024 | 72 | MEMORANDUM in Opposition by USA as to Sean Combs re 70 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 11/18/24 re: Request for Evidentiary Hearing .. (Attachments: # 1 Exhibit Ex. A - sealed)(Slavik, Mary) (Entered: 11/18/2024) |
| 11/18/2024 | 73 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 11/18/24 re: request to unshackle Mr. Combs in the courtroom . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 11/18/2024) |
| 11/19/2024 | 74 | MEMO ENDORSEMENT as to Sean Combs (1) granting 73 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 11/18/24 re: request to unshackle Mr. Combs in the courtroom. ENDORSEMENT: GRANTED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 73. (Signed by Judge Arun Subramanian on 11/19/2024) (ap) (Entered: 11/19/2024) |
| 11/19/2024 | 75 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo dated 11/19/24 re: Request for Hearing (Estevao, Anna) (Entered: 11/19/2024) |
| 11/19/2024 | | Minute Entry for proceedings held before Judge Arun Subramanian: Oral Argument as to Sean Combs held on 11/19/2024. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, and Anthony Ricco. AUSAs Christy Slavik, Meredith Foster, Madison Smyser, and Mitzi Steiner present. Court Reporter Devon Gerber present. Hearing held. The Court considered argument from both sides and directed the parties to make further submissions. Detention continued. (jbo) Modified on 11/25/2024 (ap). (Entered: 11/20/2024) |
| 11/20/2024 | 76 | ORDER as to Sean Combs: For the reasons stated at the hearing held on November 19, 2024, the Government (with the exception of the Filter Team) must immediately delete the photographed notes at issue pending the Court's ruling on whether they are covered by attorney-client privilege. The Government should confirm on or before November 21, 2024 that the notes have been deleted. Based on the Government's representation that the Filter Team has no involvement in either the grand jury investigation or this litigation, the Filter Team may retain copies of the photographed notes but may not provide them to anyone else. Briefing on defendant's application relating to the notes will follow this schedule: defendant's brief to be filed on December 4, 2024; the Government's response by December 9, 2024; and defendant's reply by December 11, 2024. The briefs should include citations to the best cases supporting or refuting the requested relief. Finally, defendant's reply brief on his renewed motion for bail at Dkt. 60 is now due on Thursday, November 21, 2024 at 12:00 PM. (Motions due by 12/4/2024. Responses due by 12/9/2024. Replies due by 12/11/2024. Reply on renewed Motion for Bail due by 11/21/2024 at 12:00PM) ) (Signed by Judge Arun Subramanian on 11/20/2024) (ap) (Entered: 11/20/2024) |
| 11/20/2024 | 77 | ORDER as to Sean Combs: In his November 19, 2024 letter to the Court (filed prior to the hearing that same day), defendant stated that "a government investigatortook photographs of several items," including "intact pages from two different legal pads" and ripped-out pages of other legal pads. Dkt. 75 at 1. The letter also described the legal pads in detail and argued that they were privileged in part because "[o]n top of his legal pads and notes, [defendant] has a folder marked 'legal,'" which "put anyone on notice that everything along with the folder marked 'legal' isattorney-client material[]." Id. at 12. At the November 19, 2024 hearing, defense counsel presented the Court with an intact legal pad with "Legal" written on the binding, stating that the "Legal" label on this and the |

| | | |
|---|---|---|
| | | other pads showed that they were clearly protected by attorney-client privilege and should not be in the Government's possession. The Court notes that the sealed exhibit to the Government's brief at Dkt. 72-1 includes photographs of two intact legal pads taken at the time of the BOP sweep. There is no writing on the binding of either pad. At the scheduled hearing on Friday, November 22, 2024, defense counsel should be prepared to give the Court further context on the "Legal" label that the Court was presented with at the November 19, 2024 hearing and to address why this label doesn't appear on the photographs in the Court's possession, and why it wasn't addressed in defendant's submission to the Court made a few hours before the November 19, 2024 hearing. (Signed by Judge Arun Subramanian on 11/20/2024) (ap) (Entered: 11/20/2024) |
| 11/21/2024 | 78 | LETTER MOTION addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated November 21, 2024 re: Extension of Page Limits . Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 11/21/2024) |
| 11/21/2024 | 79 | MEMO ENDORSEMENT as to Sean Combs (1) granting 78 LETTER MOTION addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated November 21, 2024 re: Extension of Page Limits. ENDORSEMENT: GRANTED. However, the parties should make every effort in the future to ask for relief of this kind in a timely fashion. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 78. (Signed by Judge Arun Subramanian on 11/21/2024) (ap) (Entered: 11/21/2024) |
| 11/21/2024 | 80 | REPLY MEMORANDUM OF LAW in Support as to Sean Combs re: 60 MOTION for Bond . . (Shapiro, Alexandra) (Entered: 11/21/2024) |
| 11/21/2024 | 81 | DECLARATION of Teny Geragos in Support as to Sean Combs re: 60 MOTION for Bond .. (Attachments: # 1 Exhibit B Under Seal, # 2 Exhibit C Under Seal, # 3 Exhibit D Under Seal)(Shapiro, Alexandra) (Entered: 11/21/2024) |
| 11/21/2024 | 82 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 11/21/24 re: Video Submitted as Exhibit D (Agnifilo, Marc) (Entered: 11/21/2024) |
| 11/22/2024 | 83 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated November 22, 2024 re: Letter Regarding United States v. Jeffries, 24 Cr. 423 Document filed by USA. (Steiner, Mitzi) (Entered: 11/22/2024) |
| 11/22/2024 | 84 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo dated November 22, 2024 re: In Further Support of Motion for Bond (Attachments: # 1 Exhibit A Under Seal)(Shapiro, Alexandra) (Entered: 11/22/2024) |
| 11/25/2024 | 85 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated November 25, 2024 re: In Further Support of Motion for Bond (Shapiro, Alexandra) (Entered: 11/25/2024) |
| 11/25/2024 | 86 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated November 25, 2024 re: Letter in Further Opposition for Defendant's Motion for Bond Document filed by USA. (Slavik, Mary) (Entered: 11/25/2024) |
| 11/25/2024 | | Minute Entry for proceedings held before Judge Arun Subramanian: Bond Hearing as to Sean Combs held on 11/25/2024. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, and Anthony Ricco. AUSAs Christy Slavik, Meredith Foster, and Mitzi Steiner present. Bail Hearing held. The Court considered argument from both sides and directed the parties to make further submissions. (Court Reporter Douglas Colavito and Rebecca Forman) (ap) Modified on 11/25/2024 (ap). (Entered: 11/25/2024) |

A-17

| 11/25/2024 | 87 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated November 25, 2024 re: Letter in Response to Dkt. 86 (Shapiro, Alexandra) (Entered: 11/25/2024) |
|---|---|---|
| 11/25/2024 | 88 | TRANSCRIPT of Proceedings as to Sean Combs re: Oral Argument held on 11/19/2024 before Judge Arun Subramanian. Court Reporter/Transcriber: Devon Gerber, (212) 805-0320, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/16/2024. Redacted Transcript Deadline set for 12/26/2024. Release of Transcript Restriction set for 2/24/2025. (McGuirk, Kelly) (Entered: 11/25/2024) |
| 11/25/2024 | 89 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Oral Argument proceeding held on 11/19/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 11/25/2024) |
| 11/26/2024 | 90 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo dated November 26, 2024 re: Letter in Response to Dkt. 86 (Agnifilo, Marc) (Entered: 11/26/2024) |
| 11/26/2024 | 91 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated November 26, 2024 re: Letter Regarding United States v. Boustani Document filed by USA. (Steiner, Mitzi) (Entered: 11/26/2024) |
| 11/27/2024 | 92 | ORDER as to Sean Combs. Defendant Sean Combs renewed his motion for bail on November 8, 2024. The Court held a hearing on November 22, 2024, and the parties filed supplemental letters on November 25 and 26, 2024. For the following reasons, Combs's motion is DENIED. The motion is denied. The Clerk of Court is respectfully directed to terminate Dkt. 60.(Signed by Judge Arun Subramanian on 11/27/24) (jw) (Entered: 11/27/2024) |
| 12/02/2024 | 93 | ORDER as to Sean Combs. In its November 1, 2024 letter to the Court, the Government noted that it did not submit an affidavit attesting that the Prosecution Team (i.e., the Government attorneys and agents involved in the grand jury process) was [not] the source of the information in the news articles discussed by the defendant but stated that it was "prepared to submit such an affidavit at the Court's request. Dkt. 56 at 3 n.1. The Government should submit this affidavit by Wednesday, December 4, 2024 (Signed by Judge Arun Subramanian on 12/2/24)(jw) (Entered: 12/02/2024) |
| 12/02/2024 | 94 | NOTICE OF ATTORNEY APPEARANCE Maurene Ryan Comey appearing for USA. (Comey, Maurene) (Entered: 12/02/2024) |
| 12/04/2024 | 95 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo dated December 4, 2024 re: Laptop Access (Estevao, Anna) (Entered: 12/04/2024) |
| 12/04/2024 | 96 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated December 4, 2024 re: Affidavit Document filed by USA. (Attachments: # 1 Affidavit in Support of Opposition Motion)(Steiner, Mitzi) (Entered: 12/04/2024) |
| 12/04/2024 | 97 | MOTION for Hearing, to Suppress, and Other Relief . Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 12/04/2024) |
| 12/04/2024 | 98 | MEMORANDUM in Support by Sean Combs re 97 MOTION for Hearing, to Suppress, and Other Relief .. (Shapiro, Alexandra) (Entered: 12/04/2024) |

A-18

| 12/05/2024 | 99 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated December 5, 2024 re: MDC laptop Document filed by USA. (Slavik, Mary) (Entered: 12/05/2024) |
|---|---|---|
| 12/05/2024 | 100 | LETTER MOTION addressed to Judge Arun Subramanian from Christy Slavik dated December 5, 2024 re: Adjournment Request . Document filed by USA as to Sean Combs. (Slavik, Mary) (Entered: 12/05/2024) |
| 12/05/2024 | 101 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo dated 12/5/24 re: Response to ECF 99 (Agnifilo, Marc) (Entered: 12/05/2024) |
| 12/05/2024 | 102 | LETTER REPLY TO RESPONSE to Motion by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 12/5/24 re 100 LETTER MOTION addressed to Judge Arun Subramanian from Christy Slavik dated December 5, 2024 re: Adjournment Request .. (Agnifilo, Marc) (Entered: 12/05/2024) |
| 12/06/2024 | 103 | MEMO ENDORSEMENT 100 LETTER MOTION as to Sean Combs (1)....ENDORSEMENT...GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 100 (Signed by Judge Arun Subramanian on 12/6/24) (jw) (Entered: 12/06/2024) |
| 12/06/2024 |  | Set/Reset Deadlines/Hearings as to Sean Combs: Defense reply due by 12/27/2024. Government opposition due by 12/20/2024. (jw) (Entered: 12/06/2024) |
| 12/06/2024 | 104 | NOTICE OF ATTORNEY APPEARANCE Olga I Zverovich appearing for USA. (Zverovich, Olga) (Entered: 12/06/2024) |
| 12/10/2024 | 105 | NOTICE OF ATTORNEY APPEARANCE Matthew Raffi Shahabian appearing for USA. (Shahabian, Matthew) (Entered: 12/10/2024) |
| 12/10/2024 | 106 | LETTER RESPONSE to Motion by USA as to Sean Combs addressed to Judge Arun Subramanian from AUSAs Zverovich/Shahabian dated 12/10/2024 re: 97 MOTION for Hearing, to Suppress, and Other Relief .. (Attachments: # 1 Exhibit A - Redacted Geragos Declarations)(Shahabian, Matthew) (Entered: 12/10/2024) |
| 12/11/2024 | 107 | LETTER REPLY TO RESPONSE to Motion by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated December 11, 2024 re 97 MOTION for Hearing, to Suppress, and Other Relief .. (Shapiro, Alexandra) (Entered: 12/11/2024) |
| 12/12/2024 | 108 | MEMO ENDORSEMENT as to Sean Combs on re: 106 LETTER RESPONSE to Motion by USA as to Sean Combs addressed to Judge Arun Subramanian from AUSAs Zverovich/Shahabian dated 12/10/2024 re: 97 MOTION for Hearing, to Suppress, and Other Relief. ENDORSEMENT: The Court understands the Filter Team's position and does not require any further action from the Filter Team on the privilege issues. (Signed by Judge Arun Subramanian on 12/12/2024)(ap) (Entered: 12/12/2024) |
| 12/12/2024 | 109 | ORDER as to Sean Combs: The Court is in receipt of Defendant's application regarding Discovery Laptop access and Defendant's attorney-visitation forms. Dkt. 95. Having reviewed the parties' submissions, the Court orders as follows: 1. The MDC is ordered not to turn over Defendants attorney-visitation forms to the Government. 2. The MDC is ordered to give Defendant access to the Discovery Laptop seven days per week from 8:00 AM to 3:30 PM. This can be in his units' visiting room or in his units VTC room. 3. The purpose of the Discovery Laptop is to review discovery, not to take or store notes. It is the Court's understanding that the laptop has been pre-loaded with discovery materials but does not allow any functionality beyond reviewing those materials. If Defendant wishes for broader access to the Discovery Laptop, his counsel should discuss the issue with the Government, which should consider any reasonable proposals in good faith and work with BOP counsel and MDC staff to effectuate them. If there are further disputes, the |

A-19

| | | Court will consider By Monday, December 16, 2024 at 12:00 PM, the parties should meet and confer and submit to the Court a joint letter listing the topics that they wish to discuss at the conference scheduled for December 18, 2024 at 2:00 PM. (Signed by Judge Arun Subramanian on 12/12/2024) (ap) Modified on 12/12/2024 (ap). (Entered: 12/12/2024) |
|---|---|---|
| 12/12/2024 | 110 | ORDER as to Sean Combs: By Monday, December 16, 2024 at 12:00 PM, the parties should meet and confer and submit to the Court a joint letter listing the topics that they wish to discuss at the conference scheduled for December 18, 2024 at 2:00 PM. (Signed by Judge Arun Subramanian on 12/12/2024) (ap) (Entered: 12/12/2024) |
| 12/12/2024 | 111 | TRANSCRIPT of Proceedings as to Sean Combs re: Conference held on 11/22/2024 before Judge Arun Subramanian. Court Reporter/Transcriber: Doug Colavito, (212) 805-0320, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2025. Redacted Transcript Deadline set for 1/13/2025. Release of Transcript Restriction set for 3/12/2025. (McGuirk, Kelly) (Entered: 12/12/2024) |
| 12/12/2024 | 112 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Conference proceeding held on 11/22/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2024) |
| 12/16/2024 | 113 | OPINION AND ORDER as to Sean Combs re: 30 MOTION for Hearing filed by Sean Combs. Defendant Sean Combs moves for discovery and an evidentiary hearing on alleged government leaks of case information (Dkt. 30). For the following reasons, the motion is DENIED. The Court is sensitive to Combs's concern about the publication of stories claiming to disclose inside information about this case from unnamed federal law enforcement source[s] who [are] involved in the investigation." Dkt. 49-1. The Court has already taken steps in this regard, see Dkt. 50, and it is open to tailored applications for relief as this case continues. The Court once again reminds the government and its agents that if specific information comes to light showing that they leaked prohibited information, action will be taken. And the Court reminds the public that whether the government can prove Combs's guilt in this case will turn on the evidence presented at trial, not in a trial by newspapers. Pennekamp v. Florida, 328 U.S. 331, 36163 (1946) (Frankfurter, J., concurring) ("Cases are too often tried in newspapers before they are tried in court, and the cast of characters in the newspaper trial too often differs greatly from the real persons who appear at the trial in court and who may have to suffer its distorted consequences."). The Clerk of Court is directed to terminate Dkt. 30. (Signed by Judge Arun Subramanian on 12/16/24)(jw) (Entered: 12/16/2024) |
| 12/16/2024 | 114 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated December 16, 2024 re: Joint Letter re December 18, 2024 Conference Document filed by USA. (Johnson, Emily) (Entered: 12/16/2024) |
| 12/16/2024 | 115 | ORDER as to Sean Combs. The conference scheduled for December 18, 2024 at 2:00 PM will be held in Courtroom 15A, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007. SO ORDERED. (Signed by Judge Arun Subramanian on 12/16/24)(jbo) (Entered: 12/16/2024) |
| 12/17/2024 | 116 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 12/17/24 re: Update to ECF 114 (Agnifilo, Marc) (Entered: 12/17/2024) |

A-20

| 12/18/2024 | | Minute Entry for proceedings held before Judge Arun Subramanian: Status Conference as to Sean Combs held on 12/18/2024. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, and Anthony Ricco. AUSAs Emily Johnson, Madison Smyser, Christy Slavik, and Mitzi Steiner present. Special Agent Sean Quinn present. Court Reporter Alena Lynch present. Status Conference held. Pretrial conference scheduled for March 17, 2025, at 11:00 AM. By consent of the parties, the time between December 18, 2024 and March 17, 2025 is excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), in the interest of justice. Detention continued. (Pretrial Conference set for 3/17/2025 at 11:00 AM before Judge Arun Subramanian.) (jbo); Modified on 4/22/2025 (bw). (Entered: 12/18/2024) |
|---|---|---|
| 12/20/2024 | 117 | MEMORANDUM in Opposition by USA as to Sean Combs re 97 MOTION for Hearing, to Suppress, and Other Relief .. (Slavik, Mary) (Entered: 12/20/2024) |
| 12/23/2024 | 118 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 12/23/24 re: 117 Memorandum in Opposition to Motion, 97 MOTION for Hearing, to Suppress, and Other Relief . re: Request for Brief Extension of Time to File . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 12/23/2024) |
| 12/26/2024 | 119 | MEMO ENDORSEMENT 118 LETTER MOTION as to Sean Combs (1)....ENDORSEMENT...GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 118. (Signed by Judge Arun Subramanian on 12/26/24) (jw) (Entered: 12/26/2024) |
| 12/26/2024 | | Set/Reset Deadlines/Hearings as to Sean Combs: Replies due by 12/30/2024 (jw) (Entered: 12/26/2024) |
| 12/30/2024 | 120 | REPLY MEMORANDUM OF LAW in Support as to Sean Combs re: 97 MOTION for Hearing, to Suppress, and Other Relief . . (Shapiro, Alexandra) (Entered: 12/30/2024) |
| 01/02/2025 | 121 | TRANSCRIPT of Proceedings as to Sean Combs re: Conference held on 12/18/2024 before Judge Arun Subramanian. Court Reporter/Transcriber: Alena Lynch, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/23/2025. Redacted Transcript Deadline set for 2/3/2025. Release of Transcript Restriction set for 4/2/2025. (McGuirk, Kelly) (Entered: 01/02/2025) |
| 01/02/2025 | 122 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Conference proceeding held on 12/18/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 01/02/2025) |
| 01/03/2025 | 123 | ORDER as to Sean Combs: Combs moved for a hearing and other relief related a search of his possessions during a BOP sweep of the MDC, alleging Fourth and Sixth Amendment violations. Dkt. 97. The Government responded that the search was conducted pursuant to legitimate BOP objectives and that the investigator operated separately from the prosecution team. Dkt. 117. In evaluating Combs's motion, the Court would find the following additional materials helpful: 1) an affidavit from the prosecution team stating its understanding of the chain of events leading up to, during, and following the MDC sweep, including Investigator-1's role; and 2) an affidavit from Investigator-1 describing his role, the circumstances under which he participated in the MDC sweep, and the extent of his communications with the prosecution team, including any communications in advance of the MDC sweep or about the MDC sweep. These |

| | | |
|---|---|---|
| | | affidavits should be furnished to the Court by January 17, 2025. By the same deadline, the prosecution team should produce its written communications with Investigator-1, if any, for the Court's in camera review. (Signed by Judge Arun Subramanian on 1/3/2025) (ap) (Entered: 01/03/2025) |
| 01/03/2025 | 124 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated January 3, 2025 re: Joint Letter re: Scheduling Document filed by USA. (Slavik, Mary) (Entered: 01/03/2025) |
| 01/08/2025 | 125 | ORDER as to Sean Combs. The Court is in receipt of the parties' letter on the pretrial schedule. Dkt. 124. The following schedule will apply in advance of the start of trial on May 5, 2025. Please see Order attached. ( Pretrial Motions due by 2/17/2025., Replies due by 3/10/2025., Oppositions due by 3/3/2025) (Signed by Judge Arun Subramanian on 1/8/25)(jw) (Entered: 01/08/2025) |
| 01/14/2025 | 127 | LETTER MOTION addressed to Judge Arun Subramanian from USA dated January 14, 2024 re: Violation of Protective Order . Document filed by USA as to Sean Combs. (Johnson, Emily) (Entered: 01/14/2025) |
| 01/14/2025 | | ***DELETED DOCUMENT. Deleted document number 126 MOTION, as to Sean Combs. The document was incorrectly filed in this case. (ap)** (Entered: 01/15/2025) |
| 01/15/2025 | 128 | MEMO ENDORSEMENT as to Sean Combs (1) granting 127 LETTER MOTION addressed to Judge Arun Subramanian from USA dated January 14, 2024 re: Violation of Protective Order. ENDORSEMENT: GRANTED. The Clerk of Court is respectfully directed to strike the motion at Dkt. 126 from the public docket and terminate the motion at Dkt. 127. Defense counsel should refile the motion with the appropriate redactions. If defense counsel refiles the motion, the Government may respond by January 28, 2025. (Signed by Judge Arun Subramanian on 1/15/2025) (ap) (Entered: 01/15/2025) |
| 01/15/2025 | 129 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated January 14, 2025 re: Motion to Amend Protective Order . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 01/15/2025) |
| 01/15/2025 | 130 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated January 15, 2025 re: 127 LETTER MOTION addressed to Judge Arun Subramanian from USA dated January 14, 2024 re: Violation of Protective Order . re: Response to Govt's Letter Requesting Redactions 127 . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 01/15/2025) |
| 01/17/2025 | 131 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated January 17, 2025 re: Declarations Document filed by USA. (Attachments: # 1 Affidavit Prosecution Team Declaration, # 2 Affidavit Investigator-1 Declaration) (Slavik, Mary) (Entered: 01/17/2025) |
| 01/19/2025 | 132 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated January 19, 2025 re: 131 Letter, re: Permission to Respond to ECF 131 . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 01/19/2025) |
| 01/21/2025 | 133 | NOTICE OF ATTORNEY APPEARANCE: Jason Anthony Driscoll appearing for Sean Combs. Appearance Type: Retained. (Driscoll, Jason) (Entered: 01/21/2025) |
| 01/21/2025 | 134 | ENDORSED LETTER as to Sean Combs addressed to Judge Arun Subramanian from Attorney Marc Agnifilo dated January 19, 2025 re: We have reviewed the Government's January 17, 2025, submission enclosing affidavits from AUSA Christy Slavik and Investigator-1. We respectfully request permission to respond to these affidavits, in further support of Combs' Motion for a Hearing (Dkt. 70), by Friday, January 24, 2025. Thank you for your consideration. ENDORSEMENT: GRANTED. The Clerk of Court is |

| | | |
|---|---|---|
| | | respectfully directed to terminate the motion at ECF No. 132. SO ORDERED. ( Responses due by 1/24/2025. )(Signed by Judge Arun Subramanian on 1/21/2025) (bw) (Entered: 01/21/2025) |
| 01/24/2025 | 135 | LETTER RESPONSE in Support of Motion by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated January 24, 2025 re: 97 MOTION for Hearing, to Suppress, and Other Relief .. (Shapiro, Alexandra) (Entered: 01/24/2025) |
| 01/27/2025 | 136 | RESPONSE to Motion by USA as to Sean Combs re: 97 MOTION for Hearing, to Suppress, and Other Relief .. (Slavik, Mary) (Entered: 01/27/2025) |
| 01/28/2025 | 137 | ORDER as to Sean Combs. The Court is in receipt of the Government's December 20, 2024 ex parte letter concerning certain investigative steps it took based on Combs's notes. Given the content of the letter, it is unclear why it cannot be shared with the defense in some form. By January 31, 2025, the Government should either (1) provide defendant with a letter describing---at the level of detail that is appropriate---what steps were taken; or (2) if no disclosure can be made, provide an explanation to the Court as to why. SO ORDERED. (Signed by Judge Arun Subramanian on 1/28/2025) (bw) (Entered: 01/28/2025) |
| 01/28/2025 | 138 | LETTER RESPONSE in Opposition by USA as to Sean Combs addressed to Judge Arun Subramanian re: 129 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated January 14, 2025 re: Motion to Amend Protective Order .. (Foster, Meredith) (Entered: 01/28/2025) |
| 01/29/2025 | 139 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated January 29, 2025 re: 129 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated January 14, 2025 re: Motion to Amend Protective Order ., 138 Response in Opposition to Motion, re: Request to File Reply . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 01/29/2025) |
| 01/29/2025 | 140 | MEMORANDUM ENDORSEMENT 129 LETTER MOTION as to Sean Combs. Defendants motion to amend the protective order is DENIED without prejudice. While the Government objects to handing the videos over, they provide several options for defendant to consider that would permit the defense to view the videos, access the information they are looking for, and even allow them to manipulate the videos as they see fit. To the extent these options are insufficient, the defense may propose other options to the Government. It doesnt appear that the defense did this before raising the issue with the Court. The parties should have these discussions, and then if they really reach an impasse, the defense can come back to the Court. If that happens, they should be prepared to clearly articulate why they need possession of the videos despite the options furnished by the Government. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 129. SO ORDERED (Signed by Judge Arun Subramanian on 1/29/25) (jw) (Entered: 01/29/2025) |
| 01/29/2025 | 141 | MEMORANDUM ENDORSEMENT 130 LETTER MOTION as to Sean Combs (1). The protective order is clear that the defense shall not share any AEO Material or the content of the AEO Material with any other persons. Dkt. 26 8 (emphasis added). The defense's original letter, which the Court ordered stricken from the public docket, did not redact numerous descriptions of the content of the videos at issue, which have been designated AEO pursuant to the protective order. These descriptions are also appropriately sealed under the test in Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006). But to the extent certain of the Governments proposed redactions dont relate to the content of AEO material, the defenses original letter can be refiled with those specific sentences unredacted.The Clerk of Court is respectfully directed to terminate the motion at Dkt. 130.(Signed by Judge Arun Subramanian on 1/29/2025) (jw) (Entered: 01/29/2025) |

A-23

| 01/30/2025 | 142 | MEMO ENDORSEMENT 139 LETTER MOTION as to Sean Combs....ENDORSEMENT...This letter motion was filed shortly before the Court's memorandum endorsement at Dkt. 140 issued, denying the motion at Dkt. 129 without prejudice. So this motion is now moot. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 139 (Signed by Judge Arun Subramanian on 1/30/25) (jw) (Entered: 01/30/2025) |
|---|---|---|
| 01/30/2025 | 143 | (S1) SUPERSEDING UNREDACTED INDICTMENT FILED as to Sean Combs. (jm) **(Not for Public view pursuant to Standing Order of the court, 24-mc-184.)** (Entered: 01/30/2025) |
| 01/30/2025 | 144 | (S1) SUPERSEDING REDACTED INDICTMENT FILED as to Sean Combs (1) count(s) 1s, 2s, 3s. (jm) (Entered: 01/30/2025) |
| 01/30/2025 | 145 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated January 30, 2025 re: S1 Indictment Document filed by USA. (Slavik, Mary) (Entered: 01/30/2025) |
| 01/31/2025 | 146 | USCA MANDATE ON INTERLOCUTORY APPEAL (certified copy) as to Sean Combs re: 21 Notice of Appeal - Interlocutory. USCA Case Number 24-2606. Appellant Sean Combs moves for voluntary dismissal of this appeal. IT IS HEREBY ORDERED that the motion to withdraw is GRANTED. The motion forbail (docket entry 16) is deemed WITHDRAWN. Catherine OHagan Wolfe, Clerk USCA. Issued As Mandate: 12/18/2024. (tp) (Entered: 01/31/2025) |
| 01/31/2025 | | Transmission of USCA Mandate/Order to the District Judge re: 146 USCA Mandate - Interlocutory Appeal. (tp) (Entered: 01/31/2025) |
| 02/11/2025 | 147 | ORDER as to Sean Combs. The pretrial conference scheduled for March 17, 2025 will now be held on March 14, 2025 at 11:00 AM in Courtroom 15A, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007. At the conference, the Court will also arraign Mr. Combs on the superseding indictment. SO ORDERED. ( Pretrial Conference set for 3/14/2025 at 11:00 AM in Courtroom 15A, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian. ) (Signed by Judge Arun Subramanian on 2/11/2025) (bw) (Entered: 02/11/2025) |
| 02/12/2025 | 148 | OPINION AND ORDER as to Sean Combs. In connection with the Bureau of Prisons' October 28, 2024 to November 1, 2024 sweep of the Metropolitan Detention Center, a BOP investigator (Investigator-1) photographed nineteen pages of Combs's notes and sent them to the Government's filter team. The filter team consists of AUSAs who aren't involved in the investigation or prosecution of this case. The filter team redacted the notes and sent them to the case team. The case team consists of the agents and AUSAs investigating and prosecuting Combs. In November, the Government included some of what it received from the filter team in its opposition to Combs's bail application, Dkt. 69, and Combs objected, arguing that those notes contained privileged information and were obtained in violation of Combs's constitutional rights, Dkt. 70. The Court held an emergency hearing at which the Government indicated that it would not rely on the notes in opposing the bail application. See Dkt. 88 at 24:1325:1. The Court ordered the case team to get rid of the notes in its possession, which it did. Dkt. 76. Combs has now filed a motion for an evidentiary hearing and other relief, arguing that the seizure of his notes violated the Fourth Amendment, and that the Government intentionally obtained his privileged communications in violation of the Sixth Amendment. Dkts. 97, 98. In response to the motion, the Government argues that there were no violations but also that it won't offer as evidence the notes or any fruits of the notes. Dkt. 117 at 8. In a December 20, 2024 ex parte letter (the contents of which were later shared with the defense), the Government outlined certain investigative steps taken upon receiving the notes, but it |

| | | |
|---|---|---|
| | | represented that it "will not offer the evidence obtained pursuant to these investigative steps in the prosecution of the defendant," and that it "intends to produce the evidence [obtained from these steps] to the defendant, to the extent it has not already."...[*** See this Opinion And Order ***]... The Clerk of Court is directed to terminate Dkt. 97. SO ORDERED. (Signed by Judge Arun Subramanian on 2/12/2025) (bw) (Entered: 02/12/2025) |
| 02/12/2025 | 149 | SEALED DOCUMENT placed in vault. (jus) (Entered: 02/12/2025) |
| 02/13/2025 | 150 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated February 13, 2025 re: one-day extension to file pretrial motions . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 02/13/2025) |
| 02/14/2025 | 151 | ENDORSED LETTER as to Sean Combs addressed to Judge Arun Subramanian from Attorney Marc Agnifilo dated December 23, 2024 re: We write on behalf of Sean Combs, with the consent of the government, to request a one day extension to file pretrial motions. The pretrial motions are currently due Monday, February 17, 2025. We request a one day adjournment to Tuesday, February 18, 2025.... We consent to an additional day for the Government to file their response, which is currently due March 3, 2025, to be due March 4, 2025. ENDORSEMENT: GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 150. SO ORDERED. ( Motions due by 2/18/2025. Responses due by 3/4/2025. )(Signed by Judge Arun Subramanian on 2/14/2025) (bw) (Entered: 02/14/2025) |
| 02/18/2025 | 152 | MOTION to Dismiss *Count Three of the Superseding Indictment*. Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 02/18/2025) |
| 02/18/2025 | 153 | MEMORANDUM in Support by Sean Combs re 152 MOTION to Dismiss *Count Three of the Superseding Indictment*.. (Shapiro, Alexandra) (Entered: 02/18/2025) |
| 02/18/2025 | 154 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated February 18, 2025 re: Ruling on ECF 36 (Agnifilo, Marc) (Entered: 02/18/2025) |
| 02/18/2025 | 155 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated February 18, 2025 re: Proposed Addendum to Protective Order Document filed by USA. (Attachments: # 1 Exhibit Addendum to Protective Order)(Johnson, Emily) (Entered: 02/18/2025) |
| 02/20/2025 | 156 | ADDENDUM TO PROTECTIVE ORDER as to Sean Combs...regarding procedures to be followed that shall govern the handling of confidential material.... (Signed by Judge Arun Subramanian on 2/20/2025)(jw) (Entered: 02/20/2025) |
| 02/21/2025 | 157 | MOTION for Anthony L. Ricco to Withdraw as Attorney . Document filed by Sean Combs. (Attachments: # 1 Affidavit In support of Notice of Motion for Withdrawal as Counsel)(Ricco, Anthony) (Entered: 02/21/2025) |
| 02/21/2025 | 158 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian re: Response to Letter (ECF 154) re Ruling on ECF 36 Document filed by USA. (Foster, Meredith) (Entered: 02/21/2025) |
| 02/23/2025 | 159 | MOTION to Suppress . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 02/23/2025) |
| 02/23/2025 | 160 | MEMORANDUM in Support by Sean Combs re 159 MOTION to Suppress .. *REDACTED* (Agnifilo, Marc) (Entered: 02/23/2025) |
| 02/23/2025 | 161 | AFFIRMATION of Teny Geragos in Support as to Sean Combs re 159 MOTION to Suppress .. *REDACTED* (Agnifilo, Marc) (Entered: 02/23/2025) |

A-25

| | | |
|---|---|---|
| 02/24/2025 | 162 | MEMO ENDORSEMENT as to Sean Combs (1) granting 157 MOTION for Anthony L. Ricco to Withdraw as Attorney. ENDORSEMENT: GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 157 and terminate Mr. Ricco from the docket. Anthony L. Ricco withdrawn from case. (Signed by Judge Arun Subramanian on 2/24/2025) (ap) (Entered: 02/24/2025) |
| 02/27/2025 | 163 | SEALED DOCUMENT placed in vault. (jus) (Entered: 02/27/2025) |
| 03/03/2025 | 164 | LETTER MOTION addressed to Judge Arun Subramanian from Mitzi Steiner dated March 3, 2025 re: Permission to File Oversized Brief . Document filed by USA as to Sean Combs. (Steiner, Mitzi) (Entered: 03/03/2025) |
| 03/04/2025 | 165 | MEMO ENDORSEMENT as to Sean Combs (1) granting 164 LETTER MOTION addressed to Judge Arun Subramanian from Mitzi Steiner dated March 3, 2025 re: Permission to File Oversized Brief. ENDORSEMENT: GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 164. (Signed by Judge Arun Subramanian on 3/4/2025) (ap) (Entered: 03/04/2025) |
| 03/04/2025 | 166 | MEMORANDUM in Opposition by USA as to Sean Combs re 152 MOTION to Dismiss *Count Three of the Superseding Indictment*.. (Comey, Maurene) (Entered: 03/04/2025) |
| 03/06/2025 | 167 | ORDER 36 LETTER MOTION as to Sean Combs. Combs asks for the identities of the anonymized victims and witnesses identified in the Government's RICO enterprise letter, reprising and expanding his October 2024 motion for a bill of particulars for victim names. The Government doesnt oppose disclosure of this information; it makes clear that it plans to turn this information over to Combs on March 21, 2025, the date on the schedule for the Governments disclosure of 3500 material under an Attorney Eyes Only designation. Because this dispute has narrowed to whether disclosure should happen now or in a couple weeks, the interests that would normally counsel against immediate disclosure have abated. The Government has the information, doesnt identify any logistical issues in turning it over earlier, and in fact plans to do so shortly, minimizing any concerns about witness tampering and the like based on advance disclosure. On the other hand, Combs emphasizes that there is a tremendous volume of information that has and will be produced, and every day counts for preparation with trial two months away. For these reasons, and balancing the parties' interests, the Court grants the motion and orders the Government to provide the requested information, under an Attorney Eyes Only designation, on or before March 10, 2025. The Clerk of Court is respectfully requested to terminate Dkt. 36. (Signed by Judge Arun Subramanian on 3/6/25) (jw) (Entered: 03/06/2025) |
| 03/06/2025 | | Set/Reset Deadlines/Hearings as to Sean Combs: Responses due by 3/10/2025 (jw) (Entered: 03/06/2025) |
| 03/06/2025 | 168 | (S2) SUPERSEDING UNREDACTED INDICTMENT FILED as to Sean Combs. (jm) **(Not for Public view pursuant to Standing Order of the court, 24-mc-184.)** (Entered: 03/06/2025) |
| 03/06/2025 | 169 | (S2) SUPERSEDING REDACTED INDICTMENT FILED as to Sean Combs (1) count(s) 1ss, 2ss, 3ss. (jm) (Entered: 03/06/2025) |
| 03/06/2025 | 170 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated March 6, 2025 re: S2 Indictment Document filed by USA. (Slavik, Mary) (Entered: 03/06/2025) |
| 03/06/2025 | 171 | MEMORANDUM in Opposition by USA as to Sean Combs re 159 MOTION to Suppress .. (Johnson, Emily) (Entered: 03/06/2025) |

A-26

| 03/07/2025 | 172 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated March 7, 2025 re: Extension of Page Limit (Shapiro, Alexandra) (Entered: 03/07/2025) |
|---|---|---|
| 03/10/2025 | 173 | ORDER as to Sean Combs. The pretrial conference scheduled for March 14, 2025 will now take place at 2:00 PM in Courtroom 26A of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007. By Thursday, March 13, 2025 at 12:00 PM, the parties should meet and confer and file a joint letter on any matters that need to be addressed at the conference other than the March 6, 2025 superseding indictment. SO ORDERED. ( Joint Letter due by 3/13/2025 12:00 PM. Pretrial Conference set for 3/14/2025 at 02:00 PM in Courtroom 26A, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian. )(Signed by Judge Arun Subramanian on 3/10/2025) (bw) (Entered: 03/10/2025) |
| 03/10/2025 | 174 | ENDORSED LETTER as to Sean Combs addressed to Judge Arun Subramanian from Attorney Alexandra A.E. Shapiro dated March 7, 2025 re: Pursuant to the Court's Individual Rules, we submit this letter to respectfully request permission to file an oversized 16-page reply brief in support of Sean Comb's motion to suppress (Dkt. 160), which is due March 10, 2025. We previously consented to the government's request to file an oversized opposition totaling 35 pages, which the Court granted. (Dkt. 165). The government has no objection to this request. ENDORSEMENT: GRANTED. SO ORDERED. (Signed by Judge Arun Subramanian on 3/10/2025) (bw) (Entered: 03/10/2025) |
| 03/13/2025 | 175 | SEALED DOCUMENT placed in vault. (jus) (Entered: 03/13/2025) |
| 03/13/2025 | 176 | SEALED DOCUMENT placed in vault. (jus) (Entered: 03/13/2025) |
| 03/13/2025 | 177 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated March 13, 2025 re: Joint Letter Regarding March 14, 2025 Conference Document filed by USA. (Steiner, Mitzi) (Entered: 03/13/2025) |
| 03/14/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Arraignment as to Sean Combs (1) Count 1ss,2ss,3ss held on 3/14/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, and Jason Driscoll. AUSAs Mitzi Steiner, Maurene Comey, Emily Johnson, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporter Pam Utter present. Arraignment held on the superseding indictment S2 24-cr-542 (AS). The defendant pleaded Not Guilty to all counts charged in the indictment. Conference held. By consent of the parties, the time between March 14, 2025 and May 5, 2025 is excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), in the interest of justice. Detention continued. (bw); Modified on 4/22/2025 (bw). (Entered: 03/17/2025) |
| 03/14/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Plea entered by Sean Combs (1) Count 1ss,2ss,3ss - Not Guilty. (bw) (Entered: 03/17/2025) |
| 03/14/2025 | | ORAL ORDER as to Sean Combs. Time excluded from 3/14/2025 until 5/5/2025. (bw) (Entered: 03/17/2025) |
| 03/17/2025 | 178 | LETTER MOTION addressed to Judge Arun Subramanian from Anna Estevao dated 03/17/2025 re: Extension of Time . Document filed by Sean Combs. (Estevao, Anna) (Entered: 03/17/2025) |
| 03/17/2025 | 179 | LETTER MOTION addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated March 17, 2025 re: Oversized Brief Request . Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 03/17/2025) |

| 03/18/2025 | 180 | ORDER as to Sean Combs: For the reasons stated at the conference held on March 14, 2025, the following schedule will apply in the leadup to trial. Pretrial conference on April 25, 2025 at 11:00 AM. Jury questionnaires: Proposed jury questionnaires must be submitted to the Court on April 11, 2025.The parties should meet and confer to eliminate any disputes as to the content of the questionnaires. Once finalized, the Government should print 600 copies of the jury questionnaires and send them to chambers by April 25, 2025. Jury questionnaires will be administered by the Jury Office on April 28, 2025, April 29, 2025, and April 30, 2025 (if necessary). Following the completion of jury questionnaires, the Government will copy and distribute the completed questionnaires to the defense. After reviewing the completed questionnaires, the parties should meet and confer and submit four lists to the Court by May 1, 2025 at 5:00 PM: Prospective jurors that both sides agree should proceed. Prospective jurors that both sides agree should be excused. Prospective jurors that the defense (but not the Government) believes should be excused. Prospective jurors that the Government (but not the defense) believes should be excused. If necessary, the Court will hold a conference on May 2, 2025 at 9:00 AM to resolve any disputes. Voir dire will begin on May 5, 2025. This will be a sequestered voir dire in the presence of the parties, with public access. Jurors will be addressed by number only. Peremptory strikes will be exercised on May 9, 2025. Opening statements will begin on May 12, 2025. SO ORDERED. (Pretrial Conference set for 4/25/2025 at 11:00 AM before Judge Arun Subramanian. Status Conference set for 5/2/2025 at 09:00 AM before Judge Arun Subramanian.) (Signed by Judge Arun Subramanian on 3/18/2025) (lnl) (Entered: 03/18/2025) |
| 03/18/2025 | 181 | ORDER as to Sean Combs: For the reasons stated at the conference held on March 14, 2025: Defense discovery is due 10 days after the Government's witness and exhibit lists are shared, and continuing thereafter. The deadline for the Government's witness and exhibits lists is April 14, 2025. There will be one set of Rule 413 motions. The defense motion is due on March 19,2025, the Government's response is due on March 26, 2025, and the defense's reply is due on March 28, 2025. By March 17, 2025, the Government should have furnished to the defense a list disclosing the identities of individuals listed in its 404(b)/413 notice. Any potential Rule 412 motions must be made by March 28, 2025. SO ORDERED. (Signed by Judge Arun Subramanian on 3/18/2025) (lnl) (Entered: 03/18/2025) |
| 03/18/2025 | 182 | TRANSCRIPT of Proceedings as to Sean Combs re: Conference held on 3/14/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Pamela Utter, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/8/2025. Redacted Transcript Deadline set for 4/18/2025. Release of Transcript Restriction set for 6/16/2025. (McGuirk, Kelly) (Entered: 03/18/2025) |
| 03/18/2025 | 183 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Conference proceeding held on 3/14/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 03/18/2025) |
| 03/18/2025 | 184 | MEMO ENDORSEMENT as to Sean Combs (1) granting 179 LETTER MOTION addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated March 17, 2025 re: Oversized Brief Request. ENDORSEMENT: GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 179. SO ORDERED. (Signed by Judge Arun Subramanian on 3/18/2025) (lnl) (Entered: 03/18/2025) |

A-28

| 03/18/2025 | 185 | MEMO ENDORSEMENT as to Sean Combs (1) granting 178 LETTER MOTION addressed to Judge Arun Subramanian from Anna Estevao dated 03/17/2025 re: Extension of Time. ENDORSEMENT: GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 178. SO ORDERED. (Signed by Judge Arun Subramanian on 3/18/2025) (lnl) (Entered: 03/18/2025) |
|---|---|---|
| 03/19/2025 | 186 | REPLY MEMORANDUM OF LAW in Support as to Sean Combs re: 152 MOTION to Dismiss *Count Three of the Superseding Indictment*. . (Shapiro, Alexandra) (Entered: 03/19/2025) |
| 03/19/2025 | 187 | REPLY MEMORANDUM OF LAW in Support as to Sean Combs re: 159 MOTION to Suppress . . (Shapiro, Alexandra) (Entered: 03/19/2025) |
| 03/19/2025 | 188 | DECLARATION of Teny Geragos in Support as to Sean Combs re: 159 MOTION to Suppress .. (Attachments: # 1 Exhibit 34 - Under Seal, # 2 Exhibit 35 - Under Seal, # 3 Exhibit 36 - Under Seal, # 4 Exhibit 37 - Under Seal)(Shapiro, Alexandra) (Entered: 03/19/2025) |
| 03/21/2025 | 189 | LETTER MOTION addressed to Judge Arun Subramanian dated 3/21/25 re: Pretrial Schedule re: Expert Notice and Victim Pseudonyms . Document filed by USA as to Sean Combs. (Smyser, Madison) (Entered: 03/21/2025) |
| 03/24/2025 | 190 | SEALED DOCUMENT placed in vault. (jus) (Entered: 03/24/2025) |
| 03/25/2025 | 191 | MEMO ENDORSEMENT 189 LETTER MOTION as to Sean Combs (1)...ENDORSEMENT...The Government's requested relief as to expert notices is GRANTED. The Court will address the issue of pseudonyms when the Government's motion is fully briefed. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 189. (Signed by Judge Arun Subramanian on 3/25/25) (jw) (Entered: 03/25/2025) |
| 03/25/2025 | 192 | ORDER as to Sean Combs. The Government's brief opposing Combss motion to suppress states that "the affiant learned of most of the allegedly omitted information after the Affidavits were submitted." Dkt. 171 at 25 (emphasis in original). Combs responds that the Court should not accept the [G]overnment's repeated claims of ignorance without some supporting affidavit or other evidentiary foundation. Dkt. 187 at 10. By Friday, April 4, 2025, the Government should submit an affidavit from the affiant stating what (if any) of the allegedly-omitted information they were aware of at the time the warrant applications at issue were made. (Government Responses due by 4/4/2025) (Signed by Judge Arun Subramanian on 3/25/25)(jw) (Entered: 03/25/2025) |
| 03/26/2025 | 193 | SEALED DOCUMENT placed in vault. (jus) (Entered: 03/26/2025) |
| 03/27/2025 | 194 | LETTER MOTION addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated March 27, 2025 re: Request for Extension of Time . Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 03/27/2025) |
| 03/27/2025 | 195 | MEMO ENDORSEMENT 194 LETTER MOTION as to Sean Combs (1)....ENDORSEMENT...Granted. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 194 (Signed by Judge Arun Subramanian on 3/27/25) (jw) (Entered: 03/27/2025) |
| 03/28/2025 | 196 | JOINT LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 3/28/25 re: FRE 412 and Jury (Agnifilo, Marc) (Entered: 03/28/2025) |
| 03/31/2025 | 197 | LETTER MOTION addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated March 31, 2025 re: Oversized Brief Request . Document filed by Sean Combs. |

A-29

| | | (Shapiro, Alexandra) (Entered: 03/31/2025) |
|---|---|---|
| 03/31/2025 | 198 | MEMO ENDORSEMENT 197 LETTER MOTION as to Sean Combs (1)....ENDORSEMENT...GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 197. (Signed by Judge Arun Subramanian on 3/31/25) (jw) (Entered: 03/31/2025) |
| 03/31/2025 | 199 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 3/20/25 re: in further support of motion to suppress (ECF 159 ) (Attachments: # 1 Exhibit A - filed under seal)(Agnifilo, Marc) (Entered: 03/31/2025) |
| 03/31/2025 | 200 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 3/26/25 re: in further support of motion to suppress (ECF 159 ) (Attachments: # 1 Exhibit 38 - filed under seal, # 2 Exhibit 39 - filed under seal, # 3 Exhibit 40 - filed under seal, # 4 Exhibit 41 - filed under seal)(Agnifilo, Marc) (Entered: 03/31/2025) |
| 03/31/2025 | 201 | LETTER MOTION addressed to Judge Arun Subramanian from USA dated March 31, 2025 re: One Day Adjournment of MIL Deadlines . Document filed by USA as to Sean Combs. (Johnson, Emily) (Entered: 03/31/2025) |
| 04/01/2025 | 202 | MEMO ENDORSEMENT 201 LETTER MOTION as to Sean Combs (1)....ENDORSEMENT...Granted. The Clerk of Court is respectfully directed to terminate the motion at ECF No 201. (Signed by Judge Arun Subramanian on 4/1/2025) (jw) (Entered: 04/01/2025) |
| 04/02/2025 | 203 | MOTION in Limine *To Preclude Summary Charts Evidence and For Timely Disclosure*. Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 04/02/2025) |
| 04/02/2025 | 204 | MEMORANDUM in Support by Sean Combs re 203 MOTION in Limine *To Preclude Summary Charts Evidence and For Timely Disclosure*.. (Shapiro, Alexandra) (Entered: 04/02/2025) |
| 04/02/2025 | 205 | MOTION in Limine *To Preclude Testimony of Dr. Dawn Hughes*. Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 04/02/2025) |
| 04/02/2025 | 206 | MEMORANDUM in Support by Sean Combs re 205 MOTION in Limine *To Preclude Testimony of Dr. Dawn Hughes*.. (Shapiro, Alexandra) (Entered: 04/02/2025) |
| 04/02/2025 | 207 | DECLARATION of Alexandra A.E. Shapiro in Support as to Sean Combs re: 205 MOTION in Limine *To Preclude Testimony of Dr. Dawn Hughes*.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Shapiro, Alexandra) (Entered: 04/02/2025) |
| 04/03/2025 | 208 | (S3) SUPERSEDING UNREDACTED INDICTMENT FILED as to Sean Combs. (jm) **(Not for Public view pursuant to Standing Order of the court, 24-mc-184.)** (Entered: 04/04/2025) |
| 04/03/2025 | 209 | (S3) SUPERSEDING REDACTED INDICTMENT FILED as to Sean Combs (1) count(s) 1sss, 2sss, 3sss, 4sss, 5sss. (jm) (Entered: 04/04/2025) |
| 04/04/2025 | 210 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated April 4, 2025 re: S3 Indictment Document filed by USA. (Johnson, Emily) (Entered: 04/04/2025) |
| 04/04/2025 | 211 | MOTION in Limine *to Protect the Identities of Certain Victim-Witnesses*. Document filed by USA as to Sean Combs. (Comey, Maurene) (Entered: 04/04/2025) |
| 04/07/2025 | 212 | MOTION to Exclude *Rule 413 and 404(b) Evidence*. Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 04/07/2025) |

| | | |
|---|---|---|
| 04/07/2025 | 213 | MEMORANDUM in Support by Sean Combs re 212 MOTION to Exclude *Rule 413 and 404(b) Evidence*.. (Shapiro, Alexandra) (Entered: 04/07/2025) |
| 04/07/2025 | 214 | DECLARATION of Teny Geragos in Support as to Sean Combs re: 212 MOTION to Exclude *Rule 413 and 404(b) Evidence*.. (Attachments: # 1 Exhibit A-G Filed Under Seal)(Shapiro, Alexandra) (Entered: 04/07/2025) |
| 04/07/2025 | 215 | MEMORANDUM in Opposition by USA as to Sean Combs re 212 MOTION to Exclude *Rule 413 and 404(b) Evidence*.. (Attachments: # 1 Exhibit A (Filed Under Seal))(Steiner, Mitzi) (Entered: 04/07/2025) |
| 04/07/2025 | 216 | REPLY MEMORANDUM OF LAW in Support as to Sean Combs re: 212 MOTION to Exclude *Rule 413 and 404(b) Evidence*. . (Shapiro, Alexandra) (Entered: 04/07/2025) |
| 04/07/2025 | 217 | DECLARATION of Teny Geragos in Support as to Sean Combs re: 212 MOTION to Exclude *Rule 413 and 404(b) Evidence*.. (Attachments: # 1 Exhibit H-K Filed Under Seal)(Shapiro, Alexandra) (Entered: 04/07/2025) |
| 04/08/2025 | 218 | MOTION to Quash . Document filed by Warner Brothers Discovery, Inc. as to Sean Combs. (Sullivan, Thomas) (Entered: 04/08/2025) |
| 04/08/2025 | 219 | MEMORANDUM in Support by Warner Brothers Discovery, Inc. as to Sean Combs re 218 MOTION to Quash .. (Sullivan, Thomas) (Entered: 04/08/2025) |
| 04/08/2025 | 220 | DECLARATION of Thomas B. Sullivan in Support by Warner Brothers Discovery, Inc. as to Sean Combs re: 218 MOTION to Quash .. (Attachments: # 1 Exhibit A - Subpoena, # 2 Exhibit B - Email Correspondence, # 3 Exhibit C - United States v. Grant opinion) (Sullivan, Thomas) (Entered: 04/08/2025) |
| 04/08/2025 | 221 | RULE 12.4 CORPORATE DISCLOSURE STATEMENT. by Warner Brothers Discovery, Inc. as to Sean Combs. (Sullivan, Thomas) (Entered: 04/08/2025) |
| 04/08/2025 | 222 | ORDER as to Sean Combs. Warner Brothers Discovery, Inc. filed a motion to quash a subpoena served on it by defendant Combs. Dkt. 218. Any response should be filed by April 10, 2025 at 12:00 PM. SO ORDERED. (Signed by Judge Arun Subramanian on 4/8/2025) (bw) (Entered: 04/08/2025) |
| 04/09/2025 | 223 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated April 9, 2025 re: WBD Motion to Quash Document filed by USA. (Slavik, Mary) (Entered: 04/09/2025) |
| 04/11/2025 | 224 | PROPOSED EXAMINATION OF JURORS by Sean Combs. (Attachments: # 1 Exhibit Defense Proposed Questionnaire)(Agnifilo, Marc) (Entered: 04/11/2025) |
| 04/11/2025 | 225 | PROPOSED EXAMINATION OF JURORS by USA as to Sean Combs. (Attachments: # 1 Exhibit Government Proposed Questionnaire)(Comey, Maurene) (Entered: 04/11/2025) |
| 04/14/2025 | 226 | ORDER as to Sean Combs: The defendant will be arraigned on the April 3, 2025 superseding indictment (S3) on April 14, 2025 at 2:00 PM in Courtroom 26B of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York. SO ORDERED. (Arraignment set for 4/14/2025 at 02:00 PM in Courtroom 26B, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian) (Signed by Judge Arun Subramanian on 4/14/2025) (lnl) (Entered: 04/14/2025) |
| 04/14/2025 | 227 | ORDER as to Sean Combs: The Court will hold a pretrial conference on April 18, 2025 at 11:00 AM in Courtroom 26B of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York. SO ORDERED. (Pretrial Conference set for 4/18/2025 at 11:00 AM in Courtroom 26B, 500 Pearl Street, New York, NY 10007 before Judge Arun |

| | | |
|---|---|---|
| | | Subramanian) (Signed by Judge Arun Subramanian on 4/18/2025) (lnl) (Entered: 04/14/2025) |
| 04/14/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Arraignment as to Sean Combs (1) Count 1sss,2sss,3sss,4sss,5sss held on 4/14/2025. Plea entered by Sean Combs Not Guilty. Defendant Sean Combs present with retained counsel Marc Agnifilo, Esq. and Teny Geragos, Esq. AUSAs Mitzi Steiner, Maurene Comey, Emily Johnson, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporter Lisa O'Brien present. Arraignment held on the superseding indictment S3 24-cr-542 (AS). The defendant pleaded Not Guilty to all counts charged in the indictment. Conference held. Detention continued. (jbo); Modified on 4/22/2025 (bw). (Entered: 04/16/2025) |
| 04/15/2025 | 228 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Brian Steel to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-30936713. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Sean Combs. (Attachments: # 1 Exhibit Exhibit A: Certificate of Good Standing, # 2 Exhibit Exhibit B: Sworn Statement, # 3 Proposed Order Proposed Order Granting Pro Hac Vice Application)(Steel, Brian) Modified on 4/16/2025 (rju). (Entered: 04/15/2025) |
| 04/16/2025 | 229 | MEMORANDUM in Opposition by Sean Combs re 218 MOTION to Quash .. (Estevao, Anna) (Entered: 04/16/2025) |
| 04/16/2025 | 230 | DECLARATION of Anna Estevao in Opposition as to Sean Combs re: 218 MOTION to Quash .. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Estevao, Anna) (Entered: 04/16/2025) |
| 04/16/2025 | 231 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated April 14, 2025 re: status of discovery relating to alleged Victim-4 *[REDACTED]*. Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 04/16/2025) |
| 04/16/2025 | 232 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from AUSAs Maurene Comey, Meredith Foster, Emily Johnson, Christy Slavik, Madison Smyser, and Mitzi Steiner dated April 14, 2025 re: Response to Defense Discovery Motion dated April 14, 2025 Document filed by USA. (Comey, Maurene) (Entered: 04/16/2025) |
| 04/16/2025 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice as to Sean Combs to RE-FILE Document No. 228 MOTION for Brian Steel to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-30936713. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): Your sworn statement must be labeled as an affidavit.;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (rju)** (Entered: 04/16/2025) |
| 04/16/2025 | 233 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated April 16, 2025 re: adjournment request [redacted] . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 04/16/2025) |
| 04/16/2025 | 234 | MOTION for Brian Steel to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Sean Combs. (Attachments: # 1 Exhibit Exhibit A: Certificate of Good Standing, # 2 Affidavit Exhibit B: Affidavit, # 3 Proposed Order Proposed Order)(Steel, Brian) (Entered: 04/16/2025) |
| 04/16/2025 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 234 MOTION for Brian Steel to Appear Pro Hac Vice . Motion and supporting** |

| | | |
|---|---|---|
| | | **papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (rju)** (Entered: 04/16/2025) |
| 04/16/2025 | 235 | MEMO ENDORSEMENT as to Sean Combs (1) granting 233 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated April 16, 2025 re: adjournment request [redacted]. ENDORSEMENT: Pending this Friday's conference, the parties should proceed on the current schedule, including making all required disclosures. As for the evidentiary issue pertaining to Victim-4, which was first brought to the Court's attention Monday, the Court will also address that issue at Friday's conference. If Combs has a renewed application for that evidence that addresses some or all of the Government's objections, the Court will promptly consider it. SO ORDERED. (Signed by Judge Arun Subramanian on 4/16/2025) (lnl) (Entered: 04/16/2025) |
| 04/16/2025 | 236 | MOTION to Preclude *evidence related to alleged Victim-3 [redacted]*. Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 04/16/2025) |
| 04/16/2025 | 237 | MEMORANDUM in Support by Sean Combs re 236 MOTION to Preclude *evidence related to alleged Victim-3 [redacted]*.. (Agnifilo, Marc) (Entered: 04/16/2025) |
| 04/16/2025 | 238 | DECLARATION of Teny Geragos in Support as to Sean Combs re: 236 MOTION to Preclude *evidence related to alleged Victim-3 [redacted]*.. (Agnifilo, Marc) (Entered: 04/16/2025) |
| 04/16/2025 | 239 | MOTION in Limine *to preclude 404(b) evidence*. Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 04/16/2025) |
| 04/16/2025 | 240 | MEMORANDUM in Support by Sean Combs re 239 MOTION in Limine *to preclude 404(b) evidence*.. *[REDACTED]* (Agnifilo, Marc) (Entered: 04/16/2025) |
| 04/16/2025 | 241 | DECLARATION of Teny Geragos in Support as to Sean Combs re: 239 MOTION in Limine *to preclude 404(b) evidence*.. (Agnifilo, Marc) (Entered: 04/16/2025) |
| 04/17/2025 | 242 | MOTION to Exclude *available video evidence from March 5, 2016*. Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 04/17/2025) |
| 04/17/2025 | 243 | MEMORANDUM in Support by Sean Combs re 242 MOTION to Exclude *available video evidence from March 5, 2016*.. *[REDACTED]* (Agnifilo, Marc) (Entered: 04/17/2025) |
| 04/17/2025 | 244 | LETTER RESPONSE in Opposition by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated April 16, 2025 re: 233 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated April 16, 2025 re: adjournment request [redacted] .. (Johnson, Emily) (Entered: 04/17/2025) |
| 04/17/2025 | 245 | DECLARATION of Anna Estevao in Support as to Sean Combs re: 242 MOTION to Exclude *available video evidence from March 5, 2016*.. (Attachments: # 1 Exhibit A - UNDER SEAL, # 2 Exhibit B - UNDER SEAL, # 3 Exhibit C - UNDER SEAL, # 4 Exhibit D - UNDER SEAL, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G - UNDER SEAL, # 8 Exhibit H, # 9 Exhibit I - UNDER SEAL)(Agnifilo, Marc) (Entered: 04/17/2025) |
| 04/17/2025 | 246 | AFFIDAVIT of Conor McCourt in Support as to Sean Combs re 242 MOTION to Exclude *available video evidence from March 5, 2016*.. (Agnifilo, Marc) (Entered: 04/17/2025) |
| 04/17/2025 | 247 | ORDER FOR ADMISSION PRO HAC VICEgranting 234 Motion for Brian Steel to Appear Pro Hac Vice as to Sean Combs (1). (Signed by Judge Arun Subramanian on 4/17/2025) (lnl) (Entered: 04/17/2025) |

| 04/17/2025 | 248 | RESPONSE in Opposition by Sean Combs re: 211 MOTION in Limine *to Protect the Identities of Certain Victim-Witnesses.. [REDACTED]* (Agnifilo, Marc) (Entered: 04/17/2025) |
|---|---|---|
| 04/17/2025 | 249 | AFFIRMATION of Teny Geragos in Opposition as to Sean Combs re 211 MOTION in Limine *to Protect the Identities of Certain Victim-Witnesses.. [REDACTED]* (Agnifilo, Marc) (Entered: 04/17/2025) |
| 04/17/2025 | 250 | LETTER RESPONSE to Motion by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated April 17, 2025 re: 211 MOTION in Limine *to Protect the Identities of Certain Victim-Witnesses.. [REDACTED]* (Agnifilo, Marc) (Entered: 04/17/2025) |
| 04/17/2025 | 251 | TRANSCRIPT of Proceedings as to Sean Combs re: Arraignment held on 4/14/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Lisa O'Brien, (212) 805-0320, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/8/2025. Redacted Transcript Deadline set for 5/19/2025. Release of Transcript Restriction set for 7/16/2025. (McGuirk, Kelly) (Entered: 04/17/2025) |
| 04/17/2025 | 252 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Arraignment proceeding held on 4/14/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 04/17/2025) |
| 04/17/2025 | 253 | MOTION to Quash *Subpoena Duces Tecum*. (Wigdor, Douglas) Modified on 4/17/2025. (Entered: 04/17/2025) |
| 04/17/2025 | 254 | MEMORANDUM in Support re 253 MOTION to Quash *Subpoena Duces Tecum*.. (Wigdor, Douglas) Modified on 4/17/2025. (Entered: 04/17/2025) |
| 04/17/2025 | 255 | LETTER RESPONSE in Support of Motion by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated April 15, 2025 re: 212 MOTION to Exclude *Rule 413 and 404(b) Evidence*.. (Shapiro, Alexandra) (Entered: 04/17/2025) |
| 04/17/2025 | 256 | MEMORANDUM in Opposition by Sean Combs re 253 MOTION to Quash *Subpoena Duces Tecum*.. (Estevao, Anna) (Entered: 04/17/2025) |
| 04/17/2025 | 257 | DECLARATION of Anna Estevao in Opposition as to Sean Combs re: 253 MOTION to Quash *Subpoena Duces Tecum*.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Estevao, Anna) (Entered: 04/17/2025) |
| 04/17/2025 | 258 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from AUSAs Maurene Comey, Meredith Foster, Emily Johnson, Christy Slavik, Madison Smyser, and Mitzi Steiner dated April 17, 2025 re: Response to Defense April 15, 2025 Letter re 413 and 404(b) Evidence Document filed by USA. (Comey, Maurene) (Entered: 04/17/2025) |
| 04/17/2025 | 259 | RESPONSE in Support of Motion by USA as to Sean Combs re: 253 MOTION to Quash *Subpoena Duces Tecum*.. (Johnson, Emily) (Entered: 04/17/2025) |
| 04/17/2025 | 260 | MOTION in Limine . Document filed by USA as to Sean Combs. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Comey, Maurene) (Entered: 04/17/2025) |
| 04/18/2025 | 261 | ORDER as to Sean Combs: Given the Court's ruling on the use of victim pseudonyms at trial, the parties are ordered to meet and confer to decide what pseudonym each alleged |

| | | victim will use. SO ORDERED. (Signed by Judge Arun Subramanian on 4/18/2025) (lnl) (Entered: 04/18/2025) |
|---|---|---|
| 04/18/2025 | 262 | ORDER as to Sean Combs: For the reasons stated at the conference held on April 18, 2025: Combs's request for an adjournment is DENIED. Combs's motion to exclude Rule 413/404(b) evidence is DENIED as to Victim-5 and otherwise GRANTED. Victim-1's motion to quash is DENIED as to prior drafts of the memoir that was provided to the Government and otherwise GRANTED. The prior drafts should be produced by April 25, 2025. Warner Brothers Discovery's motion to quash is DENIED as to outtakes of interviews with Individual-A and Individual-B. The parties have reached agreement on all other aspects of the subpoena. The outtakes should be produced by April 25, 2025. Combs's motion for a Rule 17(c) subpoena for Victim-4's documents is DENIED. The Government's motion for Victim-2 to proceed at trial using a pseudonym is GRANTED as unopposed. The Government's motion for Victim-3 and Victim-4 to proceed at trial using pseudonyms is GRANTED. The Clerk of Court is respectfully directed to terminate the motions at Dkts. 211, 212, 218, 231, and 253. SO ORDERED. (Signed by Judge Arun Subramanian on 4/18/2025) (lnl) (Entered: 04/18/2025) |
| 04/18/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Oral Argument as to Sean Combs held on 4/18/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Acevedo, Jason Driscoll, and Brian Steel. AUSAs Christy Slavik, Mitzi Steiner, Maurene Comey, Emily Johnson, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporter Sharonda Jones present. Hearing held on the pending motions. Detention continued. (jbo); Modified on 4/22/2025 (bw). (Entered: 04/18/2025) |
| 04/22/2025 | 263 | TRANSCRIPT of Proceedings as to Sean Combs re: Oral Argument held on 4/18/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Sharonda Jones, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/13/2025. Redacted Transcript Deadline set for 5/23/2025. Release of Transcript Restriction set for 7/21/2025. (McGuirk, Kelly) (Entered: 04/22/2025) |
| 04/22/2025 | 264 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Oral Argument proceeding held on 4/18/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 04/22/2025) |
| 04/22/2025 | 265 | RESPONSE in Opposition by Sean Combs re: 260 MOTION in Limine .. *[REDACTED]* (Attachments: # 1 Exhibit A - filed under seal)(Agnifilo, Marc) (Entered: 04/22/2025) |
| 04/22/2025 | 266 | LETTER RESPONSE in Opposition by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 4/21/25 re: 211 MOTION in Limine *to Protect the Identities of Certain Victim-Witnesses.. [REDACTED]* (Agnifilo, Marc) (Entered: 04/22/2025) |
| 04/24/2025 | 267 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated April 24, 2025 re: Proposed Testimony of Government Expert Witness Document filed by USA. (Steiner, Mitzi) (Entered: 04/24/2025) |
| 04/24/2025 | 268 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated April 23, 2025 re: Response to Dkt. 267 (Shapiro, Alexandra) (Entered: 04/24/2025) |

| 04/24/2025 | 269 | ORDER as to Sean Combs: The conference scheduled for Friday, April 25, 2025 will now take place in Courtroom 26A of 500 Pearl Street, New York, NY 10007. SO ORDERED. (Signed by Judge Arun Subramanian on 4/24/2025) (lnl) (Entered: 04/24/2025) |
|---|---|---|
| 04/25/2025 | 270 | MEMORANDUM in Opposition by USA as to Sean Combs re 203 MOTION in Limine *To Preclude Summary Charts Evidence and For Timely Disclosure.*, 205 MOTION in Limine *To Preclude Testimony of Dr. Dawn Hughes.*, 212 MOTION to Exclude *Rule 413 and 404(b) Evidence.*, 242 MOTION to Exclude *available video evidence from March 5, 2016..* (Attachments: # 1 Exhibit Under Seal, # 2 Exhibit Piazza Affidavit)(Smyser, Madison) (Entered: 04/25/2025) |
| 04/25/2025 | 271 | REPLY MEMORANDUM OF LAW in Support as to Sean Combs re: 205 MOTION in Limine *To Preclude Testimony of Dr. Dawn Hughes.*, 203 MOTION in Limine *To Preclude Summary Charts Evidence and For Timely Disclosure.*, 212 MOTION to Exclude *Rule 413 and 404(b) Evidence.*, 242 MOTION to Exclude *available video evidence from March 5, 2016.* . (Shapiro, Alexandra) (Entered: 04/25/2025) |
| 04/25/2025 | 272 | Proposed Voir Dire Questions by Sean Combs. (Agnifilo, Marc) (Entered: 04/25/2025) |
| 04/25/2025 | 273 | Request To Charge by Sean Combs. (Shapiro, Alexandra) (Entered: 04/25/2025) |
| 04/25/2025 | 274 | PROPOSED EXAMINATION OF JURORS by USA as to Sean Combs. (Comey, Maurene) (Entered: 04/25/2025) |
| 04/25/2025 | 275 | Request To Charge by USA as to Sean Combs. (Steiner, Mitzi) (Entered: 04/26/2025) |
| 04/25/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Pretrial Conference as to Sean Combs held on 4/25/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao and Jason Driscoll. AUSAs Christy Slavik, Mitzi Steiner, Maurene Comey, Emily Johnson, Madison Smyser, and Meredith Foster present. Court Reporter Carol Kertes present. Pretrial conference held on April 25, 2025. Detention continued. (bw) (Entered: 05/08/2025) |
| 04/27/2025 | 276 | MOTION in Limine *to Preclude Testimony of Dr. Elie Aoun*. Document filed by USA as to Sean Combs. (Attachments: # 1 Exhibit Ex. A - filed under seal)(Slavik, Mary) (Entered: 04/27/2025) |
| 04/28/2025 | 277 | MOTION in Limine *to Preclude Testimony of Conor McCourt, Proposed Forensic Video Expert*. Document filed by USA as to Sean Combs. (Attachments: # 1 Exhibit March 18, 2025 Defense Letter, # 2 Exhibit April 3, 2025 Defense Letter, # 3 Exhibit McCourt Affidavit)(Smyser, Madison) (Entered: 04/28/2025) |
| 04/28/2025 | 278 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 279 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 280 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 281 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 282 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 283 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 284 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 285 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 286 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 287 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |

A-36

| | | |
|---|---|---|
| 04/28/2025 | 288 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 289 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 290 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 291 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 292 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 293 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 294 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/28/2025) |
| 04/28/2025 | 295 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated April 23, 2025 re: Government's Supplemental Enterprise Letter (Shapiro, Alexandra) (Entered: 04/28/2025) |
| 04/28/2025 | 296 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated April 25, 2025 re: Response to Def. April 23, 2025 Letter (ECF 295) Document filed by USA. (Johnson, Emily) (Entered: 04/28/2025) |
| 04/28/2025 | 297 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated April 28, 2025 re: Response to Government Letter ECF 267 re Dr. Hughes (Shapiro, Alexandra) (Entered: 04/28/2025) |
| 04/28/2025 | 298 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 4/28/2025 re: racketeering acts not voted by the Grand Jury (Agnifilo, Marc) (Entered: 04/28/2025) |
| 04/29/2025 | 299 | LETTER MOTION addressed to Judge Arun Subramanian from Anna Estevao dated 4/28/2025 re: Request for Relief Under Local Rule 23.1 . Document filed by Sean Combs. (Estevao, Anna) (Entered: 04/29/2025) |
| 04/29/2025 | 300 | ORDER as to Sean Combs. The pretrial conference to resolve any disputes over juror questionnaire responses will be held on May 1, 2025 at 1:00 PM in Courtroom 26A of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York. SO ORDERED. ( Pretrial Conference set for 5/1/2025 at 01:00 PM in Courtroom 26A, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian. )(Signed by Judge Arun Subramanian on 4/29/2025) (bw) (Entered: 04/29/2025) |
| 04/29/2025 | 301 | ORDER as to Sean Combs. The pending motions in limine are resolved in accordance with the Court's stated reasons on the record at the April 25, 2025 conference. To the extent that the Court reserved decision on certain motions, the Court will address the evidentiary issues raised in the context of the review of proposed exhibits and testimony. The Clerk of Court is respectfully directed to terminate the motions at Dkts. 203, 205, 239, 242, and 260. SO ORDERED. (Signed by Judge Arun Subramanian on 4/29/2025) (bw) (Entered: 04/29/2025) |
| 04/29/2025 | 302 | SUPPLEMENTAL LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian re: motion in limine to preclude certain good act evidence Document filed by USA. (Foster, Meredith) (Entered: 04/29/2025) |
| 04/29/2025 | 303 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated April 29, 2025 re: Victim-3 Pseudonym Document filed by USA. (Slavik, Mary) (Entered: 04/29/2025) |
| 04/29/2025 | 304 | TRANSCRIPT of Proceedings as to Sean Combs re: Conference held on 4/25/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Carol Ganley, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the |

| | | Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/20/2025. Redacted Transcript Deadline set for 5/30/2025. Release of Transcript Restriction set for 7/28/2025. (McGuirk, Kelly) (Entered: 04/29/2025) |
|---|---|---|
| 04/29/2025 | 305 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Conference proceeding held on 4/25/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 04/29/2025) |
| 04/29/2025 | 306 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated April 29, 2025 re: Response to Government's Supplemental Letter [Dkt. 302] (Shapiro, Alexandra) (Entered: 04/29/2025) |
| 04/30/2025 | 307 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 4/30/2025 re: trial clothing (Attachments: # 1 Proposed Order re Trial Clothing) (Agnifilo, Marc) (Entered: 04/30/2025) |
| 04/30/2025 | 308 | JOINT LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 4/30/2025 re: proposed voir dire requests (ECF 272 and 274 ) (Agnifilo, Marc) (Entered: 04/30/2025) |
| 04/30/2025 | 309 | ORDER as to Sean Combs. Upon the application of Teny R. Geragos, attorney for Defendant Sean Combs: IT IS HEREBY ORDERED THAT, the defendant Sean Combs, Inmate # 37452-054, will be permitted to receive non-prison clothing at the MDC to wear for his trial scheduled to begin on May 5, 2025. He is permitted to have up to five button down shirts, up to five pairs of pants, up to five sweaters, up to five pairs of socks, and up to two pairs of shoes without laces to wear to court. (Signed by Judge Arun Subramanian on 4/30/2025) (bw) (Entered: 04/30/2025) |
| 04/30/2025 | 310 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated April 30, 2025 re: Response to Defendant's April 28, 2025 Letter (ECF 298) Document filed by USA. (Johnson, Emily) (Entered: 04/30/2025) |
| 04/30/2025 | 311 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian re: Reply to April 29 Response to Government's Supplemental Letter Document filed by USA. (Foster, Meredith) (Entered: 05/01/2025) |
| 05/02/2025 | 312 | NOTICE OF ATTORNEY APPEARANCE: Xavier Robert Donaldson appearing for Sean Combs. Appearance Type: Retained. *Xavier R. Donaldson* (Donaldson, Xavier) (Entered: 05/02/2025) |
| 05/02/2025 | 313 | ORDER as to Sean Combs. Voir dire will begin on Monday, May 5, 2025. Counsel for both parties should report to Courtroom 26A of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York at 8:30 AM on Monday. SO ORDERED. ( Voir dire set for 5/5/2025 at 08:30 AM in Courtroom 26A, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian. )(Signed by Judge Arun Subramanian on 5/2/2025) (bw) (Entered: 05/02/2025) |
| 05/02/2025 | 314 | NOTICE of Change of Address as to Sean Combs. New Address: Harris Trzaskoma LLP, 156 West 56th Street, Suite 2004, New York, NY, USA 10019, 212.970.6465. (Estevao, Anna) (Entered: 05/02/2025) |
| 05/05/2025 | 315 | Juror Questionaire as to Sean Combs. (lnl) (Entered: 05/05/2025) |

| 05/05/2025 | 316 | Voir Dire Prospective Juror List as to Sean Combs. (lnl) (Entered: 05/05/2025) |
|---|---|---|
| 05/05/2025 | 317 | TRANSCRIPT of Proceedings as to Sean Combs re: Conference held on 5/1/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Sharonda Jones, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/27/2025. Redacted Transcript Deadline set for 6/5/2025. Release of Transcript Restriction set for 8/4/2025. (McGuirk, Kelly) (Entered: 05/05/2025) |
| 05/05/2025 | 318 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Conference proceeding held on 5/1/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 05/05/2025) |
| 05/05/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Voir Dire held on 5/5/2025 as to Sean Combs. Defendant Sean Combs present with retained counsel. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Jury selection began. (Court Reporter Lisa Franko and Devon Gerber) (ap) (Entered: 06/04/2025) |
| 05/06/2025 | 319 | LETTER MOTION addressed to Judge Arun Subramanian from Christy Slavik dated May 6, 2025 re: Local Rule 23.1 . Document filed by USA as to Sean Combs. (Slavik, Mary) (Entered: 05/06/2025) |
| 05/06/2025 | 320 | NOTICE OF ATTORNEY APPEARANCE: Nicole Westmoreland appearing for Sean Combs. Appearance Type: Retained. (Westmoreland, Nicole) (Entered: 05/06/2025) |
| 05/06/2025 | 321 | ORDER as to Sean Combs: The motion at Dkt. 236 is DENIED as moot given that the Government no longer intends to introduce the evidence at issue. The motions at Dkts. 276 and 277 are resolved in accordance with the Court's stated reasons on the record on May 5, 2025. Both motions are GRANTED in part and DENIED in part. The Clerk of Court is respectfully directed to terminate the motions at Dkts. 236, 276, and 277. SO ORDERED. (Signed by Judge Arun Subramanian on 5/6/2025) (lnl) (Entered: 05/06/2025) |
| 05/06/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/6/2025. Defendant Sean Combs present with retained counsel. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Jury selection continued. (Court Reporter Lisa Franko and Devon Gerber) (ap) (Entered: 06/04/2025) |
| 05/07/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/7/2025. Defendant Sean Combs present with retained counsel. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Jury selection continued. (Court Reporter Steven Greenblum and Devon Gerber) (ap) (Entered: 06/04/2025) |
| 05/08/2025 | 322 | MEMO ENDORSEMENT as to Sean Combs (1) on 319 LETTER MOTION addressed to Judge Arun Subramanian from Christy Slavik dated May 6, 2025 re: Local Rule 23.1. ENDORSEMENT: The Court addressed this issue on the record this week, and reminds all parties, and Mr. Geragos, of their obligations under Rule 23.1. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 319. SO ORDERED. (Signed by Judge Arun Subramanian on 3/8/2025) (lnl) (Entered: 05/08/2025) |

| 05/08/2025 | 323 | MEMO ENDORSEMENT as to Sean Combs (1) on 299 LETTER MOTION addressed to Judge Arun Subramanian from Anna Estevao dated 4/28/2025 re: Request for Relief Under Local Rule 23.1. ENDORSEMENT: The Court addressed this motion at the conference on May 1, 2025. It also advised counsel to submit authorities supporting the requested relief, if further relief is requested. No such authorities were supplied. If any additional concerns arise, either party can make a tailored request for relief. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 299. SO ORDERED. (Signed by Judge Arun Subramanian on 5/8/2025) (lnl) (Entered: 05/08/2025) |
|---|---|---|
| 05/08/2025 | 324 | ORDER as to Sean Combs: The Court will hold a hearing on May 9, 2025 at 9:00 AM in Courtroom 26A, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007 for the parties to exercise their peremptory strikes. If the parties have any remaining issues that need to be resolved before the start of trial, they should try their best to raise them by May 8, 2025 at 2:00 PM. SO ORDERED. (Status Conference set for 5/9/2025 at 09:00 AM in Courtroom 26A, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian) (Signed by Judge Arun Subramanian on 3/8/2025) (lnl) (Entered: 05/08/2025) |
| 05/08/2025 | | **\*\*\*DELETED DOCUMENT. Deleted document number 325. ORDER, as to Sean Combs. The document was incorrectly filed in this case. [\*\*\* Note: Already docketed as Doc.# 324. \*\*\*] (bw)** (Entered: 05/08/2025) |
| 05/09/2025 | 325 | OPINION AND ORDER as to Sean Combs. Defendant Sean Combs has moved to dismiss counts three and five of the superseding indictment, which charge him with violating 18 U.S.C. § 2421(a) by transporting Victim-1, Victim-2, and commercial sex workers in interstate and foreign commerce with the intent that they engage in prostitution.(See Footnote 1 on this Opinion And Order). Combs argues that these counts should be dismissed because they reflect "a clear case of selective prosecution," and that § 2421 "has been invidiously deployed against a prominent black man." Dkt. 153 at 2, 8. Combs's motion is DENIED....[\*\*\* See this OPINION AND ORDER \*\*\*]... Having failed to "show some evidence of both discriminatory effect and discriminatory intent," see Bass, 536 U.S. at 863, further discovery on these issues is unwarranted. The motion to dismiss is denied. SO ORDERED. (Signed by Judge Arun Subramanian on 5/9/2025) (bw) (Entered: 05/09/2025) |
| 05/09/2025 | 326 | OPINION AND ORDER as to Sean Combs. Defendant Sean Combs moves to suppress evidence the Government obtained pursuant to four 2024 warrants: a January 2024 warrant to search Combs's iCloud accounts, a March 2024 warrant to search Combs's Los Angeles residence, a March 2024 warrant to search Combs's Miami residence, and a March 2024 warrant to search Combs's person and two cell phones. Dkt. 159; Dkt. 160 at 2. Combs claims there are two grounds for suppression. First, he argues that the Government's warrant applications were "intentionally misleading," which "at a minimum[] requires a Franks hearing." Dkt. 160 at 1 (citing Franks v. Delaware, 438 U.S. 154, 15556 (1978)). Second, he says that the warrants were "unconstitutional general warrants." Id. at 2. For the following reasons, the motion to suppress is DENIED....[\*\*\* See this OPINION AND ORDER \*\*\*]... CONCLUSION. Combs's motion to suppress is DENIED. The Clerk of Court is respectfully directed to terminate Dkt. 159. SO ORDERED. (Signed by Judge Arun Subramanian on 5/9/2025) (bw) (Entered: 05/09/2025) |
| 05/09/2025 | 377 | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/9/2025. Defendant Sean Combs present with retained counsel. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Conference held in connection with jury selection. (Court Reporter Stevesubn Greenblum and Devon Gerber) (ap) (Entered: 06/04/2025) |

A-40

| 05/12/2025 | 327 | LETTER MOTION addressed to Judge Arun Subramanian from Robert Balin dated May 12, 2025 re: Request for Public/Press Access to Video Exhibits Shown at Trial. Document filed by Interested News Organizations . Document filed by Warner Brothers Discovery, Inc. as to Sean Combs. (Balin, Robert) (Entered: 05/12/2025) |
|---|---|---|
| 05/12/2025 | 328 | LETTER RESPONSE in Opposition by Victim 1 as to Sean Combs addressed to Judge Arun Subramanian from Douglas H. Wigdor dated May 12, 2025 re: 327 LETTER MOTION addressed to Judge Arun Subramanian from Robert Balin dated May 12, 2025 re: Request for Public/Press Access to Video Exhibits Shown at Trial. Document filed by Interested News Organizations .. (Wigdor, Douglas) (Entered: 05/12/2025) |
| 05/12/2025 |  | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/12/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury selection completed. The Court impaneled twelve jurors and six alternates. Jury trial began. Opening statements held. Testimony of Israel Florez began and concluded. Testimony of Daniel Phillip began. (Court Reporter isa Franko and George Malinowski) (ap) (Entered: 06/04/2025) |
| 05/13/2025 | 329 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 4/15/25 re: Defense Request for Victim-4 Rule 17 Subpoena Document filed by USA. (Smyser, Madison) (Entered: 05/13/2025) |
| 05/13/2025 | 330 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 4/17/25 re: Gov't Opposition to Defense Request for Victim-4 Rule 17 Subpoena Document filed by USA. (Smyser, Madison) (Entered: 05/13/2025) |
| 05/13/2025 | 331 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 4/23/25 re: Request for Victim-4 Pseudonym Document filed by USA. (Attachments: # 1 Exhibit Victim-4 Counsel Declaration)(Smyser, Madison) (Entered: 05/13/2025) |
| 05/13/2025 | 332 | ORDER as to Sean Combs: The Court is in receipt of a motion to quash the subpoena issued to Clayton Howard. That motion and Combs's response to the motion will be docketed after the parties meet and confer over potential redactions, no later than May 16, 2025. Also by May 16, 2025, Howard should provide the subpoenaed materials to the Court for in camera review. (Signed by Judge Arun Subramanian on 5/13/2025) (ap) (Entered: 05/13/2025) |
| 05/13/2025 | 333 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from AUSAs Maurene Comey, Meredith Foster, Emily Johnson, Christy Slavik, Madison Smyser, and Mitzi Steiner dated May 13, 2025 re: Opposition to Defense Request to Limit Witness Communication with Counsel Document filed by USA. (Comey, Maurene) (Entered: 05/13/2025) |
| 05/13/2025 | 334 | LETTER by Victim 1 as to Sean Combs addressed to Judge Arun Subramanian from Douglas H. Wigdor dated May 13, 2025 re: Opposition to Defense Request to Limit Witness Communication with Counsel Document filed by Victim 1. (Wigdor, Douglas) (Entered: 05/13/2025) |
| 05/13/2025 | 335 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 13, 2025 re: Response to Dkts. 333 and 334 (Shapiro, Alexandra) (Entered: 05/13/2025) |
| 05/13/2025 |  | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/13/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, |

| | | |
|---|---|---|
| | | Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Daniel Phillip concluded. Testimony of Cassandra Ventura began. (Court Reporter Lisa Franko and George Malinowski) (ap) (Entered: 06/04/2025) |
| 05/14/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/14/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Cassandra Ventura continued. (Court Reporter Lisa Franko and George Malinowski) (ap) (Entered: 06/04/2025) |
| 05/15/2025 | 336 | NOTICE of Press application to docket and unseal the Government's and defense's communications to Chambers on evidentiary and other issues as to Sean Combs (Lee, Matthew) (Entered: 05/15/2025) |
| 05/15/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian:Jury Trial as to Sean Combs held on 5/15/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Cassandra Ventura continued. (Court Reporter teven Greenblum and George Malinowski) (ap) (Entered: 06/04/2025) |
| 05/16/2025 | 337 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from AUSAs Maurene Comey, Meredith Foster, Emily Johnson, Christy Slavik, Madison Smyser, Mitzi Steiner dated May 16, 2025 re: Federal Rule of Evidence 611 Document filed by USA. (Comey, Maurene) (Entered: 05/16/2025) |
| 05/16/2025 | 338 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 12, 2025 re: Opposition to Clayton Howard's Motion to Quash (Attachments: # 1 Exhibit A)(Shapiro, Alexandra) (Entered: 05/16/2025) |
| 05/16/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/16/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Cassandra Ventura concluded. Testimony of Yasin Binda began and concluded. Testimony of Dawn Richard began. (Court Reporter Steven Greenblum and George Malinowski) (ap) (Entered: 06/04/2025) |
| 05/19/2025 | 339 | ORDER as to Sean Combs. The following procedures will be followed for the duration of trial. Failure to adhere to these procedures, absent a showing of good cause, will lead to the preclusion of untimely disclosed witnesses and evidence, or the waiver of untimely raised objections. (Signed by Judge Arun Subramanian on 5/17/25)(jw) (Entered: 05/19/2025) |
| 05/19/2025 | 340 | ORDER as to Sean Combs. The Court has reviewed the motion to quash the subpoena issued to Clayton Howard and Combs's response to the motion. Based on the Courts review of the materials in question and for the reasons set forth in the defendants letter, the materials are not privileged and should be produced forthwith. Per the Courts |

| | | |
|---|---|---|
| | | previous order, see Dkt. 332, the motion to quash the subpoena and Combs's response to the motion shall be docketed by May 19, 2025.(Responses due by 5/19/2025) (Signed by Judge Arun Subramanian on 5/16/2025)(jw) (Entered: 05/19/2025) |
| 05/19/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/19/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporters Lisa Franko and George Malinowski present. Jury trial continued. Testimony of Dawn Richard concluded. Testimony of Kerry Morgan began and concluded. Testimony of David James began. (jbo) (Entered: 06/04/2025) |
| 05/20/2025 | 341 | NOTICE OF ATTORNEY APPEARANCE: Jonathan Bach appearing for Sean Combs. Appearance Type: Retained. (Bach, Jonathan) (Entered: 05/20/2025) |
| 05/20/2025 | 342 | ORDER as to Sean Combs: The Court is in receipt of a letter from the press requesting that email communications from the parties regarding evidentiary and other issues should be docketed. Dkt. 336. By May 27, 2025, the parties should docket any correspondence to and from the Court concerning evidentiary objections or applications for relief, to the extent they have not been docketed. (The party making the application is responsible for docketing the correspondence.) Moving forward, the parties should docket any email correspondence by the end of the week following the application or objection being made. (Signed by Judge Arun Subramanian on 5/20/2025) (ap) (Entered: 05/20/2025) |
| 05/20/2025 | 343 | ORDER as to Sean Combs: The motion to dismiss at Dkt. 152 was resolved by the opinion at Dkt. 325. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 152. The letter-motion at Dkt. 327 was addressed on the record during trial on May 13, 2025. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 327. (Signed by Judge Arun Subramanian on 5/20/2025) (ap) (Entered: 05/20/2025) |
| 05/20/2025 | 344 | ORDER as to Sean Combs. The Court has reviewed the defense's application for a subpoena, the responses by the Government and Ms. Ventura, and the defenses response. For the reasons set forth in the Governments and Ms. Ventura's letters, the application for a subpoena is DENIED. All of the letters sent to the Court regarding this application should be docketed, with any appropriate redactions, no later than May 27, 2025 (Signed by Judge Arun Subramanian on 5/20/25)(jw) (Entered: 05/20/2025) |
| 05/20/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/20/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporters Lisa Franko and George Malinowski present. Jury trial continued. Testimony of David James concluded. Testimony of Sharay Hayes began and concluded. Testimony of Gerard Gannon began. (jbo) (Entered: 06/04/2025) |
| 05/21/2025 | 345 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated May 21, 2025 re: Testimony of Dr. Dawn Hughes Document filed by USA. (Steiner, Mitzi) (Entered: 05/21/2025) |
| 05/21/2025 | 346 | SEALED DOCUMENT placed in vault. (jus) (Entered: 05/21/2025) |
| 05/21/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/21/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Jonathan Bach, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster |

| | | |
|---|---|---|
| | | present. Special Agent Sean Quinn present. Court Reporters Steven Greenblum and George Malinowski present. Jury trial continued. Testimony of Gerard Gannon concluded. Testimony of Dawn Hughes began and concluded. Testimony of George Kaplan began. (jbo) (Entered: 06/04/2025) |
| 05/22/2025 | 347 | ORDER as to Sean Combs. In response to a letter from the press requesting that email correspondence from the parties be posted on the public docket, the Court issued an order requiring that email correspondence be docketed by the end of the week it was originally sent. Dkt. 342. To clarify, this schedule applies only to actual emails that are sent to the Court. All letters must be docketed when they are submitted even if they are also emailed as attachments to chambers (Signed by Judge Arun Subramanian on 5/22/25)(jw) (Entered: 05/22/2025) |
| 05/22/2025 | 348 | MEMO ENDORSEMENT as to Sean Combs re: Accordingly, it is respectfully requested that the Court add Ms. Doe to the docket as a interested party in the above-captioned criminal case to allow documents to be filed on her behalf by ECF. It is also respectfully requested that the Court grant Ms. Doe's application for leave to file a redacted version of the May 14, 2025, Letter submitted to the Court by email and under seal, and that the Court approve the proposed redacted version of this letter, submitted as Exhibit 1, in that it is narrowly tailored to preserve Ms. Doe's anonymity, consistent with the Court's April 18, 2025, Order (Docket No. 262), granting the unopposed motion for Ms. Doe to proceed at trial using a pseudonym. (Signed by Judge Arun Subramanian on 5/21/25)(jw) (Entered: 05/22/2025) |
| 05/22/2025 | 349 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo dated May 22, 2025 re: Increasing Allocated Phone Minutes and Additional VTC Time . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 05/22/2025) |
| 05/22/2025 | 350 | LETTER MOTION addressed to Judge Arun Subramanian from Lindsay A. Lewis dated 5/22/25 re: in opposition to the May 12, 2025, Letter of Robert Balin and Alexandra Perloff-Giles (ECF#327), requesting on behalf of certain news organizations the ability to view "sexually explicit and sensitive" audiovisual trial exhibits. . Document filed by Ms. Doe as to Sean Combs. (Lewis, Lindsay) (Entered: 05/22/2025) |
| 05/22/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/22/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporters Steven Greenblum and George Malinowski present. Jury trial continued. Testimony of George Kaplan concluded. Testimony of Scott Mescudi began and concluded. Testimony of Mylah Morales began and concluded. Testimony of Frederic Zemmour began and concluded. Testimony of Josh Croft began and concluded. (jbo) (Entered: 06/04/2025) |
| 05/24/2025 | 351 | LETTER MOTION addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 24, 2025 re: Motion to Strike Expert Testimony of Dr. Hughes . Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 05/24/2025) |
| 05/26/2025 | 352 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 26, 2025 re: Evidentiary issues and to strike testimony (Shapiro, Alexandra) (Entered: 05/26/2025) |
| 05/26/2025 | 353 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos dated May 26, 2025 re: Email Correspondence in Response to ECF 342 (Shapiro, Alexandra) (Entered: 05/26/2025) |

| 05/26/2025 | 354 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated May 26, 2025 re: Preclusion of Testimony Related to DNA Testing Document filed by USA. (Attachments: # 1 Exhibit Ex. A (under seal), # 2 Exhibit Ex. B (under seal), # 3 Exhibit Ex. C (under seal))(Slavik, Mary) (Entered: 05/26/2025) |
|---|---|---|
| 05/27/2025 | 355 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated May 18, 2025 re: Witness Testimony Issues (Richard, Morgan, James) Document filed by USA. (Slavik, Mary) (Entered: 05/27/2025) |
| 05/27/2025 | 356 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian re: May 11 Letter to Court re Prior Consistent Statements and Rule 404(a)(2)(B) Document filed by USA. (Foster, Meredith) (Entered: 05/27/2025) |
| 05/27/2025 | 357 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 21, 2025 re: Summary Charts Evidence (Attachments: # 1 Exhibit Filed Under Seal)(Shapiro, Alexandra) (Entered: 05/27/2025) |
| 05/27/2025 | 358 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated May 12, 2025 re: Evidentiary Issues Document filed by USA. (Johnson, Emily) (Entered: 05/27/2025) |
| 05/27/2025 | 359 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 27, 2025 re: Proposed Curative Instruction (Shapiro, Alexandra) (Entered: 05/27/2025) |
| 05/27/2025 | 360 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated May 22, 2025 re: Witness Testimony (Mescudi) Document filed by USA. (Johnson, Emily) (Entered: 05/27/2025) |
| 05/27/2025 | 361 | LETTER RESPONSE in Opposition by USA as to Sean Combs addressed to Judge Arun Subramanian dated May 13, 2025 re: 327 LETTER MOTION addressed to Judge Arun Subramanian from Robert Balin dated May 12, 2025 re: Request for Public/Press Access to Video Exhibits Shown at Trial. Document filed by Interested News Organizations .. (Foster, Meredith) (Entered: 05/27/2025) |
| 05/27/2025 | 362 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 20, 2025 re: Expert Testimony of Dr. Dawn Hughes (Attachments: # 1 Exhibit A)(Shapiro, Alexandra) (Entered: 05/27/2025) |
| 05/27/2025 | 363 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 21, 2025 re: GX A-629-A (Shapiro, Alexandra) (Entered: 05/27/2025) |
| 05/27/2025 | 364 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated May 27, 2025 re: Email Correspondence Document filed by USA. (Johnson, Emily) (Entered: 05/27/2025) |
| 05/27/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/27/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporters Lisa Franko and Devon Gerber present. Jury trial continued. Testimony of Capricorn Clark began and concluded. (jbo) (Entered: 06/04/2025) |
| 05/28/2025 | 365 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated May 19, 2025 re: Opposition to Rule 17(c) Subpoena Document filed by USA. (Johnson, Emily) (Entered: 05/28/2025) |

| 05/28/2025 | 366 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 28, 2025 re: Summary Charts Evidence (Shapiro, Alexandra) (Entered: 05/28/2025) |
|---|---|---|
| 05/28/2025 | 367 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated May 28, 2025 re: Witness Testimony (Clark) Document filed by USA. (Steiner, Mitzi) (Entered: 05/28/2025) |
| 05/28/2025 | 368 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated May 28, 2025 re: Witness Testimony (Richard) Document filed by USA. (Steiner, Mitzi) (Entered: 05/28/2025) |
| 05/28/2025 | 369 | LETTER by Victim 1 as to Sean Combs addressed to Judge Arun Subramanian from Douglas H. Wigdor dated May 28, 2025 re: Email Correspondence and Letter Regarding Rule 17(c) Subpoena Document filed by Victim 1. (Wigdor, Douglas) (Entered: 05/28/2025) |
| 05/28/2025 | 370 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 19, 2025 re: Rule 17(c) Subpoena (Shapiro, Alexandra) (Entered: 05/28/2025) |
| 05/28/2025 | 371 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo dated May 28, 2025 re: access to defendant in courthouse (Agnifilo, Marc) (Entered: 05/28/2025) |
| 05/28/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/28/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporters Lisa Franko and Devon Gerber present. Jury trial continued. Testimony of Chris Ignacio began and concluded. Testimony of Lance Jiminez began and concluded. Testimony of Deonte Nash began. (jbo) (Entered: 06/04/2025) |
| 05/29/2025 | 372 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated May 28, 2025 re: Testimony of Dr. Hughes Document filed by USA. (Steiner, Mitzi) (Entered: 05/29/2025) |
| 05/29/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/29/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporters Lisa Franko and Steven Greenblum present. Jury trial continued. Testimony of Deonte Nash concluded. Testimony of Mia began. (jbo) (Entered: 06/04/2025) |
| 05/30/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 5/30/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporters Alena Lynch and Steven Greenblum present. Jury trial continued. Testimony of Mia concluded. (jbo) (Entered: 06/04/2025) |
| 06/02/2025 | 373 | ORDER as to Sean Combs: The motion at Dkt. 349 is resolved in accordance with the Court's stated reasons on the record on May 30, 2025. The motion at Dkt. 351 is resolved |

| | | in accordance with the Court's stated reasons on the record on May 29, 2025. The motion at Dkt. 350 is resolved by the Court's endorsement at Dkt. 348 and the Court's ruling on the record on May 13, 2025. The Clerk of Court is respectfully directed to terminate the motions at Dkts. 349, 350, and 351. SO ORDERED. (Signed by Judge Arun Subramanian on 6/2/2025) (lnl) (Entered: 06/02/2025) |
|---|---|---|
| 06/02/2025 | 374 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 6/2/2025 re: attaching correspondence (Attachments: # 1 Exhibit 5/27/25 Email, # 2 Exhibit 5/30/25 Email)(Agnifilo, Marc) (Entered: 06/02/2025) |
| 06/02/2025 | 375 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from USA dated June 2, 2025 re: Admitting GX 10C-114 Document filed by USA. (Johnson, Emily) (Entered: 06/02/2025) |
| 06/02/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/2/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Mia concluded. Testimony of Sylvia Oken began and concluded. (Court Reporter Lisa Franko and Andrew Walker) (ap) (Entered: 07/11/2025) |
| 06/03/2025 | 376 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated June 3, 2025 re: Testimony of Dr. Dawn Hughes Document filed by USA. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Steiner, Mitzi) (Entered: 06/03/2025) |
| 06/03/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/3/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Mia concluded. Testimony of Sylvia Oken began and concluded. (Court Reporter Lisa Franko and Andrew Walker) (ap) (Entered: 07/11/2025) |
| 06/04/2025 | 378 | LETTER by Interested News Organizations as to Sean Combs addressed to Judge Arun Subramanian from Robert D. Balin dated June 4, 2025 re: Response to the Government's June 3, 2025 Request to Prevent Public Viewing of Exhibits. Document filed by Interested News Organizations. (Balin, Robert) (Entered: 06/04/2025) |
| 06/04/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/4/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Frank Pizza began and concluded. Testimony of Bryana Bongolan began. (Court Reporter Devon Gerber and Alena Lynch) (ap) (Entered: 07/11/2025) |
| 06/05/2025 | 379 | ORDER as to Sean Combs: On June 4, 2025, defense counsel represented to the Court that Mr. Combs is unable to make calls from the MDC, which has prevented him from conferring with his legal team. He is currently allotted 300 minutes per month in social calls. The MDC has represented to both defense counsel and the Court that Mr. Combss phone use is well below this limit, so to the extent that he is unable to place calls from the MDC, that appears to be a technical issue. The MDC is hereby ORDERED to investigate any technical issue that may exist and to confirm to the Court on or before June 6, 2025 |

| | | |
|---|---|---|
| | | that after an investigation, there is no technical issue preventing Mr. Combs from using his allotted 300 minutes to confer with his attorneys. (Signed by Judge Arun Subramanian on 6/4/2025) (ap) (Entered: 06/05/2025) |
| 06/05/2025 | 380 | LETTER by Ms. Doe as to Sean Combs addressed to Judge Arun Subramanian from Lindsay A. Lewis dated 6/5/25 re: opposing the June 4, 2025 letter (ECF #378), on behalf of a collection of News Organizations requesting that the Government change the order of its witnesses, or otherwise delay Jane's testimony, to allow for a pre-redaction of exhibits to be introduced during Jane's testimony. Document filed by Ms. Doe. (Lewis, Lindsay) (Entered: 06/05/2025) |
| 06/05/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/5/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Bryana Bongolan concluded. Testimony of Enrique Santos began and concluded. Testimony of Jane began. (Court Reporter Court Reporters Devon Gerber and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/06/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/6/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Jane continued. (Court Reporter Devon Gerber and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/07/2025 | 381 | LETTER MOTION addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 7, 2025 re: Renewed Motion for Mistrial Based On Prosecutorial Misconduct . Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 06/07/2025) |
| 06/08/2025 | 382 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Anna Estevao dated June 8, 2025 re: Email Correspondence (Attachments: # 1 Exhibit June 1, 2025 Email, # 2 Exhibit June 4, 2025 Email, # 3 Exhibit June 5, 2025 Email, # 4 Exhibit June 5, 2025 Email)(Estevao, Anna) (Entered: 06/08/2025) |
| 06/08/2025 | 383 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 28, 2025 re: Response to Government Objections to Mia Cross Examination Proposed Exhibits (Shapiro, Alexandra) (Entered: 06/08/2025) |
| 06/08/2025 | 384 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 30, 2025 re: Request to Change Government Opposition Deadline (Shapiro, Alexandra) (Entered: 06/08/2025) |
| 06/08/2025 | 385 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 1, 2025 re: Opposition to Motions to Quash (Shapiro, Alexandra) (Entered: 06/08/2025) |
| 06/08/2025 | 386 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 3, 2025 re: Response to Government Objections to Bryana Bongolan Cross Examination Proposed Exhibits (Shapiro, Alexandra) (Entered: 06/08/2025) |
| 06/08/2025 | 387 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 8, 2025 re: In Further Support of Objections to GXE-331-F-R and GXE-331-H-R (Shapiro, Alexandra) (Entered: 06/08/2025) |

A-48

| 06/08/2025 | 388 | Proposed Jury Instructions by Sean Combs. (Shapiro, Alexandra) (Entered: 06/08/2025) |
|---|---|---|
| 06/09/2025 | 389 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian re: Correspondence re Dkt. No. 342 Document filed by USA. (Foster, Meredith) (Entered: 06/09/2025) |
| 06/09/2025 | 390 | ORDER as to Sean Combs. IT IS FURTHER ORDERED that, pursuant to Title 18, United States Code, Sections 6002 and 6003, no testimony or other information compelled under this Order, or any information directly or indirectly derived from such testimony or other information, may be used against BRYANA BON GOLAN in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this Order. This Order shall become effective only if after the date of this Order BRYANA BON GOLAN refuses to testify at trial in the matter of United States v. Sean Combs, S3 24 Cr. 542 (AS), or provide other information on the basis of her privilege against self-incrimination. (Signed by Judge Arun Subramanian on 6/4/25) (jw) (Entered: 06/09/2025) |
| 06/09/2025 | 391 | ORDER as to Sean Combs. IT IS FURTHER ORDERED that, pursuant to Title 18, United States Code, Sections 6002 and 6003, no testimony or other information compelled under this Order, or any information directly or indirectly derived from such testimony or other information, may be used against EDDY GARCIA in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this Order. This Order shall become effective only if after the date of this Order EDDY GARCIA refuses to testify at trial in the matter of United States v. Sean Combs, S3 24 Cr. 542 (AS), or provide other information on the basis of his privilege against self-incrimination. (Signed by Judge Arun Subramanian on 6/2/25)(jw) (Entered: 06/09/2025) |
| 06/09/2025 | 392 | ORDER as to Sean Combs. IT IS FURTHER ORDERED that, pursuant to Title 18, United States Code, Sections 6002 and 6003, no testimony or other information compelled under this Order, or any information directly or indirectly derived from such testimony or other information, may be used against GEORGE KAPLAN in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this Order. This Order shall become effective only if after the date of this Order GEORGE KAPLAN refuses to testify at trial in the matter of United States v. Sean Combs, S3 24 Cr. 542 (AS), or provide other information on the basis of his privilege against self-incrimination. (Signed by Judge Arun Subramanian on 5/21/25)(jw) (Entered: 06/09/2025) |
| 06/09/2025 | 393 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 9, 2025 re: Opposition to Dkt. 376 re Testimony of Dr. Hughes (Shapiro, Alexandra) (Entered: 06/09/2025) |
| 06/09/2025 | 394 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Matthew R. Shahabian dated 2/4/2025 re: Previously Under Seal Filter Team Brief re: Device-1 Document filed by USA. (Shahabian, Matthew) (Entered: 06/09/2025) |
| 06/09/2025 | 395 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Matthew R. Shahabian dated 3/3/2025 re: Previously Under Seal Filter Team Reply Brief re: Device-1 Document filed by USA. (Shahabian, Matthew) (Entered: 06/09/2025) |
| 06/09/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/9/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special |

A-49

| | | Agent Sean Quinn present. Jury trial continued. Testimony of Jane continued. (Court Reporter Devon Gerber and Carol Kertes) (ap) (Entered: 07/11/2025) |
|---|---|---|
| 06/10/2025 | 396 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated June 10, 2025 re: Opposition to Defense Motion to Strike GX E-331-F-R and GX E-331-H-R Document filed by USA. (Slavik, Mary) (Entered: 06/10/2025) |
| 06/10/2025 | 397 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 8, 2025 re: Prior Consistent Statements and Evidentiary Objections (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Shapiro, Alexandra) (Entered: 06/10/2025) |
| 06/10/2025 | 398 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 19, 2025 re: Opposition to Government Letter re Dawn Richard's Anticipated Testimony (Shapiro, Alexandra) (Entered: 06/10/2025) |
| 06/10/2025 | 399 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 28, 2025 re: Response to Government Letter re Mescudi and Nash Testimony (Shapiro, Alexandra) (Entered: 06/10/2025) |
| 06/10/2025 | 400 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 5, 2025 re: Response to Government Letter re Bryana Bongolan Testimony (Shapiro, Alexandra) (Entered: 06/10/2025) |
| 06/10/2025 | 401 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 5, 2025 re: Objections to Certain Jane Exhibits (Shapiro, Alexandra) (Entered: 06/10/2025) |
| 06/10/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/10/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Jane continued. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/11/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/11/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Jane continued. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/12/2025 | 402 | ORDER as to Sean Combs. Combs challenges arguing that communications are privileged. The Court has reviewed the parties arguments and authorities, as well as the communications at issue. Substantially for the reasons set forth in the Filter Teams reply brief, the Court finds that the communications are not privileged under any of the doctrines that Combs invokes: the common-interest rule, Kovel, or corporate privilege (Signed by Judge Arun Subramanian on 3/11/25)(jw) (Entered: 06/12/2025) |
| 06/12/2025 | 403 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 12, 2025 re: Proposed Napue Instruction (Shapiro, Alexandra) (Entered: 06/12/2025) |
| 06/12/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/12/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, |

| | | |
|---|---|---|
| | | Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Jane concluded. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/13/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/13/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Special Agent Andre LaMon began and concluded. Testimony of Jonathan Perez began and concluded. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/15/2025 | 404 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 15, 2025 re: Further Opposition to Striking Juror (Attachments: # 1 Exhibit A Filed Under Seal)(Shapiro, Alexandra) (Entered: 06/15/2025) |
| 06/16/2025 | 406 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 5/28/25 re: Exhibits for Mescudi, Nash, Mia Document filed by USA. (Smyser, Madison) (Entered: 06/16/2025) |
| 06/16/2025 | 407 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 6/1/25 re: Evidentiary Issues for Mia, Piazza, Garcia, and Summary Chart Document filed by USA. (Smyser, Madison) (Entered: 06/16/2025) |
| 06/16/2025 | 408 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 6/1/25 re: Rule 17(c) Subpoena to Mia Document filed by USA. (Smyser, Madison) (Entered: 06/16/2025) |
| 06/16/2025 | 409 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 6/3/25 re: Evidentiary Issues Related to Bongolan's Testimony Document filed by USA. (Smyser, Madison) (Entered: 06/16/2025) |
| 06/16/2025 | 410 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 6/4/25 re: Holladay Statements Document filed by USA. (Smyser, Madison) (Entered: 06/16/2025) |
| 06/16/2025 | 411 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 6/4/25 re: Exhibits for Jane Document filed by USA. (Smyser, Madison) (Entered: 06/16/2025) |
| 06/16/2025 | 412 | LETTER RESPONSE in Opposition by USA as to Sean Combs addressed to Judge Arun Subramanian dated 6/9/25 re: 381 LETTER MOTION addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 7, 2025 re: Renewed Motion for Mistrial Based On Prosecutorial Misconduct .. (Smyser, Madison) (Entered: 06/16/2025) |
| 06/16/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/16/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Ananya Sankar began and concluded. Testimony of Special Agent DeLeassa Penland began. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/17/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/17/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, |

A-51

| | | Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Special Agent DeLeassa Penland concluded. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
|---|---|---|
| 06/18/2025 | 413 | ORDER as to Sean Combs: To prepare for the jury's deliberation in this case, the Court instructs the parties as follows: The Government shall collect and prepare a laptop that contains all non-physical exhibits admittedand nothing else. (The laptop shall not contain any demonstratives used or any exhibits not admitted into evidence.) The Government shall share such laptop with the defense for its review by Monday, June 23, 2025. The parties may add exhibits to this laptop through to the close of evidence in this case. Prior to closing arguments, the Court will require each side to confirm on the record that it has reviewed the laptop and that the laptop contains all electronic evidence admittedand only the electronic evidence admitted. On or before the date of closing arguments, the Government shall collect and identify to the defense all physical exhibits admitted as evidence in this case. Non-contraband exhibits will be provided to jury in the jury room upon request. Any contraband admitted as evidence will remain in the courtroom for the jury's viewing there. Again, the physical evidence may be supplemented through to the completion of evidence. Prior to closing arguments, the Court will require each side to confirm on the record that the parties have gathered all physical evidence that was admitted and that it is available in the courtroom. On or before the date of closing arguments, the parties should meet and confer and submit to the Court a jointly agreed-upon list of all exhibits admitted with descriptions of each exhibit. The parties should agree upon each exhibit description. The Court will provide such a list to the jury during its deliberation to aid in its deliberations. The parties may supplement this list through to the completion of evidence. On or before the date of closing arguments, the parties should meet and confer regarding the redactions necessary for the transcript should the jury request portions of the transcript be submitted to them during deliberations. The Court recognizes that the parties will likely be unable to meet and confer on such redactions for the entire transcript. However, the parties should do so for the witnesses that they believe the jury will most likely ask for. During deliberations, the Court expects the parties to deal with any redactions promptly, should the jury request portions of the transcript that the parties have not previously met and conferred upon. (Signed by Judge Arun Subramanian on 6/18/2025) (ap) (Entered: 06/18/2025) |
| 06/18/2025 | 414 | LETTER by Interested News Organizations as to Sean Combs addressed to Judge Arun Subramanian from Robert Balin dated 6/18/2025 re: Jane Doe Exhibits Document filed by Interested News Organizations. (Balin, Robert) (Entered: 06/18/2025) |
| 06/18/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/18/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. No trial held due to absent juror. (Court Reporter Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/19/2025 | 415 | RESPONSE by USA as to Sean Combs *re Proposed Additional Jury Instructions (Dkt. 388).* (Foster, Meredith) (Entered: 06/19/2025) |
| 06/20/2025 | 416 | MEMO ENDORSEMENT as to Sean Combs on re: 414 LETTER by Interested News Organizations as to Sean Combs addressed to Judge Arun Subramanian from Robert Balin dated 6/18/2025 re: Jane Doe Exhibits. ENDORSEMENT: The Government should provide copies of all exhibits by Monday, June 23, 2025. (Signed by Judge Arun Subramanian on 6/19/2025)(ap) (Entered: 06/20/2025) |

| 06/20/2025 | 417 | TRANSCRIPT of Proceedings as to Sean Combs re: Trial held on 5/28/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Devon Gerber, (212) 805-0320, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/11/2025. Redacted Transcript Deadline set for 7/21/2025. Release of Transcript Restriction set for 9/18/2025. (McGuirk, Kelly) (Entered: 06/20/2025) |
|---|---|---|
| 06/20/2025 | 418 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Trial proceeding held on 5/28/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 06/20/2025) |
| 06/20/2025 | 419 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 20, 2025 re: Proposed Verdict Form (Shapiro, Alexandra) (Entered: 06/21/2025) |
| 06/20/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/20/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Brendan Paul began and concluded. Testimony of Special Agent Joseph Cerciello began. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/21/2025 | 420 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 6/21/25 re: Proposed Verdict Form Document filed by USA. (Smyser, Madison) (Entered: 06/21/2025) |
| 06/23/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/23/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Special Agent Joseph Cerciello continued. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/24/2025 | 421 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 24, 2025 re: Proposed Charge (Shapiro, Alexandra) (Entered: 06/24/2025) |
| 06/24/2025 | 422 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian re: Requests to Charge Document filed by USA. (Foster, Meredith) (Entered: 06/24/2025) |
| 06/24/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/24/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Testimony of Special Agent Joseph Cerciello concluded. The Government rests its case. Argument heard on Rule 29 motions. |

| | | |
|---|---|---|
| | | Defense case begins. The defense rests its case. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/25/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/25/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Charge conference held. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/26/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/26/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Government summations began and concluded. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/27/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/27/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Defense summations began and concluded. Government rebuttal began and concluded. (Court Reporter Alena Lynch and Carol Kertes) (ap) (Entered: 07/11/2025) |
| 06/30/2025 | 423 | Blank Verdict Sheet as to Sean Combs. (jw) (Entered: 06/30/2025) |
| 06/30/2025 | 424 | Jury Charge as to Sean Combs. (jw) (Entered: 06/30/2025) |
| 06/30/2025 | 425 | OPINION & ORDER as to Sean Combs. The Government moved to compel compliance with a December 2024 subpoena for Device-1, a cell phone. The Government became aware of Device-1 due to messages from June 2024 recovered from a different device. Combs refused to comply with the December subpoena and makes two arguments in response to the Government's motion to compel. First, he argues that the June 2024 messages that prompted the Governments inquiry were privileged. The Court rejected that argument in its March 11, 2025 order, filed under seal. Second, he asserts that the production of Device-1 is protected by the Fifth Amendments privilege against self-incrimination. The Government responds to that argument by invoking the foregone-conclusion doctrine. For these reasons, the Government's motion to compel is GRANTED, and Combs must produce Device-1, if it is within his possession, custody, or control, by April 21, 2025. (Signed by Judge Arun Subramanian on 4/18/25)(jw) (Entered: 06/30/2025) |
| 06/30/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 6/30/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Jury charge read. Deliberations began. (Court Reporter Alena Lynch and Andrew Walker) (ap) (Entered: 07/11/2025) |
| 07/01/2025 | 426 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from AUSA Maurene Comey dated May 26, 2025 re: Opposition to Dkt. No. 357, Defense Motion to Preclude Government Summary Charts Document filed by USA. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Exhibit US v. Robert Menendez GX 1302, # 2 Exhibit US v. Robert Menendez GX 1303, # 3 Exhibit US v. Robert Menendez GX 1304, # 4 Exhibit US v. Nadine Menendez GX 1352, # 5 Exhibit US v. Nadine Menendez GX 1353, # 6 Exhibit US v. Nadine Menendez GX 1354)(Comey, Maurene) (Entered: 07/01/2025) |
| 07/01/2025 | 427 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated June 12, 2025 re: Exhibits Document filed by USA. (Slavik, Mary) (Entered: 07/01/2025) |
| 07/01/2025 | 428 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated June 12, 2025 re: GX A-629-A Document filed by USA. (Slavik, Mary) (Entered: 07/01/2025) |
| 07/01/2025 | 429 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 7/1/2025 re: attaching correspondence (Attachments: # 1 Exhibit 6/11/2025 email re DX-3226-B, # 2 Exhibit 6/30/2025 email re Jury Note)(Geragos, Teny) (Entered: 07/01/2025) |
| 07/01/2025 | 430 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated June 11, 2025 re: Summary Chart and Other Evidentiary Issues Document filed by USA. (Foster, Meredith) (Entered: 07/01/2025) |
| 07/01/2025 | 431 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated July 1, 2025 re: Email Correspondence Document filed by USA. (Steiner, Mitzi) (Entered: 07/01/2025) |
| 07/01/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 7/1/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Jury trial continued. Deliberations continued. (Court Reporter Carol Ganley) (ap) (Entered: 07/11/2025) |
| 07/02/2025 | 432 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated July 2, 2025 re: in Support of Bail Request (Shapiro, Alexandra) (Entered: 07/02/2025) |
| 07/02/2025 | 433 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated July 2, 2025 re: Opposition to Bail Pending Sentencing Document filed by USA. (Attachments: # 1 Exhibit A)(Steiner, Mitzi) (Entered: 07/02/2025) |
| 07/02/2025 | 434 | ORDER as to Sean Combs: On July 1, 2025, in response to the jurys request for certain testimony/transcript excerpts, see Court Exhibit 16, the Court, on the record, resolved certain disputes concerning the materials to be furnished to the jury. The parties then reached agreement to provide the following excerpts from the transcript to the jury, which were then provided to the jury after review by both sides. The questions referenced below refer to the questions in Court Exhibit 16: Question 1: Page 406, line 18 to page 407, line 5. Page 571, line 23 to page 583, line 17. Page 629, line 15 to page 630, line 11. Page 630, line 15 to page 632, line 24. Page 633, line 7 to page 643, line 25. Page 644, line 5 to page 649, line 21. Page 1091, line 10 to page 1093, line 20. Page 1094, line 4 to page 1100, line 15. Page 1100, line 20 to page 1107, line 14. Page 1107, line 17 to page 1110, line 14. Page 1110, line 17 to page 1111, line 21. Page 1111, line 24 to page 1112, line 25. Page 1113, line 3 to page 1115, line 15. Page 1115, line 21 to page 1116, line 12. Page 1116, line 18 to page 1129, line 1. Page 1129, line 6 to page 1133, line 3. Page 1133, line 8 to page 1134, line 6. Page 1134, lines 910. Page 1162, line 15 to page 1163, line 7. Page 1163, line 15 to page 1166, line 23. Page 1167, line 1 to page 1168, line 20. Page 1169, line 19 to page 1170, line 6. Page 1294, line 12 to page 1295, line 9. Page 1319, line 7 to |

| | | |
|---|---|---|
| | | page 1320, line 23. Page 1321, line 1. Page 1321, lines 1619. Page 1321, line 24 to page 1322, line 2. Page 1322, line 5 to page 1323, line 15. Page 1352, line 19 to page 1354, line 20. Page 1354, line 24 to page 1355, line 6. Question 2: Page 698, line 23 to page 703, line 9. Page 1076, line 16 to 1077, line 1. Page 1081, line 18 to page 1082, line 24. Page 1314, line 23 to page 1315, line 3. Page 1315, lines 620. Question 3: Page 536, lines 122. Page 544, line 6 to page 547, line 1. Page 1020, line 14 to page 1022, line 5. Question 4: Page 280, lines 822. Page 280, line 25 to page 282, line 4. Page 282, lines 1120. Page 282, line 23 to page 283, line 16. Page 284, lines 79 and line 11. Page 366, line 6 to page 369, line 11. (Signed by Judge Arun Subramanian on 7/2/2025) (ap) (Entered: 07/02/2025) |
| 07/02/2025 | 435 | LETTER by Victim 1 as to Sean Combs addressed to Judge Arun Subramanian from Douglas H. Wigdor dated July 2, 2025 re: Opposition to Bail Pending Sentencing Document filed by Victim 1. (Wigdor, Douglas) (Entered: 07/02/2025) |
| 07/02/2025 | 436 | TRANSCRIPT of Proceedings as to Sean Combs re: Trial held on 6/25/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Alena Lynch, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/23/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 9/30/2025. (McGuirk, Kelly) (Entered: 07/02/2025) |
| 07/02/2025 | 437 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Trial proceeding held on 6/25/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 07/02/2025) |
| 07/02/2025 | 438 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated July 2, 2025 re: in Response to Dkt. 433 and in Further Support of Bail (Shapiro, Alexandra) (Entered: 07/02/2025) |
| 07/02/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Jury Trial as to Sean Combs held on 7/2/2025. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Anna Estevao, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Maurene Comey, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Court Reporter Carol Ganley present. Jury trial concluded. Deliberations concluded. Verdict reached. (Court Reporter Carol Ganley) (ap) (Entered: 07/11/2025) |
| 07/02/2025 | | JURY VERDICT as to Sean Combs (1) Guilty on Count 3sss,5sss. Sean Combs (1) Not Guilty on Count 1sss,2sss,4sss. (jw) (Entered: 10/08/2025) |
| 07/07/2025 | 439 | RESPONSE in Opposition by Sean Combs re: 276 MOTION in Limine *to Preclude Testimony of Dr. Elie Aoun.*. (Shapiro, Alexandra) (Entered: 07/07/2025) |
| 07/07/2025 | 440 | RESPONSE in Opposition by Sean Combs re: 277 MOTION in Limine *to Preclude Testimony of Conor McCourt, Proposed Forensic Video Expert.*. (Shapiro, Alexandra) (Entered: 07/07/2025) |
| 07/07/2025 | 441 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated May 8, 2025 re: Opposition to Request for Victim-5 Pseudonym (Shapiro, Alexandra) (Entered: 07/07/2025) |

| 07/07/2025 | 442 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 11, 2025 re: Further Objections to Certain Jane Exhibits (Shapiro, Alexandra) (Entered: 07/07/2025) |
|---|---|---|
| 07/07/2025 | 443 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 12, 2025 re: Objections to Summary Chart lines and GX A-629-A (Shapiro, Alexandra) (Entered: 07/07/2025) |
| 07/07/2025 | 444 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 12, 2025 re: Juror No. 6 (Shapiro, Alexandra) (Entered: 07/07/2025) |
| 07/07/2025 | 445 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated June 19, 2025 re: GX A-166 and Summary Chart lines (Shapiro, Alexandra) (Entered: 07/07/2025) |
| 07/07/2025 | 446 | ORDER as to Sean Combs. As indicated during Wednesday's proceeding, the Court will hold a remote conference in this matter tomorrow, July 8, 2025, at 2:00 PM. Members of the public may listen in by attending in person at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York 10007, in Courtrooms 24A and 24B. SO ORDERED. ( Remote Conference set for 7/8/2025 at 02:00 PM before Judge Arun Subramanian. )(Signed by Judge Arun Subramanian on 7/7/2025) (bw) (Entered: 07/07/2025) |
| 07/08/2025 | 447 | VERDICT SHEET as to USA v. Sean Combs. Dated: 7/2/2025. (bw) (Entered: 07/08/2025) |
| 07/08/2025 | 448 | JOINT LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 7/8/2025 re: proposed sentencing schedule (Agnifilo, Marc) (Entered: 07/08/2025) |
| 07/08/2025 | 449 | JOINT LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 7/8/2025 re: proposed sentencing schedule by Deft, Govt and Probation (Agnifilo, Marc) (Entered: 07/08/2025) |
| 07/08/2025 | 450 | ENDORSED LETTER as to Sean Combs addressed to Judge Arun Subramanian from Attorney Marc Agnifilo dated July 8, 2025 re: The parties have met and conferred and have agreed to the following schedules for sentencing, post-verdict motions and submission of offense conduct to the Probation Office: For sentencing, the parties propose the Court's original date of October 3, 2025. The defense proposes that the Probation Office provide the parties with a Pre-Sentence Investigation Report ("PSR") on or before August 29, 2025; that the defense objections to the PSR be filed on or before September 5, 2025; that the Government objections to the PSR be filed on or before September 12, 2025; that the Probation Office disclose their final PSR on September 18, 2025; that the defense's sentencing memorandum be filed on or before September 19, 2025; and that the Government's sentencing memorandum be filed on September 26, 2025. The Government and the Probation Office do not object to this schedule. For post-verdict motions, the parties propose that the defense file any post-verdict motions on or before July 30, 2025 and that the Government respond on or before August 20, 2025. Finally, the Government requests that it be permitted to submit its summary of offense conduct on or before July 11, 2025, and the defense does not object. We appreciate the Court's consideration. ENDORSEMENT: The Court adopts the below sentencing schedule. SO ORDERED. (Signed by Judge Arun Subramanian on 7/8/2025) (bw) (Entered: 07/08/2025) |
| 07/09/2025 | 451 | ORDER as to Sean Combs. In connection with the sentencing proceeding in this case, the Court would find it helpful to have available data on sentences imposed where (1) the primary or sole conviction was for a violation of 18 U.S.C. § 2421(a); or (2) the base offense level under the Sentencing Guidelines was calculated under § 2G1.1(a)(2) and a |

| | | Criminal History Category of I. The parties should locate cases that they believe match these criteria and file a letter---hopefully a joint letter---identifying those cases, by docket number and jurisdiction, on or before September 1, 2025. No argument should be included in this letter. The goal is for the parties' subsequent sentencing submissions to address the cases identified in the September 1 filing, focusing on those that each side believes reflect sentences imposed for similarly situated defendants, if any. The Court appreciates the parties' assistance in identifying these cases, as this information is not presently available from the Sentencing Commission. SO ORDERED. (Signed by Judge Arun Subramanian on 7/9/2025) (bw) (Entered: 07/09/2025) |
|---|---|---|
| 07/10/2025 | 452 | Court Exhibit 1 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 453 | Court Exhibit 2 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 454 | Court Exhibit 4 as to USA v. Sean Combs. (bw) (Main Document 454 replaced on 7/10/2025) (bw). (Entered: 07/10/2025) |
| 07/10/2025 | 455 | Court Exhibit 5 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 456 | Court Exhibit 6 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 457 | Court Exhibit 7 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 458 | Court Exhibit 8 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 459 | Court Exhibit 9 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 460 | Court Exhibit 10 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 461 | Court Exhibit 11 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 462 | Court Exhibit 12 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 463 | Court Exhibit 13 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 464 | Court Exhibit 14 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 465 | Court Exhibit 15 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 466 | Court Exhibit 16 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 467 | Court Exhibit 17 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 468 | Court Exhibit 18 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/10/2025 | 469 | Court Exhibit 19 as to USA v. Sean Combs. (bw) (Entered: 07/10/2025) |
| 07/16/2025 | 470 | TRANSCRIPT of Proceedings as to Sean Combs re: Trial held on 7/2/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Carol Ganley, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/6/2025. Redacted Transcript Deadline set for 8/18/2025. Release of Transcript Restriction set for 10/14/2025. (McGuirk, Kelly) (Entered: 07/16/2025) |

| 07/16/2025 | 471 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Trial proceeding held on 7/2/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 07/16/2025) |
|---|---|---|
| 07/21/2025 | 472 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/21/2025 | 473 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/21/2025 | 474 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/21/2025 | 475 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/21/2025 | 476 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/21/2025 | 477 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/21/2025 | 478 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/21/2025 | 479 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/21/2025 | 480 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/21/2025 | 481 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/21/2025 | 482 | SEALED DOCUMENT placed in vault. (jus) (Entered: 07/21/2025) |
| 07/29/2025 | 483 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 7/29/2025 re: Request for Release on Conditions . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 07/29/2025) |
| 07/29/2025 | 484 | ORDER as to Sean Combs. Defendant Combs moves for release pending sentencing. Dkt. 483. The Government should respond to Combss letter by Thursday, July 31, 2025 (Government Responses due by 7/31/2025) (Signed by Judge Arun Subramanian on 7/29/25)(jw) (Entered: 07/29/2025) |
| 07/30/2025 | 485 | MOTION for Acquittal *or, in the Alternative, for a New Trial.*. Document filed by Sean Combs. (Shapiro, Alexandra) (Entered: 07/30/2025) |
| 07/30/2025 | 486 | MEMORANDUM in Support by Sean Combs re 485 MOTION for Acquittal *or, in the Alternative, for a New Trial...* (Shapiro, Alexandra) (Entered: 07/30/2025) |
| 07/31/2025 | 487 | LETTER RESPONSE to Motion by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated July 31, 2025 re: 483 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 7/29/2025 re: Request for Release on Conditions .. (Slavik, Mary) (Entered: 07/31/2025) |
| 08/01/2025 | 488 | ENDORSED LETTER as to Sean Combs addressed to Judge Arun Subramanian from Meredith Foster, Emily A. Johnson, Christy Slavik, Madison Reddick Smyser and Mitzi Steiner dated 7/31/25 re: For the foregoing reasons, the defendant's motion should be denied...ENDORSEMENT: By August 4, 2025, the Government should further explain the need for redactions here given the use of pseudonyms in the unredacted version of the letter (Signed by Judge Arun Subramanian on 8/1/25)(jw) (Entered: 08/01/2025) |
| 08/03/2025 | 489 | LETTER REPLY TO RESPONSE to Motion by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 8/3/2025 re 483 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 7/29/2025 re: |

| | | |
|---|---|---|
| | | Request for Release on Conditions .. *[REDACTED]* (Attachments: # 1 Exhibit A - Letter in Support)(Agnifilo, Marc) (Entered: 08/03/2025) |
| 08/04/2025 | 490 | ORDER as to Sean Combs: Combs fails to satisfy his burden to demonstrate an entitlement to release. The motion for bail is DENIED. The Clerk of Court is directed to terminate Dkt. 483. (Signed by Judge Arun Subramanian on 8/4/2025) (See ORDER set forth) (ap) (Entered: 08/04/2025) |
| 08/04/2025 | 491 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated August 4, 2025 re: Letter re Redactions to July 31 Letter Document filed by USA. (Steiner, Mitzi) (Entered: 08/04/2025) |
| 08/07/2025 | 492 | MEMO ENDORSEMENT as to Sean Combs on re: 491 LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Mitzi Steiner dated August 4, 2025 re: Letter re Redactions to July 31 Letter. ENDORSEMENT: That's fine for now, but the parties should not expect that any submissions made in connection with the upcoming sentencing will be sealed. Everything should be filed on the public docket absent advance authorization to do otherwise. (Signed by Judge Arun Subramanian on 8/7/2025) (ap) (Entered: 08/07/2025) |
| 08/20/2025 | 493 | MEMORANDUM in Opposition by USA as to Sean Combs re 485 MOTION for Acquittal *or, in the Alternative, for a New Trial...* (Steiner, Mitzi) (Entered: 08/20/2025) |
| 08/21/2025 | 494 | ORDER as to Sean Combs. Any reply brief in connection with defendant's motion for acquittal, or in the alternative a new trial, should be filed by September 3, 2025 ( Replies due by 9/3/2025.) (Signed by Judge Arun Subramanian on 8/21/25)(jw) (Entered: 08/21/2025) |
| 08/22/2025 | 495 | Transportion Court as to Sean Combs. The Court ordered that the jury in this case be kept anonymous to the public and partially sequestered. In furtherance of that order, the Court directed the Clerk of Court to provide the empaneled jurors with transportation from the courthouse at 500 Pearl Street after the conclusion of jury deliberations. This order memorializes that direction and constitutes an nunc pro tunc order of the Court. (Signed by Judge Arun Subramanian on 8/22/25)(jw) (Entered: 08/22/2025) |
| 09/01/2025 | 497 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian dated 9/1/2025 re: Sentencing Data Document filed by USA. (Smyser, Madison) (Entered: 09/01/2025) |
| 09/01/2025 | 498 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Alexandra A.E. Shapiro dated September 1, 2025 re: Sentencing Data (Shapiro, Alexandra) (Entered: 09/01/2025) |
| 09/03/2025 | 499 | REPLY MEMORANDUM OF LAW in Support as to Sean Combs re: 485 MOTION for Acquittal *or, in the Alternative, for a New Trial..* . (Shapiro, Alexandra) (Entered: 09/03/2025) |
| 09/08/2025 | 500 | ORDER as to Sean Combs: The Court will hold a hearing on the pending post-trial motions at Dkt. 485 on Thursday, September 25, 2025, at 11:00 AM in Courtroom 26A of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007. (Motion Hearing set for 9/25/2025 at 11:00 AM in Courtroom 26A, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian) (Signed by Judge Arun Subramanian on 9/8/2025) (ap) (Entered: 09/08/2025) |
| 09/10/2025 | 501 | LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 9/10/2025 re: sentencing brief length and due date . Document filed by Sean Combs. (Agnifilo, Marc) (Entered: 09/10/2025) |

A-60

| 09/10/2025 | 503 | NON-PARTY VICTIM'S NOTICE AND MOTION TO ENFORCE RIGHTS UNDER 18 U.S.C. 3771 AND TO SUPPLEMENT THE RECORD WITH THE DECLARATION OF DR. JOSEPH MANZARO, Do. D. Document filed by Dr. Joseph Manzaro, Do. D. as to USA v. Sean Combs. (Attachments: # 1 Supplement Cover Letter To The Clerk, # 2 Supplement DECLARATION_JOSEPH_MANZARO) (bw) (Entered: 09/11/2025) |
|---|---|---|
| 09/11/2025 | 502 | MEMO ENDORSEMENT as to Sean Combs (1) granting 501 LETTER MOTION addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 9/10/2025 re: sentencing brief length and due date. ENDORSEMENT: The requests to modify the briefing schedule and page limit, and to redact the Defendant's private medical information as detailed above, are GRANTED. The Government shall respond to the Defendant's 3500 request by tomorrow, September 12, at 5:00 PM. (Signed by Judge Arun Subramanian on 9/11/2025) (ap) (Entered: 09/11/2025) |
| 09/12/2025 | 504 | LETTER MOTION addressed to Judge Arun Subramanian from Mitzi Steiner dated September 12, 2025 re: Sentencing Submission Redactions . Document filed by USA as to Sean Combs. (Steiner, Mitzi) (Entered: 09/12/2025) |
| 09/13/2025 | 505 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo dated 9/13/2025 re: clarifying defense position re sentencing submission redactions (Agnifilo, Marc) (Entered: 09/13/2025) |
| 09/15/2025 | 506 | ENDORSED LETTER as to Sean Combs addressed to Judge Arun Subramanian from Meredith Foster, Emily A. Johnson, Christy Slavik, Madison Reddick Smyser, Mitzi Steiner, Assistant United States Attorneys re: The Government respectfully writes in response to the defense's September 10, 2025 letter requesting, among other things, to file certain information from witness statements of non-testifying witnesses on the docket without redaction. (Dkt. No. 501). The parties have since conferred, and the defense has agreed to redact this information pursuant to the protective order in this case. Nonetheless, given the Court's order dated August 7, 2025 (Dkt. No. 492), the Government writes to seek advance authorization for the parties to file such information under seal. For the reasons stated below, the parties' proposed redactions are narrowly tailored and appropriate under the circumstances of this case.... ENDORSEMENT: The Government has justified the redaction of the names and other identifying information for non-testifying witnesses, but otherwise the information from the 3500 material can be filed without redactions. SO ORDERED. (Signed by Judge Arun Subramanian on 9/15/2025) (bw) (Entered: 09/15/2025) |
| 09/16/2025 | 507 | SEALED DOCUMENT placed in vault. (jus) (Entered: 09/16/2025) |
| 09/22/2025 | 509 | ORDER as to Sean Combs: The parties have asked the Court what issues they should focus on during Thursday's hearing on Combs's post-trial motions. In addition to any other issues the parties wish to bring up, the Court would like the parties to address the following questions: (1)In response to Musacchio, Blaszcak, and Dennis, does the Government have any Supreme Court or Second Circuit case that has deemed a defendant's Rule 29 argument waived or forfeited in circumstances such as those presented in this case? (2)If Combs were to prevail on his construction of "prostitution," then would his conviction nevertheless stand on an "aiding-and-abetting" or "willfully-causing" theory? Why or why not? (3)Addressing the O'Brien factors, why is the Government's interest "important" and the Mann Act's prohibitions "no more than essential?" What are the 1-2 best Supreme Court or Second Circuit cases supporting each side's position on these factors? (4)Combs argues that the record shows that every time an escort traveled across state lines and had sex, he filmed it. Is that true? If it is, does it change the First Amendment analysis? The parties will be given up to twenty minutes each to address any other issues. ORDERED. (Signed by Judge Arun Subramanian on 9/22/2025) (lnl) (Entered: 09/22/2025) |

| 09/22/2025 | 510 | SENTENCING SUBMISSION by Sean Combs. (Attachments: # 1 Appendix with Exhibits 1-65, # 2 Exhibit 66 (under seal), # 3 Exhibit 67 (under seal), # 4 Exhibit 68 - sentencing chart, # 5 Exhibit 69 - sentencing chart, # 6 Exhibit 70 - sentencing chart, # 7 Exhibit 71 - additional letters of support)(Agnifilo, Marc) (Entered: 09/22/2025) |
|---|---|---|
| 09/23/2025 | 511 | SEALED DOCUMENT placed in vault. (sov) (Entered: 09/23/2025) |
| 09/24/2025 | 512 | SENTENCING SUBMISSION by Sean Combs. (Attachments: # 1 Exhibit Letters of Support, # 2 Exhibit Course Evaluation and Curriculum, # 3 Exhibit Letter, # 4 Exhibit Letter, # 5 Exhibit Letter, # 6 Exhibit Letter, # 7 Exhibit Letter, # 8 Exhibit Letter, # 9 Exhibit Letter, # 10 Exhibit Letter, # 11 Exhibit Letter)(Steel, Brian) (Entered: 09/24/2025) |
| 09/24/2025 | 513 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 9/24/2025 re: clothing for hearings (Attachments: # 1 Proposed Order re Clothing) (Agnifilo, Marc) (Entered: 09/24/2025) |
| 09/25/2025 | 514 | MEMO ENDORSEMENT as to Sean Combs on re: 513 LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 9/24/2025 re: clothing for hearings. ENDORSEMENT: DENIED as to the hearing on September 25, 2025. The application was made the afternoon before the hearing, and it doesn't explain the basis for a clothing order of this kind outside of the context of a jury trial, whether this has been done in other cases, or whether relevant personnel were consulted and it posed any issues. The Court will entertain an application relating to the sentencing proceeding, but it needs to provide some explanation along these lines. SO ORDERED. (Signed by Judge Arun Subramanian on 9/24/2025) (bw) (Entered: 09/25/2025) |
| 09/25/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Oral Argument as to Sean Combs held on 9/25/2025. Defendant Sean Combs present with retained counsel. AUSAs Christy Slavik, Mitzi Steiner, Emily Johnson, Madison Smyser, and Meredith Foster present. Motion hearing held on September 25, 2025. Detention continued. (Court Reporter Andrew Walker) (ap) (Entered: 10/07/2025) |
| 09/26/2025 | 515 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 9/26/2025 re: non-prison clothing for sentencing hearing (Attachments: # 1 Proposed Order for non-prison clothing at sentencing)(Agnifilo, Marc) (Entered: 09/26/2025) |
| 09/30/2025 | 516 | SENTENCING SUBMISSION by USA as to Sean Combs. (Attachments: # 1 Exhibit Ventura Victim Impact Statement, # 2 Exhibit Venturas Victim Impact Statement, # 3 Exhibit Mia Victim Impact Statement, # 4 Exhibit Clark Victim Impact Statement, # 5 Exhibit Nash Victim Impact Statement, # 6 Exhibit Atkinson Victim Impact Statement) (Smyser, Madison) (Entered: 09/30/2025) |
| 09/30/2025 | 517 | ORDER as to Sean Combs: Upon the application of Teny R. Geragos, attorney for Defendant Sean Combs: IT IS HEREBY ORDERED THAT, the defendant Sean Combs, Inmate # 37452-054, will be permitted to receive non-prison clothing at the MDC to wear for his sentencing on October 3, 2025. He is permitted to have one button down shirt, one pair of pants, one sweater, and one pair of shoes without laces to wear to court. (Signed by Judge Arun Subramanian on 9/30/2025) (ap) (Entered: 09/30/2025) |
| 09/30/2025 | 518 | OPINION AND ORDER as to Sean Combs. After an eight-week trial, a jury convicted Sean Combs of two counts of transporting people for prostitution under the Mann Act. Dkt. 447. Before the government rested its case, Combs moved for acquittal under Rule 29. Tr. 7352; Fed. R. Crim. P. 29. The Court reserved its decision under Rule 29(b), and Combs renewed his motion after the verdict. Tr. 7391; Dkt. 485. He also moved for a new trial under Rule 33. Dkt. 485; Fed. R. Crim. P. 33(a). For these reasons, Combs's motion |

| | | under Rules 29 and 33 is DENIED. The Clerk of Court is directed to terminate Dkt. 485. (Signed by Judge Arun Subramanian on 9/30/25)(jw) (Entered: 09/30/2025) |
|---|---|---|
| 09/30/2025 | 519 | LETTER MOTION addressed to Judge Arun Subramanian dated 9/30/25 re: Victim Statement at Sentencing . Document filed by USA as to Sean Combs. (Smyser, Madison) (Entered: 09/30/2025) |
| 10/01/2025 | 520 | LETTER RESPONSE in Opposition by Sean Combs addressed to Judge Arun Subramanian from Marc Agnifilo, Esq. dated 10/1/2025 re: 519 LETTER MOTION addressed to Judge Arun Subramanian dated 9/30/25 re: Victim Statement at Sentencing .. (Agnifilo, Marc) (Entered: 10/01/2025) |
| 10/01/2025 | 521 | LETTER REPLY TO RESPONSE to Motion by USA as to Sean Combs addressed to Judge Arun Subramanian dated 10/1/25 re 519 LETTER MOTION addressed to Judge Arun Subramanian dated 9/30/25 re: Victim Statement at Sentencing .. (Smyser, Madison) (Entered: 10/01/2025) |
| 10/01/2025 | 522 | ORDER as to Sean Combs: Sentencing in this case will commence on Friday, October 3, 2025, at 10:00 AM, in Courtroom 26A of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007. (Sentencing set for 10/3/2025 at 10:00 AM in Courtroom 26A, 500 Pearl Street, New York, NY 10007 before Judge Arun Subramanian) (Signed by Judge Arun Subramanian on 10/1/2025) (ap) (Entered: 10/01/2025) |
| 10/01/2025 | 523 | SENTENCING SUBMISSION by Sean Combs. (Attachments: # 1 Exhibit Ex 83-Letters)(Steel, Brian) (Entered: 10/01/2025) |
| 10/02/2025 | 524 | MEMO ENDORSEMENT as to Sean Combs (1) granting 519 LETTER MOTION addressed to Judge Arun Subramanian dated 9/30/25 re: Victim Statement at Sentencing. ENDORSEMENT: The Government's motion is GRANTED. The Government cites to United States v. Sansone, No. 23-6193, 2024 WL 5087518, at *1 (2d Cir. Dec. 12, 2024), which held as follows: "While the CVRA provides certain victims with a statutory right to speak, it does not impose limits on who the district court may allow to speak. '[D]istrict courts have broad discretion both as to the type of information they may consider in imposing sentence and the source from which that information derives.' See United States v. Smith, 967 F.3d 198, 216 (2d Cir. 2020) (quoting United States v. Messina, 806 F.3d 55, 65 (2d Cir. 2015)). In passing the CVRA, Congress 'has not placed arbitrary limits on what information a district court may consider at sentencing.' Id. at 215. Victim-1's testimony about the damaging effects of Sansone's conduct was relevant to the district court's consideration of the statutory purposes of sentencing and Sansone had a fair opportunity to respond in his remarks to the district court." In response, the defense cites no authority that would support exclusion of Mia from speaking during the sentencing hearing. Though the defense argues that Mia has been discredited, it doesn't explain why she should be excluded given that the defense will of course be afforded a "fair opportunity to respond" to any remarks that Mia offers. Id. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 519. (Signed by Judge Arun Subramanian on 10/2/2025) (ap) (Entered: 10/02/2025) |
| 10/02/2025 | 525 | SENTENCING SUBMISSION by Sean Combs. (Shapiro, Alexandra) (Entered: 10/02/2025) |
| 10/02/2025 | 526 | MEMO ENDORSEMENT as to Sean Combs on re: 523 SENTENCING SUBMISSION by Sean Combs. ENDORSEMENT: The defense should furnish a copy of the video to the prosecution and the court by 5:00 PM today. (Signed by Judge Arun Subramanian on 10/2/2025) (ap) (Entered: 10/02/2025) |
| 10/02/2025 | 527 | SENTENCING SUBMISSION by Sean Combs. (Steel, Brian) (Entered: 10/02/2025) |
| 10/02/2025 | 528 | SENTENCING SUBMISSION by Sean Combs. (Steel, Brian) (Entered: 10/02/2025) |

| 10/03/2025 | | Minute Entry for proceedings held before Judge Arun Subramanian: Sentencing held on 10/3/2025 for Sean Combs (1) Count 3sss,5sss. Defendant Sean Combs present with retained counsel Marc Agnifilo, Teny Geragos, Alexandra Shapiro, Jason Driscoll, Brian Steel, Xavier Donaldson, and Nicole Westmoreland. AUSAs Emily Johnson, Christy Slavik, Mitzi Steiner, Madison Smyser, and Meredith Foster present. Special Agent Sean Quinn present. Detective Phil Adaszewski present. Court Reporters Steven Greenblum and Devon Gerber present. U.S. Probation Officer Angelica Deniz present. Sentencing hearing held. Defendant is sentenced to: 50 months imprisonment. 5 years of supervised release. Special assessment of $200. Fine of $500,000. Forfeiture of all property used or intended to be used to commit or facilitate the commission of the offenses charged in Counts Three and Five of the Indictment. See forthcoming Judgment and Forfeiture Order for full sentencing terms. (jbo) (Entered: 10/08/2025) |
| 10/06/2025 | 529 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 10/6/2025 re: designation (Agnifilo, Marc) (Entered: 10/06/2025) |
| 10/07/2025 | 530 | MEMO ENDORSEMENT as to Sean Combs on re: 529 LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 10/6/2025 re: designation. ENDORSEMENT: If the government has any objection to this recommendation, it should be filed by 5:00 PM on October 7, 2025. (Responses due by 10/7/2025) (Signed by Judge Arun Subramanian on 10/6/2025) (ap) (Entered: 10/07/2025) |
| 10/07/2025 | 531 | LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated October 7, 2025 re: Designation & JVTA Assessment Document filed by USA. (Slavik, Mary) (Entered: 10/07/2025) |
| 10/07/2025 | 532 | MEMO ENDORSEMENT as to Sean Combs on re: 531 LETTER by USA as to Sean Combs addressed to Judge Arun Subramanian from Christy Slavik dated October 7, 2025 re: Designation & JVTA Assessment. ENDORSEMENT: Application GRANTED. See Fed. R. Crim. P. 36. The Court will remove the JVTA Assessment from the forthcoming judgment. (Signed by Judge Arun Subramanian on 10/7/2025) (ap) (Entered: 10/08/2025) |
| 10/08/2025 | 533 | CONSENT PRELIMINARY ORDER OF FORFEITURE AS TO SPECIFIC PROPERTY as to Sean Combs. (Signed by Judge Arun Subramanian on 10/3/2025) (ap) (Entered: 10/08/2025) |
| 10/08/2025 | 534 | MEMO ENDORSEMENT as to Sean Combs on re: 529 LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 10/6/2025 re: designation. ENDORSEMENT: The Court will recommend a facility in the geographic location of the defense's choosing, but not the specific facility, which is determined by the Bureau of Prisons. For that reason, the Court will include the following recommendation, based on the defense's request: "The Court recommends that the Defendant be incarcerated as close as possible to the New York metropolitan area, and recommends that the Defendant be considered for admission to any available substance abuse program, including the Bureau of Prisons' Residential Drug Abuse Program (RDAP), for which he qualifies." If there is a different geographic location that the defense seeks, please advise the Court by Friday, October 10, 2025 at 12:00 pm. (Signed by Judge Arun Subramanian on 10/8/2025)(ap) (Entered: 10/08/2025) |
| 10/15/2025 | 535 | JUDGMENT In A Criminal Case. Date of Imposition of Judgment: 10/3/2025. Defendant Sean Combs (1) was found guilty on Count(s) 3sss and 5sss, after a plea of not guilty. The defendant has been found not guilty on Count(s) 1sss, 2sss, and 4sss. IMPRISONMENT: 50 months. - The court makes the following recommendations to the Bureau of Prisons: The Court recommends that the defendant be incarcerated as close as possible to the New York metropolitan area, and recommends that the defendant be considered for admission |

| | | |
|---|---|---|
| | | to any available substance abuse program, including the Bureau of Prisons' Residential Drug Abuse Program (RDAP), for which he qualifies. SUPERVISED RELEASE: 5 years. Standard Conditions of Supervision (See page 4 of Judgment). Special Conditions of Supervision (See page 5 of Judgment). ASSESSMENT: $200.00. FINE: $500,000.00. - Special instructions regarding the payment of criminal monetary penalties: The fine must be paid in full not later than 60 days after the date of sentencing. - The defendant shall forfeit the defendant's interest in the following property to the United States: all property used or intended to be used to commit or facilitate the commission of the offenses charged in Counts Three and Five of the Indictment. Pursuant to Fed. R. Crim. P. 32.2(b)(4), the consent preliminary order of forfeiture/money judgment dated 10/3/25 is included by reference in this judgment. (Signed by Judge Arun Subramanian on 10/14/2025) (bw) (Entered: 10/15/2025) |
| 10/15/2025 | 536 | ORDER as to Sean Combs. The Court's judgment in this case did not address the dismissal of the open counts in the original indictment, the first superseding indictment, or the second superseding indictment. The Court intends to amend the judgment, pursuant to Fed. R. Crim. P. 36, to indicate that all open counts in the original indictment, Dkt. 2, the first superseding indictment, Dkt. 144, and the second superseding indictment, Dkt. 169, are dismissed. The parties should inform the Court by 5:00 PM today if there are any issues with the Court amending the judgment along these lines. SO ORDERED. (Signed by Judge Arun Subramanian on 10/15/2025) (bw) (Entered: 10/15/2025) |
| 10/15/2025 | 537 | TRANSCRIPT of Proceedings as to Sean Combs re: Trial held on 5/21/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/5/2025. Redacted Transcript Deadline set for 11/17/2025. Release of Transcript Restriction set for 1/13/2026. (Moya, Goretti) (Entered: 10/15/2025) |
| 10/15/2025 | 538 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Trial proceeding held on 5/21/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 10/15/2025) |
| 10/16/2025 | 539 | AMENDED JUDGMENT In A Criminal Case. Date of Imposition of Judgment: 10/3/2025. Date of Original Judgment: 10/14/2025. Defendant Sean Combs (1) was found guilty on Count(s) 3sss and 5sss, after a plea of not guilty. The defendant has been found not guilty on Count(s) 1sss, 2sss, and 4sss. *The following counts are dismissed, without opposition from the parties: all open counts from the original indictment (Dkt. 2); all open counts from the first superseding indictment (Dkt. 144); and all open counts from the second superseding indictment (Dkt. 169). IMPRISONMENT: 50 months. - The court makes the following recommendations to the Bureau of Prisons: The Court recommends that the defendant be incarcerated as close as possible to the New York metropolitan area, and recommends that the defendant be considered for admission to any available substance abuse program, including the Bureau of Prisons' Residential Drug Abuse Program (RDAP), for which he qualifies. SUPERVISED RELEASE: 5 years. Standard Conditions of Supervision (See page 4 of Judgment). Special Conditions of Supervision (See page 5 of Judgment). ASSESSMENT: $200.00. FINE: $500,000.00. - Special instructions regarding the payment of criminal monetary penalties: The fine must be paid in full not later than 60 days after the date of sentencing. - The defendant shall forfeit the defendant's interest in the following property to the United States: all property used or intended to be used to commit or facilitate the commission of the offenses charged in |

| | | |
|---|---|---|
| | | Counts Three and Five of the Indictment. Pursuant to Fed. R. Crim. P. 32.2(b)(4), the consent preliminary order of forfeiture/money judgment dated 10/3/25 is included by reference in this judgment. (Signed by Judge Arun Subramanian on 10/16/2025) (bw) (Entered: 10/16/2025) |
| 10/16/2025 | | DISMISSAL OF COUNTS on Court as to Sean Combs (1) Count 1,1s,1ss,2,2s,2ss,3,3s,3ss. [*** Note: See Amended Judgment, Doc.# 539 . ***] (bw) (Entered: 10/16/2025) |
| 10/17/2025 | 540 | TRANSCRIPT of Proceedings as to Sean Combs re: Trial held on 5/29/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Devon Gerber, (212) 805-0320, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/7/2025. Redacted Transcript Deadline set for 11/17/2025. Release of Transcript Restriction set for 1/15/2026. (Moya, Goretti) (Entered: 10/17/2025) |
| 10/17/2025 | 541 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Trial proceeding held on 5/29/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 10/17/2025) |
| 10/17/2025 | 542 | TRANSCRIPT of Proceedings as to Sean Combs re: Trial held on 5/30/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Alena Lynch, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/7/2025. Redacted Transcript Deadline set for 11/17/2025. Release of Transcript Restriction set for 1/15/2026. (Moya, Goretti) (Entered: 10/17/2025) |
| 10/17/2025 | 543 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Trial proceeding held on 5/30/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 10/17/2025) |
| 10/17/2025 | 544 | TRANSCRIPT of Proceedings as to Sean Combs re: Trial held on 6/2/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Andrew Walker, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/7/2025. Redacted Transcript Deadline set for 11/17/2025. Release of Transcript Restriction set for 1/15/2026. (Moya, Goretti) (Entered: 10/17/2025) |
| 10/17/2025 | 545 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Trial proceeding held on 6/2/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 10/17/2025) |

A-66

| 10/20/2025 | 546 | NOTICE OF APPEAL by Sean Combs from 535 Judgment, 539 Amended Judgment. Filing fee $ 605.00, receipt number 43991. (tp) (Entered: 10/20/2025) |
|---|---|---|
| 10/20/2025 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Sean Combs to US Court of Appeals re: 546 Notice of Appeal - Final Judgment. (tp) (Entered: 10/20/2025) |
| 10/20/2025 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Sean Combs re: 546 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 10/20/2025) |
| 10/30/2025 | 547 | TRANSCRIPT of Proceedings as to Sean Combs re: Oral Argument held on 9/25/2025 before Judge Arun Subramanian. Court Reporter/Transcriber: Andrew Walker, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/20/2025. Redacted Transcript Deadline set for 12/1/2025. Release of Transcript Restriction set for 1/28/2026. (Moya, Goretti) (Entered: 10/30/2025) |
| 10/30/2025 | 548 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Sean Combs. Notice is hereby given that an official transcript of a Oral Argument proceeding held on 9/25/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 10/30/2025) |
| 11/20/2025 | 549 | LETTER MOTION addressed to Judge Arun Subramanian from USA dated November 20, 2025 re: Second Addendum to Protective Order . Document filed by USA as to Sean Combs. (Attachments: # 1 Exhibit Second Addendum to Protective Order)(Johnson, Emily) (Entered: 11/20/2025) |
| 11/24/2025 | 550 | SECOND ADDENDUM TO PROTECTIVE ORDER as to Sean Combs...regarding procedures to be followed that shall govern the handling of confidential material. SO ORDERED: (Signed by Judge Arun Subramanian on 11/24/2025) (bw) (Entered: 11/24/2025) |
| 11/26/2025 | 551 | LETTER by Sean Combs addressed to Judge Arun Subramanian from Teny Geragos, Esq. dated 11/26/2025 re: payment pursuant to Amended Judgment (ECF 539 ) (Agnifilo, Marc) (Entered: 11/26/2025) |
| 12/09/2025 | 553 | MEMO ENDORSEMENT as to Sean Combs on re: 552 NOTICE OF MOTION TO ENFORCE CRIME VICTIM RIGHTS PURSUANT TO 18 U.S.C. § 3771. ENDORSEMENT: If the parties would like to respond to this motion and supporting documentation that the Court has received, they may do so by December 23, 2025. See Dkt. 552. (Responses due by 12/23/2025) (Signed by Judge Arun Subramanian on 12/9/2025)(ap) (Entered: 12/09/2025) |
| 12/11/2025 | 554 | ORDER as to Sean Combs: The Court was informed that the submission at Dkt. 552 may contain sensitive information. The Clerk of Court is respectfully directed to seal the motion at Dkt. 552. (Signed by Judge Arun Subramanian on 12/11/2025) (ap) (Entered: 12/11/2025) |
| 12/15/2025 | 555 | ORDER as to Sean Combs: Because the Court has addressed Dkt. 549 at Dkt. 550, the Clerk of Court is respectfully directed to terminate Dkt. 549. SO ORDERED. (Signed by Judge Arun Subramanian on 12/15/2025) (lnl) (Entered: 12/15/2025) |

A-67

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/18/2025 13:35:32 | | | |
| **PACER Login:** | chrisjohnson31 | **Client Code:** | 624.1 |
| **Description:** | Docket Report | **Search Criteria:** | 1:24-cr-00542-AS |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

A-68

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SEAN COMBS,<br>　a/k/a "Puff Daddy,"<br>　a/k/a "P. Diddy,"<br>　a/k/a "Diddy,"<br>　a/k/a "PD,"<br>　a/k/a "Love,"<br><br>　　　　Defendant. | **SUPERSEDING INDICTMENT**<br><br>S3 24 Cr. 542 (AS) |

**COUNT ONE**
**(Racketeering Conspiracy)**

The Grand Jury charges:

Overview

1.  For decades, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, abused, threatened, and coerced women and others around him to fulfill his sexual desires, protect his reputation, and conceal his conduct. To do so, COMBS relied on the employees, resources, and influence of the multi-faceted business empire that he led and controlled—creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex trafficking, forced labor, kidnapping, arson, bribery, and obstruction of justice.

2.  SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy

Entertainment, Combs Enterprises, and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business included, among other things, record labels, a recording studio, an apparel line, an alcoholic spirits business, a marketing agency, and a television network and media company.

3.    At all times relevant to this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, engaged in a persistent and pervasive pattern of abuse toward women and other individuals. This abuse was, at times, verbal, emotional, physical, and sexual. As part of his pattern of abuse, COMBS manipulated women to participate in orchestrated performances of sexual activity with COMBS and, at times, with COMBS and male commercial sex workers. At times, COMBS, and others acting at his direction, made arrangements for women and commercial sex workers to fly to COMBS' location. COMBS ensured participation from the women by, among other things, obtaining and distributing narcotics to them, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation and violence.

4.    Physical abuse by SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, was recurrent and widely known. On numerous occasions from at least in or about 2009 and continuing for years, COMBS assaulted women by, among other things, striking, punching, dragging, throwing objects at, and kicking them. COMBS' violence was also not limited to these women. It extended to his employees, witnesses to his abuse, and others. On one occasion at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, COMBS kicked, dragged, and threw a vase at a woman as she was attempting to leave. When a member of the hotel security staff intervened, COMBS attempted to bribe the staff member to ensure silence. Subsequently, COMBS, with the assistance

A-70

of several close associates, paid hotel security staff $100,000 for the hotel's surveillance footage of the assault.

5.    SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, used the Combs Business, including certain employees, to carry out, facilitate, and cover up his acts of violence, abuse, and commercial sex.  Those employees— including security staff, household staff, personal assistants, and high-ranking supervisors—and other close associates acted as COMBS' intermediaries, and their conduct was facilitated and assisted by COMBS' control of the Combs Business.

<u>The Combs Enterprise</u>

6.    From at least in or about 2004, through in or about 2024, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and others known and unknown, were members and associates of a criminal organization (the "Combs Enterprise" or the "Enterprise").  Members and associates of the Combs Enterprise engaged in, and attempted to engage in, among other activities, sex trafficking, forced labor, interstate transportation for purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

7.    The Combs Enterprise, including its leadership, its members, and its associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity.  The Combs Enterprise consisted of: (i) SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant; (ii) entities within the Combs Business, including but not limited to Bad Boy Entertainment, Combs Enterprises, and Combs Global; (iii) individuals employed by and associated with the Combs Business; and (iv) others known and unknown.

A-71

8.    The Combs Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Combs Enterprise. The Combs Enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Combs Enterprise operated in the Southern District of New York and elsewhere.

9.    At all times relevant to this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, was the leader of the Combs Enterprise.

10.    SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and others known and unknown, participated in unlawful and other activities related to the conduct of the Combs Enterprise's affairs. These individuals included certain Combs Business employees, such as members of COMBS' security staff, household staff, personal assistants, and high-ranking supervisors, as well as other close associates of COMBS.

<u>Purposes of the Combs Enterprise</u>

11.    The purposes of the Combs Enterprise included the following:

a.    Operating a global business in the media, entertainment, and lifestyle industries, including, among other things, record labels, a recording studio, an apparel line, an alcoholic spirits business, a marketing agency, and a television network and media company;

b.    Preserving, protecting, promoting, and enhancing the power, reputation, and brand of SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, as a musician, entrepreneur, and figure in the entertainment industry;

c.    Enriching members and associates of the Enterprise, including its leader, COMBS, and in particular those who demonstrated loyalty to COMBS and willingness to conceal his crimes;

4

A-72

d.      Preserving, protecting, promoting, and enhancing the power of the Combs Enterprise, including the power of its leader, COMBS, through violence, use of firearms, threats of violence, coercion, and verbal, emotional, physical, and sexual abuse;

e.      Fulfilling the personal desires of COMBS, particularly those related to COMBS' sexual gratification, including through the exploitation of women and the use of commercial sex workers;

f.      Enabling COMBS and other members and associates of the Combs Enterprise to engage in unlawful acts of violence, including sexual violence; sex trafficking; forced labor; interstate transportation for purposes of prostitution; coercion and enticement to engage in prostitution; narcotics distribution; and other crimes, and concealing the commission of such acts;

g.      Securing absolute loyalty from members of the Combs Enterprise, including through acts of violence and threats; and

h.      Protecting the Combs Enterprise and its members and associates, including COMBS, from detection and prosecution by law enforcement authorities through acts of intimidation, manipulation, bribery, and threats of retaliation against individuals who witnessed the crimes committed by members and associates of the Enterprise.

Means and Methods of the Enterprise

12.     Among the means and methods by which SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and other members and associates of the Combs Enterprise conducted and participated in the conduct of the affairs of the Combs Enterprise included the following:

a.      COMBS, and other members and associates of the Combs Enterprise, wielded the power and prestige of COMBS' role at the Combs Business to intimidate, threaten,

and lure female victims into COMBS' orbit, often under the pretense of a romantic relationship. COMBS then used force, threats of force, and coercion, to cause victims, including but not limited to three female victims ("Victim-1," "Victim-2," and "Victim-3"), to engage in commercial sex acts. In connection with the commercial sex acts, COMBS provided the victims with, among other things, monetary payments, career opportunities, and payment of rent and housing expenses.

b.        Some of the commercial sex acts involved male commercial sex workers and were referred to by COMBS as, among other things, "Freak Offs." Freak Offs were elaborate and produced sex performances that COMBS arranged, directed, masturbated during, and often electronically recorded. In arranging these Freak Offs, COMBS, with the assistance of other members and associates of the Combs Enterprise, transported, and caused to be transported, commercial sex workers across state lines and internationally. Freak Offs occurred regularly, sometimes lasted multiple days, and often involved multiple commercial sex workers. During Freak Offs, COMBS distributed a variety of controlled substances to victims, in part to keep the victims obedient and compliant. Sometimes unbeknownst to the victims, COMBS kept videos he filmed of victims engaging in sex acts with commercial sex workers. After Freak Offs, COMBS and the victims typically received IV fluids to recover from the physical exertion and drug use.

c.        Members and associates of the Combs Enterprise, including high-ranking supervisors, security staff, household staff, personal assistants, and other Combs Business employees, facilitated the Freak Offs by, among other things, booking hotel rooms for the Freak Offs; stocking the hotel rooms in advance with the required Freak Off supplies, including controlled substances, baby oil, lubricant, extra linens, and lighting; cleaning the hotel rooms after the Freak Offs to try to mitigate room damage; arranging for travel for victims, commercial sex workers, and COMBS to and from Freak Offs; resupplying COMBS with requested supplies;

A-74

delivering large sums of cash to COMBS to pay the commercial sex workers; and scheduling the delivery of IV fluids. In or about March 2024, during searches of COMBS' residences in Miami, Florida and Los Angeles, California, law enforcement seized various Freak Off supplies, including narcotics and more than 1,000 bottles of baby oil and lubricant.

d.    Other commercial sex acts involved only COMBS and a female victim. As with Freak Offs, other members and associates of the Combs Enterprise assisted with arrangements for these commercial sex acts, including by arranging travel and accommodations for victims. At times, COMBS, with the assistance of other members and associates of the Enterprise, transported, and caused to be transported, victims across state lines and internationally in connection with the commercial sex acts. Like the Freak Offs, these commercial sex acts involving COMBS and a female victim were prearranged, sometimes lasted multiple days, were sometimes electronically recorded by COMBS, and often involved COMBS distributing a variety of controlled substances to the victim, in part to keep the victim obedient and compliant.

e.    COMBS subjected victims to physical, emotional, and verbal abuse to cause the victims to engage in Freak Offs and other commercial sex acts. COMBS maintained control over his victims through, among other things, physical violence, promises of career and financial opportunities, granting and threatening to withhold financial support, and by other coercive means, including tracking their whereabouts, dictating the victims' appearance, monitoring their medical records, controlling their housing, and supplying them with controlled substances. During and separate from Freak Offs and other commercial sex acts, COMBS, among other things, hit, kicked, threw objects at, and dragged victims, at times, by their hair. These assaults often resulted in injuries that took days or weeks to heal. Following the assaults, COMBS, with the assistance of

7

A-75

members and associates of the Enterprise, frequently worked to conceal his misconduct by offering to provide medical assistance or other financial benefits to the victims.

f.    COMBS also threatened victims' careers and livelihoods, including if they resisted engaging in sex acts with COMBS and, at times, with COMBS and male commercial sex workers. Victims believed they could not refuse COMBS' demands without risking their financial or job security or without repercussions in the form of physical or emotional abuse. COMBS also used the sensitive, embarrassing, and incriminating recordings that he made during Freak Offs as collateral to ensure the continued obedience and silence of the victims.

g.    Members and associates of the Combs Enterprise, including COMBS' security personnel, at times carried firearms. On more than one occasion, COMBS himself carried or brandished firearms to intimidate and threaten others, including victims of and witnesses to his abuse. In or about March 2024, during searches of COMBS' residences in Miami, Florida and Los Angeles, California, law enforcement seized firearms and ammunition, including three AR-15s with defaced serial numbers, as well as a drum magazine.

h.    Members and associates of the Combs Enterprise enabled COMBS' control over victims by following his directions regarding financial payments to victims, advancing or suppressing the victims' career opportunities, and acquiring the controlled substances COMBS used to keep the victims compliant. Members and associates of the Combs Enterprise at times witnessed COMBS' violence toward the victims, or the victims' injuries caused by COMBS, without intervening. Instead, members and associates of the Combs Enterprise helped conceal the violence and abuse by, among other things, assisting COMBS in monitoring and preventing victims from leaving locations, such as hotels or COMBS' residences. These occasions included instances in which a victim was required to remain in hiding—sometimes for several days at a

time—to recover from injuries COMBS inflicted, without being publicly observed. Members and associates of the Combs Enterprise also assisted COMBS in locating and contacting victims who attempted to flee his abuse.

i.    COMBS, along with members and associates of the Enterprise, also maintained control over certain employees of the Combs Business, whom he forced to work long hours with little sleep, through use of, among other things, physical force, psychological harm, financial harm, and reputational harm, and/or threats of the same. In doing so, COMBS, assisted by members and associates of the Enterprise, caused these employees to believe they would be harmed—including by losing their jobs—if they did not comply with his demands. With respect to one employee, COMBS used physical force, psychological harm, financial harm, and reputational harm, and/or threats of the same to cause the employee to engage in sex acts with COMBS.

j.    When employees, witnesses to his abuse, or others threatened COMBS' authority or reputation, COMBS and members and associates of the Enterprise engaged in acts of violence, threats of violence, threats of financial and reputational harm, and verbal abuse. These acts of violence included arson and multiple acts of kidnapping, including one instance of kidnapping during which COMBS carried and displayed a firearm to a female victim. In addition, on multiple occasions, COMBS threw both objects and people, as well as hit, dragged, choked, and shoved others. On one occasion, COMBS dangled a female victim over an apartment balcony.

k.    When COMBS' authority or reputation was threatened by the possibility of negative publicity or legal or law enforcement action against him, including in or about late 2023 following public allegations of COMBS' crimes, COMBS and members and associates of the Enterprise pressured witnesses and victims, including through attempted bribery, to stay silent and

9

not report what they experienced or knew to law enforcement. On phone calls, COMBS and other members and associates of the Enterprise, among other things, provided these victims and witnesses with a false narrative of events in an effort to conceal COMBS' crimes. COMBS caused these calls to be recorded on at least two occasions.

The Racketeering Conspiracy

13.    From at least in or about 2004, through in or about 2024, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and others known and unknown, being persons employed by and associated with the Combs Enterprise described in paragraphs 6 through 12 of this Indictment, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Combs Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

a.    multiple acts involving kidnapping, chargeable under the following provisions of state law: California Penal Code § 207 (kidnapping), California Penal Code §§ 21(a), 664 (attempt), California Penal Code § 31 (aiding and abetting), California Penal Code § 182 (conspiracy), New York Penal Law § 135.20 (kidnapping), New York Penal Law § 110.00 (attempt), New York Penal Law § 20.00 (aiding and abetting), and New York Penal Law § 105.10 (conspiracy);

b.    multiple acts involving arson, chargeable under the following provisions of state law: California Penal Code § 451 (arson), California Penal Code §§ 21(a), 664 (attempt), California Penal Code § 31 (aiding and abetting), and California Penal Code § 182 (conspiracy);

c.    multiple acts involving bribery, chargeable under the following provisions of state law: California Penal Code § 137(a) (bribery of a witness), California Penal Code §§ 21(a), 664 (attempt), California Penal Code § 31 (aiding and abetting), and California Penal Code § 182 (conspiracy);

d.    multiple acts indictable under Title 18, United States Code, Section 1512 (relating to tampering with a witness, victim, or an informant);

e.    multiple acts indictable under Title 18, United States Code, Sections 1589 and 2 (relating to forced labor);

f.    multiple acts indictable under Title 18, United States Code, Sections 1591 and 2 (relating to sex trafficking);

g.    multiple acts indictable under Title 18, United States Code, Sections 2421, 2422, and 2 (relating to transportation and inducement to travel for purposes of prostitution and other illegal sexual activities); and

h.    multiple offenses involving the possession with intent to distribute, or distribution of narcotics and controlled substances, including cocaine, oxycodone, alprazolam, 3,4-Methylenedioxymethamphetamine,    4-Bromo-2,5-dimethoxyphenethylamine,    gamma hydroxybutyric acid, ketamine, psilocyn, and methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), (b)(1)(E), (b)(2), and 846 (distribution and possession with intent to distribute and conspiracy to do the same), and Title 18, United States Code, Section 2 (aiding, abetting, and willfully causing).

14.    It was a part of the conspiracy that SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, agreed that a conspirator would

commit at least two acts of racketeering activity in the conduct of the affairs of the Combs Enterprise.

## Notice of Special Sentencing Factors

15.    From at least in or about 2009, up to and including in or about 2018, in the Southern District of New York and elsewhere, as part of his agreement to conduct and participate in the conduct of the affairs of the Combs Enterprise through a pattern of racketeering activity, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, agreed to, in and affecting interstate and foreign commerce, knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means a person, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(1).

16.    From at least in or about 2021, up to and including in or about 2024, in the Southern District of New York and elsewhere, as part of his agreement to conduct and participate in the conduct of the affairs of the Combs Enterprise through a pattern of racketeering activity, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, agreed to, in and affecting interstate and foreign commerce, knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means a person, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination

12

of such means, would be used to cause the person to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(1).

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
### (Sex Trafficking by Force, Fraud, or Coercion)

The Grand Jury further charges:

17.     From at least in or about 2009, up to and including in or about 2018, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, in and affecting interstate and foreign commerce, knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and solicited by any means a person, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in a commercial sex act, and attempted, aided and abetted, and willfully caused the same, to wit, COMBS recruited, enticed, harbored, transported, and maintained Victim-1, and attempted, aided and abetted, and willfully caused Victim-1, to engage in commercial sex acts, knowing and in reckless disregard of the fact that Victim-1 was engaging in commercial sex acts as a result of force, fraud, and coercion.

(Title 18, United States Code, Sections 1591(a)(1), (b)(1), 1594(a), and 2.)

## COUNT THREE
### (Transportation to Engage in Prostitution)

The Grand Jury further charges:

18.     From at least in or about 2009, up to and including in or about 2018, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a

"Diddy," a/k/a "PD," a/k/a "Love," the defendant, knowingly transported individuals in interstate and foreign commerce with intent that the individuals engage in prostitution, and attempted, aided and abetted, and willfully caused the same, to wit, COMBS transported, aided and abetted, and willfully caused the transportation of multiple individuals, including but not limited to Victim-1 and commercial sex workers, in interstate and foreign commerce on multiple occasions with the intent that they engage in prostitution.

(Title 18, United States Code, Sections 2421(a) and 2.)

## COUNT FOUR
### (Sex Trafficking by Force, Fraud, or Coercion)

The Grand Jury further charges:

19.     From at least in or about 2021, up to and including in or about 2024, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, in and affecting interstate and foreign commerce, knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and solicited by any means a person, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in a commercial sex act, and attempted, aided and abetted, and willfully caused the same, to wit, COMBS recruited, enticed, harbored, transported, and maintained Victim-2, and attempted, aided and abetted, and willfully caused Victim-2, to engage in commercial sex acts, knowing and in reckless disregard of the fact that Victim-2 was engaging in commercial sex acts as a result of force, fraud, and coercion.

(Title 18, United States Code, Sections 1591(a)(1), (b)(1), 1594(a), and 2.)

14

## COUNT FIVE
### (Transportation to Engage in Prostitution)

The Grand Jury further charges:

20.    From at least in or about 2021, up to and including in or about 2024, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, knowingly transported individuals in interstate and foreign commerce with intent that the individuals engage in prostitution, and attempted, aided and abetted, and willfully caused the same, to wit, COMBS transported, aided and abetted, and willfully caused the transportation of multiple individuals, including but not limited to Victim-2 and commercial sex workers, in interstate and foreign commerce on multiple occasions with the intent that they engage in prostitution.

(Title 18, United States Code, Sections 2421(a) and 2.)

## FORFEITURE ALLEGATIONS

21.    As a result of committing the offense alleged in Count One of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, any and all interests the defendant acquired or maintained in violation of Title 18, United States Code, Section 1962; any and all interests in, securities of, claims against, and property or contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any and all property constituting and derived from proceeds obtained, directly and indirectly, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

22.    As a result of committing the offenses alleged in Counts Two and Four of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1594, any and all property, real and personal, involved in, used, or intended to be used to commit or to facilitate the commission of said offenses and any and all property traceable to such property; any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offenses, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses and proceeds traceable to the commission of said offenses.

23.    As a result of committing the offenses alleged in Count Three and Five of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, shall forfeit to the United States, pursuant to (i) Title 18, United States Code, Section 2428, any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offenses; and any and all property, real or personal, that was used or intended to be used to commit or facilitate the commission of said offenses, and (ii) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

**Substitute Assets Provision**

24.    If any of the above described forfeitable property, as a result of any act or omission of the defendant:

16

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third person;

c.     has been placed beyond the jurisdiction of the Court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 18, United States Code, Section 1594;
Title 18, United States Code, Section 1963;
Title 18, United States Code, Section 2428;
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461.)

_____                    _Matthew Podolsky_____
FOREPERSON                                 MATTHEW PODOLSKY
                                           Acting United States Attorney

17

102

P5CAcom2                    Opening - Ms. Johnson

law.  And you will then, finally, retire to deliberate on your verdict.

I know this will be a long road, but I want to emphasize that you have a tremendously important task as jurors.  It is to determine the facts.  You, and not the Court, are the sole judges of the facts.  The Constitution itself recognizes your unique role in our system of justice.  So, please, pay careful attention to the witnesses and evidence received at trial, as well as my instructions on the law.

I thank you for your commitment to performing this civic duty and recognize the sacrifices that you have all made to be here today.

We will now begin with opening statements.  Is the government prepared to proceed?

MS. JOHNSON:  Yes, your Honor.

THE COURT:  All right.  You may proceed.

MS. JOHNSON:  This is Sean Combs.  To the public, he was Puff Daddy, or Diddy, a cultural icon, a businessman, larger than life.  But there was another side to him, a side that ran a criminal enterprise.

During this trial, you are going to hear about 20 years of the defendant's crimes.  But he didn't do it alone. He had an inner circle of bodyguards and high-ranking employees who helped him commit crimes and helped him cover them up. Kidnapping, arson, drugs, sex crimes, bribery and obstruction;

P5CACom2                    Opening - Ms. Johnson

these are just some of the crimes that the defendant and his inner circle committed again and again.  You are going to hear about all of them during this trial.

Let's start now with just one night.  The defendant was on the hunt for his girlfriend, a woman named Cassie.  For years, the defendant physically abused Cassie.  He also sexually exploited her, forcing her to have sex with male escorts while he watched and recorded it.  But that night, the defendant learned he had lost control of Cassie.  He found out Cassie was seeing another man.  Furious, he set out to find Cassie and that other man.  But he couldn't do it by himself.  So he took his gun and he took his bodyguard, one of his most loyal lieutenants, to wake up one of the defendant's employees in the middle of the night.

The defendant yelled that he was going to kill the man Cassie was with.  He demanded that his employee take him to that man's home.  The defendant forced the employee out of her apartment and into an SUV.  They drove to the house.  The defendant and his bodyguard broke in, but no one was there.

The defendant didn't give up.  He kept looking for Cassie.  When he finally found her, he did what he had done countless times before.  He beat her brutally, kicking her in the back and flinging her around like a rag doll.

All of that violence wasn't enough though.  The defendant had to make sure he had control over Cassie once

104

P5CACom2                        Opening - Ms. Johnson

again.  So he threatened her.  The defendant told Cassie that if she defied him again, he would publicly release the videos of her having sex with male escorts that he kept as blackmail. Souvenirs of the most humiliating nights of her life.

This was just one night in the defendant's two decades of crime.  In one night, he and his lieutenant kidnapped an employee, broke into a man's house, and the defendant beat and blackmailed his girlfriend.  And as you will learn, this was just the tip of the iceberg.  These are not the only crimes the defendant committed.  That's not the only time he kidnapped someone, and Cassie is not the only woman he beat or sexually exploited.

For 20 years, the defendant, with the help of his trusted inner circle, committed crime after crime.  That's why we are here today.  That's what this case is about.

Twenty years of crime is a lot to cover.  So, first, I'm going to walk you through what the evidence in this case will show.  Then, I will explain a little bit about the charges, and then I will tell you how the government will prove that the defendant is guilty beyond a reasonable doubt.  So what will the evidence show?

You'll learn that the defendant was a musician who created an empire.  He had a record label, Bad Boy Records, and other businesses that he ran or controlled.  Those businesses made the defendant rich, and he used money and resources from

P5CACom2                    Opening - Ms. Johnson

those companies to build his reputation and to feed his every desire. To do that, he relied on an inner circle of people closest to him, like his bodyguards, chiefs of staff, and other high-ranking employees who ran all aspects of his life. Together, the group worked to promote the defendant's power. They carefully cultivated and guarded his reputation. And they worked to get the defendant everything he wanted. He sometimes called himself the king, and he expected to be treated like one. He expected his inner circle to cater to his every desire, including his sexual desires.

For years, the defendant used his inner circle and his company's resources to sexually exploit multiple women, including women he forced and manipulated into having sex with male escorts, meaning men who the defendant paid to have sex with women while he watched.

No matter what, the defendant and his inner circle made sure he got everything he wanted. Many times, that involved committing crimes together and then covering up those crimes.

Those crimes included violent acts, like when the defendant bought his bodyguard and his gun to kidnap the employee I mentioned earlier. But you'll hear about other violence, too, like when the defendant's bodyguards kidnapped the same employee another time, forcing her to sit through days of lie detector tests, or when the defendant had a man's car

A-89

106

P5CAComm2                    Opening - Ms. Johnson

set on fire, or when the defendant dangled a woman over a balcony.  You'll see and hear evidence of all of this.

The defendant had impossible demands.  When his employees failed to meet those demands, the defendant threw things at them, threatened them, hit them, or pressured them to take drugs.  He even sexually assaulted one of them.

You'll also hear how the defendant used his employees to get and distribute drugs.  They delivered those drugs whenever the defendant asked, including so he could give those same drugs to the women he was forcing to have sex with male escorts.  He transported those women and those escorts across state lines and even out of the country for those sex acts.  And he used his inner circle and the vast resources of his business empire to help to arrange those trips and make the women available to him.

Let me be very clear on this next point.  This case is not about a celebrity's private sexual preferences.  The evidence will show that the sexual conduct at issue in this case was coercive and criminal, because the defendant made women have sex when they did not want to, because he threatened them, he drugged help, he lied to them, and he even used violence to make them do it.

A lot of this trial will focus on just two of those women.  Cassie, who I talked about earlier, and Jane.  Some of the details of what happened to Cassie and Jane may be hard to

A-90

107

P5CACom2                    Opening - Ms. Johnson

hear, but this is what the evidence will show happened.

The defendant used lies, drugs, threats, and violence to force and coerce, first, Cassie, and later Jane, to have sex with him in front of male escorts. The defendant insisted that the sex occur in a very specific, highly orchestrated way. These sexual performances lasted multiple days and they involved multiple escorts.

The defendant called these encounters by different names over the years. First, freak-offs. Later, wild king nights or hotel nights. Week after week, the defendant directed freak-offs in hotels across the country and sometimes out of the country. At times, the defendant had escorts and the women travel from out of state so the defendant's staff sometimes organized flights, cars, and hotels. The defendant's businesses paid those expenses.

The defendant had particular demands for freak-offs. At his direction, the defendant's staff set up the room in advance with supplies, like his preferred lighting, extra linens, and lubricant. His staff remained on call to refresh anything the defendant needed, like cash to pay the escorts or drugs for the women and the defendant.

The hotel rooms were dark. The defendant instructed Cassie and Jane how to look, to dress in lingerie, wear tall platform high heels, and have manicured white nails. The defendant selected drugs for Cassie and Jane to take. Usually

108

P5CACom2                    Opening - Ms. Johnson

MDMA, also known as Molly or ecstasy.  Sometimes those drugs made Cassie and Jane sick, but they also made the women more uninhibited and sexually aroused.

The defendant fed Cassie and Jane drugs throughout the freak-offs so they could stay awake and perform for him for hours and days at a time.  Once an escort arrived, the defendant dictated every step of the sexual activity that followed, sexual activity that followed the same pattern.  And he expected the women to enjoy themselves, to appear to, while they did it.  The defendant masturbated throughout the freak-offs and often video recorded part of them.

Now, I want to tell you more about Cassie and about Jane.  Cassie was a 19 year-old model, an aspiring singer with a hit song when she met the defendant in 2006.  The defendant was 17 years older than her and the head of a record label.  Soon, Cassie was signed to a ten album deal with that label.  The defendant pursued Cassie, and within a year, they were dating.  They stayed together on and off until about 2018.

During that time, Cassie tried to work on her music and in modeling and acting, but the defendant made her turn down many opportunities.  Instead, he paid for Cassie's cars, her apartments, and some of her day-to-day expenses.  Although Cassie recorded music constantly, the defendant, the head of her record label, had the final say on the music that she released.  It was never another album.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

109

P5CACom2                    Opening - Ms. Johnson

The defendant started abusing Cassie early on. Initially, Cassie fought back. But time and again, the defendant hit Cassie in the head, threw her to the ground and kicked her, and dragged her by the hair. In 2009, the defendant threw Cassie to the floor of an SUV and stomped repeatedly on her face.

To hide her injuries, the defendant forced Cassie to stay in a hotel for the next week. He refused to let her leave and he had a staff check on her to make sure she stayed put. The defendant also introduced Cassie to freak-offs early on. Soon, the defendant made it Cassie's job to find and book escorts for freak-offs. Freak-offs that were happening as often as once a week for days at a time. Meaning that for almost half of every week, Cassie was in a dark hotel room, high and awake for days, performing sex acts that she did not want to do on male escorts.

Cassie will tell you how she felt like she was choking when the defendant made an escort urinate in her mouth, and how she overdosed at a freak-off when she still had an open wound on her face from the defendant's most recent assault.

The defendant's physical attacks on Cassie happened at freak-offs too. As you will see on video during this trial, the defendant hit and kicked Cassie in the hallway of an LA hotel, trying to drag her back to the room where they had been with an escort. We'll talk more about that video later.

A-93

110

P5CACom2                    Opening - Ms. Johnson

Cassie tried the first freak-off because she loved the defendant and wanted to make him happy. After that, she knew it was not something she wanted to do. But because of the defendant, it became almost everything she did. Because if Cassie didn't do what the defendant wanted, the consequences were severe. Physically, the defendant beat her viciously, exploding over even the tiniest slight and beating her to show who was in charge.

He beat her when she didn't answer the phone when he called. He beat her when she left a freak-off without his permission. He beat her when he thought she took too long in the bathroom. The defendant taught Cassie that defying him could and often would end in violence. And when she tried to run away, he always found her. Often with the help of his inner circle.

And Cassie's career and livelihood were also in the defendant's hands, something the defendant made clear to Cassie. He told her he could destroy her career by releasing the videos that he recorded of her performing sex acts on dozens and dozens of male escorts. So Cassie knew that failing to please the defendant, refusing his demands, had more than just physical consequences. It had the power to ruin her life.

The defendant's control, the defendant's violence, and the defendant's threats, that is how the defendant ensured Cassie could not say no to him. So time and again, when the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-94

111

P5CACom2                    Opening - Ms. Johnson

defendant suggested to Cassie that they have a freak-off, she knew she had no choice but to agree and went to work setting one up.  She texted the escorts, arranged for them to come to hotels, and put on the performance the defendant wanted.  Her livelihood and her safety depended on keeping him happy.

Cassie's relationship with the defendant was complicated.  You will hear during this trial that both Cassie and the defendant were unfaithful, jealous, and at times angry.  But only one of them had power.  Only one had control.  And that was the defendant.  And with that power, and with that control, he made Cassie do his bidding in those dark hotel rooms.

You'll learn, though, that Cassie was not the only woman the defendant did this to.  This was part of a pattern.

Now, I want to tell you about Jane.  Jane was a single mom who started spending time with the defendant in 2020.  The defendant pursued and romanced Jane, who fell in love with him quickly.  Jane was not seeing other men, but the defendant was seeing other women at the time, so his relationship with Jane was not at all public.

For the first few months, their sex life was just the two of them and Jane was happy.  That was until the defendant introduced Jane to freak-offs.  One night, when they had already taken drugs and been having sex for hours, the defendant told Jane about freak-offs.  Jane agreed to try one

A-95

112

P5CACom2                    Opening - Ms. Johnson

to make the defendant happy.  To her surprise, the defendant said he would make it happen immediately, that very same night. He took her to a hotel where a room was already set up and an escort was on the way.  Jane was nervous and the defendant directed her step by step.

Jane thought the first freak-off was a one-time, wild night.  Jane was wrong.  The defendant continued asking Jane to have freak-offs and promising that if she did, they would spend quality time together, they would go on dates together, they would go on trips.  That was what Jane wanted more than anything, a real relationship.  So she agreed.  She helped plan freak-offs and reach out to escorts.  But even though the defendant promised her quality time and trips, he never delivered.  Those were just lies he told her to get more nights in dark hotel rooms with escorts.

Jane will tell you about those nights in detail, how she wanted the escorts to wear condoms, but many times the defendant did not let them.  And Jane will tell you how he had her take drugs to stay awake and aroused for days.  Jane tried twice to make it through these nights without drugs.  The first time, she broke down and had took ecstasy to finish performing for the defendant.  The second time, Jane vomited after having sex with one escort.  How did the defendant respond?  He told her to hurry up and get back into the room where another escort was waiting.

P5CACom2                    Opening - Ms. Johnson

Early on, Jane told the defendant that she didn't like freak-offs and she just wanted to be alone with him. She loved him desperately and wanted a real relationship with him. The defendant did not listen. Feeling stuck and sick of the strangers the defendant kept bringing to these hotel rooms, Jane tried to assert herself in small ways. She found two men, men who performed in pornography, and she invited them to join the freak-offs. That way, Jane could at least choose the other man she was forced to be intimate with.

Like he did with Cassie, the defendant eventually took steps to control Jane financially. The defendant wanted Jane available to meet with him at a moment's notice and he discouraged her from working. Jane's income plummeted. The defendant gave Jane money and later started paying the rent for the house that she lived with her child. That way, when Jane resisted the freak-offs and told him over and over that she wanted to stop, he had the power to coerce her back into the hotel rooms. And just as he had with Cassie, the defendant threatened Jane with the videos he recorded of her engaging in sex acts with the escorts.

But the lies, and the drugs, and the threats, were not the end of it. Not even a year ago today, Jane had the worst day of her life. The defendant came to Jane's house for an at-home date night. She and the defendant argued about another woman that the defendant had been seeing. Jane was upset and

A-97

114

P5CACom2                    Opening - Ms. Johnson

jealous.  She had now spent years in hotel rooms for forced sex while the defendant took his other girlfriends for dates and trips.

Jane hit the defendant and threw things at him.  The defendant became enraged.  So Jane tried to get away from him and hide.  She ran to her bedroom and locked the door.  He kicked it open.  She ran to her bathroom and locked the door. He kicked it open.  She ran to her closet and locked the door. He kicked it open.  She ran to the guest bedroom and locked the door.  He kicked it open.  She tried to run out the front door, but he grabbed her, in a chokehold, lifted her off the ground by her neck, and kicked her to the ground.

Later that night, they fought again.  And just as he had with Cassie, the defendant viciously attacked Jane.  He punched her in the face, kicked her while she was curled up in a ball on the ground, dragged her by her hair and her arm, and slapped Jane's face so hard she fell over.  When all of this was over, the defendant still did not let Jane be.  Instead, he told Jane you're not going to fuck up my night.  The defendant instructed her to put on an outfit and call up an escort for a freak-off.  He made Jane cover her black eye and bruising, take an extasy pill, and perform for the defendant with that escort.

Jane followed his instructions.  Like with Cassie, the defendant's violence had gotten him what he wanted.

The defendant's sexual violence did not stop at

A-98

115

P5CACom2                    Opening - Ms. Johnson

freak-offs though.  Cassie will tell you about the time when the defendant forced himself on her, having sex with her as she cried and repeatedly told him no.

And Mia, an employee who the defendant worked to the bone for years will tell you about the times that the defendant forced himself on her sexually, putting his hand up her dress, unzipping his pants and forcing her to perform oral sex, and sneaking into her bed to penetrate her against her will.

As I said before, the defendant had the power and the control, endless resources and a loyal inner circle who would stop at nothing to get what he wanted.  Amidst all this violence, the defendant and his inner circle had to make sure that nothing put the defendant's public image and his power at risk.  So as tirelessly as the defendant's inner circle worked to meet the defendant's every need, they also worked to cover up his crimes.

Remember the video at the LA hotel of the defendant attacking Cassie during a freak-off?  You will hear just how far the defendant, his bodyguards, and his chief of staff went to get what they thought was the only copy of that video.

The defendant first tried to pay off a hotel security guard with a wad of cash in exchange for his silence.  Then, the defendant and his chief of staff reached out to a different hotel security guard to broker a deal.  In exchange for the video from the hotel, the defendant gave the security guard a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-99

116

P5CACom2                    Opening - Ms. Johnson

brown paper bag full of $100,000 in cash, while the defendant's bodyguard and his chief of staff stood by.  This is far from the only time that the defendant's inner circle tried to close ranks and do damage control.

You'll hear how the inner circle covered up the defendant's brutal beatings by keeping Cassie in hiding for days.  You'll hear about the inner circle contacting witnesses of the defendant's abuse to feed them lies, including even after he knew about the investigation in this case.  Again and again the defendant and his inner circle tried to keep the defendant's crimes out of public view, to protect his reputation, and to protect his power.  That is what the evidence in the case will show.

For all of this, the defendant is charged with multiple federal crimes.  You'll hear a lot more on the charges at the end of the trial when the judge instructs you on the law, and his instructions control.  But for now, there are just a few points I want to highlight so you have context for what you'll hear during this case.

First, the defendant is charged with racketeering conspiracy based on his agreement to commit crimes as part of an enterprise.  I expect the judge will tell you that an enterprise is a group of people who work together for a common purpose of engaging in a conduct, a course of conduct, over a time.

117
P5CACom2                         Opening - Ms. Johnson

Here, you will learn that that enterprise is the inner circle I talked about, the bodyguards and high-ranking employees, like chiefs of staff.  Some of these people came and went over 20 years.  But I expect the evidence will show that the defendant was a through line.  He remained at the top, running that group, and he always had trusted bodyguards and advisors helping him.

Together, they agreed to commit different crimes, including kidnapping and arson, distributing drugs to other people, exploiting employees for labor, and in Mia's case, sex, bribery and obstruction, sex trafficking, and transporting people for prostitution.  That's all covered by the racketeering conspiracy charge.

The defendant is also charged separately for sex trafficking Cassie and Jane through force, fraud, or coercion.  Again, the judge's instructions control, but I expect you'll learn that fraud includes a lie about a material fact.  Coercion includes threats, and force includes violence.

The defendant is charged with using all three tactics to make Cassie and Jane participate in day's long, drug fueled, recorded sexual encounters with male escorts against their will.

Finally, he is charged with transporting Cassie, Jane, and male escorts across state lines for these sexual encounters.

A-101

118

P5CAcom2                        Opening - Ms. Johnson

How will the government prove to you beyond a reasonable doubt that the defendant is guilty of these crimes? You'll hear from witnesses, including Cassie and Jane, two of the defendant's victims. They will tell you how the defendant tried to control their lives, from their homes, to their careers, how the defendant used his control over them, his lies, his drugs, his threats, and his violence to force and coerce them into having sex with male escorts.

Cassie and Jane will describe freak-offs for you in painstaking detail. They will tell you some of the most personal and painful experiences of their lives. The days they spent awake in hotel rooms, high on drugs, dressed as characters to perform the defendant's fantasy, just as he directed them to do.

You'll also hear from some of the defendant's employees. You'll hear from Mia, who worked as the defendant's personal assistant for years, the employee he sexually assaulted. Mia is just beginning to grapple with the times the defendant forced himself on her sexually. Mia will tell you how she could not talk about what happened to her until recently, how she wanted to take the secret of what the defendant did to her to her grave.

You will hear from the employee who the defendant forced into that SUV with a gun from one of the defendant's chefs and from other personal assistants. They will tell you

119

P5CACom2                    Opening - Ms. Johnson

they worked punishing hours and days for the defendant, at times without any sleep.  They will tell you how the defendant ordered them to buy drugs for him, how they used all the resources at their disposal to make sure the defendant always had everything he desired, how they were expected to keep quiet about what they saw and what they heard in the defendant's homes.

You will learn that some of these witnesses and victims, including Cassie, have already received financial settlements from the defendant, or have filed lawsuits against the defendant.  But these witnesses will tell you that they'd trade any money from the defendant for not having been abused.

You will also hear from some of the escorts who participated in freak-offs with Cassie and Jane.  They will tell you how the defendant directed the sexual activity between the escorts and Cassie or Jane, down to the details of how they touched each other, the specific sex acts they performed, all while the defendant filmed it.  You will even hear from an escort who saw the defendant assault Cassie and drag her by her hair during a freak-off.

In addition to these witnesses, you will see documents that prove the defendant's crimes.  You'll see records from hotels, car services, and airlines, showing the dates and locations when the escorts and women traveled to meet the defendant for freak-offs.  You will see records of the physical

120

P5CACom2                    Opening - Ms. Johnson

damage the defendant in his freak-offs caused the hotel rooms where he stayed.  You will see dozens and dozens of text messages about freak-offs, including messages from the defendant to his staff asking for more cash to pay escorts. Messages where the defendant tells Cassie what drugs to take and when before a freak-off.  And messages from Jane to the defendant telling him over and over again that she did not want to do freak-offs.  And you will see videos of some of the freak-offs, the videos the defendant used to blackmail Cassie and to blackmail Jane.  Those videos capture just small parts of these day's long performances.  In them, you can hear the defendant providing direction to Cassie and Jane, and you will see Cassie and Jane do exactly what the defendant tells them to do.

You will see them put on a performance, high on ecstasy, where they pretend to enjoy themselves because that's what the defendant said he wanted.  You will see for yourselves the defendant's violence in its aftermath.  You will see a video capturing the defendant brutally beating Cassie during a freak-off at an LA hotel.  You will see photos of Cassie and her injuries from the defendant's assaults.  You will hear from witnesses who saw the defendant assault Cassie or saw injuries he inflicted on her.  You will see photos of the damage the defendant did when he kicked in four doors at Jane's home.  And you will see videos of Jane, with bruising still on her face,

P5CAcom2                    Opening - Ms. Johnson

days after the defendant attacked her and forced her to do a freak-off, not even a year ago.

You will see for yourself what the defendant had in his homes in March 2024 when they were searched. Guns, the defendant's so-called med bag full of illegal drugs, and freak-off supplies like lubricant and platform high heels.

Finally, you will see and hear evidence of how the defendant and his inner circle worked to keep his reputation and his power intact for all these years. You will see the agreement signed by the hotel security guard barring him from speaking about the $100,000 that the defendant paid him for that hotel security video.

You will hear recordings of phone calls when the defendant called Jane after Cassie had filed a lawsuit. You will hear him -- you will hear him try to manipulate Jane into saying she wanted to have freak-offs. You will hear him interrupt Jane when she pushes back. You will hear the defendant's thinly veiled references to continuing to pay for Jane's home in exchange for her silence, and you will see the text messages the defendant sent to his chief of staff right after talking to Jane to make sure that Jane's rent would still be paid on time. The evidence will come in piece by piece and it won't always come in chronological order. But by the end of this trial, when you've seen and heard all of the evidence, you will see how it all fits together. You will see how it proves

122

P5CACom2                    Opening - Ms. Johnson

that the defendant led and controlled an enterprise that enabled him and others working for him to commit many crimes. How it proves that he forced and coerced Cassie and Jane into sex with male escorts, including by having them travel to other states and countries so those sex acts could happen. And you will see how all of these crimes and the empire the defendant controlled were designed to fulfill his sexual desires, to protect his representation, and to keep his power.

At the end of this trial, we will have the opportunity to speak with you again. But between now and then, I would ask that you do three things.

First, please pay close attention to the evidence.

Second, please follow the judge's instructions on the law.

And, third, please use and trust your common sense.

If you do all that, you will reach the only verdict that is consistent with the law and the evidence in this case. That the defendant, Sean Combs, is guilty.

THE COURT: All right. Who will be presenting opening statements?

MS. GERAGOS: I am, your Honor.

THE COURT: And if you're in the gallery and you have a device, use this opportunity to silence it or it will be taken.

MS. GERAGOS: Good morning.

A-106

123

P5CACom2                    Opening - Ms. Geragos

Sean Combs is a complicated man, but this is not a complicated case. This case is about love, jealousy, infidelity, and money.

This case is about voluntary, adult choices made by capable adults and consensual relationships. This case is about those real-life relationships, and the government is trying to turn those relationships into a racketeering case, a prostitution case, and a sex trafficking case. It will not work.

Let's start with the basics, the most important things in this courtroom are you and him. At a time when everything in government can feel so uncertain, one thing has remained the same in our justice system, and that is standing between all of us and a criminal conviction, is a jury of our peers. That is you. You will hear the evidence. You will get to the truth. You will see the witnesses and evaluate them one by one.

And finally, finally, the story about this case can finally come out. Why do I say that? I say that because this case is not about what you've heard on the news, read in the news, or have seen on social media for the past year and a half. This case is not about what civil attorneys looking for a payday are trying to make my client out to be. There has been a tremendous amount of noise around this case for the past year and it is time to cancel that noise and hear and see the evidence that will be presented in this courtroom. And it will

A-107

124

P5CACom2                    Opening - Ms. Geragos

be crystal clear.

The story of Sean Combs is a fascinating one, but it is a human one.  We are going to tell you his story over the next two months in this courtroom.  And you will learn that he is a man who grew up here in New York City, in Harlem, who came from little, but built ground breaking, lawful businesses.  You will hear that he is a wealthy individual, but know that the evidence will show that nobody gave him this money.  He worked for it and no one gave him a dime.  It will show that he made every single dollar.  Recreated a culture and produced music that I believe you will hear will change the generation.  And I believe that the evidence is going to show that this ingenuity is what drew people to Mr. Combs.

Witnesses will share with you that Mr. Combs is a fascinating person, and that people are drawn to him.  Yes, he is famous.  Yes, he is wealthy.  And that's certainly part of it.  But he was charismatic and magnetic and a larger than life figure.  If you had any interest in climbing the social ladder at the time and being involved in the music industry, the apparel industry, spirits industry, attending his legendary parties, you wanted to be around Sean Combs.

You also wanted to be around him because of the benefits that came along with being with him.  As you listen to the evidence in this case, try to remember why that matters.  Try to remember why people stayed around him and why it

P5CACom2                        Opening - Ms. Geragos

matters.  I expect it will matter to you as the jury because he gave people opportunities and he gave people chances to work at his companies.  They believed he had a vision that few others had, and, for the most part, I believe the evidence will show you that they loved him.  I don't think that the witnesses will tell you they always liked what he did or how he behaved, but the real time text messages that you will review in this case show that the people really loved him.  And they believed that by being with Sean Combs, they were part of something special.

So, by now, you've heard the government say a lot of things about my client.  It's time for me to introduce you to him.  His name is Sean Combs.  You may have heard him by Puff Daddy, P. Diddy, Puffy, Diddy, but standing in this courtroom, at 55 years old, in the same place he was born and raised, he's going by the same name he was born with, Sean Combs.  My name is Teny Geragos and I am one of the attorneys honored to represent him.

The government started their opening statement by telling you this is about a 20-year racketeering influence corrupt organization act enterprise that he committed with his apparent trusted inner circle.  The only people in this courtroom who will tell you that they participated in, knew about, or came to an agreement to participate in a racketeering enterprise are the prosecutors.  Not one witness will get into this courtroom and will take that witness stand and tell you

A-109

126

P5CACom2                    Opening - Ms. Geragos

that they were part of any racketeering influenced corrupt organization act enterprise. And the reason is simple: There was not one.

You heard what the government tried to say the enterprise is, that he used his lawful businesses to feed his every desire, including sexual ones. This case is about Sean Combs' private, personal sex life, which has nothing to do with his lawful businesses. The government has no place here in this man's private bedrooms. The government can say over and over again that this is not about his private sex life, but the evidence will show you that it is.

The people who will come into this courtroom and testify are the people who would know about a racketeering enterprise, and those people will all say they knew nothing about any enterprise. That is because these hard working individuals were either doing their jobs as personal assistants, or as top executives running his successful businesses. These are individuals educated at places from Harvard to Howard University.

The prosecution will bring in those same employees and others into this courtroom and have them testify that Sean Combs has a temper. And when he drank, or when he did the wrong drugs, he would get violent. My client is not proud of that. But it is one of the many things we are going to own and fully admit right up front at this trial.

P5CACom2                    Opening - Ms. Geragos

Sean Combs has a bad temper.  He sometimes gets so angry or so jealous that he is out of control.  You will see evidence and you will hear some testimony that does not portray my client in a good light.  You will hear some text messages, some voice notes, and some witness testimony that may make you think I don't think this guy is a great guy.  I don't like how he just lied to his girlfriends.  I don't like the things he just said in that text message.

I want to tell you now there may be one point, there may be multiple points at this trial where you think I think he is a jerk and I think he is kind of mean.  But he is not charged with being mean.  He is not charged with being a jerk.  He's charged with running a racketeering enterprise.

(Continued on next page)

128

P5CsCOM3                          Opening - Ms. Geragos

MS. GERAGOS:  And though there was violence that you are going to hear about, you already have, that violence is not part of any RICO.  That violence is not connected to sex trafficking and that violence is not prostitution.

There was a name in criminal law for the violence that we will hear about and we will see at this trial.  It is called domestic violence.  It is called assault.  Domestic violence is a very serious matter.  I want to say that now.  It is a bad, illegal problem, and it is something that the law addresses. We take full responsibility that there was domestic violence in this case.

Domestic violence is not sex trafficking.  I want to say it again.  Domestic violence is not sex trafficking.  Had he been charged with domestic violence, had he been charged with assault, we would not be here right now.  We would not be sitting through an eight-week trial.  However, he has been charged with different crimes:  Sex trafficking, prostitution, racketeering.  These are federal crimes with their different statutes, they charge different elements, and he is simply not guilty of those crimes.

One of the central themes of my statements to you will be personal accountability and personal responsibility.  As the trial goes on, we will see that with each witness.  We are going to take that on ourselves.  We will not shy away from the things Mr. Combs did.  But we will not, we will not deny his

129

P5CsCOM3                           Opening - Ms. Geragos

personal responsibility or own the things he did not do.

We are telling you right now that he is physical, that he is a drug user, and I'm telling you he had a bit of a different sex life. For example, you have not heard any evidence in this case, but the prosecutors already told you about lubricant, and you may know of his love of baby oil.

Is that a federal crime? No. You will hear that he got IVs after ingesting drugs. Is that a federal crime? No. He will be responsible. He will be accountable for the things that he did. But we will fight for his freedom throughout the next eight weeks for what he did not do.

And he cannot be the only person in this case who accepts personal responsibility and accountability for his actions. The alleged victims who will testify in this case are capable, strong, adult women. They were all getting something each of them wanted from him and from being in a romantic relationship with him. And these adult, capable, strong women will have to take on the same level of personal responsibility for their lives that he is going to take on for his.

When any person in life makes an adult choice, that is a free choice. A free choice has pros. It has cons. You may think there are better choices. You may think there are worse choices. But that does not eliminate the personal responsibility behind those choices. And each of the women you will hear from, they all had the personal responsibility and

130

P5CsCOM3                    Opening - Ms. Geragos

the freedom to make the choices that they made.

You will hear from these women.  You will see these women.  You will meet them.  They will sit in that witness chair a few feet away, and you will evaluate them for yourselves.  You will see that they are capable, you will see that they are strong, and you will see that they made free choices every single day for years.

As you are listening to the evidence and you listen to them testify, I want you to ask yourselves:  What are all the ways that this individual had the ability to make that choice?  Ask yourselves:  What are they getting from being with Sean Combs?  They are not with him because they are stuck or because they are without a choice.  The government will try to show you that Sean Combs is the only one getting something from each of the alleged victims who testify in this case.  But with each of these individuals, ask yourselves, what is this person getting?  They are with him or they are working for him because they are getting something they want from being with him.  Now, with each person, that something may be different.  And it usually is.  But with each person, they are all getting something.

So as you listen to the evidence, watch closely to the role that jealousy plays in this case.  We have talked to you, both of us already, about jealousy and how it is pervasive and present in every single relationship.  But I want to also let you know it drives a lot of the choices that the alleged

131

P5CsCOM3                    Opening - Ms. Geragos

victims make here.

Combs is one of those men that, I'll submit to you, we all know.  The evidence is going to show that he is somebody who never married, but he needed to always have a woman around him.  He is a many-women man.  He has seven children by four different women.  And he is the kind of guy who is always in relationships.  In fact, he was always in multiple relationships.  But critically, he was not always honest about that fact.  And you'll find that even when he was, even when women knew he was in multiple relationships, this would drive a primal jealousy in people.  It would drive a lot of the choices you are going to see in this case.

You are also going to see that Sean Combs is extremely jealous.  You might think that it's hypocritical. You might not like it.  But you are going to see that he is also extremely jealous.  So as you're listening to the evidence and you're evaluating the testimony, ask yourself, what is causing that fight?  The answer is, without exception, jealousy or drugs. The hitting, the things we are going to take responsibility for, it is typically because of jealousy or drug use.  The role of jealousy here is critical and it's pervasive.

The evidence will show you that, over the course of the 20 years we will examine in this courtroom, we'll see the same women over and over.  They remained in multi-year relationships with him.  And I believe that you'll pretty much

132

P5CsCOM3                    Opening - Ms. Geragos

know about every relationship he's had over the past 20 years. Again, that's whether this is an employee or a girlfriend, you will pretty much know about every girlfriend he has had.

You will see that these women are strong, capable, and they were in love with him. You will see that breaches of trust, infidelity, and jealousy are what drove the domestic violence you will hear about. You will see that alcohol and drugs played a major role in his temper. The evidence is going to show you a very flawed individual, but it will not show you a racketeer, a sex trafficker, or somebody transporting for prostitution.

So, as we've said, you're going to hear from two women: Cassie and Jane. This case is, in large part, about his sexual relationships with these two women. And you're going to hear that they went to private hotel rooms to engage in what I expect some witnesses at this case to call the swingers lifestyle, which is essentially just a fancier terminology for threesomes by adults.

Sometimes Combs partook in the sex with his girlfriend and the male escort, and other times he watched while the male escort was having sex with his girlfriend. You heard the government call these freak-offs. I expect you will hear that. I expect you will also hear them called parties and entertainment.

You will hear from both Cassie and Jane about these

133

P5CsCOM3                          Opening - Ms. Geragos

nights.  They will testify about their relationships, and you will hear things that should never be heard in a federal courtroom.  I think you've heard that already.  You've heard things that may make you uncomfortable at first, that he liked to watch this.  You might hear about his kinky sex or his preferences for sex that may make you uncomfortable and may not be what you like to do in your bedroom.

But you are not here to judge him for his sexual preferences.  You are not here to judge him for all purposes. You are here to evaluate whether the government can prove beyond a reasonable doubt what they actually charged him with. They cannot.  You've also heard that in his relationships with both Cassie and Jane, he bought them things.  Yes, like every relationship, they got things from their boyfriend.  Here, a wealthy rapper, paid for their housing, he paid for Cassie's car, and he gave them money.  These are nice houses that he paid for.  It was a nice car that Cassie drove.  And they were nice vacations on private planes because he is a wealthy individual.  These were vacations that they took together as couples.  And as I've said, like every relationship, there was jealousy and there were flaws.

But as you evaluate the evidence in this case, remember that he is not charged with being a flawed individual or having a flawed relationship.  They did not stay with him over and over again because of force, fraud, or coercion.  The

A-117

134

P5CsCOM3                    Opening - Ms. Geragos

evidence in this case will show you that over and over again, day after day.  These women fought to be in a relationship. Fought to do what they wanted to do in consensual adult relationships.

This case started with Cassie, so I think it's best for me to start there.  I expect you will hear from her this week.  She will sit in this witness box and she will tell you about her 11-year relationship with Sean Combs.  You heard that they met when she was an up-and-coming artist.  What you didn't hear is that she had a boyfriend at the time, and he was in a very public relationship with the mother of four of his children named Kim Porter.

After the two fell in love and started dating, she broke up with her producer boyfriend.  But Combs, for his part, did not break up with Kim.  He remained in a public relationship with her, and that is something that caused extreme jealousy with Cassie.  He continued that relationship with Kim Porter until her tragic untimely death from pneumonia in 2018.  This is important because, as you look at the evidence and as you evaluate Cassie and Combs' relationship, you will see that their fights, their cheating, their jealousy, it typically surrounded his cheating or it surrounded hers. This is something that plagued their relationship until the very last day.

The evidence will show you that he was extremely

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-118

135

P5CsCOM3                    Opening - Ms. Geragos

jealous of Cassie's actual or perceived infidelities, and she was uncontrollably jealous of his. This led to a toxic relationship between two people that I expect the evidence will show deeply, deeply loved each other. Perhaps they did not always show love to one another the way you would with your partner, but they were in a relationship and she was not being trafficked.

You will see that over and over again in this decade-long relationship. These two fought about his inability to remain faithful. I expect Cassie to tell you about the jealousy of Kim Porter and another girlfriend that he started dating in 2014 named Gina. This jealousy is something that plagued their relationship, even the day of the InterContinental video in the elevator bank, that much of you told us during jury selection that you saw. That day, unfortunately, jealousy was on full display. And in combination with the bad drugs that I expect Cassie to testify that Combs took, it led to domestic violence in the elevator bank.

This assault happened almost 10 years ago on March 5 of 2016. I expect that we are all going to see this video many, many times throughout this trial. You are going to see it later today, and I expect you to see it many more times throughout this week. You're going to see it a lot. But I want to start by saying two things.

P5CsCOM3                    Opening - Ms. Geragos

First, what Combs did to Cassie on this videotape is indefensible. It is horrible. It's dehumanizing. It's violent. It's virtually every bad word you can think of. And while it is dehumanizing and violent and terrible, the second most important thing is that it is not evidence of sex trafficking. It is evidence of domestic violence. You will see that it is also evidence of the central theme in this case, which is jealousy. That's what this videotape shows you.

As you watch it later today and as you watch it throughout the week, I want you to look for two things. The first part is Cassie walking out of the hotel room, walking down the hallway. She is carrying two bags, and you see that she makes it to the elevators, and then Combs comes down wearing only a towel. He pulls Cassie by the hoodie and she falls to the floor. He kicks her in her back side and he stomps her on the back of her leg and he starts to drag her by her hoodie back to the hotel room. You will see him walk away momentarily with her bags. And you will see this. Then he comes back around and walks towards her, and she is kind of in the left part of the screen. When he comes towards her, he has nothing in his hand. And when he walks away from her, you will see an illuminated phone in his hand. He wanted this phone and he got it.

Please understand that this video is overwhelming evidence of domestic violence, but it's overwhelming evidence

P5CsCOM3                    Opening - Ms. Geragos

that this domestic violence is over a phone and not because of sex trafficking. What causes a fight about a phone? We can all use our life experiences to show us that. Phones keep the secrets of infidelity. And you will hear that there was another fight even later that year, again, about a phone. I'm not justifying the assault, not by a long shot, but I'm putting it in the proper context. Because you will see that as soon as he gets the phone, he sits down. He's visibly disgusted. He broke a vase, and he threw flowers and stayed away.

The video has a second part. Cassie calls security from the hotel phone. The security officer comes to the floor, and I expect you will hear from him later today. Combs is sitting in the chair slumped over. He's holding his head in his hands and the security officer tells them to leave the public area of the hotel where they are making a commotion. You will see Cassie turn to Combs and gesture to her. And pay attention to the words that I think you will see her say to him, which is, Get back to the room.

Two parts. Both of them important and both of them important to show that Combs assaulted Cassie. But you can't stop there because he is not charged with assault. Is it because of sex trafficking, as the government is going to argue to you, or is it because of something else?

I expect the evidence, even just this week, will show you that the fight was over a phone. These two stay together

Case: 25-2623, 12/23/2025, DktEntry: 34.1, Page 125 of 254

A-121

P5CsCOM3                    Opening - Ms. Geragos

two more years after this incident.  And to understand how and to understand why is to understand how this relationship ended. You'll hear that, even into 2018, these two were fighting to stay together.  But the evidence will show you that in the summer of that year, of 2018, she woke up to a gossip site that showed a photo of Combs and Gina, the same woman who he had started having an affair with in 2014, or a relationship with, I should say, walking out of The Standard Hotel together.

Cassie could not come back from it.  She could not give him another chance.  And instead, she made the choice, as she often did, when he was caught in public with Gina, to break up with him and date another man.  For Cassie, she made a choice every single day for years.  A choice to stay with him. A choice to fight for him.  Because for 11 years, that was the better choice.  That was her preferred choice.  And so she made the choice to stay with him until one day she decided she was going to break up with him because that was her preferred choice.

So it's important for you to remember as you evaluate the evidence, because she was not coerced to continue or engage in this sex life with Sean Combs.  When she made the decision to leave, there were no repercussions, as the government hinted.  She made the choice to leave.  She communicated it to him and she ran into the arms of another man, a physical trainer who Combs had hired to train her.

P5CsCOM3                    Opening - Ms. Geragos

So I will ask you, ladies and gentlemen, pay close attention to the messages, the realtime communications between these two individuals, and the messages surrounding their breakup. Does Combs release the videotapes the government was just talking about? No, he doesn't. You will hear that the government raided two of his homes, you have already heard that, over a year ago. They seized countless electronic devices. The only freak-off videos you will see or hear about at this trial came from her devices that she kept for five years.

So when the government talks about power and control, who had the power? Who had the control? The government did not find any freak-off videos with Cassie on those devices. And so going back during the time of Cassie and Combs' breakup, Cassie is already dating her now husband. She is with him for months as she is breaking up with Combs, all while telling Combs she still loves him.

And then in November of 2018, Kim Porter tragically passes away from pneumonia. Knowing that Combs would be distraught and wanting to be there for him, she did everything she could to be there. She came to memorial service at his home. She flew to Kim's home state of Georgia to be at the funeral. Don't lose the sight of the fact that, amidst a breakup, all the way at the end of 2018, she flew to a funeral service to be there for him and support him and his family

A-123

140

P5CsCOM3                    Opening - Ms. Geragos

during this trying time of their life.

And at the service at their home, Combs, to a group of loved ones, former employees, and others, and to many people on social media who were paying respects, said, and I quote, "Kim was my soulmate." In Cassie's presence for everybody to hear, he said, She was my soulmate.  The end of the relationship between Cassie and Combs is important, and I want you to focus on the evidence of how and why it ended.  When Combs publicly said Kim Porter was his soulmate to all the people around him who were there, for the first time maybe ever, Cassie realized all the things she would not be.

I expect many witnesses at this trial to tell you she wanted to be Combs' wife.  I expect even she may tell you that. That is what she spent 11 years trying to get.  And in one day, it became clear to Cassie she was never going to be that.  And if she was never going to be Combs' wife, if she was never going to be the love of his life, then she would leave.  And that is what she did, on her terms, her choice, for reasons that, for her, were the right reasons.

This is where bringing personal experience to this jury matters.  This is something we have all been through. That one life event you can point to where you can say that is when I knew it was over.  Because that is what this was for her.  Because this was a relationship, although toxic at times, like every other relationship, it was not based on coercion.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

141

P5CsCOM3                    Opening - Ms. Geragos

It was not based on force.  At a certain point, you know you're not going to get what you need from that other person and you leave.

After Kim's funeral, they never saw each other again. The very first time that this former couple will see each other after six and a half years of a breakup is in this courtroom later today or tomorrow.  We are all going to witness their closure, and that is because she moved on with her life and he moved on with his.  You will see that she married the trainer. She had two children with him.  And she's pregnant with her third.  And Combs also moved on with his life.

As you listen to her testimony, as you read her messages closely, evaluate what Combs' intent was at the time. Evaluate what he understood about what she wanted during those 11 years that they spent together.  What he understood, I expect the messages to show you, was that she was a willing participant in their sex life.  That was a voluntary adult choice by two capable adults.  What Cassie may testify to this week, six years after a breakup, is not a match for the realtime evidence that you will have.  The realtime text messages I urge you to read.  Evaluate his intent, which is the only thing that matters here.

The government also talked to you a lot about Jane. She is the other woman that the government alleges Combs sex-trafficked.  She was his girlfriend of three years, and she

A-125

142

P5CsCOM3                    Opening - Ms. Geragos

comes into his life several years after the Cassie breakup. He, I think you will find in the evidence, is a little bit different in 2020 and 2021 than he was when he was dating with Cassie. And I think the most important reason you will see is that he was more upfront about his dating life. Rather than saying that he was only dating one person, he was very upfront with Jane. I expect her to tell you that he was dating multiple different women.

However, as I started my opening statement, this did not stop the jealousy. Jane's relationship with Combs was plagued by jealousy. Their relationship was not the 11-year public romance that Combs and Cassie had. The problem is that Jane wished that it was. The government told you that their relationship was not public. You are going to hear from Jane why that was. There were many different reasons why that was.

And so, after a period of time, their relationship becomes primarily sexual. Jane is also older than Cassie was when she started dating him, and she was living her own life in a different state raising her child. She is a capable, strong adult woman. And you are going to hear, as I expect that you've already heard, that pretty soon after her relationship with Combs started, he brought up the idea of whether she would want to have sex with another man. Again, like a consensual threesome. And Combs would watch. She agreed, and they went to a private hotel room, away from his employees, away from

A-126

143

P5CsCOM3                    Opening - Ms. Geragos

family.  And I expect that she will testify that she enjoyed that night.  She laid down on the couch after and said to herself, like, wow, I can't believe I just did that.

And you will see that Combs really began to love these hotel nights with her.  And I expect that she will testify that she began to do everything possible to make these nights incredible for Combs.  That includes finding the best male entertainment to join them, to wear the outfits he would find the sexiest, and saying all the things during these nights that would excite him.

I expect she will testify she did this because she loved him.  She was desperate to spend time with him, to be with him, and ultimately, to give him something none of the other girlfriends that he was dating at the time were giving him.  She will tell you that she tried many times to change the tenor of the relationship from one of a purely sexual nature to something maybe deeper or more meaningful.  I'm not sure exactly how she will put that to you, but she will testify that it always came back to what they would call parties, which were these nights in hotel rooms.

And the evidence will show you that she did it over and over again for three years because she made the choice.  And this became their time together.  This became their sex life.  And I expect that she will testify that she realized that if she didn't have these hotel nights with Combs, they may

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

144

P5CsCOM3                    Opening - Ms. Geragos

not get their alone time together, which is time she so deeply craved.

I expect she will tell you that she kept coming back over and over again because she did it for the affection, she did it for the love, for the cuddle, and because she knew it would make him happy. And she wanted more than anything to make him happy. She was unable to resist him emotionally, and her desire to be with him outweighed all other considerations of hers.

The government told you about a phone call they had in November of 2023. I expect the evidence will show you that even after this phone call, she continued. She flew out to see him many more times, and continued willingly engaging in these nights. The evidence is going to show you a toxic and dysfunctional relationship between these two individuals. And you may think to yourself, wow, he is a really bad boyfriend. But the evidence is going to show you that she is a capable, strong woman who willingly engaged in their sex life so they could spend time together. That is simply not sex trafficking.

I expect her to testify that she was a willing participant, and being a willing participant in your own sex life is not sex trafficking. I expect her to also testify that there were nights she engaged in the sex because she hoped she could turn their relationship from one of a more sexual relationship into something more. And she will testify that

P5CsCOM3                    Opening - Ms. Geragos

if she walked away, she would have lost him.  That is not something she was willing to do.

And as I said, you will see her jealousy on full display at this trial.  And you will see that she was willing to engage in these nights with Combs, and then she would be on social media after, and she would see he was with another one of his girlfriends, either out to dinner or traveling, and she would send messages with regret afterwards.  These are born out of jealousy, which was the root of their troubles.  And regret does not mean that she was coerced.  Her jealousy drove her to make the moves that she made.

As I said, every single witness in this case had free choice to make the choices that they made.  The jealousy of other women in Combs' life was one of hers.  Seeing the other women that he would be on social media posts with or otherwise drove her to try to be in first place and made her more desirous of their time together.  This was the way to get there and the evidence will show you that that is simply not a crime.

The government also told you about a night a year ago where Jane hit Combs.  Once again, as I said, this was a night born out of jealousy.  You will hear, as you've already heard, that he also hit her back.  But what you didn't hear was the start of the fight.  She was overcome by jealousy that night.  She slammed his head down on her kitchen counter.  This is how the fight started.  I do not want to justify this night.  I do

P5CsCOM3                    Opening - Ms. Geragos

not want to justify the assault.  But I simply am here to tell you that the evidence will show you that it starts because she slams his head on her kitchen counter.

And you are also going to hear that less than a month or approximately a month after this assault, an incident of domestic violence at her home, she flew to Combs' home in Miami.  She called an escort and had what I expect her to say was one of her best hotel nights that she had with one of their regular escorts.

Now, during the testimony of both Cassie and Jane, I expect the government is going to put in a bunch of videotapes of the so-called freak-offs or hotel nights or wild king nights, however you would like to call them, into evidence. These videotapes depict what we've been telling you about, Sean Combs, one of his girlfriends, and a man.  These videos, we believe, are powerful evidence that the sexual conduct in this case was consensual and not based on coercion.

But I want to say one thing to you now.  Some of you may find them hard to watch.  Not because they are violent, not because they are non-consensual, but because they were never meant to be seen by people outside of that room.  They are in one word - intimate.  And they were always meant to remain that way.  The reason these videos will be seen by you is because the government has chosen to take possession of these videos and to put them into evidence in a federal courtroom.  Playing

P5CsCOM3                    Opening - Ms. Geragos

these videos will feel invasive, but the government has charged him with sex trafficking, and the evidence of the alleged sex trafficking is on these videos.  This is why you will have to see them.

You may hear about other women.  The government told you about someone named Mia, for example.  I urge you to pay attention to these other women's realtime communications with Combs.  Ask yourself, why are they making this allegation now? What is their motive?  You will conclude, like you will with every single other witness in this case, that everybody who testifies has a motive.

With Mia, for example, I ask you to evaluate her motive when you listen to her testimony.  What are the reasons she is saying what she might be saying now, what she never said before, and certainly never said when she first started cooperating with the government?  This is someone you should evaluate her messages carefully, ones of unbelievable love for Combs throughout her employment.

You are also going to hear from several other past employees of his.  They will try to paint a picture for you of a hostile workplace.  As I've said with nearly every single witness in this case, when these people testify, ask yourself: Why did anybody, if they were so scared and if this was so hostile, ever call the police?  Why not?  I expect that the evidence will show you that the testimony against him, their

148

P5CsCOM3                    Opening - Ms. Geragos

former boss, for many, not all, is vindictive or they are being subpoenaed to give it.

Like every other witness, ask yourself: What is the something? What is the reason that they stayed. You will find, with every single person, they had a something. So when you hear from the witnesses who testify here who will tell you they were victimized, and you ask yourself, What is their motive? For many of them, the answer is simple: Money.

This criminal case started because of Cassie. Not because she went to law enforcement with her allegations, but because she filed a public lawsuit against Combs in November of 2023, at this time when she was having financial trouble and living in her parents' modest home in Connecticut with her family. Rather than go to law enforcement about what had allegedly happened to her, she went to a civil lawyer who is here today.

I expect that this trial, from nearly every witness that you hear from, they will tell you that instead of going to law enforcement, after either their employment ended for the alleged victims, they went to a civil lawyer for a money grab. They will claim that they were so afraid of this man that they could, of course, not go to the police because he was so powerful. But they were not so afraid that they could not go to civil lawyers to make money demands against him. Demands for unbelievable amounts of money. More than any of us have

149

P5CsCOM3                    Opening - Ms. Geragos

ever made.

Cassie, for example, will tell you that she first made a demand on Combs for $30 million. Another witness will tell you that in a breach of contract case, she made a demand for $22 million. And as you listen to these witnesses -- and there will be many, as the prosecutor told you -- who made civil demands against him, I want you to ask yourself: How many millions of reasons does this witness swearing to tell the truth, and nothing but the truth, have to lie? How many hundreds of thousands of reasons does this witness swearing to tell the truth, and nothing but the truth, have to lie?

Will you really believe that these people who have demanded an unimaginable amount of money from Mr. Combs would have traded all of that to not have been abused? Because if that is the case, I submit that you will consider, why did they never go to law enforcement?

So, in closing, the evidence will be framed to prove from the government, they will attempt to prove racketeering influence and corrupt organizations act charge, two sex trafficking charges, and two prostitution counts. The evidence you will hear at this trial will not make out any of them. The conspiracy charged is that Combs allegedly committed two counts of acts of kidnapping, one act of arson, a bribery, an obstruction of justice, forced labor, and drug trafficking.

I'm going to take these briefly, briefly in turn, and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

150

P5CsCOM3                    Opening - Ms. Geragos

then I'm going to ask you to evaluate the evidence by the witnesses who will testify about these acts.

First, he did not commit any of these acts. In terms of the alleged bribery and the obstruction of justice, this relates to the InterContinental Hotel incident that we've talked about this morning. You will hear, as you already did, that he paid money to a security guard at the InterContinental so the footage would go away. This was solely, solely related to preventing bad publicity for both Combs and Cassie, and had nothing to do with obstructing a law enforcement investigation. No law enforcement investigation existed, period. That is a requirement. And so the evidence will show you he simply did not commit those acts.

As to the kidnappings and the arson, I submit that you are not going to find there were any kidnappings, and he was simply not involved in the alleged arson. The government told you that the kidnappings relate to one employee, who I am telling you the evidence will show worked for Combs for almost a decade. As you listen to her testimony and evaluate: Was this person actually kidnapped? I expect the evidence is going to show you that, even after the criminal investigation into Combs started, she asked to work for him again 12 years after her employment ended. 12 years after she claimed she had been kidnapped the last time. Now, more than a decade after these kidnapping acts. And so the evidence is going to show you that

A-134

151

P5CsCOM3                        Opening - Ms. Geragos

he simply did not commit them.

As to the drug trafficking, I submit the evidence is going to show you that the drugs are personal-use drugs for him and, at times, the women he was with. And those drugs have nothing to do with an enterprise.

As to the forced labor, you will see that Combs worked hard, his employees worked hard, but they were there to do something great and novel for his lawful businesses. It was not forced. Being there was an adult, free choice like everything else in this case.

Second, the RICO conspiracy requires a group effort, even if the group is two people. And there will be no evidence of that. So as you are listening to the evidence, ask yourself: Who is Combs actually conspiring with to violate the racketeering influence corrupt organization act? The answer will be no one.

Finally, the last of the charges I will talk to you about are the two counts that charge him with causing interstate travel for the purposes of prostitution. For him to be guilty, I expect the judge will tell you that he had to intentionally engage in what he knows to be prostitution. What the evidence is going to be is that he was paying different men for their time and an experience.

Think about the pornography industry, for example. Actors in pornographic movies are paid for their time, and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

152

P5CsCOM3                    Opening - Ms. Geragos

generally they have sex.  Otherwise, it wouldn't be pornography.  You also hear about many companies, I expect you'll hear from one later today, called Hunkomania, a company called Cowboys4Angels that advertise online across the country where you can pay money for time and an experience.

These escort companies are common and they do not advertise themselves as money for sex.  They advertise themselves as money for time and money for an experience.  And that is what Sean Combs was doing.  He was paying money for that experience.

So, in closing, I ask you once again to listen carefully to all of the evidence.  You are not here to judge or impose your moral beliefs onto this man.  You are here as a jury of his peers to determine whether the government can meet its burden of proving beyond a reasonable doubt that he committed these crimes.

When you hear the evidence, when you go back into the jury room and evaluate the evidence in light of the crimes that are actually charged here, you will return the only verdict that the evidence demands, that is he not guilty of these crimes.

THE COURT:  All right.  At this time, I think it's appropriate for us to take a break for lunch.

We are going to take a little bit longer of a break today because I think that some of the folks in the jury office

A-136

247

P5CsCOM3                          Phillip - Direct

bachelorette party.

Q.  How did you respond?

A.  I told him I would do it.

Q.  To what location did your boss send you?

A.  To the Gramercy Park Hotel.

Q.  Where is that hotel located?

A.  In Gramercy Park, downtown Manhattan.

Q.  What were you expecting to do at the Gramercy Park Hotel?

A.  I was expecting to go do a little strip tease, and that was it, just for a bachelorette party, a group of women, and then leave.

Q.  At what time of day did you arrive at the Gramercy Park Hotel?

A.  Um, probably sometime after midnight.

Q.  So nighttime?

A.  Nighttime.

Q.  What happened when you arrived at the Gramercy Park Hotel?

A.  When I arrived, Cassie opened the door.  And she asked me, um, if I was OK if it was just going to be us, because I was expecting to see a group of women there, but there was only her standing the door.  And, um, she asked me to come into the room.

     Um, we were standing, in, like, a foyer.  And she basically said it was her birthday and that her husband wanted to do something special for her, and so she asked me if I would

A-137

248

P5CsCOM3                     Phillip - Direct

mind rubbing baby oil on her and giving her a massage.  And, um, you know, wherever things went from there, if it went, if, you know, based on how comfortable I was.

Q.  Let me ask you some followup questions.

A.  Sure.

Q.  Did you know her name at that moment?

A.  No.

Q.  Did you later learn her name?

A.  Yes.

Q.  And what did you later learn her name was?

A.  Casandra Ventura.

Q.  And what did you call her during your later interactions?

A.  C.

Q.  When she first opened the door and invited you just inside the door, what was Ms. Ventura wearing?

A.  Um, lingerie, like, a red lace outfit with high heels, a red wig, and some sunglasses, dark sunglasses.

Q.  And after Ms. Ventura told you about her husband being there and baby oil, what, if anything, did she give you when you were in that entryway of the hotel room?

A.  Um, she asked me, um, if I --

MR. DONALDSON:  Objection.

THE COURT:  Rephrase the question.

Q.  After telling you what she wanted that evening, what did Ms. Ventura say next?

A-138

249

P5CsCOM3                    Phillip - Direct

A.   She told me that, first off, that I didn't have to worry about anything because her husband wasn't gay.  I remember her saying that to me, and he wasn't going to try to touch me or anything.  And I told her, that's good, because I wasn't with that.  And then, um, she told me that, um, she knew that my boss told her that she --

MR. DONALDSON:  Objection.

MS. COMEY:  Your Honor, it's not offered for the truth, just to provide context for the statement coming next.

THE COURT:  That's overruled.

THE WITNESS:  Continue?

THE COURT:  You may continue.

A.   OK.  Um, she -- she told me that she knew that my boss had told her that she had to give me $200 upon arrival.  And, um, at that point, she gave me a few thousand dollars and said that, um, that, you know, at the end, she would tip me when I'm leaving, before I'm leaving.

Q.   After she handed you cash, what part of the hotel room did you go into with Ms. Ventura?

A.   We went into the main living room area.

Q.   What kind of hotel room was this room?

A.   It -- I believe it was a suite.

Q.   What did the living room area look like when you walked into it that night?

A.   It had, like, velvet couches straight ahead, and it opened

A-139

252

P5CACom6                        Phillip - Direct

BY MS. COMEY:

Q.  Mr. Phillips, we'll talk about that conversation later.

A.  Okay.

Q.  Let's focus now on when you first entered the room and when you first started interacting with Mr. Combs.

    After you had that brief conversation with him, what did you and Ms. Ventura do?

A.  We ended up having sex.

Q.  Before you and Ms. Ventura had intercourse, what if anything did you rub on each other?

A.  Baby oil.

Q.  For about how long did that last?

A.  Couple minutes.

Q.  And then what happened?

A.  And then I ended up having sex with her.

Q.  What was Mr. Combs doing while you and Ms. Ventura rubbed baby oil on each other?

A.  He was sitting in the corner masturbating watching us.

Q.  What was he doing while you and Ms. Ventura were having sex?

A.  He was sitting in the corner masturbating.

Q.  About how long did the sex with Ms. Ventura last that first time?

A.  Not long at all.

Q.  And how did that sexual encounter end?

255

P5CACom6                    Phillip - Direct

Q. And who was in the hotel room when you returned to it?

A. The same two people, Cassie Ventura and Sean Combs.

Q. About how long were you in that hotel room this second time?

A. A few hours.

Q. What do you remember happening over those few hours?

A. The same thing. It was literally the same exact scene basically.

I -- we rubbed baby oil on each other. We had sex again for longer this time, and then I was done. I do not recollect whether or not they gave me anything after that, money wise.

Q. What was Mr. Combs doing while you were having this sexual encounter with Ms. Ventura?

A. He was masturbating in the corner.

Q. And what, if anything, do you remember him saying during this second sexual encounter?

A. At what point? While we were --

Q. Yes.

A. I don't know if I remember him saying anything.

Q. At the end of that sexual encounter with Ms. Ventura and Mr. Combs, at that point when you left, did you know who Ms. Ventura was?

A. Yes.

You're saying when I left the hotel the second time?

A-141

256

P5CACom6                    Phillip - Direct

Q. Yes.

A. No.

Q. When did you learn who she was?

A. My boss looked her up and told me who she was.

Q. Approximately how many more times did you have sex with Ms. Ventura in front of Mr. Combs for money?

A. Well, I had sex with Cassie a few times after that.

Q. Did you ever meet Ms. Ventura and Mr. Combs in person for any reason other than to have sex with Ms. Ventura in front of Mr. Combs?

         MR. DONALDSON:  Objection.  Form of the question.

         THE COURT:  You can rephrase the question.

Q. Every time you met with Ms. Ventura and Mr. Combs, what was the purpose of the meeting?

A. To have sex with Cassie.

Q. In front of who?

A. In front of Mr. Combs.

Q. Approximately when was the last time you met in person with Ms. Ventura and Mr. Combs?

A. I'm estimating, but probably the end of 2013, early 2014.

Q. In what city did all of these meetings take place?

A. New York.

Q. In what borough?

A. Manhattan.

Q. At what locations do you remember having these encounters

259

P5CACom6                      Phillip - Direct

A.  I want to fuck you right now.

Q.  And are those the kind of vulgar text messages you would send her?

A.  Not often, but once or twice, yeah.

Q.  To the best of your recollection, did Cassie ever respond to those vulgar text messages?

A.  I don't think so.

Q.  During your sexual encounters with Cassie and Mr. Combs, generally how were the rooms decorated?

A.  Sometimes sheets or like towels on the couch.  The curtains were always shut fully.  There was always a table in front of the couch, and there was always candles on that table.  And also bottles of baby oil or Astroglide and then there were a few occasions where they would ask me to actually go to the pharmacy and pick those things up.  I guess because they didn't have them at their location.

Q.  Across all of these encounters, how often did you use baby oil?

A.  Every time.

Q.  Other than that first time at the Gramercy Park Hotel, who directed you to use baby oil?

A.  Well -- are you asking -- okay.  I think I understand.

So the first time Cassie did.  And then I guess we kind of knew what to do after that.  But Sean Combs would often tell us, y'all need to rub more baby oil on each other.  Your

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-143

260

P5CACom6                    Phillip - Direct

not like -- you don't have enough on.

Q.  So what types of things do you remember Mr. Combs saying to you and to Ms. Ventura about baby oil during these encounters?

A.  He would just tell us to put more on.

Q.  Across all of these encounters, after the first one, who if anyone gave directions about how to engage in sexual activity?

A.  Sean Combs did.

Q.  What are some of the directions you remember Mr. Combs giving to you and Ms. Ventura?

A.  He would tell us things like slow down, you know, y'all stop now, separate from each other, it's getting too much now, it's getting too hot, y'all -- you know, one time he had us try to role play like we had just met at an airport and, yeah, we were not very good at that at all.  So I think we skipped past that one really quickly.

Yeah.  But mainly, it was more like, you know, don't cum yet, don't cum.  If you feel like you're going to cum, don't cum yet.  Things like that.

Q.  About how often during these encounters would Mr. Combs tell you to wait to ejaculate?

A.  I mean, it was often.  But I think he started really directing us from like the second time on.  So the first encounter he didn't really say much to us.  But after that, he would tell us what to do after that.

Q.  So, again, focusing just on the second time forward.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-144

266

P5CACom6                    Phillip - Direct

Ms. Ventura?

          MR. DONALDSON:  Objection.  Leading.  If any.

          MS. COMEY:  Your Honor, it's who, if any.

          MR. DONALDSON:  I'm sorry.  I didn't hear that part.
My apologies.  Withdrawn.

          THE COURT:  All right.

Q.  Who, if anyone, recorded any -- recorded your encounters
with Ms. Ventura?

A.  Sean Combs.

Q.  About how many times do you remember Mr. Combs recording
you and Ms. Ventura during these sexual encounters?

A.  Again, I would be estimating, but once or twice.

Q.  And what do you remember Mr. Combs using to record those
encounters?

A.  I do believe a cell phone and a camcorder device.

Q.  What, if any, form of identification do you remember
Mr. Combs asking you for?

A.  He asked me for my ID, my driver's license.

Q.  What do you remember about that?

A.  He took my driver's license and took a picture of it.  And
then said to me it's just for, you know, insurance, just in
case.

Q.  What did you understand him to be telling you?

A.  That if I spoke about this to anybody, that he'd prob --

          MR. DONALDSON:  Objection.

                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

A-145

274

P5CACom6                    Phillip - Direct

A.  No.

Q.  Have you ever been paid for sex since you last saw Ms. Ventura and Mr. Combs?

A.  No.

Q.  When you were able to sexually perform with Ms. Ventura in front of Mr. Combs, what were you paid?

A.  Again, it could have ranged -- oh, you're saying when I couldn't?

Q.  When you could.  When you could.

A.  Okay.  It could range anywhere from $700 to thousands of dollars.

Q.  And when you could not sexually perform with Ms. Ventura in front of Mr. Combs, what were you paid?

A.  Nothing.  Sometimes nothing.

Q.  If there were times when you were not paid, why did you go back to more meetings with Ms. Ventura and Mr. Combs?

A.  Well, I, for one, was not someone that was getting paid for sex.  In my head, I was just excited that I was in this world and, you know, happy to, to be involved with people with such notoriety.  I didn't care if I got paid one way or another.  I never asked them for a single dollar.  They gave that to me every time that I went to see them.

     So for me, it was just, you know, this is just something that they do.  They have that kind of money.  They want to share it with me.  I'm fine with that.

296

P5CsCOM7                    Phillip - Cross

Q. And your business that you worked for also prohibited prostitution, correct?

A. Yes.

Q. Then when you met with Cassie Ventura on that first day, you were not going for prostitution, correct?

A. Correct.

Q. You were going to optimize the ladies experience, correct?

A. I have no idea what that means.

Q. You have no idea what the company slogan that you worked for means?

A. In regards to me going there to optimize the ladies experience?

I don't know what you're referring to. Can you be specific with your question?

Q. Yes.

The company slogan was to provide the ultimate ladies night experience, correct?

A. That was the company's slogan, yes.

Q. You worked for the company, correct?

A. Correct. Yes, I did.

Q. The company sent you to a lady that night, correct?

A. Yes, they did.

Q. So you were going there to do the ultimate ladies night experience, correct?

A. I certainly was going there to give a great experience,

306

P5CsCOM7                    Phillip - Cross

To your left or to your right?

A.   If I'm facing the couch?

Q.   Yes.

A.   Mr. Combs would be in the room to the left.  The living room is to the left of me.  Once I turn left and face forward toward the open room, Mr. Combs would be sitting on the right side of the room in the back of the room.

Q.   All right.  And I believe you said on direct he wasn't saying anything, correct?

A.   At that moment, no.

Q.   Now, while you are standing there with Cassie and after you receive the money, you were going to start rubbing baby oil on her, correct?

A.   Correct.

Q.   She began rubbing baby oil on you, correct?

A.   Correct.

Q.   And this is while she still had on her lingerie, correct?

A.   At that point, at some point, our clothes were off.  She wasn't rubbing baby oil on me with my clothes on.

Q.   Let's walk through it.

A.   Sure.

Q.   So, you get in there, you have -- I'm sorry.  I forget this part.

You were wearing a New York City Police Department shirt, correct?

307

P5CsCOM7                        Phillip - Cross

A.  That's correct.

Q.  And you were wearing that shirt because your boss told you that the person in the hotel wanted you to be wearing a New York City police officer uniform, correct?

A.  Yes.  Um, if you don't --

Q.  Yes or no?

A.  If you don't mind, could you please talk into the microphone.  I can hardly hear you when you step away.

Q.  I'm sorry.

Your boss told you that you, the dancer needed to be wearing a New York City Police Department uniform, correct?

A.  That is correct.

Q.  You couldn't find one, correct?

A.  That is correct.

Q.  So you went out and bought a T-shirt?

A.  Yes.

Q.  And then you went to Gramercy Hotel wearing the New York City Police Department T-shirt?

A.  Correct.

Q.  When you got inside the hotel, after you got the money, you had to take that off to get the oil rubbed on you, correct?

A.  That's correct.

Q.  And you took the oil off in front of Cassie or you went someplace else to do that?

A.  I took the oil off?

A-149

309

P5CsCOM7                    Phillip - Cross

A. Sure.

Q. When you say it started to get intimate --

A. Um-hmm.

Q. -- you mean that you're rubbing her down, you're rubbing her breasts, you're rubbing her whole body down, correct?

A. After she started touching me, yes, I started touching her erotically, as well.

Q. And at that point, Mr. Combs in the corner, he's not saying anything, correct?

A. No. He was in the corner masterbating immediately.

Q. OK. And while you are -- while Cassie is rubbing you down --

A. Um-hmm.

Q. -- it appears that she is enjoying herself, would that be fair to say?

A. Yes.

Q. And you are rubbing her down and you are enjoying yourself, correct?

A. Yes.

Q. And then that's why you're saying you became -- it started getting intimate, correct?

A. Correct.

Q. Because you started getting sexually aroused, correct?

A. Absolutely, yes.

Q. And it appeared to you that she was getting sexually

A-150

310

P5CsCOM7                    Phillip - Cross

aroused, correct?

A.  Yes.

Q.  And it appeared to you that she wanted more than just a rubdown, correct?

A.  Yes.

Q.  And at some point, she took off your underwear, correct?

A.  I took off my underwear.

Q.  You took off your underwear, correct?

A.  Correct.

Q.  And after you took off your underwear, I imagine at that point, she is still rubbing you down, correct?

A.  We're rubbing each other down.

Q.  Well, we'll get to that.

    She was rubbing you down after you took off your underwear, correct?

A.  Correct.

Q.  And she started massaging your penis, correct?

A.  I don't recall, like, the particulars of how that happened. I just know we ended up happening sex.

Q.  OK.  So you didn't have sex standing up, correct?

A.  No.

Q.  So after you're standing up rubbing each other down, you then move to another part of the room, correct?

A.  We basically were where we did our -- where we had sex the whole time.  We were by the couch.  We had sex on the couch.

312

P5CsCOM7                    Phillip - Cross

A.   -- what position I had her in?

Q.   I asked that --

A.   It was a missionary position.

Q.   OK.  So after the missionary position, you got up and then you decided to leave, correct?

A.   I was told that we were done and I could get dressed now. I didn't just decide to leave.

Q.   Now, at that point in time, because you were still working for the service, you were not -- you knew you were not engaging in prostitution, correct?

A.   I didn't know what the hell just happened.  I was in complete shock and just was, like, did that just happen.  I -- I -- I wouldn't have thought twice to think that that was prostitution.

Q.   OK.  And then you left the hotel, correct?

A.   Correct.

Q.   And then within five minutes, you got a phone call from Cassie, correct?

A.   That is correct.

Q.   And at that time, Cassie asked you could you come back and have another orgasm, correct?

A.   Correct.

Q.   And you said absolutely, correct?

A.   Correct.

Q.   And she said, Give me 30 minutes to take a shower, correct?

A-152

354

P5DCcom1                          Phillip - Cross

Q. And at that time when you came back, you stayed for approximately one or two hours; is that right?

A. For a few hours, yes.

Q. And I believe you said on direct that during the time of this Gramercy Park Hotel visit, Mr. Combs was not saying anything, correct?

A. During which time?

Q. During the first time or the second time.

A. During what time are you referring -- I didn't say he didn't say anything, he did speak to me.

Q. While you and Ms. Ventura Cassie were having sex for a few hours, Mr. Combs was quiet in the corner, correct?

A. Correct.

Q. And so for those two hours of you having sex with Ms. Cassie Ventura at the Gramercy Park Hotel, it would be fair to say that Ms. Ventura took the lead in the sexual intercourse, correct?

A. No.

Q. You took the lead?

A. We were equally just doing our thing. I don't -- I wouldn't say there was a leader.

Q. Ms. Ventura and you decided on what positions you would do in this sexual intercourse of those few hours, correct?

A. Correct.

Q. You and Ms. Ventura decided together what types of sex you

A-153

355

P5DCcom1                    Phillip - Cross

would have with those few hours, correct?

A. Correct.

Q. And on that time period when you were with Ms. Ventura at the Gramercy Park Hotel, she wasn't drunk, correct?

A. Correct.

Q. She did not appear high, correct?

A. I'm sorry. Can you repeat that.

Q. She did not appear to be under the influence of any narcotics, correct?

A. Correct.

Q. And you did not see her consume any alcohol, correct?

A. Correct.

Q. You did not see her take any drugs that day, correct?

A. Correct.

Q. So from your perspective, for those two hours that you were having sexual intercourse with Ms. Ventura, it's fair to say she was in complete control of everything she was doing, correct?

A. I cannot say that.

Q. Now, you also said on this first time with Ms. Ventura at the Gramercy Park Hotel you did not wear a condom, correct?

A. Correct.

Q. And she did not ask you to wear a condom, correct?

A. Correct.

Q. And it's fair to say you did ejaculate that day, correct?

381

P5DsCOM2                    Phillip - Redirect

A.  No.

Q.  Had anyone ever asked you to check whether they were accurate?

A.  No.

Q.  Do you recall being asked about whether you told prosecutors in March of this year that you could not recall Mr. Combs directing you and Ms. Ventura about what positions to use during sexual intercourse?

A.  Yes.

Q.  Can you explain why you didn't remember that in March of this year, but you do remember that today?

A.  Because he -- Sean Combs definitely did direct us, direct Cassie to give me blow jobs, and also to rub each other down in certain ways with baby oil and stuff.  And so I -- my hesitation is in what would be considered directing you sexually, the positions.

        I don't know if he's referring to actual intercourse or the actual experience altogether.  But, either way, he was directing us for what to do in terms of touching each other in sexual ways.

Q.  So let's break that down.

        Who would direct you and Cassie to rub baby oil on each other?

A.  Sean Combs.

Q.  And who would direct Cassie to perform oral sex on you?

382

P5DsCOM2                    Phillip - Redirect

A.   Sean Combs.

Q.   Who would direct you and Cassie to have sexual intercourse with each other?

A.   Sean Combs.

Q.   Do you recall being asked yesterday on cross-examination about the timing of when Cassie handed you cash during your first meeting at the Gramercy Park Hotel?

A.   Yes.

Q.   How did the amount of money that Cassie handed you that first night compare to the fee you were owed for your stripping services?

A.   Can you repeat that?

Q.   How did the amount of money that Cassie handed you that first night at the Gramercy Park Hotel compare to the amount of money you were owed as a fee for your stripping services?

A.   It was roughly $3,800 more.

Q.   And over all of your meetings with Cassie and with Mr. Combs, when you could perform sexually, what were you paid?

A.   Anywhere between $700 and five or $6,000.  I'm estimating. I couldn't say definitively.

Q.   When you could not perform sexually, how much were you paid?

A.   Most of the time, nothing.  I don't recall if there was a time that they gave me money for times that I couldn't have sex with her.

407

P5DsCOM2                    Ventura - Direct

A.   Yes, that's the InterContinental Century City.

Q.   What were you and Sean doing at the InterContinental Century City at the time of this image was captured?

A.   We were having an encounter that we call a freak-off and I was leaving there.

Q.   We're going to get back to that specific incident later on.

     You just mentioned the word freak-off.  Do you recall that?

A.   Yes.

Q.   Who introduced you to the term freak-off?

A.   Sean did.

Q.   And how did you learn what a freak-off was?

A.   Um, within the first year of our relationship, um, Sean proposed to me this idea, this sexual encounter that he called voyeurism, where he would watch me be -- have intercourse and sexual activity with a third party, specifically another man.

Q.   And how did it come -- how did the term freak-off come about?

A.   I honestly don't remember exactly how it came about.

Q.   Can you describe for the jury, when you say the term freak-off, what that entails?

A.   Um, it basically entails the hiring of an escort and setting up this experience so that I could perform for Sean.

Q.   And what did the performance involve, at a high level?

A.   The performance involved -- I'm sorry.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-157

408

P5DsCOM2                              Ventura - Direct

Um, it just involved watching, Sean being able to watch me with the other person and, um, actually direct, like, direct us on what we were doing sexually.

Q. And when you say the other person, who are you referring to?

A. Um, the third party, the escort or dancer that would be hired.

Q. Who was in charge of all the aspects of the freak-offs you mentioned, the hiring, the setup, etc.?

A. Eventually, it became a job for me, pretty much, um, to where I knew if that is something that he wanted to do, I had the contacts to set it up and get a hotel room and all of that.

Um, but in the beginning, Sean set it up. He was in charge.

Q. And after it became your job, how did you know what to do?

A. He would tell me.

Q. When Sean first proposed freak-offs, what was your reaction?

A. Oh, I just remember, like, my stomach falling to my butt, like, just the nervousness and the confusion in that moment.

I think I was 22 at the time. I had just turned 22. I don't ...

I didn't have a concept of how that would be a turn-on, but I also felt a sense of responsibility with him sharing something, um, like that with me. So, yeah, I was

A-158

409

P5DsCOM2                          Ventura - Direct

confused, nervous, but also loved him very much and wanted to make him happy, so ...

Yeah.

Q.  Did you agree to try a freak-off when Sean first proposed one?

A.  I did.

Q.  After that, were there more freak-offs?

A.  Yes, there were.

Q.  How, if at all, did your willingness to engage in freak-offs with Sean change over time?

A.  I mean, pretty quickly over time.  I knew that it wasn't something that I wanted to be doing, especially as regularly as it became.  Um, but, again, I was just in love and wanted to make him happy.

Q.  Well, despite not wanting to do freak-offs, did you continue to engage in freak-offs with Sean?

A.  I did.

Q.  And why did you continue to engage in freak-offs with Sean?

A.  He would ask me, he would bring it up at random times, and I think, to a point, I just didn't feel like I had much of a choice.  Um, I didn't really know what no would be or what no could turn into.

Q.  When you say you didn't know what no could turn into, what do you mean by that?

A.  Um, making him angry.  Very honestly, also making him

A-159

422

P5DCcom3                          Ventura - Direct

relationship.  I also was still in a relationship with someone else.

Q.  When you say you didn't understand that kind of a sexual relationship, can you tell me more about what you mean by that.

A.  I was just so young.  I didn't -- I didn't have even the vocabulary for some of the things that we talked about.  Like, I was just trying to understand it.  Just completely sexually inexperienced at that point.

Q.  And around the same time, in addition to performing oral sex on you, were there ever any occasions where you performed oral sex on Sean?

A.  Later on, yeah.

Q.  What was your reaction to the hotel room visits with Sean?

A.  I think it was the nervous excitement that I say.  It also just made me feel sneaky.  I didn't know -- I was curious, but of course ended up there and wanted to be, like, around him. So that was just kind of -- it was like, okay, I'm here. Leaving, it was just always confusing because I really didn't know what I felt.  I felt like I -- I don't know that I knew that I was making decisions for myself or not.  I feel like it was just, like, here I am.  I don't know how to explain that.

Q.  You said you wanted to be around him.  Why did you want to be around Sean?

A.  I wanted to be around Sean for the same reasons as like everyone else at the time.  It's just this exciting,

A-160

423

P5DCcom3                         Ventura - Direct

entertaining, fun guy.  I had also happened to have my career
in his hands.  But, yeah, just wanted to spend time.  It felt
special because not a lot of people got that kind of time with
him.

Q.  Around the same time, did you also take a trip to meet Sean
in Miami?

A.  I did.

Q.  What were the circumstances of meeting Sean in Miami?

A.  The circumstances were that we essentially -- I didn't have
a party to host in Miami, but wanted to spend that weekend
together.  And so came up with a flyer that said I was hosting
a party at a club in the beach area, Miami Beach area.

Q.  When you talk about hosting a party, can you explain to the
jury what you mean by that.

A.  Yeah.  As an artist, to make extra money, sometimes you're
asked to host events at different clubs, sometimes to perform,
and that would have fallen in line with me going to a club and
making money for just showing up.

Q.  And you mentioned a flyer, who made that flyer?

A.  I don't know exactly who made the flyer, but somebody that
we knew that could create it.

Q.  Did you make the flyer?

A.  I did not make the flyer, no.

Q.  Was the flyer advertising an actual club hosting for you?

A.  No.

428

P5DCcom3                    Ventura - Direct

also just moved away around that time.

Q.  When you say Kim, are you referring to Kim Porter?

A.  Yes.

Q.  After you started dating Sean, what changes, if any, did you eventually make in your career management?

A.  Well, my management at that time was also managing the other producer/boyfriend that I was with, and just looked at that as a major conflict of interest at that point.  And yeah, I basically just trusted that we were going to find new people.

Q.  And when you say you trusted that we were going to find new people, who was the "we" in that sentence?

A.  Sean and I.

Q.  To be clear, did you break ties with your old management after you started dating Sean?

A.  I did, yeah.

Q.  After Miami, how did your relationship with Sean evolve?

A.  After Miami, we really just -- I mean at least from my own side of things, I really fell in love with him.  I traveled with him everywhere.  I was in studio.  I was just like a little shadow for a little while.

Q.  You were a shadow to whom?

A.  To Sean.

Q.  How did Sean treat you at this time?

A.  We had fun.  It was just kind of like a -- it's my first adult -- real adult relationship, at least what I thought it

434

P5DCcom3                    Ventura - Direct

A.  I mean the greatest -- the most complicated and greatest examples are the abuse because, like, I also felt at certain times when I knew that it wasn't even about me and, yeah, like make the wrong face and the next thing I knew, I was getting hit in the face.  It was, you know --

Q.  When you say the abuse, what abuse are you talking about?

A.  Physical abuse in a relationship, but there is also psychological.  There's a lot of things going on.

Q.  You said something about making the wrong face.  Can you explain what you meant by that?

A.  If I wasn't smiling at him the way he wanted.  If I just looked a certain way that he didn't like, maybe I was a brat or something, like, he would let me know I need to fix my face or watch my mouth.  That was like a -- those were things that were said in the relationship quite often, fix your face, watch your mouth, or you have a slick mouth.

Q.  You also mentioned psychological abuse.  Can you describe what you meant by psychological abuse?

A.  That's pretty deep.  I mean, psychological is just every day, not knowing who he was going to be when we woke up that day.  The entire relationship, I didn't live with him.  So we had time apart and usually it was just, like, I always had to be doing something.  I don't know if that makes sense.  I had what you would call, like, busy work.  I needed to make sure I knew what songs I was recording, what things were coming up and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-163

458

P5DsCOM4                    Ventura - Direct

other days, you know, I could be on my tomboy looks and stuff like that.  But he was just very involved in it, yeah.

Q.  You mentioned your nails earlier?

A.  Um-hmm.

Q.  How did Sean say he wanted your nails to look?

A.  He preferred them to be white, from the beginning of our relationship.  They just always had to be done, for sure, but specifically, during the freak-offs, like, white or, um, French tip.

Q.  And you also mentioned how your hair was parted.

How did Sean want your hair to look?

A.  Hair.  Specifically when?  It varied.

Q.  What were some of the things he said to you about your hair?

A.  Um, well, I mean, the biggest change was that I shaved my head around 2009, after talking about it for quite some time.  But, everything.  The way it was styled that day, to the color, everything.

Q.  What else, if anything, did Sean say he wanted you to do with your physical appearance?

A.  Um, I mean, we had discussions about breast implants, I also -- we had tons of conversations about my body.  And at that time, like -- I mean, now I'm 38 years old and a woman.  I didn't have much body to really talk about, um, and I was still developing, so ...

459

P5DsCOM4                    Ventura - Direct

There may be comments about working out or just, like, keeping my shape a certain way, when there wasn't much there to begin with.

Q. Approximately how much time did you spend on your appearance weekly while you dated Sean?

A. All the time. I, um, if I wasn't doing my nails, I was getting a tan. If I wasn't getting a tan, I was doing some else. And more often than not, like, the prep, the physical prep was for the freak-offs. Also to be, you know, next to him and be his girlfriend. But, yeah, I had to look a certain way during the freak-offs.

Q. OK. We'll get back to that.

How frequently did Sean comment on your appearance?

A. Daily.

Q. And how common was it for Sean to make specific demands about how you looked?

A. It was very common.

Q. How would you feel about the comments that Sean made about your appearance?

A. That also varied. I mean, he kind of critiqued a lot of people around me, other artists as well. So, like, it wasn't a shocker. But, after a while, that wears down on you. When your confidence and your self-worth, definitely, my self-worth took a hit for the entirety of the relationship. Just trying to establish who I was and who I wanted to be and who I was

A-165

475

P5DsCOM4                          Ventura - Direct

A.  I saw them get dressed and leave the house.

Q.  And you mentioned they returned, is that correct?

A.  Yes.

Q.  Approximately how long between when they left did they return?

A.  It really wasn't that long.  I couldn't imagine it was probably, like, definitely less than an hour.  30 minutes.  30, 45 minutes, tops.

Q.  I want to turn to a different topic now.

A.  OK.

Q.  You testified early on that Sean mentioned voyeurism to you.

        Do you recall that testimony?

A.  Yes.

Q.  How did Sean describe voyeurism to you?

A.  He described voyeurism as a fantasy that he had where he would want to see me with another male and having sexual interaction, talking.  Yeah.

Q.  OK.

A.  He would watch.

Q.  What, if anything, did Sean tell -- say to you about swinging?

A.  Um, swinging was brought up separately, and it was a lifestyle that he taught me about, about couples that switch partners.  And, um, yeah, I didn't really have too much

A-166

476

P5DsCOM4                          Ventura - Direct

knowledge of it.

Q.  And you testified earlier that you eventually started having freak-offs with Sean.

Do you recall that testimony?

A.  Yes.

Q.  How did the freak-offs that you did compare to how Sean described voyeurism to you?

A.  Um, can you rephrase that?

Q.  Sure.  Of course.  Let's talk about the freak-offs first. I think that will be easier.

How soon into the relationship did Sean mention voyeurism to you?

A.  It was within the first, like, six months to a year.  It was very early.

Q.  And what, if anything, did Sean say about the identity of the other person who would be involved in the sex acts?

A.  He said we wouldn't know them, um, that it would, more than likely, be a stranger, an escort or a dancer.

Q.  Earlier you also testified that Sean physically hurt you in your relationship.

Do you recall that testimony?

A.  Yeah.

Q.  Relative to when Sean first started physically hurting you, did the conversation about voyeurism happen?

A.  Relatively close together, I would say.

477

P5DsCOM4                        Ventura - Direct

Q.   Which one happened first?

A.   There was abuse first and then the conversation after.

Q.   To be clear, the conversation about voyeurism?

A.   Conversation about voyeurism.

Q.   What was your reaction when Sean told you about voyeurism?

A.   Um, I was shocked.  I didn't -- I wasn't expecting that. Um, I just felt really, like, at a loss.  I didn't know how to react.  I didn't want to upset him if I said that it scared me or I said anything outside of, OK, let's try it, because I was always just down for the things that he wanted to do.  I was really nervous.  Really, really nervous.

Q.   Approximately how old were you when Sean first proposed freak-offs to you?

A.   I think I just turned 22.

Q.   And how long after Sean mentioned his interest in seeing you have sex with another man was the first freak-off?

A.   Within the first, like, two to three months of him telling me about it.

Q.   Why did you agree to try a freak-off?

A.   That's a great question.

         I wanted to make him happy.  I was in a really significantly mature relationship that I don't think I was prepared for, now when I look at it.  But, yeah, I loved him. I didn't want him to think that I thought anything bad of him for it.  I -- I just wanted to make him happy.

A-168

480

P5DsCOM4                        Ventura - Direct

first freak-off?

A.   Those were the blue dolphins that I spoke about earlier.

Q.   The same pills from Miami?

A.   Um-hmm, yeah.

Q.   At what point in the freak-off did you first take the ectasy?

A.   Before anything started.

Q.   Who provided the ectasy to you?

A.   Sean.

Q.   What did you wear at the first freak-off?

A.   Specifically, I don't know exactly, but it was definitely an outfit from a sex store, Hustler or something with some really high platform shoes, dancing shoes.

Q.   What, if anything, did you do to disguise your appearance?

A.   On that first meeting, Sean told me that we would wear masks, so I wore a masquerade mask and...

Q.   You described the really tall platform heels.

     Who, if anyone, told you to wear those heels?

A.   Sean did.

Q.   Can you please describe what happened at the initial, at the first freak-off?

A.   Um, after we took the drugs, um, he had a conversation -- Sean had a conversation with the dancer.  And then shortly after, he came down to the room and, um, performed and stood in the doorway and danced for a little while, while I just

A-169

481

P5DsCOM4                           Ventura - Direct

watched, and while Sean watched us.

Q. What happened next?

A. Um, it was just a gradual -- I should say, every freak-off was, like, directed by Sean. Like, he knew specifically where he wanted everyone to be, the lighting and such. So, over that, that first session, we just kind of, like, ended up get closer and closer and talking to each other, and then eventually had to put oil on each other. Yeah.

Q. You used the word session.

What do you mean by session?

A. A session in a freak-off would be, like, one full-time, um, with the escort until basically they finished, they ejaculated.

Q. Would a session include all of the sex acts that led up to ejaculation?

A. Yeah, it would be pretty standard, yeah.

Q. Do you recall how many sessions you had with the first escort at the first freak-off?

A. I believe we at least had two.

Q. And you testified earlier that the first escort was paid.

How were you aware that he was paid?

A. I -- I knew because Sean told me.

Q. What, if anything, did Sean say to you about paying the escort?

A. That he had to go pay him and he went and paid him.

Q. Approximately how much, if you know, was the escort paid?

A-170

482

P5DsCOM4                    Ventura - Direct

A.  I don't know specifically.  I just know that escorts were paid in the thousands.

Q.  After this first freak-off, how did you feel?

A.  Well, I was high, so there wasn't too much feeling.  I think it was a mixture of dirty and confusion with, like, OK, he's really happy with me and I did something right.  So, just really confusing.

I didn't -- I didn't know -- I didn't know what was going to happen after that.  I didn't know if we were going to be doing it more frequently because I was willing to.  I didn't know, so ...

Q.  What, if anything, did you tell Sean about how you felt about the first freak-off?

A.  I honestly don't remember.

Q.  Did there come a time when Sean proposed another freak-off?

A.  Yes.

Q.  How soon after?

A.  It was pretty soon after.  Within weeks.

Q.  How would you respond?

A.  It was the same nervousness feeling, like, like, what am I going to.  Do, I can't say no.  Like, I've already done it.  And I ultimately said yes.

Q.  Why did you feel you couldn't say no?

A.  Just didn't want to make him upset.  Um, yeah.  I didn't want to make him upset.  I didn't want to make him angry and

483

P5DsCOM4                          Ventura - Direct

regret having told me about this experience that was so personal. I, like, his trust meant a lot to me at that point.

Q. What concerns, if any, did you have about Sean becoming upset with you?

A. Um, there were concerns.

MS. ESTEVAO: Objection, leading.

THE COURT: Grounds?

Did you say leading?

MS. ESTEVAO: Yes.

THE COURT: That's overruled.

Q. Ms. Ventura, do you want me to reask the question?

A. Please.

Q. You testified that you were concerned that Sean might be upset with you?

A. Yeah.

Q. What concerns, if any, did you have if Sean was upset with you?

A. His anger, really. His mood changed, like, what -- that was going to do to the rest of the day and, um, just how he felt about me and our relationship. Um, so, it could be different things.

Q. How frequently did you have freak-offs with Sean after they started?

A. After they started, they became almost weekly, I would say.

Q. And how, if at all, did that frequency change over time?

A-172

486

P5DsCOM4                          Ventura - Direct

A.   I just felt, like, it was all I was good for to him.  I --
I just felt pretty horrible about myself.  I felt disgusting.
I was humiliated.  I didn't have those words to, like, put
together at the time, like, how horrible I really felt.  And I
didn't -- I couldn't talk to anybody about it, so ...

Q.   You testified a few moments ago that you did freak-offs
because you did not want to make Sean angry?

A.   Yeah.

Q.   During your relationship, what did Sean do when he was
angry?

A.   He would be violent with me.  Um, his look would just
change over.  He would just become a different person and,
just, didn't know what was going to happen.

Q.   When you say his look would change over, what do you mean
by that?

A.   The best way for me to describe it is, like, his eyes go
black.  Um, just, it's -- the version of him that I was in love
with was no longer there.

Q.   Were there any parts of freak-offs that you enjoyed?

A.   The time spent with him.

Q.   And what about the time spent with him did you enjoy?

A.   Just, um, at that time, just --

     I'm sorry.  Just the one-on-one time I would get.
Because there was always so many people around, and I did feel
very close to him.  So, as sad as it was, I thought that, like,

487

P5DsCOM4                    Ventura - Direct

it was the only time I could get.

Q.  And when you said the only time you could get, are you referring to the freak-offs?

A.  Yeah, yes.

Q.  And specifically are you referring to the one-on-one time with Sean?

A.  Yes.

Q.  OK.  What, if any, discussions did you have with Sean about not wanting to participate in freak-offs?

A.  I definitely brought it up, but gently, because I didn't want to upset him or make him angry with me for even sharing it.  But I just treaded lightly when I would bring it up.

Sometimes I would e-mail him about it, like, I didn't want to -- I just didn't want anything bad to happen.

Q.  When you say you didn't want anything bad to happen, what do you mean by anything bad?

A.  Um, I mean, anything bad could be him being violent, but also him just saying, OK, well, I'll find somebody else to do it with.  Like, you know, when you really care about somebody and you're in love with them, you don't want to disappoint them, so ...

Q.  When you would talk to Sean about how you were feeling, how much of your concerns were you able to express to him?

MS. ESTEVAO:  Objection, leading.

THE COURT:  Maybe you can rephrase.

494

P5DsCOM4                         Ventura - Direct

freak-offs anymore.

Q. And how did you react after Sean sent this message where he said, Now you don't wanna do anymore, I already know, you so predictable?

A. I mean, I tried to backpedal. I said, um, yeah, OK. Since that definitely what it was, just kind of playing it off or trying to.

Q. Why would you backpedal in situations like this?

A. Because I didn't want to make him angry, like ...

Q. Directing your attention to --

MS. JOHNSON: I'm sorry, Ms. Gavin, can you take that down. The top, if you can blow up the top, please, the first two.

Q. Directing your attention to the end of your message here where you said, I wasn't going to say I didn't want to do it anymore.

Do you see that?

A. Yes.

Q. Is that accurate?

A. Accurately how I felt?

Q. Yes.

A. No.

Q. Why did you say that if that wasn't how you felt?

A. Just didn't -- I really didn't want to to make him think I didn't want to do it anymore. I didn't want him to be upset or

496

P5DsCOM4                              Ventura - Direct

A.   Sean.

Q.   Over the period of time that you did freak-offs with Sean, did you always wear wigs and masks?

A.   No, not always.

Q.   How did that change?

A.   Eventually, um, I mean, I don't think it was too difficult to figure out who he was because he would talk, um, but, eventually, just be comfortable enough with the escort or person that was there to just remove the coverings.

Q.   Besides a wig and a mask, what other clothes would you wear for freak-offs?

A.   Always super, like, see-through, netting outfit.  It varied.  Just sexy outfit from a sex store.

Q.   What are some of the stores you would buy outfits at?

A.   Um, in LA there is a store called Pleasure Chest.  Um, Hustler on Sunset.  Here in the city, there's just, like, little shops everywhere.

Q.   In addition to the outfit you described, did you wear shoes?

A.   I did.  Every -- every time, yeah.

Q.   What kind of shoes?

A.   The lucite Stripper dancer shoes, yeah.

Q.   What kind of heels do those shoes have?

A.   Extremely high heels.

Q.   Who decided what you would wear to freak-offs?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-176

497

P5DsCOM4                         Ventura - Direct

A.  I would purchase outfits and show Sean and see what he liked the best.

Q.  Would you wear the outfit that Sean selected?

A.  Yep.

Q.  And with respect to the high heels you talked about, for how long would you wear those high heels during the freak-off?

A.  I would wear them throughout.  Um, if there was a break, I might take them off.  But, yeah, throughout.

Q.  What conversations, if any, did you have with Sean about preparing your physical appearance for a freak-off?

A.  I mean, he would just ask me, like, did you get a wax?  Are your nails done?  Do you have a tan?  Just, like, basic list.

Q.  How long did it take to prepare your physical appearance for a freak-off?

A.  It could take, like, all of that daytime.

Q.  Would that be taken up by the things you mentioned, like, getting your nails done, getting a wax, getting a tan?

A.  Getting supplies, everything, yep.

Q.  What, if any, body piercings did you have while you were dating Sean?

A.  I had my nipples pierced, and prior to, way back, I had my belly button pierced and, um, a hood piercing.

Q.  OK.  So starting with the nipple piercing, when did you get the nipple piercing?

A.  I initially got one with a friend and took it out.  This

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-177

501

P5DsCOM4                          Ventura - Direct

living room that you could close the door or, like, an extra room with an additional bathroom so, like, a small suite, junior suite.

Q. Who, if you know, booked the hotel rooms?

A. It varied. Sometimes it was someone like Tony Fletcher on staff. Occasionally, I would book hotel rooms. Yeah.

Q. Who, if you know, paid for the hotel rooms?

A. I believe Sean paid for the hotel rooms.

Q. What are some of the names that were used on hotel reservations?

A. Um, Jackie Star was the name that I used. Um, Frank Black, Frank White. There was all types of names.

Q. Turning to Jackie Star, why did you use the name Jackie Star?

A. Um, that was a name that -- um, I don't know who came up with it, if it was him or me, um, that I used to actually book dancers. So I would use that name instead of my own name and then just started using it as a hotel room name.

Q. And you also mentioned Frank White and Frank Black?

A. Um-hmm.

Q. Whose aliases were Frank White or Frank Black?

A. They were Sean's.

Q. What, if any, supplies were needed for freak-offs?

A. Main supplies were baby oil, Astroglide, as lubricants, and condoms.

A-178

502

P5DsCOM4                          Ventura - Direct

Q.   Who typically brought the supplies to the freak-offs?

A.   More often than not it was staff.  The room was usually stocked by the time we got there.  If not, if it were a last-minute situation and I set it up, I would get things or sometimes Sean would bring them.

Q.   When you say staff, whose staff are you referring to?

A.   Sean's staff.

Q.   Which positions on Sean's staff would be tasked with stocking the hotel rooms?

A.   Assistants, security.

Q.   You mentioned baby oil.

         What brand of baby oil was used?

A.   Johnson's baby oil.

Q.   How was the baby oil used during the freak-off?

A.   It was -- it was just as important as everything else, as being there.  We used it quite a bit.

Q.   Where was it -- where was the baby oil placed?

A.   We poured it all over our bodies.  Had to be glistening. Yeah.

Q.   Which participants in the freak-off, if any, used the baby oil?

A.   Everyone.

Q.   Would that include you?

A.   Yes.

Q.   Does that include the escort?

A-179

503

P5DsCOM4                        Ventura - Direct

A.  Yes.

Q.  Did that include Sean?

A.  Yes.

Q.  What temperature was the baby oil when it was poured on your body?

A.  It was always heated.  Um, like, keep the cap on, put it in the sink with hot water, and let it warm up.

Q.  Who wanted the baby oil to be heated?

A.  Sean.

Q.  You mentioned that the baby oil was used because you had to be glistening?

A.  Um-hmm.

Q.  Who told you that you needed to be glistening?

A.  Sean.  It was his preference.

Q.  How frequently would baby oil be applied to be glistening?

A.  Like, every five minutes.  It was a lot.

Q.  What, if any, comments would Sean make about needing to apply baby oil?

A.  He would -- if he felt, like, you were too dry, he would let you know.

Q.  What would he say?

A.  He would say, You're too dry, you need to put more oil, on or you need to be glistening, you need to be, um -- yeah, you need to be shining.  Yeah.

Q.  Who directed the application of baby oil during the

504

P5DsCOM4                          Ventura - Direct

freak-offs?

A.  I would say that was heavily on Sean.  Occasionally I would say that we needed more, too, because I just knew what to do.

Q.  Why did you know what to do?

A.  It was a very choreographed experience.

Q.  Who choreographed the experience?

A.  Sean.

Q.  During the freak-offs, who applied baby oil to you?

A.  I applied it to myself, sometimes Sean, sometimes the escort.

Q.  Would you apply baby oil to anyone?

A.  Sometimes with the escort, sometimes to Sean.

Q.  How did you usually apply baby oil?

A.  You just squirt it on out of the bottle.

Q.  Were there other ways of applying oil at a freak-off?

A.  There was one time, um, where I got to -- I think it was at L'Ermitage in Beverly Hills and there was a pool, like, a blowup pool, and it was filled with lube and oil.  So that was a different way.

Q.  When there was the blowup pool that was filled with lube and oil, what did you do with the pool?

A.  I don't know what happened to the pool, honestly.

Q.  I'm sorry.  Strike that.

        When there was that pool and oil, did you get into the pool?

A-181

509

P5DCcom3                    Ventura - Direct

A.   Initially it was candle-lit.  So various candles.

Q.   Who decided what kind of lighting would be used?

A.   Sean.

Q.   What type of candles were used?

A.   At a time, really strong smelling candles, like Glade or Diptyque.  Any just really strong smelling --

Q.   Who would typically bring the candles to the freak-offs?

A.   It was all part of the setup.  So whether it was an assistant or me or him.

Q.   Approximately how many candles were used?

A.   Approximately six to ten.

Q.   How were the candles placed in the room?

A.   They were placed so that Sean could see me and the escort in the candlelight.

Q.   Who requested the candle setup?

A.   Sean.

Q.   Besides lighting, were there any other uses of candle wax at freak-offs?

A.   A couple of times where it was poured on the body, but it wasn't common.

Q.   When you say poured on the body, whose body was it poured on?

A.   My own or Sean's.

Q.   And whose decision was it to pour wax on either your body or Sean's body?

510

P5DCcom3                          Ventura - Direct

A.   Sean's.

Q.   Did the lighting that was used in freak-offs change over time?

A.   Yes.   There were lights after a certain point, like the lights that we would use in studio.

Q.   Can you describe what the light you would use in the studio is.

A.   There are multicolored lights that change with the music, kind of like a club light.

Q.   What colors are those lights?

A.   Red, green, blue, purple.

Q.   Who made the decision to change the lighting?

A.   Sean would have assistants bring the lights, so I guess him.

         MS. JOHNSON:  Ms. Gavin, can you pull up for identification Government Exhibit 3Q-118 for the parties and the Court only.

Q.   Ms. Ventura, do you recognize who's in this photograph?

A.   Yes.

Q.   At what type of location is this photograph taken?

A.   To me it looks like a hotel.  It looks like The London hotel in New York.

Q.   Who took this photograph?

A.   I believe I did.

Q.   Is this a true and accurate photograph of Sean?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

528

P5DCcom3                        Ventura - Direct

someone else's?

A.   It was someone else's.

Q.   When you were reaching out to an escort, what, if anything, would you say to the escort about what you were hiring that escort to do?

A.   It depended on, like, the situation, how they came in.  But I would usually say that my husband is into something called voyeurism and he likes to watch me with another man.  It was like a basic conversation that I had with most of the escorts. From there I would get a feel if they were willing to do it or not.

Q.   When did that conversation typically occur in the process?

A.   Before, when they would first get there.

Q.   First arrive at a location?

A.   First arrive at the hotel or wherever we were.

Q.   And circling back to one of your answers where you said that it was someone else's idea to contact escorts, who was that someone else?

A.   Sean.

Q.   So when you would speak to the escort when they arrived at the hotel and have the conversation you just described, who was typically present for that conversation?

A.   It would usually be just me and the escort.  If Sean wanted to hear or overhear, he could listen from the room over.

Q.   How would you know he could listen from the room over?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-184

529

P5DCcom3                          Ventura - Direct

A.   Just the actual distance.  It wasn't super far.

Q.   Did you ever speak to Sean about him listening to the conversation?

A.   Yeah.  He would tell me if he heard everything or not.

Q.   What conversations, if any, did you have with Sean about what to say to the escorts at this initial meeting?

A.   I'm sorry.  Could you rephrase that.

Q.   Sure.  You described sort of an initial meeting with the escort.  Do you remember that?

A.   Uh-huh.

Q.   What, if anything, did you discuss with Sean about what you would say at that initial meeting?

A.   Just Sean gave me direction.  It was usually, you know, this is my husband's fantasy.  We created this scenario that we were married, this is his fantasy, this is what I like to do for him to please him.  So these were things that he would tell me to be able to say to the escorts or make them more comfortable in it, I guess.  I don't --

Q.   Are those the things that you would then say to the escort?

A.   Yup.

Q.   After you had this initial conversation with the escort, what would you do next?

A.   After that conversation, I would usually go back into the room with Sean and just finish getting ready to go out and start the session.

A-185

557

P5DsCOM6                          Ventura - Direct

all of the sex acts with the escort.

Do you remember that?

A.   Yes.

Q.   Did the sessions follow a similar pattern at most freak-offs?

A.   Yes.

Q.   And how did you know what the pattern was?

A.   It was established pretty early on in doing the freak-offs, that Sean enjoyed a lot of conversation or describing -- usually started with oil and touching and went to oral sex, and then eventually turned into intercourse.  It was, like, a gradual process.

Q.   And is that the same pattern that was typically followed in the session?

A.   Yeah.

Q.   Who decided what that pattern was?

A.   Sean did.  I -- I often would try to speed it up, um, if anyone wasn't really paying attention.

MS. ESTEVAO:  Objection, nonresponsive.

THE COURT:  Sustained.

A.   Can you bring me back?

Q.   Of course.  You were talking about what the pattern was, so let's focus on that for a moment.

A.   OK.

Q.   What was the first sex act of the session?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

564

P5DsCOM6                         Ventura - Direct

        Do you recall that?

A.   Yes.

Q.   Were there any occasions where there was more than one escort present for one session?

A.   Yes.

Q.   Approximately how many times was that?

A.   That, I don't know an exact number, but definitely more than once.

Q.   Did you want more than one escort to be present at a session?

A.   No.  It was already enough managing one additional person.

Q.   And when more than one escort was present, how did the sex acts proceed?

A.   Just, it was very, like, like porn.

Q.   What do you mean by that?

A.   Um, it was just I was an object, um, being heavily objectified by men in that scenario.

Q.   You talked about managing an additional escort.

        What did you mean by managing?

A.   Um, just having to be the only female in the room, like, with the sexual stuff.  It, just, having to entertain one more person, make sure one more person is satisfied.  Um, yeah.

Q.   During these sessions, where was Sean physically relative to you and the escort?

A.   If he wasn't involved, he would be, like, just outside the

A-187

568

P5DsCOM6                          Ventura - Direct

recognizable.  Any distractions, though, really, some of the men would actually just say that, like, having someone else in the room just was disturbing for them.  It made them uncomfortable.

Q.  Were there any distractions that you observed other than Sean's voice?

A.  Um...

     MS. ESTEVAO:  Your Honor, I'm going to object at this point.  Cumulative and it's straining.  Relevance.

     THE COURT:  I'm sorry.  The last part of it, I missed.

     MS. ESTEVAO:  Relevance.

     THE COURT:  OK.  I'll sustain the objection, and you can maybe rephrase the question.

     MS. JOHNSON:  Sure.

BY MS. JOHNSON:

Q.  After the end of a session, what would you and Sean do next?

A.  The end of an entire session or?

Q.  Just one session within a freak-off.

A.  We would hang out and take more drugs with each other.

Q.  After a session, would you ever have sex with Sean?

A.  Yeah.

Q.  And where would you have sex with Sean after the session?

A.  In the room outside of where the session was, separate room.

A-188

569

P5DsCOM6                    Ventura - Direct

Q.  You mentioned earlier today that freak-offs were video recorded.

          Do you recall that testimony?

A.  Yep.

Q.  How were they recorded?

A.  Um, in the beginning, they were on video cameras, like, the ones with the small tapes, then eventually phones, iPads, computers.

Q.  Whose devices were used to record freak-offs?

A.  Um, his devices and my own.  Sean's and my own.

Q.  Approximately when did freak-offs start being recorded?

A.  Pretty early on.  Within the first year.

Q.  Who, if anyone, proposed recording freak-offs?

A.  I wouldn't say there was a proposal.  It just started happening.

Q.  How did it start happening?

A.  Sean brought out a camera and set it up, and that's what was happening.

Q.  Did you want to be recorded?

A.  No.  I remember feeling insane at first and then, um, he explained to me that it's for him for afterwards, so, yeah.

Q.  Did you ever watch the videos again?

A.  Yes.

Q.  When would you watch the videos again?

A.  Um, I would watch them with Sean afterwards when we --

A-189

570

P5DsCOM6                        Ventura - Direct

usually when we were having intercourse. But I also, if I saw them and I was on my own, I was deleting them.

Q. You mentioned that some of these videos were recorded on some of your devices?

A. Um-hmm.

Q. Do you remember that?

A. Yep.

Q. Why were your devices used?

A. Because they were there. No real reason.

Q. Did you want these videos to be on your devices?

A. No.

Q. If you saw videos on your devices, what did you do?

A. Delete them.

Q. Who set up the recording equipment during freak-offs?

A. Sean. If he wanted me to move it, I would move it.

Q. How would you know when he wanted you to move it?

A. He would tell me.

Q. Whose idea was it to use your devices?

A. It was Sean's idea.

Q. Were you always successful -- why did you delete the videos that you found on your devices?

A. Humiliating. Disgusting. I never wanted anyone to ever see me like that. It just was not OK for me, and I felt, like, it was just tossed around, like, the idea of it was tossed around like it was nothing, like ...

683

P5ECcom2                        Ventura - Direct

Q.  Did you want to go to sex clubs?

A.  I didn't.  I was always terrified and would drink quite a bit.

Q.  Why were you terrified?

A.  It wasn't an experience that I was into.  It just wasn't my thing.

Q.  Yesterday, do you recall telling the jury about Sean discussing the swingers lifestyle with you?

A.  Yeah.

Q.  What did Sean tell you that swinging was?

A.  I mean, based off of what I kind of knew already and what he told me, it was you could swap partners and everybody's okay with it.  It's a certain type of lifestyle and that was a turn-on for him.

Q.  How, if at all, did your understanding of the swingers lifestyle relate to freak-offs?

A.  I related them pretty closely just because of the sexual nature and me actually having intercourse with somebody else besides him.

Q.  Did you want to do freak-offs?

A.  No.

Q.  When you went to sex clubs with Sean, who else, if anyone, went with you?

A.  Sometimes an escort would go with us.  One time we went with an escort and their spouse, their girlfriend.

A-191

684

P5ECcom2                    Ventura - Direct

Q. Whose idea was it to have an escort come with you?

A. It was Sean's and the escort, I guess.

Q. Which escort came to sex clubs with you and Sean?

A. Jules.

Q. Is that the same Jules from the Intercontinental Hotel incident?

A. Yeah.

Q. You mentioned you would drink before going to sex clubs; is that right?

A. Yeah.

Q. What else, if anything, would you ingest before going to sex clubs?

A. I mean, alcohol, if that's what was there, MDMA, ecstasy, GHP was a big one.

Q. Who provided you with the MDMA, ecstasy, or GHP?

A. Sean.

Q. At sex clubs, who, if anyone, did you have sex with?

A. I had sex with Sean and Jules at a point.

Q. Did you want to have sex with Jules?

A. No, not at the sex club, no.  No.

Q. Did you want to have sex with Jules ever?

A. No.  No.  Jules was like, within all of it, was like a safe place.  I saw him a lot.  We actually had our own friendship. So being able to have sex with Jules instead of somebody at the club was much better than having to have sex with somebody else

A-192

815

P5EsCOM3

around 2018?

A. Um, around 2018, I had spent several years, like, learning about a girl that he was dating for, basically, the whole, like, last half of our relationship. And I, as an excuse for myself, I don't even know. I said, if I catch you with her again, then I'm done.

And that's what happened. They were seen out, and I was in Connecticut, so I was out.

Q. Directing your attention to approximately August of 2018, did there come a time when you saw Sean?

A. Yes.

Q. What was the occasion?

A. Um, we were having kind of a closure conversation, at least in my mind we were. We went out to dinner at a restaurant, like, on the way to Malibu. I think, at that time, he was trying to convince me to come to Burning Man with him. That's something we did together over the years.

Q. And from your perspective, what was the status of your relationship at the time you had dinner with Sean in Malibu?

A. We were not together.

Q. Were you seeing anyone else at the time?

A. I was.

Q. Who were you seeing?

A. My now husband, Alex.

Q. Can you describe how Sean was acting at the dinner?

825

P5EsCOM3

take?

A. Um, it took the form of a book with chapters that I started.

Q. Who, if anyone, helped you with that book?

A. Um, my mom helped me just get it in, like, a Word document.

Q. What did you want to do with the book?

A. I really wanted Sean to read the information. I wanted him to understand what I had to learn to understand over that period, um...

Q. Why did you want Sean to read the book?

A. Because I didn't think he understood. I don't think, after all those years of begging for, like, sorries, and just for him to actually recognize the pain, the pain that he put me through. Like, I just wanted him to understand.

Q. What kind of pain did Sean put you through?

A. I think bigger, more than anything, it was his own personal shame in having to carry the things that were shameful to him.

Q. What were those things?

A. The sexual part, the freak-offs, like, I took on a lot of responsibility with that, that I never should have.

Q. What do you mean you took on responsibility that you never should have?

A. He brought the concept to me when I was 22, and I would do absolutely anything for him and I did. And it never stopped our whole relationship. And it was expected of me and it made

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

826

P5EsCOM3

me feel horrible about myself, and I couldn't -- I couldn't get it out.  I couldn't face him with it.  I was always so numb because that is what I chose to do to get through it.

Q.  How did you go about getting Sean book chapters?

A.  Um, I reached out to lawyers.  I had a lawyer.  I reached out to his lawyers.

Q.  How did you know the attorney that you used?

A.  I met him in 2021, and he was working on other stuff with me, like, modeling contracts and things like that.

Q.  Aside from conversations you had with your attorney, which I don't want to ask you about, was there any other way you went about trying to contact Sean regarding the book chapters?

A.  Yeah.  I reached directly out to Kristina, to K.K.

Q.  What did -- what did you ask K.K.?

A.  I asked if he had read it and/or just knew about it at all. And, um, she said that, basically, it hadn't been taken seriously.  Like, I don't think anybody believed that that was actually me, so ...

Q.  What do you mean you don't think anyone believed that was you?

A.  She said it wasn't taken seriously.  Like, they didn't think that I would do something like that.

Q.  So other than wanting Sean to read your book, what else, if anything, did you want from Sean?

A.  I wanted to be compensated for the time, the pain, and like

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

899

P59MCOM2                          Ventura - Cross

A.  Correct.

Q.  You knew a version of him that he wouldn't let the rest of the world see?

        MS. JOHNSON:  Objection.

        THE COURT:  It's overruled.

Q.  You knew the Sean that he didn't want anybody else to see but you?

        MS. JOHNSON:  Objection.

        THE COURT:  Overruled.

A.  Can you repeat.

Q.  You knew the version of Sean that he didn't want anyone else to see but you, save the other people that were invited into this relationship?

A.  Can you rephrase that.  I'm sorry.

Q.  You knew of a version of him that the public didn't know, right?

A.  Correct, yes.

Q.  And that many people in his circle, in his world didn't know?

A.  Yes.  That's fair to say.

Q.  Even his family didn't know?

A.  Yeah.

Q.  And you knew and you always knew how special you were to him, right?

A.  No.  I don't think I always knew.

A-196

900

P59MCOM2                          Ventura - Cross

Q. You sometimes knew.

A. Sometimes is fair.

Q. You frequently knew.

A. Sometimes.

Q. And that's why it hurt so badly when he lied to you.

A. Yeah.

Q. And when he cheated on you.

A. Yes.

Q. And that's why it hurt so badly when he promised to tell the truth and be faithful to you and then let you down time and again, right?

A. Yeah.

Q. You said on direct that you were very jealous. I think insanely jealous is the phrase you used?

A. I did.

Q. And he gave you a lot to be jealous of, right?

A. I mean, it's all relative. Yeah.

Q. But for 11 years you put up with that jealousy, right?

A. Not the whole time, no.

Q. You were on and off during the relationship?

A. Yeah.

Q. But you kept coming back to him for 11 years.

A. I wouldn't use the word coming back.

Q. You would continue to get back together with him for 11 years.

901

P59MCOM2                         Ventura - Cross

A.   Yes.

Q.   Despite his -- imperfections his maybe not strong enough?

A.   Yes.

Q.   His flaws, right?

A.   Yes.

Q.   We are going to talk about all of those.  That's because you loved him, right?

A.   I did.

Q.   And for those same 11 years you put up with all that because you believed that he truly loved you too?

A.   I did believe he loved me too.

Q.   And because you were so in love with him, when he cheated on you it really hurt.

A.   I would say not every time.

Q.   I see.

     But you did spend a lot of time feeling very hurt during the relationship.

A.   I would say in the early stages, yeah.

Q.   And I want to go back many years to the beginning of your relationship.  You fell in love very quickly, right, after your 21st birthday?

A.   Yes.  It was very quickly.

Q.   And the early part of your relationship was filled with love and passion, right?

A.   Yes.

A-198

913

P59MCOM2                        Ventura - Cross

A.   Weekly, I would say.

Q.   And were you traveling pretty frequently as well?

A.   Frequently.  Not as much as him.

Q.   Even though you were in a relationship with each other you weren't together all the time, right?

A.   No.

Q.   In fact, you often had long breaks from each other when you didn't get to see each other, right?

A.   Yeah.

Q.   And he sometimes would have to travel for long periods of time when he was doing something for work.

A.   Yup.

Q.   And the same for you.  If you were going to film elsewhere or you had some event, you would not be together, right?

A.   Yup.

        MS. ESTEVAO:  Can we please bring up Defense Exhibit 1364 just for the parties, the Court, and the witness.

Q.   Ms. Ventura, does this reflect a communication between you and Mr. Combs via BlackBerry on April 22, 2010?

A.   May I read it?

Q.   Yes.

A.   I read it.

Q.   Does it reflect a communication between you and Mr. Combs?

A.   Yes.

        MS. ESTEVAO:  Move for admission.

915

P59MCOM2                          Ventura - Cross

A.  Yes.

Q.  Why is that?  Why did people want to spend so much time with him?

MS. JOHNSON:  Objection.  Speculation.

THE COURT:  You can rephrase.

Q.  Why did you want to spend so much time with him?

A.  I wanted to spend so much time with him, I mean at this point in 2010, because I had fallen in love with him and cared about him very much.

Q.  When you said in your direct testimony that he was a larger-than-life figure or personality, what did you mean by that?

A.  Larger than life.  I mean, he's a charismatic, like big personality that everyone really loved, so larger than life would be that.

Q.  Thank you.

And you testified that you were in love with him and wanted to make him happy, right?

A.  Yup.

Q.  What about him made you fall in love with him?

A.  I haven't thought about it in a while.  The beginning of the relationship was really -- I kind of spoke about it already.  It was really fast and fast paced, scary, but the more time I spent with him and got to know him it was just -- his really personality, at least what I thought was his really

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-200

916

P59MCOM2                         Ventura - Cross

personality came out, and I liked who that was.

Q.   What about it did you like?

A.   Just very sweet, attentive, yeah.

Q.   You have repeatedly testified on direct that you loved him and therefore wanted to make him happy, right?

A.   Yeah.

Q.   And you didn't want him to think that you thought -- withdrawn.

You testified that you were afraid that he would find someone else if you did not agree to have sex with him in the way that he wanted, right?

MS. JOHNSON:   Objection, your Honor.   That misstates her testimony.

Q.   You testified that you were afraid -- withdrawn.

You testified -- you stated when you really care about somebody and you're in love with them you don't want to disappoint them, right?

A.   Yes.

Q.   And that reflected how you felt at the time with Mr. Combs, right?

A.   Yes.

Q.   And you testified, I wanted to make him happy, right?

A.   Yes.

Q.   And you testified, I didn't want him to think that I thought anything bad of him for it, right?

A-201

917

P59MCOM2                    Ventura - Cross

A.   Right.

Q.   What did you mean by that?

        MS. JOHNSON:  Objection, your Honor.  Can we just clarify what it is in that message, and a time period.

        MS. ESTEVAO:  It's referring to freakoffs.  I can repeat it.

Q.   You were asked:  Why did you agree to try a freakoff?  You answered:  I wanted to make him happy.  I was in a really significantly mature relationship that I don't think I was prepared for, now that I look at it, but, yeah, I loved him.  I didn't him to think that I thought anything bad of him for it.  I just wanted to make him happy.  Right?

A.   Yup.

Q.   That's how you felt at the time, right?

A.   At the time I wanted to make him happy, yup.

Q.   And you also testified about a communication that you had with him where you said:  I love you so much.  You make me a better woman, daughter, sister, person.  I hope you always know how much I love you and appreciate you.  Right?

        MS. JOHNSON:  Objection, your Honor.  Can we get a time period for that quote?

        THE COURT:  No.  Overruled.

A.   Sorry.

Q.   Isn't it true that you testified that you had previously told him:  I love you so much.  You make me a better woman,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

919

P59MCOM2                          Ventura - Cross

Q.   And that's how you felt?

A.   Um-hum.

Q.   You said, it felt special because not a lot of people got that kind of time with him, right?

A.   Yup.

Q.   And that you really fell in love with him, and you were just like a little shadow for a little while.

A.   Yes.

Q.   You also testified that it was a very different relationship from any other relationship you had had before, right?

A.   Well, it was, yes.

Q.   It was exciting?

A.   It was much different.

Q.   And it was passionate?

A.   There was passion, yes.

Q.   And it opened up your world tremendously, right?

A.   Hmm.  There is not really a yes-or-no answer to that one for me.

Q.   Did it open up your world?

A.   In a different way, yeah, I'll say that.

Q.   Is it fair to say that he trusted you with his secrets?

A.   I think that's fair to say.

Q.   And that that meant that you held a special place in his heart?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-203

920

P59MCOM2                          Ventura - Cross

A.   Yeah.

Q.   And that you wanted to keep that trust.

A.   Yup.

Q.   And earn that trust.

A.   I don't know that I wanted to earn it.

Q.   You did earn it.

A.   I did earn it, yeah.

Q.   So to make him happy you told him that you wanted to do freakoffs, right?

A.   No.  There is a lot more to that.

Q.   I'm sure we will get there.

        MS. ESTEVAO:  Can we please put up defense Exhibit 1159 just for the parties, the Court, and the witness.

Q.   Ms. Ventura, after you have taken a look, can you tell me if that reflects a conversation between you and Mr. Combs on August 5, 2009.

A.   OK.

        MS. ESTEVAO:  Move for admission.

        Excuse me.

Q.   Does this reflect a conversation between you and Mr. Combs via BlackBerry on August 5, 2009?

A.   It looks like a real conversation, yes.

        MS. ESTEVAO:  Move for admission.

        MS. JOHNSON:  No objection.

        THE COURT:  1159 will be admitted.

A-204

940

P5FCcom3                    Ventura - Cross

wasn't a huge fear.  It was kind of an understanding that we had more so.

Q.  By doing these freak-offs with him in the first couple of years of your relationship, was that a defining feature of your relationship with him, doing these freak-offs?

A.  By defining, what do you mean?

Q.  Was it an important part of your relationship?

A.  It became a very -- I don't know if important would be the word, but integral part of our relationship early on.

Q.  And you wanted your relationship to develop more, right?

A.  Right.

Q.  And this message was sent to him by you, correct, via BlackBerry?

A.  The longer part of the message was, yeah, was me.

Q.  And this is also in response to Mr. Combs saying, I want to do what you want me to do, right?

A.  Yes.

Q.  And this reflects your open communication with him about how you felt, right?

A.  I would say.

Q.  It appears to reflect some deep thought about your relationship and your perspective on freak-offs, right?

A.  Yeah.

Q.  And you felt safe sending him this message knowing that -- withdrawn.

A-205

942

P5FCcom3                    Ventura - Cross

Q.   How was a 21-year-old able to attract such celebrities to her birthday party in Las Vegas?

A.   That was all him, yeah.  I didn't know them.

Q.   What accomplishments had you already achieved by the time you were 21?

A.   Wow.  I successfully put out my first album by then.  That was a big deal for me.

Q.   How successful was that album?

A.   It did well, I think.  We have a plaque.

Q.   Fair to say that you were a celebrity in your own right?

A.   That's fair to say, yeah.

Q.   And you had very popular songs?

A.   I had some, yeah.

Q.   That were well known at the time?

A.   Yup.

Q.   And people wanted to know you and get to know you?

A.   Yup.

Q.   And you'd been modeling for some time?

A.   Yes.

Q.   And you're very beautiful and charming?

A.   Thank you.

         MS. ESTEVAO:  Can I show the witness and the parties and the Court defense exhibit 1380.

Q.   So by the time you were 21 years old, you'd been a musician for about how long?

A-206

946

P5FCcom3                    Ventura - Cross

A.  It did.

Q.  So you just said that prior to your relationship with Mr. Combs, you were in a relationship with Mr. Leslie, right?

A.  Uh-huh.

Q.  And how much older than you was Mr. Leslie?

A.  I believe 10 years older.

Q.  And when did you start dating him?

A.  When I was 19.  18, 19.

Q.  How old were you when you started dating him.  Oh, I'm sorry.  When you were 18 or 19.

And you testified that you took a trip with Mr. Combs in Miami after your 21st birthday, right?

A.  Yup.

Q.  And you wanted to spend the weekend together, so you came up with a flyer, I believe you said?

A.  I didn't come up with the flyer, but the flyer did happen, yeah.

Q.  In anticipation of your trip to Miami, there was a flyer that was made, right?

A.  Yup.

Q.  And that flyer suggested that there was a club appearance for you in Miami, right?

A.  Yes.

Q.  And the purpose of that flyer was to give the impression that you had a professional reason to go to Miami, right?

1009

P5FMCOM6                    Ventura - Cross

Q.  He says:  Have fun.  Impress me.  Right?

A.  Yes.

        MS. ESTEVAO:  Can we go to the next message.

Q.  You say:  OK.  Right?

A.  Yes.

Q.  And he says:  Can we kiss tonight a lot.

A.  Yes.

        MS. ESTEVAO:  Next page.

Q.  What do you say?

A.  Yes.

Q.  That's in response to him asking if you can kiss that
evening, presumably at the freakoff, right?

A.  Yup.

Q.  And he says, what are you doing?  Where are you at?

        MS. ESTEVAO:  Can we go to the next page.

Q.  What do you say?

A.  At Hustler, about to check out.  Trying to find something
to impress you, LOL U.

        MS. ESTEVAO:  Can we go to the next page.

Q.  And he says:  Great.  Go to hotel, right?

A.  Um-hum.

Q.  What do you say in response to that?

A.  OK.  How long you gonna be, you think.

Q.  And in this exchange so far you have not said no, right?

A.  Correct.

A-208

1010

P5FMCOM6                    Ventura - Cross

Q.  And he says 20, as in 20 minutes, right?

A.  Yup.

        MS. ESTEVAO:  Can we go to the next page, please.

Q.  He says:  You can go set up.  And you respond:  OK.  You still tired.  Right?

A.  Yes.

Q.  He says:  No.  Right?

A.  Yes.

        MS. ESTEVAO:  Can we go to the next page, please.

Q.  You say:  Shit, I left the iPad.  Should I go get.  Right?

A.  Yes.

Q.  What IPad are you referring to there?

A.  I'm not sure which iPad specifically, but probably an iPad that we were going to use that night.

Q.  When you say, I left the iPad, you meant that you had previously had possession of the iPad and had left it wherever you left it?

A.  Yeah.  I just don't know whose iPad it was.

Q.  Putting aside whose it was, you had left it somewhere, right?

A.  Yes.

Q.  So it had been in your possession, right?

A.  Yes.

Q.  And you told him that you left the iPad because you knew that he would want it for the freakoff, right?

A-209

1011

P5FMCOM6                         Ventura - Cross

A.   Yes.

Q.   It was anticipated that the iPad would be used for some sort of reporting for the freakoff, right?

A.   In 2017, yes.

Q.   And you asked him if you should go get it, right?

A.   I did.

Q.   And he says, yeah, fuck, right?

A.   Um-hum, yes.

        MS. ESTEVAO:  Can we go to the next page, please.

Q.   You say:  OK.  I'll run there.  Sorry.  I had it hidden, so I forgot to grab it.  Right?

A.   Yup.

Q.   And you're referring to the iPad being hidden here, right?

A.   I am.

Q.   And this message exchange is from May 26, 2017.  Do you see that?

A.   Yes.

Q.   And at this point you've been together with Mr. Combs for many years, right?

A.   Yes.

Q.   And he says in response to that:  OK.  Meet you at the hotel.  Right?

A.   Yes.

Q.   And you say:  They took forever to check me out because I got a lot of stuff.  I'm leaving the store now.  Right?

A-210

1064

P5FCcom7                    Ventura - Cross

Q.   You were able to keep up with him in a way more than other people?

A.   Surprisingly so, yeah.

Q.   Because he operates at a very intense level, right?

A.   I think so.

Q.   Did some of his assistants and employees also go to Burning Man?

A.   Yes.

Q.   And so you would take drugs at these freak-offs, right?

A.   Yeah.

Q.   And one reason why the freak-offs lasted for so long, for many days, was because of all of the drugs you were ingesting and the recovery time, right?

A.   Yup.

Q.   And it wasn't only sex that you were doing in the hotel, right, having in the hotel?

A.   Right.

Q.   You were also listening to music, hanging out?

A.   True.

Q.   In fact, I believe part of the reason you wanted to participate in the freak-offs was to have your time with him, right?

A.   Yup.

Q.   And it was a special time that you cherished, right?

A.   Yeah.

A-211

1227

P5GMCOM3                    Ventura - Cross

too dope.  You may not be happy, but maybe it's because you surround yourself with people that always take from you.  I don't need you taking care of Kim, Sarah, and Gina.  I needed to love you and put me first.

MS. ESTEVAO:  Can we go up to page 3, please.  Excuse me.  Page 4.

Q.  Can you read these messages, please.

A.  I just don't trust anymore.  That last shot put the nail in the coffin.  I promised myself I wouldn't be with you anymore if you did that to me again.  You lied to me.  When I think to Burning Man a year ago and all the things I found out that you paid for and continued happening.  I just love myself more. I'm not blaming you.  Maybe I didn't try, but you wanted me to be a machine and forgive you every time.  She never went away.

Q.  When you're talking about the last shot put the nail in the coffin and that she never went away, you're talking about Gina, right?

A.  I would think so.

Q.  And in fact there was a photo of Mr. Combs and Gina that was posted that summer that you saw, right?

A.  Yup.

Q.  That made you believe that they were still together, right?

A.  Um-hum.

Q.  When you say, I promised myself I wouldn't be with you anymore if you did that to me again, you promised yourself that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-212

1228

P5GMCOM3                    Ventura - Cross

you wouldn't allow him to cheat on you anymore and put up with
it, right?

A.   Yup.

Q.   And because of this you broke up with him, right?

A.   Yup.

Q.   And again when you say she never went away, you're talking
about Gina, right?

A.   Yup.

Q.   They were in a relationship that lasted for years during
the course of your relationship with him, right?

A.   To my knowledge, yup.

Q.   You said yesterday that you saw him in August of 2018 and
you were having what you called a closure conversation,
correct?

A.   Yup.

Q.   And that at the time he was trying to convince you to go to
Burning Man with him?

A.   From what I remember, yeah.

Q.   And you said that from your perspective at that time you
were not together anymore, right?

A.   Correct.

Q.   And instead you were seeing your now husband, right?

A.   Yup.

Q.   And you said that the dinner that evening -- you had dinner
with him that evening, right?

1261

P5GCcom4          Ventura - Cross

MS. ESTEVAO:  It's in evidence and can be published. Thank you.

MS. JOHNSON:  And I can bring over a hard copy.

THE COURT:  Thank you.

Q.  So, in this message, Mr. Combs says, you just left me, you not picking up, right?

A.  Right.

Q.  And this is on November 19th, 2018, correct?

A.  Correct.

Q.  Just following Ms. Porter's memorial service, right?

A.  Right.

Q.  Can you read your messages back, please.

A.  I didn't just leave you, I said goodbye a few times.  I want to be there for you, but needed to get to grandma.  My flight was delayed, so I'm taking off now.  I need to be real with you.  I know how crazy and painful this all is.  And you want my support, but you've compared me to Gina the other day and the babysitter was there last night and you posted that Kim was your soulmate.  What was the 11 years all about?  11 consistent years.  I know you're going through a lot, but that hurt my feelings.  I love you, but I'm going to my family right now.  I'll probably make it Saturday with my dad.  I'll hit KK. Hit me if you need me.  Love you.

Q.  Gina in that sentence is the Gina we were talking about before?

A-214

1303

P5GCcom6          Ventura - Redirect

A.   Yes.

Q.   Do you recall responding that it wasn't a "yes" or "no"

answer?

A.   Yup.

Q.   Can you explain what you meant by that?

A.   To the yes or no world?

Q.   Yes.

A.   Sorry.  Can you repeat what was yesterday.

Q.   Yesterday, do you recall that defense counsel asked you if

Sean opened up your world?

A.   Yeah.

Q.   And you responded, that's not a yes or no question.

A.   Yeah.  I think I also might have said, like, it opened up a

world.  I didn't really describe it.

Q.   What world did it open up to you, Ms. Ventura?

A.   To me -- I mean, I was led into his world, but I was opened

up to a world of just chaos and with his lifestyle, his

choosing.  And wanting approval, being a part of it, it was a

whole other world I didn't know, I didn't understand at the

time.  It was a lot.

Q.   Do you remember when defense counsel showed you a number of

explicit texts yesterday that you sent to Sean?

A.   Yeah.

Q.   Throughout your entire 11-year relationship with Sean, who

did you want to have sex with?

A-215

1304

P5GCcom6          Ventura - Redirect

A. I wanted to sex with just him.

Q. Was there anyone else you wanted to have sex with?

A. Not at that time.

MS. JOHNSON: Ms. Gavin, and I apologize for not letting you know about this, could you pull up, if you are able, defense exhibit 1166, which is in evidence. Ms. Gavin, would you mind zooming in on those messages.

Q. Ms. Ventura, do you recall being shown this message yesterday?

A. Yeah, vaguely.

Q. I'd like to direct you to the message that's the second message from the top. Do you see that message?

A. Yup.

Q. It's sent from Sean on August 7th, 2009, at 7:52 p.m.

A. Yup.

Q. Do you see where Sean says, you supposed to be seducing me all day?

A. Yup.

Q. What is your understanding of what Sean is telling you to do?

A. To send him sexy messages and just make him feel excited sexually.

Q. How often did Sean give you instructions like seduce me all day?

A. All the time.

A-216

1331

P5GCcom6          Ventura - Recross

THE COURT:  It's overruled.

A.  I worried for my safety, I worried for my career, but I also was in love with him, so I worried that he wouldn't want to be with me anymore, like, that was part of it, too.

MS. JOHNSON:  No further questions at this time.

THE COURT:  Thank you, Ms. Johnson.

Ms. Estevao.

RECROSS EXAMINATION

BY MS. ESTEVAO:

Q.  Ms. Ventura, picking up on that, you said that you were afraid that if you said no to a freak-off, that Mr. Combs wouldn't want to be with you anymore, right?

A.  That was part of it.

MS. JOHNSON:  Objection.

THE COURT:  It's overruled.

Q.  That was part of it, you said?

A.  It was part of it.  We were in a relationship.

Q.  You knew that Mr. Combs's sexual preference were these freak-offs, right?

A.  I learned, yeah.

Q.  And part of being his girlfriend meant participating in these freak-offs, right?

A.  I don't know that it was a rule, but it was --

Q.  Not a rule, but it was his sexual preference, and so you knew that part of being his girlfriend meant doing this sort of

1332

P5GCcom6          Ventura - Recross

thing with him, right?

A.  I would say I learned over time.

Q.  That's what was animating the fear that he would leave you if you didn't do it, right?  The part of it we were just talking about.

A.  Yeah.  Sorry.  My mind is a little bit all over the place right now.

Q.  Do you want to take a moment?

A.  You can continue.

        MS. ESTEVAO:  The government brought up exhibit 1016, can we bring that up, please, defense exhibit 1016.

Q.  Mr. Combs asked you, want a freak-off one last time tonight.  And you said, I don't want a freak-off for one last time, I want it to be the first time for the rest of our lives, right?

A.  Yeah, that's what it says.

        MS. ESTEVAO:  Can we go to the next page.  And the next page.

Q.  You say, yes, I'm horny, just got over UTI, I did it without meds this time.  And he asked you, what you want to do, right?

A.  Yup.

        MS. ESTEVAO:  Can we go on.

Q.  And this is what the government went over with you just now.  You said, I'm emotional right now, I can't do one last

A-218

1340

P5GCcom6          Ventura - Recross

Q. You also had singles with Rick Ross, right?

A. Yes.

Q. And Pusha T, right?

A. Yup.

Q. Am I missing anyone?

A. You got a lot of people.

Q. I'm sure I'll be reminded if I missed someone.

You were saying on redirect that you only wanted to have sex with Sean really, right?

A. When we were together, yeah.

Q. And you participated in the freak-offs because you wanted to make him happy, right?

A. Part of the reason, yeah.

Q. And you knew that, as I asked you before, you knew that this was the kind of sex that he wanted to have, right?

A. I found out through experience.

Q. And you believed that you were special in his life because you were able to give him that, right?

A. Sort of, yeah.

Q. Well, you didn't think he was having this kind of sex with anyone else, right?

A. I was hoping not, but I didn't know.

Q. You in fact did hold a special place in his heart, right?

A. I think I did.

Q. You believe that today, right?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-219

1646

P5JCcom4                        Morgan - Cross

Polaroids to develop?

A. Yes.

Q. And describe your friendship from that point.

A. Well, she was living in Connecticut, I was living in Buffalo, so we would see each other on photo shoots. We would talk and stuff, but we never -- once she was done with high school, we moved in together in New York.

Q. So when you met Cassie, she was still in high school?

A. Yes. So was I.

Q. So then you shared an apartment for a time in New York City?

A. Yes.

Q. And you guys lived downtown?

A. Yes.

Q. How long a period of time did you guys live together?

A. One year.

Q. Do you remember, is that 2004?

A. Yes.

Q. And then you move uptown and she stays downtown?

A. Opposite. She moved to Harlem, I stayed downtown.

Q. And she was, from what you could tell from living with her and being her friend, she was doing pretty well financially with her modeling career, correct?

A. Yes, she was.

Q. I think you said she was making about a quarter million

A-220

1647

P5JCcom4                    Morgan - Cross

dollars?

A. Yes. Some years she was doing really well.

Q. This is modeling in what context --

A. Catalogs, catalog modeling, Target ads, we used to do the back to school circuit, J. C. Penny. They had the same bunch of people working together doing back to school ads.

Q. At some point in time, Cassie started dating someone named Ryan Leslie, am I right?

A. Yes.

Q. And when did she start dating Mr. Leslie?

A. They started dating when we were living together in 2004.

Q. Did you come to know Mr. Leslie pretty well?

A. Yes.

Q. Who was he at the time?

A. He was a music producer.

Q. At that point when she started dating Mr. Leslie, she had not put out any music?

A. No.

Q. How long a period of time, based on living with Cassie, being Cassie's friend, did she date Mr. Leslie, from what you could tell?

A. I think it was a couple years, two or three years.

Q. And only what you know, not what you don't know. Did they seem pretty serious?

A. Yes.

1685

P5JCcom4                    Morgan - Cross

A. Can you repeat the question.

Q. Sure. Do you remember sending -- let me back up for a second.

There were times when you thought that Ms. Ventura should leave Mr. Combs, right?

A. Yes.

Q. And there were times when you thought that they were deeply in love and maybe should try to work it out?

A. Yes.

Q. And you thought both things maybe in the same day, right?

A. Not usually, but --

Q. In the same week, in the same month?

A. Yeah, possible.

Q. From your perspective, they were very much in love, correct?

A. Yes.

Q. From your perspective, Ms. Ventura very much loved Mr. Combs, correct?

A. Yes.

Q. And from your perspective, he very much loved her also, right?

A. Yes.

Q. We'll talk about him first.

From your perspective, he was a flawed person, correct?

1887

P5KsCOM3                         Hayes -Direct

fun moment for a celebration.

MS. FOSTER: Ms. Foster, would you please pull up side by side what is already in evidence as Government Exhibits 2A-101 and 2A-401.

Q. Mr. Hayes, do you recognize these individuals?

A. I do.

Q. And starting with the individual on the left, 2A-101, who do you recognize that to be?

A. Mr. Sean Combs.

Q. And turning to the individual on the right, 2A-401, who do you recognize that as?

A. Ms. Cassie Ventura.

Q. How do you know these two individuals?

A. I was hired sometime in late 2012 to create, like, a sexy scene, sexy erotic scene for them on occasion.

Q. You mentioned you were paid for that?

A. Yes.

MS. FOSTER: Ms. Foster, you can take down these exhibits.

Q. You said you were hired around them by fall of 2012, is that right?

A. That is correct.

Q. Is that when you first met the both of them?

A. Yes.

Q. And can you just walk through how you first met them?

A-223

1888

P5KsCOM3                          Hayes -Direct

A.  I was working at a club event, it was either Friday or Saturday night, and I got a call for with a woman stating that it was her birthday and her husband said that she can have a hired dancer.  So she told me there was some -- she had a get-together with some friends and she wanted to hire me to do a show.

Q.  And how did she tell you that?  Was it by phone, text, call?

A.  It was initially, I believe, a telephone call, and then it moved to text message.

Q.  What name did she provide to you?

A.  Janet.

Q.  Where were you living at this time?

A.  I was living in New York City.

Q.  Was your phone number publicly accessible at that time?

A.  Yes.  I used to market through a website, *getpunished.com*. If you Google search male strippers, bachelorette parties, it would come up on the search engine.  And my phone number was connected to the website.

Q.  You mentioned that your nickname at this period was the Punisher, is that right?

A.  Yes.

Q.  And can you tell us how you got that nickname?

A.  That was a nickname that I got in my teens.  I played basketball on West 4th Street in the cage, and usually the guys

A-224

1889

P5KsCOM3                    Hayes -Direct

played on a regular basis, you would get a nickname, an

association with the park and how you played.  So I earned the

Punisher.

Q.  You mentioned you had a website.

What services did you offer on that website?

A.  Um, aside from booking a male stripper for a bachelorette

or birthday party, I also do ladies night events or I'll do a

party, party where women can come and celebrate, bachelorette

parties at a venue.

Q.  Turning back to the call that you received, when did the

caller ask you to meet her for this party?

A.  Initially we scheduled sometime around midnight, but the

time kept changing, basically being pushed back to later and

later.  And I think we settled on somewhere around 2:30, 2:45

in the morning.

Q.  That was that, sort of, following day, basically, within

the day that the call came, is that right?

A.  Yeah.  So I would have got the call somewhere between,

let's say, 9:00 p.m. and 11:00 p.m. and it followed over into

the following day.

Q.  At what location did she ask you to meet her for this

party?

A.  Trump Tower, Central Park West.

Q.  In New York City?

A.  Yes.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-225

1890

P5KsCOM3                         Hayes -Direct

Q.   What services did you believe you were going to be providing?

A.   Strip tease for a small group of friends.

Q.   And what directions did she give you about what to do when you arrived?

A.   Oddly, I was told to -- well, attempt to come in and come straight upstairs.  Basically bypass security and just come straight to the room.

Q.   Prior to arriving there, what, if any, discussion did you have with her about the cost of these services?

A.   Typically -- typically, at that time, to hire a male dancer would be $200.  That's about a 30- to 45-minute show, so that's what I called it.

Q.   What happened when you arrived at the hotel?

A.   When I arrived at the hotel, I was greeted at the door by Ms. Ventura.  She had on a bathrobe with -- that appeared that she had nothing on underneath, and I think she had on a wig.

Q.   You stated that the woman who greeted you was Ms. Ventura, is that right?

A.   Yes.

Q.   At that time, did you recognize who it was?

A.   I did not.

Q.   But here today you recognize that person as Casandra Ventura, is that right?

A.   Yes, I do.

A-226

1891

P5KsCOM3                    Hayes -Direct

Q.   What happened when she opened the door?

A.   When she opened the door, she greeted me typically like any party, and she invited me into the hotel suite.

Q.   And what, if anything, did she say to you when you got inside the suite?

A.   Um, we walked into the hotel suite area.  I was expecting a crowd, but the room was -- there was no guests there.  I just stopped in front of a bathroom and just kind of asked, Would you like me to change here?  And she explained to me that she didn't want me to actually dance.  She explained to me that her and her husband liked to create a sexy scene that consisted of me and her mutually applying baby oil, applying it to ourselves and to possibly each other, and try to create a sexy environment that her husband would eventually come out to watch.

Q.   You mentioned that when you were booked for this, you anticipated, like, a small party, is that right, of people?

A.   Yes, that is correct.

Q.   When you arrived, did you see anyone other than her?

A.   I did not.

Q.   What did she hand to you when she said this to you?

A.   So when she explained in front of the bathroom that -- once she explained that she wanted us to create the scene, she handed me a stack of money for me to take into the bathroom and instructed to change into either underwear or a towel.  It was

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-227

1892

P5KsCOM3                    Hayes -Direct

my preference.  When I got into the bathroom, I counted it and it was $800.

Q.  You mentioned she wanted you to create the scene for herself, for her and her husband, is that right?

A.  That is correct.

Q.  What, if anything, did she say about how you should react when her husband came into the room?

A.  I was specifically told to not -- not acknowledge her husband, try not to look at him, no communication or anything between me and him.

Q.  Can you describe the room?

A.  The room was very dimly lit.  There were candles.  I don't think there were actual candles, but maybe electronic candles that looked like regular candles, but they were electronic. All of the furniture was covered in sheets and there was an area pretty much set up for me to sit and her to sit across from me, and there were little bowls in the area with baby oil in them.

Q.  There were what bowls?

A.  Yeah, there were bowls of water, and then in the bowls of water there were bottles of baby oil.

Q.  Got it.

You mentioned you went into the bathroom, is that right, after she told you what was going to happen?

A.  Yes.

A-228

1894

P5KsCOM3                    Hayes -Direct

A.   I use Astroglide myself.  I noticed it by the purple top, so that is what had I associated it with.

Q.   What is Astroglide?

A.   It's a lubricant, sexual lubricant.

Q.   What did the man say when he entered the room?

A.   I had no communications with him.  He didn't say anything upon entering, that I remember.

Q.   After he entered the room, what could you see the man doing?

A.   At points, he was -- there was a table and a chair on the opposite side of the room.  So he sat behind a table and chair, and he kind of paced back and forth.  And I noticed that at times he was masturbating.

Q.   What, if anything, was he saying during the interaction?

A.   He was speaking to Ms. Ventura directly, but it was mostly subtle directions, things like, um, move the light to the side, maybe positioning her body a certain way.  Similar suggestions in terms of the angles we sat, I guess, for -- to get a better view.

Q.   And about how long did this encounter last in total?

A.   I feel like maybe 25, 35 minutes.  Possibly 25 to 45.  I didn't keep real good track of time, but it wasn't a long encounter.

Q.   And how did it end?

A.   At some point the man stood up and left the room.

A-229

1895

P5KsCOM3                    Hayes -Direct

Ms. Ventura followed him out.  I kind of sat there waiting on the couch, and then she returned and she asked me if I wanted to finish.  So finished, I interpreted it as having an orgasm, which I declined at that point.  I was trying to be as professional as possible.  I know I was there to create what I called a sexy scene, so I declined.  I said I was good.  As long as they were happy, I was happy.  And she said thank you, and that's -- that's, you know, you were -- you know, that's what we wanted, and I was handed additional monies.

Q.  And did you count the money you were handed?

A.  Yes.  I didn't count it until after I got dressed.  When I got to the elevator, I counted it.  It was an additional $1,200.

Q.  At the time that this man entered the room at the time of this encounter, did you know who he was?

A.  I did not.

Q.  Did that change at some point?

A.  Yes.

Q.  And who do you now know the man to be?

A.  Mr. Sean Combs.

Q.  And how did you learn who he was?

A.  Um, I was -- I was actually contacted in the future to create a similar scenario.  And one specific time at a hotel called the Essex House, there was a waiting period until before we started.  I was put into a room, and to kill time I cut on

1896

P5KsCOM3                    Hayes -Direct

the TV.  And the hotel TV had a welcome message, and it said

Essex House would like to welcome Mr. Sean Combs.

Q.  You mentioned you were contacted in the future, is that

right?

A.  Yes.

Q.  Approximately how many more encounters with Ms. Ventura in

front of Mr. Combs did you have?

A.  I don't have an exact number, but I estimate between eight

and 12 times.

Q.  And during those encounters, did you ever see his face?

A.  Um, yeah.  Further along down the line, I believe a similar

time when I found out what the hotel scene, the hotel Essex

House, where I saw it on the TV, eventually it switched from

wearing one of those veils to just a baseball cap.  So I was

able to notice his face.

Q.  And how did you find out who the woman was?

A.  So, ironically, I'm a fan of Mr. Combs.  I followed him on

Instagram.  So I would see his posts and things, but I just

didn't put it together.  So once I recognized the name on the

TV, I went to his page, and I saw Ms. Ventura and some of the

posts with him.

            MS. FOSTER:  Your Honor, this would be a fine place to

take a stop.

            THE COURT:  OK.  Thank you, members of the jury.  We

will take our break for lunch.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-231

1901

P5KCcom4                         Hayes - Direct

London hotel, the Gramercy Hotel, and there was another hotel on the same street as the Essex House, but I don't remember the name.

Q.   Was it always a hotel?

A.   Yes.

Q.   And at what times of day did these occur?

A.   It was usually very early in the morning, sometime between 2:30 a.m. to maybe as late as 11:00 a.m. with me leaving.

Q.   How would you be contacted before these encounters?

A.   Typically the same way, a phone call that would then turn into text message communications to kind ever figure out a place and a time that worked.

Q.   Who would reach out?

A.   The majority of the time I assume it was Cassie Ventura. The communication was pretty standard.  I only had one occasion where I got kind of confused text message and I didn't understand -- I didn't know who I was talking to because it was a different phone number, and I asked for a photo to be texted to me.  The conversation kind of stopped.  Then, later that day, I got a text from Ms. Ventura stating that it was her husband.  At that time, I thought it was still Janet.  So I got a text saying it was her husband and she'll take over from there.  So that's the only time I think I was contacted by someone else other than Ms. Ventura.

Q.   About how much notice would you receive before one of these

1902

P5KCcom4                    Hayes - Direct

encounters?

A.   It was typically the same day.  So it would be sometime in the evening, let's say from anywhere from 5:00 p.m. to about 9:00 p.m., hey, are you available, and if I was, obviously we would schedule -- or kind of just -- I was just kind of kept posted to a location and time.

Q.   After the first few encounters, what did you understand you were being hired to do?

A.   It always started the same.  It was to create a sexy scene, like I said before, but I understood it could escalate to more sexual activity, whether it be oral sex or penetrative sex.

Q.   During these encounters, at a high level, could you describe what would happen?

A.   It was pretty much a similar pattern.  It would always start in some sort of seated couch scenario where we would put on baby oil to kind of create a look.  Me and Ms. Ventura would kind of put oil on ourselves, put it on each other, and kind of create a sexy atmosphere.

Q.   And was Mr. Combs always involved?

A.   Yes.

Q.   What would he be doing?

A.   Similar, like the first occasion, he would at some point come into the room, sit in the distance, gave subtle directions to Ms. Ventura based on, like I said, angles, lighting, positionings, and sometimes the sexual activity.

1903

P5KCcom4                    Hayes - Direct

Q.  And what type of sexual activity did you engage in with Ms. Ventura?

A.  Oral sex, either me performing or her performing, and penetrative sex.

Q.  And how did the rooms look?

A.  Excuse me?

Q.  How would the rooms look?

A.  Similar, like the first, it was very consistent with dimly lit, candles, sometimes music in the background, and always the furniture covered in sheets.

Q.  You mentioned that during these encounters, Mr. Combs would give directions or instructions; is that right?

MR. DONALDSON:  Objection.  Mischaracterizes the evidence.

THE COURT:  That's overruled.

Q.  You may answer.

A.  Yes.  Yes, the way I described.

Q.  Could you describe what type of directions he would give?

A.  You know, like I said, it would be very subtle between him and Ms. Ventura.  Usually, generally, move the candle to the right, move it to the left, you know, position your body, sit forward.  At times, it could be directly to what's happening sexually in terms of, you know, perform -- one time specifically, because I don't have a full recollection of all the words, I know there was a time during sex where he would

A-234

1904

P5KCcom4                    Hayes - Direct

say -- one time we were actually having sex and he dropped like a stack of money on the bed, and he said, you know, he popped up, said, are you okay, and he was just like, no, I like this shit.  So he would give feedback in terms of his being happy with the scenario.

Q.  And who would he give the directions to?

A.  Ms. Ventura.

Q.  Did you ever observe Ms. Ventura give any directions to him?

A.  I did not.

Q.  Across all these encounters, you mentioned you would use baby oil; is that right?

A.  Yes.

Q.  And how much?

A.  A considerable amount.  It was preferred to keep our bodies I guess covered, for I guess the look of it to shine or whatever was the preference.

Q.  And who gave directions about applying baby oil?

A.  Initially, I was told to do it by Ms. Ventura upon starting the session.  That was my original -- but during the acts, it would kind of be suggested or I would follow her lead in terms of grabbing more, putting more on.  It was kind of implied and known by me to keep the bodies as covered in baby oil as possible.

Q.  From start to finish, from you arriving there to leaving,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-235

1907

P5KCcom4                    Hayes - Direct

was okay and everything was all right.

Q. What did he respond?

A. He said something to the degree that I'm fine, I'm enjoying this shit.

Q. Going back to the directions that Mr. Combs would give, you mentioned that sometimes he would give directions about what sex acts you could perform; is that right?

A. Yeah. Everything was very subtle, but yes, certain things were suggested.

Q. Like what?

A. Like oral sex, like time for oral sex. There was a specific time where we were interacting and -- probably one of the only times because he only in close proximity two times, the time with the money, and one other time he came over and he threw some condoms on the couch where we were interacting and said, I'm ready to see you fuck her, you know. So that was kind of an instruction at that point, too.

Q. Were there ever times that Mr. Combs would leave the room during these encounters?

A. Yeah. Briefly, sometimes we would be in the middle of an encounter, a sexual play scene like I described, and at times Mr. Combs would just stand up and leave the room. Usually Ms. Ventura would then follow behind him. They would be gone for a few minutes and then she would return.

Q. So he would leave the room and then what would happen?

A-236

1908

P5KCcom4                    Hayes - Direct

A.   He would leave -- he would stand up and leave the room at some point in the middle, Ms. Ventura would notice it, and then give me a cue to just call time out and she would follow him out the room.

Q.   Was there any communications between them before she would do that?

A.   Not anything specific that I recall.

Q.   What would happen when they would return from the room?

A.   We would either resume what we were doing previously. Sometimes I would get instructions to, like I said, finish.  So it could vary depending on the time.

Q.   Based on your observations of Ms. Ventura and your interactions with her during these encounters, what was your understanding of whether she was enjoying herself?

A.   I don't have a full -- I can't rely on -- I don't have a thought process to her enjoyment level.  I just -- my understanding was we were creating a scene, like a sexy scene that was enjoyable for her partner.

Q.   Can you explain what you mean by that?

A.   It appeared to me at some point that this was -- appeared like a fetish type of thing --

        MR. DONALDSON:  Objection.

        THE COURT:  What are the grounds?

        MR. DONALDSON:  I believe he's about to speculate related to what --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-237

1928

P5KCcom4                    Hayes - Cross

Q.  When you do these parties, there are lots of women inside
the room?

A.  Exactly.

Q.  And they are yelling and screaming to tell you to do
certain things, correct?

A.  Yeah.  Yeah.  Well, no, not necessarily.  I don't get
instructions.  I kind of create the show myself.

Q.  Create the show yourself and you go up to a young lady and
you start dancing in front of her, correct?

A.  Yes.

Q.  And you start doing what you call a dry hump, correct?

A.  Yup.

Q.  And you know if that person doesn't want to do that, you're
not going to do that, correct?

A.  That is correct.

Q.  You're not going to dry hump someone you don't believe
wants to be dry humped, correct?

A.  Yeah.  That's very important to read the room to know what
to do and what not to do.

Q.  So when you would have any sexual interactions with
Ms. Cassie, based on your 25 years of experience, you were
reading that room, correct?

A.  That is correct.

Q.  You were making sure you weren't doing something with
someone who did not -- you were making sure you were doing

A-238

1929

P5KCcom4                        Hayes - Cross

something with Cassie that she wanted to do, correct?

A. Well, I did not get any cues that there was a discomfort with what was going on.

Q. Let's start there. You didn't get any cues that there was a discomfort with the sexual interactions between you and Cassie, correct?

A. I did not.

Q. Because if you had got some cues or some kind of discomfort, you would not have done that, correct?

A. That is correct.

Q. So when you were having these sexual encounters with Cassie eight to twelve times, no cues about any discomfort, correct?

A. That's correct.

Q. That's based on your 25 years of experience and dry humping hundreds of thousands of women, correct?

MS. FOSTER: Objection.

THE COURT: That's sustained.

Q. Hunk-O-Mania does not allow prostitution, correct?

A. That is correct.

Q. Neither does getpunished.com?

A. It does not.

Q. And you are still part of Hunk-O-Mania?

A. I am.

Q. You are still part of getpunished.com?

A. I am.

1930

P5KCcom4                    Hayes - Cross

Q.  So you don't do prostitution, correct?

A.  I do not.

Q.  Now you mentioned these directions, you said subtle directions he was giving, correct?

A.  Yes.

Q.  And when you say subtle, you mean like quiet directions, correct?

A.  Yes.

Q.  Like these directions were given while you and Cassie were already involved in sexual intercourse, correct?

A.  Not necessarily.  Sometimes just massage.  Every time was not during intercourse, it was throughout the entire, let's call it scene or interaction.

Q.  So while you're creating a scene, Mr. Combs would say, put a candle here, put a candle there; is that correct?

A.  That's correct.

Q.  And then once you guys started intercourse, Mr. Combs would say, subtly, do this and do that, correct?

A.  Yes.

Q.  And again, you're not doing anything with Cassie unless you think she wants to do it, correct?

A.  Yes, that is correct.

Q.  So while he's providing subtle directions, you are still involved in sexual intercourse with Cassie, correct?

A.  That is correct.

A-240

1931

P5KCcom4                    Hayes - Cross

Q. And Cassie is showing you that she's engaged in the sexual intercourse, correct?

A. Yes. It seemed like it was consented as far as I was concerned.

Q. Seemed like it was mutual and she was having a good time and you were having a good time, correct?

A. Well, I can only speak for myself, but it seemed like the scenario, I was there to create the scene or whatever, that it was going well. That was my goal. I really looked at it as a job, and in those moments, I would feel I was doing what I was there to.

Q. So you say on the scene. So you're saying scene and you're saying Mr. Combs was providing directions, you said that?

A. Yes.

Q. So it was kind of like a movie, correct?

A. Yes.

Q. And Mr. Combs was saying was the director?

A. Yes, that's correct.

Q. You and Cassie were actors?

A. That is correct.

Q. Sometimes coproducers?

A. I don't know what -- the title of what producers actually do, I thought they finance most of it.

Q. Sorry. Definitely wasn't doing that, were you?

A. No, not doing that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A-241

1936

P5KCcom4                    Hayes - Cross

A.  That is correct.

Q.  You mentioned drugs, or the prosecutor asked you about drugs.  You never saw any drugs in any hotel room, correct?

A.  The only thing that I saw would be I assume was marijuana.

Q.  You assume was marijuana?

A.  Yeah.

Q.  And you said that when you observed Mr. Combs, he never appeared to be intoxicated, correct?

A.  That is correct.

Q.  They didn't ask you, when you observed Ms. Ventura, she never appeared to be intoxicated, correct?

A.  She did not.

Q.  And when you observed Ms. Ventura, she never appeared to be under the influence of any drugs, correct?

A.  Not that I would recognize, no.

Q.  You wouldn't have sexual intercourse with a woman who you believed to be under the influence of drugs, would you?

A.  I would not.

Q.  Because that would be bad, right?

        MS. FOSTER:  Objection.

        THE COURT:  That's overruled.

Q.  That would be bad, right?

A.  Absolutely.

Q.  Right.  So the ten or twelve times you visited Cassie Ventura and had sexual intercourse with her, it's fair to say

A-242

1944

P5KsCOM5                          Hayes - Recross

Q. That was all her wanting to do that, correct?

A. Um, the way it was interpreted, yes.

Q. And then prior to that, the steamy interaction between you and Cassie was all her and you enjoying a sexual moment, correct?

        MS. FOSTER: Objection.

        THE COURT: If you can rephrase that question.

Q. This sexual moment that you were having with Cassie that you say was steamy, there was nothing about that moment that would lead you to believe that Ms. Cassie wasn't engaged with you in that sexual activity, correct?

        MS. FOSTER: Objection.

A. There --

        THE COURT: It's overruled.

A. Yeah, in that moment, I had no reason to believe that she wasn't engaged.

Q. She appeared to you that she was completely 100 percent desirous of having that sexual moment with you, correct?

A. That -- that wouldn't be my words, but I did feel like I was doing a good job, or based on my sexual pressure of the moments and stuff, that was my best day, encounter.

Q. Do you have any idea whether or not Cassie -- I'm just going to ask.

        You said that you had orgasms?

A. Correct. Yes.

A-243

4580

P65ACom5                    Jane - Direct

one another, like it made me feel really good inside.

Q. So over those three months between February and May of 2021, how did you feel about Sean?

A. I loved him very much.

Q. I want to talk now about May of 2021.

What do you remember happening in your relationship with Sean in May of 2021?

A. I remember that just when we would watch pornography, we just started to have a lot more of fantasy conversation.

Q. Do you need to take a break, Jane?

A. No.

Q. Who initiated the fantasy conversation you're describing?

A. Sean.

Q. And can you explain to us how he initiated that conversation?

A. Just we would just search specific things on these websites. And just in the middle of, like, being high, like, he just really wanted me to fantasize or kind of really talk about other men and this type of role play about other men.

Q. You mentioned you would search on these websites. Are you talking about pornography websites?

A. Yes.

Q. So would you be watching pornography?

A. Yes.

Q. And you said that he would want you to talk about other

A-244

4581

P65ACom5                    Jane - Direct

men.  What did he tell you he wanted you to say about other men?

A.  It was more like a question.  Like, do you like what you see there?  Do you like that?  Do you want that?  Can you imagine that?  Pretend that that's here and I'm that person.

Q.  Now, in May of 2025, is there a particular night when you remember him introducing this fantasy talk?

A.  Yes.

Q.  At the point where he brought it up --

MS. GERAGOS:  Objection to the time period.

MS. COMEY:  May of 2021.  I'm so sorry.

Q.  In May of 2021, was there a time when Sean initiated this fantasy talk?

A.  Yes.

Q.  And at that point when he referenced it, where were you?

A.  We were in his bedroom watching pornography.

Q.  In what city?

A.  Miami.

Q.  And how long had you been awake at that point?

A.  Around I would say 12 or 15 hours.

Q.  Into the night?

A.  From the evening until the morning.

Q.  So had you been awake the whole prior day, too?

A.  Yes.

Q.  So had you been awake for a total of about 24 hours?

A-245

4582

P65ACom5                    Jane - Direct

A.  Yes.

Q.  And what, if any, drugs had you been using for the last 12 to 15 hours?

A.  A mix of ecstasy and Molly.

Q.  And what had you and Sean been doing for the last 12 and 15 hours?

A.  Having sex.

Q.  In the way you described?

A.  Yes.

Q.  So then what did Sean start to say to you after you had been doing that for 12 to 15 hours?

A.  He started saying I can make this fantasy a reality.  If you'd like to have that happen, I can make that happen.

Q.  And how did you react?

A.  I said okay.

Q.  Why did you say okay?

A.  Because seemed like he wanted that and it was turning him on and I was really into my partner and I said okay.

Q.  Now, when you said okay, did you think that was going to happen that night?

A.  No.

Q.  When you said okay, did you want to be having sex with someone other than Sean?

A.  No.

Q.  So what did you think you were doing when you said okay to

4583

P65ACom5                    Jane - Direct

him?

A. Playing into the fantasy.

Q. So did you just think this was a fantasy?

A. Yes.

Q. How did Sean respond when you said okay?

A. I remember I went to the restroom. And when I came back out, Sean was in a robe and staring at his phone like really seriously.

Q. How if at all had his demeanor changed?

A. He just looked really serious in his phone.

Q. And what did Sean say to you when you came out of the bathroom?

A. He said we can make that happen tonight.

Q. How did you react when Sean told you we can make that happen tonight?

A. I was like, tonight, like, okay. I was taken back, a bit surprised, but like, okay.

Q. Why did you say okay?

A. Because my partner was excited, and it was already happening, and this was something we were going to do.

Q. Were you still high at this point?

A. Yes.

Q. What do you remember happening next?

A. I remember being in a hotel room.

Q. Do you remember how quickly you got to that hotel room

A-247

4584

P65ACom5                    Jane - Direct

after you saw Sean on his phone?

A.   Just within a couple hours.

Q.   Do you remember what hotel you went to?

A.   A hotel in Miami.

Q.   And when you got to the hotel room a couple hours after Sean had been on his phone, what did you see in the hotel room?

A.   I saw the assistants setting up this room.  There was beverages.  The lights were already red.  There was just kind of like a bustle of getting this room ready.

Q.   Do you remember what assistants were setting up the room?

A.   I don't.

Q.   After the assistants set up the room, who was left in the room?

A.   It was me and Sean in the bedroom talking.

Q.   And what did Sean say to you in the bedroom?

A.   He just told me that there's somebody coming, and just to relax, and that this would something fun, and he knows the guy, and he's a really nice guy.  And I was just super nervous and just listening to him.

Q.   When Sean said that he knows the guy, what guy did you understand Sean was referring to?

A.   I figured he was referring to this fantasy guy that was coming.

Q.   So what did you understand Sean was telling you was about to happen?

A-248

4589

P65ACom5                    Jane - Direct

Q. While you started dancing, what did you see Don do?

A. Getting turned on.

Q. What was Don wearing at this point?

A. Shorts.

Q. What kind of shorts?

A. I think his underwear.

Q. What do you remember happening next?

A. I remember Don came closer to me and started touching me, touching my leg, and just trying to make me feel comfortable. And I started touching him and just trying to -- I don't know.

Q. What was Sean doing while you and Don started touching each other?

A. He was watching and touching himself.

Q. What was Sean wearing at this point?

A. Nothing.

Q. And you say he was touching himself, was he masturbating?

A. Yes.

Q. What do you remember happening next?

A. I remember things got a little more hot and heavy with me and Don and we started doing like foreplay on one another.

Q. Now, as that went on, who if anyone suggested that you perform oral sex on Don?

A. Sean.

Q. And what did you do in response?

A. I did that.

A-249

4592

P65ACom5                    Jane - Direct

Q.  And then what did you and Sean end up doing?

A.  We were in a really good mood and we just started making love and he was really, really happy.

Q.  How did that night ultimately end with Sean after Don left?

A.  I can't totally remember, but we were together and we were happy.

Q.  The next day do you remember where you went?

A.  I went home.

Q.  Now, before you went home, what if any boat trips do you remember taking on that same trip to Miami?

A.  Oh, yes.  After, after that, we actually went on a really nice yacht boat day with him and his friends.

Q.  So was that the day after you had first met Don?

A.  Yes.

Q.  And what do you remember about that boat day?

A.  It was a lot of fun.  We -- we were just all together as a group.

Q.  And then did you go home?

A.  Yes.

Q.  Now, immediately after that night when you got home, how did you feel?

A.  I felt exhilarated from that experience.

Q.  Can you explain why?

A.  I felt that I had did something -- done something that I had never done before.  I felt excited.  I was happy.  It was

A-250

4593

P65ACom5                    Jane - Direct

taboo.  It was fun.  I had a good time with my partner.

Q.  What did you think that night represented in your relationship with Sean?

A.  I just took that as a night that we just did something so crazy, taboo, and fun, and sexy.

Q.  What did you think about whether you would do that again?

A.  I didn't think we would be doing that again like that.

Q.  What do you mean?

A.  I mean that after that night, I figured it was just something that we did that one time, and maybe on a random other night, maybe we would do it again, just something taboo.

Q.  How if at all did your relationship with Sean change after that?

A.  After that night, I truly felt that that night just opened like a Pandora's box in our relationship.  It just completely set the tone for our relationship moving forward.

Q.  What do you mean by opening a Pandora's box?

A.  I meant that it was just a door that like I was unable to shut for the remainder of the relationship.

Q.  If you were exhilarated by the first time and were open to possibly doing it again, why did you feel like this was a door you wanted to shut?

A.  Because it was so much of it after and it was too much of it.

Q.  How much of your relationship did nights where you had sex