# 25-2623

## IN THE
## United States Court of Appeals
### FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

SEAN COMBS, AKA Puff Daddy,
AKA P. Diddy, AKA Diddy, AKA PD, AKA Love

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK, NO. 1:24-CR-542

### BRIEF OF LAW PROFESSORS AS *AMICI CURIAE*
### IN SUPPORT OF DEFENDANT-APPELLANT

Lisa A. Mathewson
MATHEWSON LAW LLC
1617 John F. Kennedy Blvd.,
 Suite 2027
Philadelphia, Pa 19103
(215) 399-9592
lam@mathewson-law.com

*Counsel of Record for Amici Curiae*

## Amici Curiae Professors of Law

Prof. Douglas A. Berman
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, Ohio 43210
(614) 688-8690
berman.43@osu.edu

Prof. John Blume
CORNELL LAW SCHOOL
Myron Taylor Hall
Ithaca, NY 14853
(607) 255-1030
jb94@cornell.edu

The Hon. John Gleeson, Retired (E.D.N.Y.)
Adjunct Professor
NEW YORK UNIVERSITY OF LAW
40 Washington Sq. South
New York, NY 10012
(212) 998-6100
john.gleeson@nyu.edu

## TABLE OF CONTENTS

Table of Authorities.................................................................................ii

Statement of Interest .............................................................................. 1

Introduction.............................................................................................2

Argument ...............................................................................................6

I.     The district court misapplied the U.S. Sentencing Guidelines
       by including acquitted conduct when calculating the
       applicable sentencing range...........................................................9

II.    The district court exceeded its statutory sentencing
       authority by allowing acquitted conduct to drive the
       sentence. ...................................................................................... 17

III.   Giving significant weight to acquitted conduct at sentencing,
       as here, is unreasonable in light of foundational
       constitutional principles...............................................................24

Conclusion ........................................................................................... 29

Required Certifications ........................................................................ 30

# TABLE OF AUTHORITIES

## CASES

*Alleyne v. United States*, 570 U.S. 99 (2013) ............................. 3, 6, 8, 26

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ................................. 3, 8, 26

*Batson v. Kentucky*, 476 U.S. 79 (1986) ................................................. 26

*Blakely v. Washington*, 542 U.S. 296 (2004) .................................. passim

*Duncan v. Louisiana*, 391 U.S. 145 (1968) ............................................ 26

*Erlinger v. United States*, 602 U.S. 821 (2024) ............................. passim

*Gall v. United States*, 552 U.S. 38 (2007) ............................................ 10

*In re Winship*, 397 U.S. 358 (1970) ....................................................... 21

*Jones v. United States*, 526 U.S. 227 (1999) ........................................ 23

*McClinton v. United States*, 143 S. Ct. 2400 (2023) ..................... 3, 14, 21

*Oregon v. Ice*, 555 U.S. 160 (2009) ....................................................... 28

*Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) ........................................ 26

*Singer v. United States*, 380 U.S. 24 (1965) ......................................... 26

*Southern Union Co. v. United States*, 567 U.S. 343 (2012) .................... 27

*Triestman v. United States*, 124 F.3d 361 (2d Cir. 1997) ...................... 15

*United States v. Canania*, 532 F.3d 764 (8th Cir. 2008) ................. 21–22

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) ...................... 25, 27

*United States v. Cole,* 158 F.4th 113 (2d Cir. 2025) .............................. 12

*United States v. Coleman,* 370 F. Supp. 2d 661 (S.D. Ohio 2005).......... 22

*United States v. Eaglin*, 913 F.3d 88 (2d Cir. 2019) ............................. 25

*United States v. Frias*, 39 F.3d 391 (2d Cir. 1994) ............................... 22

ii

*United States v. Gaudin*, 515 U.S. 506 (1995) ........................................ 7

*United States v. Haymond*, 588 U.S. 634 (2019) ................................. 3, 8

*United States v. Martinez*, 110 F.4th 160 (2d Cir. 2024) ...................... 12

*United States v. Parkins*, 935 F.3d 63 (2d Cir. 2019) ........................... 15

*United States v. Simpson*, 319 F.3d 81 (2d Cir. 2002) .......................... 15

*United States v. Watts*, 519 U.S. 148 (1997) ......................................... 5

*Wooden v. United States*, 590 U.S. 360 (2022) ..................................... 16

*Yeager v. United States*, 557 U.S. 110 (2009) ...................................... 12

## STATUTES, REGULATIONS

18 U.S.C. § 3553(a) ...................................................................... passim

18 U.S.C. § 3661 ............................................................................... 17

## SENTENCING GUIDELINES

U.S. Sent'g Guidelines Manual § 1B1.3 ........................................ passim

U.S. Sent'g Guidelines Manual § 3B1.1 .............................................. 16

U.S. Sent'g Guidelines Manual § 2G1.1(b)(1) ..................................... 16

## OTHER AUTHORITIES

2 J. Story, Commentaries on the Constitution of the United States
(4th ed. 1873) ............................................................................... 7, 26

Carl Thiese, *When Judges Punish for Crimes the Jury Rejected*,
Niagara Reporter (Oct. 10, 2025) ....................................................... 23

Eang Ngov, *Judicial Nullification of Juries: Use of Acquitted Conduct at Sentencing*, 76 Tenn. L. Rev. 235 (2009).................. 19, 20, 22

Lucius T. Outlaw III, *Giving an Acquittal Its Due: Why a Quartet of Sixth Amendment Cases Means the End of United States v. Watts and Acquitted Conduct Sentencing*, 5 U. Denv. Crim. L. Rev. 173 (2015) ...............................................................................24

Mark T. Doerr, Note, *Not Guilty? Go to Jail. The Unconstitutionality of Acquitted-Conduct Sentencing*, 41 Colum. Hum. Rts. L. Rev. 235 (2009) ..........................................................24–25

Orhun Hakan Yalincak, *Critical Analysis of Acquitted Conduct Sentencing in the U.S.: "Kafka-esque," "Repugnant," "Uniquely Malevolent" and "Pernicious?"*, 54 Santa Clara L. Rev. 675 (2014) .......19

Peter Erlinder, *"Doing Time" … After the Jury Acquits: Resolving the Post-Booker "Acquitted Conduct" Sentencing Dilemma*, 18 S. Cal. Rev. L. & Soc. Just. 79 (2008)........................................................25

*Prison Time for Something Diddy Didn't Do*, Wall St. Journal (Oct. 9, 2025)...................................................................................23

The Federalist No. 83 (C. Rossiter ed. 1961) ......................................2, 8

U.S. Sentencing Commission, *Federal Register Notice of Final 2022-2023 Priorities* (Oct. 2022). ...........................................................9

U.S. Sentencing Commission, News Release, *Commission Votes Unanimously to Pass Package of Reforms Including Limit on Use of Acquitted Conduct in Sentencing Guidelines* (April 17, 2024) .......4, 10

## STATEMENT OF INTEREST

Amici curiae are professors of law who teach and conduct research in the fields of criminal law and sentencing.[1]  They are:

• Professor Douglas Berman, Newton D. Baker-Baker & Hostetler Chair in Law and Executive Director of the Drug Enforcement and Policy Center at The Ohio State University Mortiz College of Law;

• Professor John Blume, Samuel S. Leibowitz Professor of Trial Techniques and Director, Cornell Death Penalty Project, at the Cornell Law School; and

• The Honorable John Gleeson (Ret.), Adjunct Law Professor teaching sentencing and related topics at the New York University School of Law; former U.S. District Judge for the Eastern District of New York.

Amici have a professional interest in ensuring that federal

---

[1]  Amici certify that no counsel for a party authored any portion of this Brief; no party nor party counsel contributed money toward preparing or submitting this Brief; and no person other than counsel to the amici contributed money toward funding or preparing this Brief.

Amici's professional affiliations are noted for identification only. They submit this Brief in their personal capacities.

All parties have consented to this filing.

sentencing guidelines and statutes are interpreted and applied in a manner that coherently advances their purposes and is consistent with relevant jurisprudential principles and contemporary function in criminal law. They respectfully submit this Brief to highlight concerns with acquitted-conduct sentencing.

## INTRODUCTION

"The Fifth and Sixth Amendments placed the jury at the heart of our criminal justice system." *Erlinger v. United States*, 602 U.S. 821, 831 (2024). And this foundational design was not a "mere procedural formality, but a fundamental reservation of power in our constitutional structure." *Blakely v. Washington*, 542 U.S. 296, 306 (2004). Our founding documents — ranging from the Declaration of Independence to the U.S. Constitution to early state constitutions — all recognized that respecting and safeguarding jury trial rights for all criminal defendants serves the causes of democracy and liberty in our Nation. *See Erlinger*, 602 U.S. at 829-832; *see also* The Federalist No. 83, at 499 (C. Rossiter ed. 1961) (stressing Framers' consensus affinity for jury trials as a "valuable safeguard to liberty," as "essential in a representative republic," and as "the very palladium of free government").

These principles have found recent expression in a series of U.S. Supreme Court rulings vindicating "constitutional protections of surpassing importance," *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000), by curtailing judicial authority to increase sentences based on facts not found beyond a reasonable doubt by a jury. *See, e.g., Erlinger*, 602 U.S. at 831; *United States v. Haymond*, 588 U.S. 634 (2019); *Alleyne v. United States*, 570 U.S. 99 (2013); *Blakely*, 542 U.S.at 306; *Apprendi*, 530 U.S. at 476–77. These cases, in turn, have heightened concerns about federal judges using conduct a jury unanimously deemed insufficient for conviction — so-called "acquitted conduct" — to increase a defendant's advisory guidelines range and final sentence. As a Justice recently noted, acquitted-conduct sentencing raises "questions that go to the fairness and perceived fairness of the criminal justice system," especially given "the jury's historical role" to use acquittals "to limit the State's authority to punish, an ability that the Founders prized." *McClinton v. United States*, 143 S. Ct. 2400, 2401 (2023) (Sotomayor, J., statement respecting the denial of certiorari); *see also id.* at 2403 (Kavanaugh, J., statement respecting the denial of certiorari) ("The use of acquitted conduct to alter a defendant's Sentencing Guidelines range

raises important questions.")

This case raises, in a high-profile setting, the issue of how federal sentencing law and the U.S. Constitution limit judicial reliance on acquitted conduct at sentencing. It does so in the wake of the U.S. Sentencing Commission's recent decision to amend the U.S. Sentencing Guidelines ("USSG") to bar courts from using acquitted conduct when calculating a guidelines range, which the Commission Chair called "an important step to protect the credibility of our courts and criminal justice system." U.S. Sentencing Commission, News Release, *Commission Votes Unanimously to Pass Package of Reforms Including Limit on Use of Acquitted Conduct in Sentencing Guidelines* (April 17, 2024) ("USSC, *Commission Votes Unanimously*").

Yet this effort to protect the credibility of our criminal justice system was undermined at Mr. Combs's sentencing: over defense objections, the district court used acquitted conduct both to increase Mr. Combs's guideline range and to drive its evaluation of the statutory sentencing factors. Those rulings warrant reversal and resentencing for at least two reasons:

**First**, the district court misapplied Guideline §1B1.3(c), which

4

excludes from guideline calculations "conduct for which the defendant was criminally charged and acquitted in federal court" unless the jury also used the same conduct to convict—which this jury did not.

*Second*, the district court gave undue weight to acquitted conduct when evaluating the 18 U.S.C. §3553(a) sentencing factors. Indeed, it explained that the "serious sentence" it imposed reflected "aggravating factors," especially "the coercion" (A-914)—which the court believed to be "what really happened," even though the jury verdicts contradicted that view. A-914, A-921; *see* Brief of Appellant Sean Combs, ECF No. 32.1 (Dec. 23, 2025) ("Combs AOB"), at 21-23. That analysis exceeds the authority Congress granted federal district courts in the Sentencing Reform Act, as reflected in the text of 18 U.S.C. §3553(a).

Though amici believe that the district court's reliance on acquitted conduct at sentencing also violated the Fifth and Sixth Amendments,[2] this Court need not decide those constitutional issues to order resentencing. Indeed, the doctrine of constitutional avoidance counsels construing the Sentencing Guidelines and sentencing statutes narrowly

---

[2] They agree with Mr. Combs that *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam), does not control that inquiry. *See* Combs AOB at 34-35.

to avoid those constitutional questions. Moreover, traditional appellate review of sentencing decisions incorporates constitutional principles, contributing to the conclusion that the district court's heavy reliance on acquitted conduct below yielded an unreasonable sentence that this Court should reverse.

## ARGUMENT

"The Fifth and Sixth Amendments sought to ensure that a judge's power to punish would derive wholly from, and remain always controlled by, the jury and its verdict." *Erlinger*, 602 U.S. at 831 (quoting in part *Blakely*, 542 U.S. at 306)(alterations omitted). These rights were enshrined in our Constitution to safeguard the "liberties of the people" against the potential "prejudices of judges," *Alleyne*, 570 U.S. at 127. They are foundational to our national creed: "no mere procedural formality, but a fundamental reservation of power in our constitutional structure"—for "[j]ust as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." *Blakely*, 542 U.S. at 306.

6

Accused by federal prosecutors of crimes that varied widely in severity, Sean Combs chose to trust a federal jury to decide whether the sovereign got it right—exercising trial rights "designed to 'guard against a spirit of oppression and tyranny on the part of the rulers.'" *United States v. Gaudin*, 515 U.S. 506, 510–11 (1995)(quoting 2 J. Story, Commentaries on the Constitution of the United States (4th ed. 1873) ("Commentaries"), at 540–41). The verdicts largely vindicated his faith in our jury system: the jury unanimously acquitted him of the serious charges that were the gravamen of the indictment and convicted him only on two Mann Act counts, which typically yield sentences of one year or less. *See* Sentencing Memorandum on Behalf of Sean Combs, District Court Dkt. No. 510 (Sept. 22, 2025), at 131–33.

But the sovereign did not defer to the people's voice that the verdicts reflected. Federal prosecutors wished to see Mr. Combs punished for the charges they had failed to prove to the community members comprising the jury, and they urged the district court to substitute its own view of the evidence for the jury's at sentencing. The district court did so, resolving core factual disputes contrary to the verdicts and sentencing Mr. Combs to a lengthy prison term driven

7

largely by what the court believed had "really happened," crediting the victims' disputed testimony. A-921-22; *see, e.g.,* A-911-914.

But "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *Haymond*, 588 U.S. at 637; *accord Alleyne*, 570 U.S. at 114; *Blakely*, 542 U.S. at 306; *Apprendi*, 530 U.S. at 477. Jury-trial rights "seek to mitigate the risk of prosecutorial overreach and misconduct, including the pursuit of 'pretended offenses' and 'arbitrary convictions'." *Erlinger*, 602 U.S. at 832 (quoting *The Federalist* No. 83). And they "similarly seek to constrain the Judicial Branch, ensuring that the punishments courts issue are not the result of a judicial 'inquisition' but are premised on laws adopted by the people's elected representatives and facts found by members of the community." *Id.* (quoting *Blakely*, 542 U.S. at 307; *Haymond*, 588 U.S. at 640–41).

It now falls to this Court to ensure that "constitutional protections of surpassing importance," *Apprendi*, 530 U.S. at 476, provide the meaningful check on prosecutorial and judicial power the Framers designed them to provide. Interpreting the Sentencing Guidelines and

8

the Sentencing Reform Act to allow acquitted conduct to substantially drive the sentence, as it drove Mr. Combs's sentence, would drain the jury trial "promise" of real meaning and render "vital" protections against government power little more than a mirage. This Court should safeguard the jury's historic role at the foundation of our constitutional structure by reversing.

## I.    The district court misapplied the U.S. Sentencing Guidelines by including acquitted conduct when calculating the applicable sentencing range.

Responding to long-standing controversy about the effect of acquitted conduct on federal sentencing, in 2022 the U.S. Sentencing Commission began considering an amendment "to prohibit the use of acquitted conduct in applying the guidelines." U.S. Sentencing Commission, *Federal Register Notice of Final 2022-2023 Priorities* (Oct. 2022). Extensive public comment and hearings over a two-year period culminated in the Commission's unanimous vote in April 2024 to add this restriction to Guideline §1B1.3, which defines the conduct "relevant" to calculating a defendant's guideline level:

> **(c) Acquitted Conduct.** — Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction.

Commission Chair Judge Carlton Reeves explained the import of this amendment in an official press release: "'Not guilty means not guilty,' said Chair Reeves. 'By enshrining this basic fact within the federal sentencing guidelines, the Commission is taking an important step to protect the credibility of our courts and criminal justice system.'" USSC, *Commission Votes Unanimously, supra.*

The "basic fact" now in the guidelines advances the principle that, in a nation committed since its Founding to jury trials and associated due-process rights, a defendant who has been charged with serious criminal conduct and then acquitted by a unanimous jury ought not be sentenced as if the jury had convicted him instead. *See Erlinger*, 602 U.S. at 831 (quoted above at 6). Before the amendment, the guidelines' "relevant conduct" rules required district courts to do just that when calculating the defendant's offense level. USSG §1B1.3(a). Contravening the Framers' decision to ensure that the "punishments courts issue are not the result of a judicial 'inquisition,'" *id.* at 832, the guidelines required sentencing judges to ignore determinations by unanimous juries and to play the role of judicial inquisitor when calculating the "starting point and initial benchmark" for sentencing

decisions, *Gall v. United States*, 552 U.S. 38, 49–51 (2007). The exclusion in §1B1.3(c) moves toward restoring constitutional balance by expressly instructing judges that "conduct for which the defendant was criminally charged and acquitted in federal court" is not "relevant" for guidelines purposes, giving unanimous "not guilty" jury verdicts legal significance at sentencing.

Section 1B1.3(c)'s exclusion of acquitted conduct does include an exception for conduct that "also establishes, in whole or in part, the instant offense of conviction." But this proviso's meaning and purpose are plain: it allows judges to consider conduct underlying acquitted counts *if and only if the conduct is "**also**" convicted conduct*—that is, the conduct establishes an element of the offense of conviction, which the jury necessarily found proven beyond a reasonable doubt. But the exception is plainly inapplicable here.

The exception addresses a foreseeable scenario: juries sometimes reach mixed verdicts on charges with overlapping elements. The pattern of verdicts may or may not provide insight into the basis for an acquittal—but a conviction clarifies that a jury necessarily found facts corresponding to each element of the offense proven beyond a

11

reasonable doubt. *Cf. Yeager v. United States*, 557 U.S. 110, 119–21 (2009)(collateral estoppel analysis under double-jeopardy clause); *United States v. Cole*, 158 F.4th 113, 123–24 (2d Cir. 2025)(same). The exception to §1B1.3(c)'s exclusion ensures a sentencing judge need not exclude from guideline calculations conduct a jury found when convicting.

This approach aligns with this Court's observation in *United States v. Martinez*, 110 F.4th 160, 177 (2d Cir. 2024), that acquittals provide no basis for sentencing courts to disregard factual findings underlying a jury's guilty verdicts. Section 1B1.3(c) follows suit, including in guidelines calculations conduct essential to a jury's guilty verdict even if it is "also" acquitted conduct, but barring reliance on all other acquitted conduct. That structure "accord[s] due respect to the jury's constitutionally established role," *id.*: the state's power to punish "remains always controlled by, the jury and its verdict," *Erlinger*, 602 U.S. at 831. *Accord Blakely*, 542 U.S. at 309 (stressing "the jury's traditional function of finding the facts essential to lawful imposition of the penalty").

12

But the district court here misapplied §1B1.3(c) by adopting a "relevancy test" for determining when courts must include acquitted conduct when calculating the guidelines range. A-779. That test defeats the purpose of §1B1.3(c) by allowing a district court to punish a defendant despite a jury's "not guilty" verdict—broadening the exception beyond conduct the jury necessarily found when convicting to conduct merely "*relevant to* establishing the offense in question" (*id.*)(emphasis added), which a jury has no reason to pass upon. Even more importantly, the plain text of the guideline, which limits courts to considering acquitted conduct only if "established" by counts of conviction, does not support this approach.

Indeed, the whole point to the acquitted-conduct amendment is to exclude from guideline calculations conduct the guidelines used to deem "relevant" despite the jury's verdict of acquittal. Section 1B1.3(a) defines the test for "relevant conduct." Section 1B1.3(c) creates a meaningful carve-out from it, excluding from guideline calculations conduct that §1B1.3(a) would otherwise make "relevant." Defining the exception to §1B1.3(c)'s exclusion to require mere "relevance" to the offense of conviction is logically equivalent to saying that acquitted

13

conduct is not "relevant conduct" unless it is "relevant." Even beyond

that absurdity, that rule would again allow the district court to

disregard the jury and let its own fact-finding control the scope of the

punishment. District courts could again override a jury's unanimous

acquittal simply by crediting allegations the jury rejected.[3]

The Commission did not debate for two years and then

unanimously enact §1B1.3(c) only to bar district courts from considering

acquitted conduct that would be *irrelevant* at sentencing anyway. The

guideline seeks to restore and respect the foundational connection

between jury verdict and sentencing—sparing sentencing courts the

constitutional tension and fundamental unfairness resulting from

requiring judges to consider increasing guideline ranges based on

conduct for which a defendant was acquitted by a jury. *See McClinton*,

---

[3] For one of countless examples of the problem, consider *McClinton*, *supra*, the acquitted-conduct sentencing case that prompted multiple Justices to author statements when certiorari was denied in 2023. The defendant was convicted of a drug-store robbery and an associated firearm charge, but acquitted of shooting and killing a fellow robber shortly thereafter amid a dispute over the proceeds of the robbery. Prosecutors in that case surely could argue, and a district court could find, that the shooting was "relevant" to the defendant's robbery and firearm convictions.

14

143 S. Ct. at 2402 (Sotomayor, J., statement respecting the denial of certiorari).

This reading of USSG §1B1.3(c) provides a clear and unambiguous account of its plain text, its undisputed purpose, and the structure of §1B1.3 as a whole. Even if the Court were to find ambiguity, however, two interpretive principles would still require a ruling for Mr. Combs: the doctrine of constitutional avoidance and the rule of lenity. This Court has long recognized that it is "profoundly sound," when interpreting ambiguous provisions, "to avoid constitutional questions where such a construction is reasonably possible." *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997). And this Court has also long recognized that the rule of lenity applies to ambiguous sentencing guidelines. S*ee United States v. Parkins*, 935 F.3d 63, 66 (2d Cir. 2019); *United States v. Simpson*, 319 F.3d 81, 87 (2d Cir. 2002).

Interpreting §1B1.3(c) to place no meaningful new limit on acquitted-conduct guideline enhancements would force this Court to confront the Fifth and Sixth Amendment questions Mr. Combs's sentencing raises—in addition to holding that the unanimous Sentencing Commission wrote §1B1.3(c) unambiguously to promulgate

15

a substantial reform with an exception that negates it. Far more sound, and in keeping with traditional doctrines of statutory interpretation, would be for this Court to conclude that constitutional avoidance and lenity rules support reading USSG §1B1.3(c) to meaningfully curtail the use of acquitted conduct in guideline calculations. Applying the rule of lenity in this context would be especially fitting given that interpretive rule's historic link to preserving due process and constraining courts' power to punish. *See Wooden v. United States*, 590 U.S. 360, 388-89 (2022) (Gorsuch, J., concurring, joined by Sotomayor, J.) (stressing lenity's historic "relationship to due process" and the interpretative principle that "any reasonable doubt about the application of a penal law must be resolved in favor of liberty"). Of course, the text, purpose, and structure of §1B1.3 yield the same result.

As detailed fully in Mr. Combs's opening Brief, the district court relied heavily on acquitted conduct underlying two sex trafficking counts when imposing a four-point enhancement for "fraud or coercion" under §2G1.1(b)(1)(A) & (B)(i), and also relied heavily on acquitted conduct underlying the RICO conspiracy count when imposing a four-point leadership enhancement under §3B1.1(a). Combs AOB at 19-22.

16

The Court did so even though the conduct did not "establish" any element the jury necessarily found when convicting Mr. Combs on two Mann Act counts. These significant enhancements more than doubled the applicable guideline sentencing range, thereby giving the district court an erroneous starting point for its sentencing decision. The Court should reverse.

## II. The district court exceeded its statutory sentencing authority by allowing acquitted conduct to drive the sentence.

Early in the sentencing hearing the district court commented that, notwithstanding the defense's emphasis on the problems with acquitted-conduct sentencing, "it is important to understand how narrow and, in this case, inconsequential all of this is." A-780. The court deemed the issue "inconsequential" because whatever the meaning of the guidelines amendment, 18 U.S.C. §3661 allows sentencing courts to "receive and consider" without limitation "information concerning the background, character, and conduct of a person convicted of an offense … for the purpose of imposing an appropriate sentence." A-780.

17

Though the court quoted the statute accurately, it failed to address the import of the statutory reference to the "purpose" for which the court may receive and consider that information: the "purpose of imposing an appropriate sentence" in accordance with the mandates of 18 U.S.C. §3553(a). And the text of §3553(a) demonstrates that courts' sentencing authority does not extend to punishing acquitted conduct in the same way as convicted conduct.

Section 3553(a) is where Congress expressly instructs district courts on the "Factors To Be Considered in Imposing a Sentence." All pertinent subsections direct courts to consider factors related to "the offense," or similar phrasing. Specifically:

- §3553(a)(1): "the nature and circumstances **of the offense**"

- §3535(a)(2): "the need for the sentence imposed—

    (A) to reflect the seriousness **of the offense**, to promote respect for the law, and to provide just punishment **for the offense**;"

- §3553(a)(3): "the kinds of sentences available" (a statutory inquiry necessarily controlled by the offense of conviction)

18

- §3553(a)(4): "the kinds of sentence and the sentencing range established for—

  (A) the applicable **category of offense** … as set forth in the guidelines"

- §3553(a)(6): "the need to avoid unwarranted sentence disparities among defendants with similar records **who have been found guilty of similar conduct**;" and

- §3553(a)(7): **"**the need to provide restitution to any victims **of the offense**."

The statutory text makes clear that Congress both expected and required courts to tether their sentencing decision-making, and ultimately the sentence imposed, principally and primarily to "the offense" of conviction. *See generally* Orhun Hakan Yalincak, *Critical Analysis of Acquitted Conduct Sentencing in the U.S.: "Kafka-esque," "Repugnant," "Uniquely Malevolent" and "Pernicious?"*, 54 Santa Clara L. Rev. 675, 693-721 (2014) (arguing that "acquitted conduct sentencing undermines the justifications for punishment" set forth in sentencing statutes); Eang Ngov, *Judicial Nullification of Juries: Use of Acquitted Conduct at Sentencing*, 76 Tenn. L. Rev. 235, 295-308 (2009) (explaining

19

that judges should "reject the use of acquitted conduct [as sentencing] because it conflicts with the purposes of sentencing" set out in 18 U.S.C. §3553(a)).

Two of these subsections bear special attention in this context. First, §3553(a)(6) requires courts to "avoid unwarranted sentence disparities among defendants with similar records *who have been found guilty* of similar conduct." This statutory provision plainly means that a defendant should receive a sentence that is calibrated to the offense of which he was "found guilty," and to the sentences of others "found guilty" of the same offense. Neither would make sense if the subsection contemplated sentences driven largely by acquitted conduct—as Mr. Combs's was. *See* Ngov, *Judicial Nullification of Juries, supra*, 76 Tenn. L. Rev. at 306 ("Statutory language and legislative history support an understanding that Congress was concerned about disparity among convicted offenses.")

Second, and particularly important in this context, §3553(a)(2)(A) requires courts to consider the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Even beyond the repeated reference to

"the offense" (and not acquitted conduct), Congress's express direction to fashion a sentence "to promote respect for the law" necessarily limits the weight a sentencing court may give to acquitted conduct.

As the Supreme Court stressed in *In re Winship*, 397 U.S. 358 (1970), "use of the reasonable doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law," because of the importance "in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." *Id.* at 364. But a sentence significantly enhanced based on acquitted conduct—a long period of incarceration founded on government accusations that a unanimous jury rejected—necessarily undermines respect for the protections embodied in our constitutional structure.

Recognizing this, many esteemed jurists have commented that enhancing sentences for acquitted conduct promotes *disrespect* for the law. *See, e.g., McClinton*, 143 S. Ct. at 2402–03 (Sotomayor, J., statement) ("Various jurists have observed that the woman on the street would be quite taken aback to learn about this practice."); *United*

21

*States v. Canania*, 532 F.3d 764, 777 (8th Cir. 2008) (Bright, J., concurring) (calling the "unfairness perpetuated by the use of 'acquitted conduct' at sentencing … uniquely malevolent"); *United States v. Coleman*, 370 F. Supp. 2d 661, 671 n.14 (S.D. Ohio 2005) (concluding "consideration of acquitted conduct has a deleterious effect on the public's view of the criminal justice system"); *United States v. Frias*, 39 F.3d 391, 393 (2d Cir. 1994) (Oakes, J., concurring) (calling acquitted conduct rulings a "jurisprudence reminiscent of *Alice in Wonderland*.... As the Queen of Hearts might say, 'Acquittal first, sentence afterwards.'"); *see also* Ngov, *Judicial Nullification of Juries*, *supra*, 76 Tenn. L. Rev. at 296-300 (contending that reliance on "acquitted conduct at sentencing risks creating a society that does not respect the law" because "the general public, lawyers, and even judges hold the strong belief that no one should suffer punishment for conduct of which they have been acquitted").

The need to ensure that sentences "promote respect for the law" is especially important in a surpassingly high-profile case like this one—scrutinized and debated daily by the press and the public, who learned almost instantly and in detail that a unanimous jury rejected

22

prosecutors' most serious charges. In this day and age, the national audience is likewise alert to processes that raise concern about the fairness and impartiality of our justice system, its commitment to foundational constitutional values, and even the value of jury service and other obligations of citizenship. Yet here the same national audience heard the district court override the jury's factual findings, endorse the prosecution's narrative, and sentence Mr. Combs on that basis. There is ample reason to worry that the public will conclude that the sentencing process and outcome mean the jury's decision to acquit on the most serious charges was as "inconsequential" (A-780) as the defense's objections were. *See Prison Time for Something Diddy Didn't Do*, Wall St. Journal (Oct. 9, 2025); Carl Thiese, *When Judges Punish for Crimes the Jury Rejected*, Niagara Reporter (Oct. 10, 2025). Mr. Combs's sentence risks promoting *disrespect* for the law, contravening §3553(a)(2).

As with the sentencing guidelines, the doctrines of constitutional avoidance and the rule of lenity further support this interpretation of the sentencing statutes, even if the Court deems them ambiguous as a limit on acquitted-conduct sentencing. *See, e.g., Jones v. United States*,

23

526 U.S. 227, 239–52 (1999) (adopting statutory interpretation favoring defendant to avoid "serious questions" about Fifth and Sixth Amendment rights), and discussion above, at 15-16. Properly interpreted, the Sentencing Reform Act requires reversal because allowing acquitted conduct to drive the sentence exceeds the sentencing authority Congress conferred on district courts—authority that ultimately derives from the jury's verdict.

### III. Giving significant weight to acquitted conduct at sentencing, as here, is unreasonable in light of foundational constitutional principles.

Amici believe that allowing acquitted conduct to drive a sentence, as the court did here, violates the Fifth Amendment due-process right to have key sentencing facts proven beyond a reasonable doubt and the Sixth Amendment right to a jury trial. Scores of commentators and federal jurists—including Supreme Court justices across the ideological spectrum—have expressed constitutional and fairness concerns about acquitted-conduct sentencing.[4] The Constitution's textual emphasis on

---

[4] See citations above, at 21-22, and, *e.g.*, Lucius T. Outlaw III, *Giving an Acquittal Its Due: Why a Quartet of Sixth Amendment Cases Means the End of United States v. Watts and Acquitted Conduct Sentencing*, 5 U. Denv. Crim. L. Rev. 173 (2015); Mark T. Doerr, Note, *Not Guilty? Go to*

the importance and right of jury trials — with jury trials championed not only by the Sixth Amendment but also by Article III, Section 2 — shows that the Framers did not grant federal judges unlimited discretionary authority to punish a defendant after a jury acquitted him. This Court properly brings such foundational constitutional concerns to bear when conducting reasonableness review. *See, e.g., United States v. Eaglin*, 913 F.3d 88, 95 (2d Cir. 2019) (stressing the need to "conduct a more searching review" when a sentence presents "heightened constitutional concerns"). Both procedural and substantial reasonableness review extend beyond the particulars of rules, statutes and guidelines; sentencing decisions that transgress foundational constitutional principles may be unreasonable for that reason. *E.g., id.* at 95–98; *see United States v. Cavera*, 550 F.3d 180, 199–201 (2d Cir. 2008) (Sotomayor, J., concurring)(discussing constitutional errors that may render sentence unreasonable); *id.* at 190 (majority op.) (substantive reasonableness review encompasses "totality of the

---

*Jail. The Unconstitutionality of Acquitted-Conduct Sentencing*, 41 Colum. Hum. Rts. L. Rev. 235 (2009); Peter Erlinder, *"Doing Time" … After the Jury Acquits: Resolving the Post-Booker "Acquitted Conduct" Sentencing Dilemma*, 18 S. Cal. Rev. L. & Soc. Just. 79, 98-113 (2008).

circumstances").

As discussed above (at 6–8), the Supreme Court has long emphasized that the jury-trial right is "clearly intended to protect the accused from oppression by the Government." *Singer v. United States*, 380 U.S. 24, 31 (1965); *see also Batson v. Kentucky*, 476 U.S. 79, 86 (1986) (the jury-trial right "safeguard[s] a person accused of crime against the arbitrary exercise of power by prosecutor or judge"); *Alleyne*, 570 U.S. at 114 (noting "the historic role of the jury as an intermediary between the State and criminal defendants"); *Apprendi*, 530 U.S. at 477 (the jury "guard[s] against a spirit of oppression and tyranny on the part of rulers")(quoting 2 J. Story, Commentaries, *supra*, at 540–41). Indeed, the jury-trial right is an "inestimable safeguard" protecting a defendant "against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968). As the Supreme Court reiterated quite recently, jury trials are "fundamental to the American scheme of justice," *Ramos v. Louisiana*, 590 U.S. 83, 93 (2020) (quoting *Duncan*, 391 U.S. at 149), and the founders of our Nation saw "trial by jury as 'the heart and lungs' of liberty," *Erlinger*, 602 U.S. at 829.

26

Yet these proclamations about the importance of "the jury's historic role as a bulwark between the State and the accused," *Southern Union Co. v. United States*, 567 U.S. 343, 350 (2012), ring disturbingly hollow for defendants like Mr. Combs if, after being vindicated by jury verdicts of not-guilty, they face sentencing judges who are free to increase prison terms by accepting the allegations a unanimous jury rejected. Acquittals, in these cases, become inconsequential formalities with no meaningful effect on the state's ability to punish. Affirming Mr. Combs' sentence will leave the public to wonder just what kind of "bulwark" or "safeguard" the Fifth and Sixth Amendments provide when prosecutors and judges may readily override jury findings at sentencing.

As detailed above, amici contend that both the guidelines and sentencing statutes create enforceable limits on acquitted-conduct sentencing. But another way to "give intelligible content to the right of a jury trial" in this setting (*Blakely*, 542 U.S. at 305–06) would be to rule that the district court's sentencing decision here, including its heavy reliance on acquitted conduct, was unreasonable under the case-specific totality of the circumstances. *See Cavera*, 550 F.3d at 191.

The reasonableness framework would permit this Court to declare that in the unique circumstances of this case the district court's reliance on acquitted conduct was error—without requiring the Court to definitively address foundational constitutional questions or broadly applicable sentencing law. Moreover, the nuanced standards of reasonableness review would permit the Court to acknowledge, if it wished, the possibility of rare cases in which judges may reasonably use acquitted conduct at sentencing—*e.g.*, to support a discretionary decision to sentence at the top of a properly calculated guideline range—because doing so does not pose a serious "threat to the jury's domain" or an "erosion of the jury's traditional role." *Oregon v. Ice*, 555 U.S. 160, 169–70 (2009). But the Court could also make plain that when judicial fact-finding on disputed allegations that the jury uniformly rejected significantly increases the guidelines range and drives the "serious sentence" the court imposes (*e.g.*, A-914), far harsher than the offenses of conviction reasonably support, the sentence is "unreasonable."

In other words, even without a broad constitutional or statutory ruling, the Court may soundly apply reasonableness review to limit

28

undue judicial reliance on acquitted conduct and thereby ensure that the "right of jury trial [will] be preserved, in a meaningful way guaranteeing that the jury [will] still stand between the individual and the power of the government." *Booker*, 543 U.S. at 237.

## CONCLUSION

Amici respectfully submit that for these reasons, the Court should reverse Mr. Combs's sentence and remand for resentencing.

Respectfully submitted,

/s/ *Lisa A. Mathewson*
Lisa A. Mathewson
MATHEWSON LAW LLC
1617 John F. Kennedy Blvd.,
    Suite 2027
Philadelphia, Pa 19103
(215) 399-9592
lam@mathewson-law.com

*Counsel of Record for Amici Curiae*
*Professors of Law**

December 30, 2025

*Prof. Douglas Berman; Prof. John Blume; The Hon. John Gleeson (Ret.), Adjunct Professor

29

## CERTIFICATE OF BAR MEMBERSHIP

I certify that I am a member in good standing of the bar of the U.S. Court of Appeals for the Second Circuit.

/s/ *Lisa A. Mathewson*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Local Rules 32.1(a)(4)(A) and 29.1(c).

1.     Exclusive of the exempted portions of the brief, as provided under Fed. R. App. P. 32(f), the brief contains 5297 words.

2.     The brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it is typeset in 14-point Century Schoolbook.

/s/ *Lisa A. Mathewson*

December 30, 2025

30

## CERTIFICATE OF SERVICE

I certify that on December 30, 2025, I caused the foregoing brief to be filed with the clerk of the court via electronic filing. All counsel of record will receive service via the Court's electronic filing system.

/s/ *Lisa A. Mathewson*